Kevin G. Little, SBN 149818
Michelle Tostenrude, SBN 290121
Law Office of Kevin G. Little
Post Office Box 8656
Fresno, CA 93721
Tel.      (559) 342-5800
Fax:      (559) 242-2400
E-Mail:   kevin@kevinlittle.com

Attorneys for Plaintiffs Martha Zepeda Olivares, individually and on behalf of the Estate of Maximiliano Sosa, Jr. and Maximiliano Sosa, Sr.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA – FRESNO DIVISION

| | |
|---|---|
| MARTHA ZEPEDA OLIVARES, individually and on behalf of the ESTATE OF MAXIMILIANO SOSA, JR.; MAXIMILIANO SOSA, SR., <br><br>Plaintiffs, <br><br>v. <br><br>CITY OF FRESNO; UNKNOWN LAW ENFORCEMENT OFFICERS, and DOES 1-30 <br><br>Defendants. | CASE NO. 1:23-cv-01575-JLT-SAB <br><br>**PLAINTIFFS' RESPONSE TO THE OBJECTIONS OF MARIA SOSA TO THE COURT'S MODIFIED ORDER RE: EMERGENCY EX PARTE APPLICATION FOR ORDER ALLOWING PRIVATE AUTOPSY PRIOR TO EMBALMING OR FUNERAL; SUPPORTING DECLARATIONS OF COUNSEL AND SELISE SOSA; EXHIBITS** |

TO THE HONORABLE COURT:

Plaintiffs Martha Zepeda Olivares, individually and on behalf of the Estate of Maximiliano Sosa, Jr. and Maximiliano Sosa, Sr., through their counsel of record, hereby respond to the objections filed by and on behalf of Maria Sosa (Doc. Nos. 11, 12) to this Court's November 8, 2023 Order on plaintiffs' *ex parte* application (Doc. No. 6), which conditionally authorized a private autopsy prior to the corpse of the decedent's being embalmed and prior to his funeral being held. For the reasons detailed herein, Ms. Sosa's objections are lacking in merit and based on inaccuracies and should be overruled.

Specifically, plaintiffs respond to the asseverations in Ms. Sosa's nearly identical two objections as follows:

1

1. The date of Ms. Sosa's marriage to the decedent is undisputed. Objections, ¶ 1. It is also undisputed that Ms. Sosa and the decedent have two minor children, ages 4 and 2. Objections, ¶ 2. It is further undisputed that Ms. Sosa has had legal and physical custody of her two children, *see* Objections ¶ 4, although custody had been shared with the decedent since their February 2023 separation. *See* Declaration of Selisa Sosa, ¶ 2.

2. The specific factual circumstances described in paragraphs 4 through 8 of Ms. Sosa's objections are unknown to plaintiffs, who were not present when the decedent was shot and killed by Fresno Police officers, but the description provided by Ms. Sosa is generally consistent with the allegations of the plaintiffs' Complaint and therefore is not disputed for present purposes.

3. Plaintiffs have no knowledge of Ms. Sosa's representation in paragraph 9 regarding her attorney representation. Furthermore, plaintiffs agree that Ms. Sosa has legal standing to represent the interests of her two minor children, unless a guardian *ad litem* is appointed pursuant to FRCP 17 and California Code of Civil Procedure § 372.

4. However, plaintiffs dispute Ms. Sosa's self-description in paragraph 9 as the successor-in-interest to the decedent's estate. As the attached declaration of Selise Ramos, the decedent's sister, sets forth, Ms. Sosa and the decedent had been separated since February 2023, when Ms. Sosa left the marital home. The decedent also expressed an intention to remain separate from Ms. Sosa and to live his life as a single individual. *See* Declaration of Selisa Sosa, ¶¶ 3-4. It is therefore doubtful that Ms. Sosa is the decedent's successor in interest. A "surviving spouse" does not include a "legally separated" spouse, and "legally separated" includes spouses who evince an intent to end their marriage. *See* Cal. Probate Code §§ 78, 6401, 6402 (limiting intestate heirs to a "surviving spouses," which do not include "legally separated" spouses); Cal. Family Code § 70 (defining "legally separated" as a spouse who, subjectively and objectively, evinces even a unilateral intent to end his marriage). Moreover, the decedent's two very young children are clearly incompetent to serve as his successor in interest until or unless a guardian *ad litem* is appointed. *See* FRCP 17(c)(2); Cal. Code of Civil Procedure § 372. It also appears that Ms. Sosa may have a conflict of interest and cannot be the

1 | children's guardian *ad litem* since she has an incentive to declare herself as an heir even if she is
2 | not, to the detriment of her children's estate interests. *See Williams v. Superior Court* (2007)
3 | 147 Cal.App.4th 36, 48-49 (2007).

4 |     5.    At this point, the Court is not required to resolve these estate disputes, many of
5 | which likely will have to be litigated in a probate proceeding. Plaintiffs only note that the
6 | decedent's estate representation is in dispute. Moreover, regardless of the outcome of the
7 | dispute regarding the decedent's estate representation, plaintiffs still have standing as the
8 | decedent's parents to assert claims under the Fourteenth Amendment under 42 U.S.C. § 1983.
9 | "Parents have a Fourteenth Amendment liberty interest in the companionship and society of
10 | their children." *Zion v. Cnty. of Orange*, 874 F.3d 1072, 1076-1077 (9th Cir. 2017) (*quoting*
11 | *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010)).

12 |     6.    The statements in paragraphs 10 and 11 of Ms. Sosa's objection either do not
13 | require a response or are unknown to plaintiffs.

14 |     7.    Plaintiffs do not dispute the representation in paragraph 12 of Ms. Sosa's
15 | objection that neither party had filed a petition for divorce or separation. However, for the
16 | reasons set forth above, "legal separation" may be accomplished by means other than a
17 | judgment of separation or divorce.

18 |     8.    Plaintiffs do not dispute the accuracy of the death certificate attached to Ms.
19 | Sosa's objection for present purposes. Objections, ¶ 13.

20 |     9.    Ms. Sosa's invocation of Health and Safety Code § 7100 on pages 3 and 4 of her
21 | objections once again assumes that she is legally entitled to hold herself out as the "surviving
22 | spouse" despite the legal issues and factual disputes identified above. Again, this need not be
23 | resolved by the Court at this early stage. Plaintiffs nonetheless have a right to assert their own
24 | legal claims, and they have standing to ask the Court for permission to perform a private
25 | autopsy in connection therewith.

26 |     10.    Ms. Sosa also contends on page 5 of her objections that a private autopsy is
27 | unwarranted, presumably because the decedent's death certificate states that he died as a result
28 | of a law enforcement shooting. However, excessive deadly force cases frequently turn on

forensic evidence as to *how* specifically the decedent was killed, not merely the cause of his death. *See Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994) ("We recognize that, this being a case involving deadly force, we must ensure that the officers are 'not taking advantage of the fact that the witness most likely to contradict [their] story - the person shot dead - is unable to testify." and "The judge must carefully examine all the evidence in the record, such as medical reports, contemporaneous statements by the officer and the available physical evidence, as well as any expert testimony proffered by the plaintiff, to determine whether the officer's story is internally consistent and consistent with other known facts."). The *conclusions* of a death certificate fail to prove the *circumstances* of the decedent's death, which are currently unknown to plaintiffs, and they should be entitled to perform an investigation to support their claims. For reasons already stated, the passage of undue time, the decedent's embalmment, or, obviously, his burial, could effectively prevent the plaintiffs' from obtaining crucial evidence.

11. On page 5 of her objections, Ms. Sosa also complains that many logistical aspects of the private autopsy are unknown, such as (a) the date when the decedent's body will be picked up, (b) who would be performing the autopsy, (c) where the autopsy is to be performed, (d) the scope of the autopsy, (e) the financial details of the autopsy, and (f) when the decedent would be returned to the funeral home. Plaintiffs respond as follows: (a) a pick-up date cannot be set until the present objections are resolved; (b) the identity of who the plaintiffs select to perform the autopsy should not be Ms. Sosa's concern, but the plaintiffs have selected Dr. Allecia Wilson, a nationally recognized forensic pathologist who heads the University of Michigan's Autopsy and Forensic Services Program; (c) the autopsy will be performed in Dr. Wilson's Michigan facility within the time and other parameters set forth in the Court's Order; (d) the scope of the autopsy will be within the professional discretion of Dr. Wilson, and within the parameters of the Court's Order; (e) as set forth in the Court's Order, no other party will be financially responsible for any costs attendant to the private autopsy; and (f) the decedent would be returned to the funeral home within 72 hours of his pick-up, as required by the Court's Order. *See* Declaration of Kevin G. Little.

12. Finally, Ms. Sosa states on page 6 of her objections that the private autopsy will

interfere with the current scheduling of the decedent's funeral and burial, and that plaintiffs have not offered to assist in the payment of any related expenses that might be incurred as a result of any delay.  However, plaintiffs are informed and believe that the decedent's funeral is currently scheduled for November 22, 2023, and that any delay beyond that date would be due to the litigation of Ms. Sosa's objections, not the private autopsy process.  Finally, contrary to Ms. Sosa's statement, plaintiffs have indeed offered to assist in the funeral expenses.  *See* Declaration of Selisa Sosa, ¶¶ 5-6.

WHEREFORE for all the above reasons and those set forth in their ex parte application, plaintiffs request an order permitting them to have a private autopsy done prior to any embalming of the defendant's corpse and prior to any funeral being held.

Dated:  November 13, 2023  /s/ Kevin G. Little
Kevin G. Little
Attorneys for Plaintiffs Martha Zepeda Olivares, individually and on behalf of the Estate of Maximiliano Sosa, Jr. and Maximiliano Sosa, Sr.

## Supporting Declaration of Counsel

The undersigned, Kevin G. Little, hereby declares as follows:

1. I am the lead attorney of record for the plaintiffs in this newly filed action. I was contacted by plaintiffs the same day that the decedent, Maximiliano Sosa, Jr. was shot and killed by Fresno Police Officers.

2. Ms. Sosa has expressed several logistical concerns, to which I can respond as follows: (a) a pick-up date cannot be set until the present objections are resolved; (b) the identity of who the plaintiffs select to perform the autopsy should not be Ms. Sosa's concern, but the plaintiffs have selected Dr. Allecia Wilson, a nationally recognized forensic pathologist who heads the University of Michigan's Autopsy and Forensic Services Program; (c) the autopsy will be performed in Dr. Wilson's Michigan facility within the time and other parameters set forth in the Court's Order; (d) the scope of the autopsy will be within the professional discretion of Dr. Wilson, and within the parameters of the Court's Order; (e) as set forth in the Court's Order, no other party will be financially responsible for any costs attendant to the private autopsy; and (f) the decedent would be returned to the funeral home within 72 hours of his pick-up, as required by the Court's Order.

3. If called to testify, I could truthfully and competently testify to the foregoing

Sworn under the laws of the United States of America, this 13th day of November, 2023, in Fresno, California.

                                           */s/ Kevin G. Little*

## Supporting Declaration of Selise Sosa

The undersigned, Selise Sosa, hereby declares as follows:

1. I am an adult resident of the County of Fresno. I am the surviving oldest sister of the decedent, Maximiliano Sosa, Jr.

2. After they split up and began living separately in February 2023, my brother and Ms. Sosa alternated weeks of physical custody with respect to their two young children. I know this because I was present on many occasions when the two children were with my brother, who remained in what had been the family residence, 5552 West Oak Ave, Fresno CA 93722.

3. Ms. Sosa and my brother had been separated since February 2023, when Ms. Sosa left the marital home. My brother also expressed an intention to remain separate from Ms. Sosa and to live his life as a single individual.

4. Prior to his death, my brother developing a relationship with another woman, and they even had discussed the possibility of having children of their own. I know this because I am familiar with my brother's post-separation romantic interest and have been shown text messages they exchanged.

5. In text communications that I had with Ms. Sosa in relation to the funeral, she indicated that it was tentatively scheduled for November 22, 2023. I attach text messages to prove this.

6. My family has always been willing to assist with the expenses of the funeral, but we have been largely left out of the planning process, which has been heartbreaking to us. I attach text messages to prove our willingness to assist with the funeral expenses.

7. If called to testify, I could truthfully and competently testify to the foregoing

Sworn under the laws of the United States of America, this 13th day of November, 2023, in Fresno, California.

*/s/ Selise Sosa*





