UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTHA ZEPEDA OLIVARES, individually and on behalf of the ESTATE OF MAXIMILIANO SOSA, JR.; MAXIMILIANO SOSA, SR., <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF FRESNO; UNKNOWN LAW ENFORCEMENT OFFICERS, POLICE CHIEF PACO BALDERRAMA, and DOES 1 through 30, <br><br> Defendants. | Case No. 1:23-cv-01575-JLT-SAD <br><br> ORDER GRANTING MOTION TO DISMISS <br><br> (Doc. 37) |

## I. INTRODUCTION

Before the Court is Defendants' motion to dismiss the fifth claim from Plaintiffs' first amended complaint. (Doc. 37.) For the reasons set forth below, the motion is **GRANTED**.

## II. BACKGROUND

At 2:15 a.m. in November 2023, Maximiliano Sosa helped his intoxicated, estranged wife Maria Sosa back to her apartment. (Doc. 26, ¶ 13.) Sosa left Maria's apartment at approximately 3:30 a.m. and then returned approximately 15 minutes later, at which time law enforcement officers were present. (*Id.*, ¶ 15.) Upon seeing the officers, Sosa drove away from the apartment complex but returned at 4:35 a.m. (*Id.*, ¶¶ 15–16.) At that time, Sosa parked next to a patrol car

1

1  and approached Maria's apartment where a law enforcement officer opened the door and allowed
2  him to enter. (*Id.*, ¶ 16.) Sosa entered the apartment holding a pair of scissors at his side and
3  expressed suicidal ideations and a desire to be shot and killed by law enforcement. (*Id.*, ¶¶ 17–
4  18.) After a brief period in Maria's apartment, an officer within the apartment told Sosa to exit
5  the apartment. (*Id.*, ¶ 19.) Upon exiting, an officer outside the apartment shot Sosa with a taser.
6  (*Id.*, ¶ 21.) Sosa reacted by running forward toward the officers and at least on shot him several
7  times. (*Id.*) Though they made life-saving efforts, Sosa died at the scene. (*Id.*, ¶¶ 21–24.) Sosa's
8  mother, Martha Zepeda Olivares, sued on behalf of herself and Sosa's estate and raised claims
9  stemming from Defendants use of force. (*Id.*, ¶¶ 3–6.)

### III.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In deciding a motion to dismiss, "all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020). In assessing the sufficiency of a complaint, all well-pleaded factual allegations must be accepted as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.*; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). "Dismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro*, 250 F.3d at 732.

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making

2

1  this determination, the court should consider factors such as "the presence or absence of undue
2  delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments,
3  undue prejudice to the opposing party and futility of the proposed amendment." *Moore v.*
4  *Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

## IV.     DISCUSSION

Plaintiffs allege nine causes of action against Defendants: (1) violation of the Fourth Amendment under 42 U.S.C. § 1983; (2) violation of civil rights to familial relationships under 42 U.S.C. § 1983; (3) municipal liability for failure to train and supervise under 42 U.S.C. § 1983; (4) municipal liability for unconstitutional customs, practices, or policies under 42 U.S.C. § 1983; (5) violation of the Americans with Disabilities Act and Rehabilitation Act; (6) wrongful death under California Code of Civil Procedure § 377.60; (7) violation of the Bane Act; (8) violation of the Unruh Act; and (9) assault and battery.  (*See generally* Doc. 26.)  Defendants move to dismiss Plaintiffs' fifth cause of action.  (Doc. 37.)

**A.     Count Five: Americans with Disabilities Act and Rehabilitation Act**

Plaintiffs allege that Sosa was "a qualified individual with a disability within the meaning of both Title II of the ADA and the Rehabilitation Act." (Doc. 26, ¶ 71.)  Plaintiffs allege that Defendants denied Sosa "the benefits of Title II ADA services, programs, and/or activities and subjected [Decedent] to unlawful discrimination by, among other things, failing to provide reasonable accommodations for his disabilities." (*Id.*, ¶ 73.)  Defendants move to dismiss on the grounds that Plaintiffs' ADA claim fails to sufficiently allege that Sosa had a disability and that the police did not use force because of Sosa's alleged disability. (Doc. 37 at 5.)

To state a claim under Title II of the ADA and the Rehabilitation Act, a plaintiff must allege:

> (1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of his disability.

*O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1060 (9th Cir. 2007); *Duvall v. Cnty. of Kitsap*,

3

260 F.3d 1124, 1135 (9th Cir. 2001) (explaining that the elements of a claim under the Rehabilitation Act are identical to those of Title II). Defendants challenge the first and third elements.

With respect to the first element, the ADA defines a "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such impairment." 42 U.S.C. § 12102(1). A "physical or mental impairment" is defined as "[a]ny mental or psychological disorder such as intellectual disability, organic brain syndrome, emotional or mental illness, and specific learning disability." 28 C.F.R. § 35.108(b)(1)(ii). The phrase "record of such impairment" means having a "history of . . . mental or physical impairment that substantially limits one or more major life activities." *Id.* § 35.108(e)(1).

Plaintiffs argue that Sosa was disabled under 42 U.S.C. § 12102(1)(A) because he suffered from a mental impairment that substantially limited one or more of his major life activities. (Doc. 42 at 4–5.) "The definition of disability . . . shall be construed in favor of broad coverage of individuals . . . to the maximum extent permitted by the terms of this chapter." 42 U.S.C. § 12102(4)(A). Specifically, "[t]he term 'substantially limits' shall be interpreted consistently with the findings and purposes of the ADA Amendments Act of 2008." *Id.* § 12102(4)(B). "Determining whether an impairment is substantially limiting 'requires an individualized assessment.'" *Weaving v. City of Hillsboro*, 763 F.3d 1106, 1111 (9th Cir. 2014) (quoting 29 C.F.R. § 1630.2(j)(1)(iv)).

The Court finds that the FAC fails to sufficiently allege that the Sosa suffered from a qualifying physical or mental impairment. *See* 28 C.F.R. § 35.108(b)(1)(2). Though the ADA Amendments Act of 2008 allows for a broad interpretation of "substantially limits," no similar construction directive is assigned to the "physical or mental impairment" requirement. *See Weaving*, 763 F.3d at 1111 (noting that the "findings and purposes [of the ADA Amendments Act of 2008] *specifically expresses* Congress's view that prior . . . court cases . . . had given 'substantial limits' an unduly narrow construction"). Furthermore, when a party alleges that they are disabled under the ADA, "[c]ourts have held that a plaintiff must allege his disability with

4

1  specificity to state a claim." *Alejandro v. ST Micro Elec., Inc.*, 2015 WL 5262102, at *3 (N.D.
2  Cal. Sept. 9, 2015); *see also William S. v. Lassen Cnty.*, 2006 WL 929398, at *3 (E.D. Cal. Apr.
3  11, 2006). Thus, a plaintiff must "allege that he or she suffered from a specific, recognized
4  mental or physical illness." *Bresaz*, 136 F. Supp. 3d at 1136. "[A]n allegation that the plaintiff
5  had a 'disability' (as defined by the statute) must be supported by whatever quality or quantity of
6  factual matter necessary to make that allegation plausible (and not merely conclusory)" through
7  an allegation of "a specific, recognized mental or physical illness." *Adams v. The Vanderbilt*
8  *University*, No. 3:23-CV-00001, 2024 WL 1182861, at *18 (M.D. Tenn. Mar. 19, 2024) (citing
9  *Bresaz*, 136 F. Supp. 3d at 1135–36.)

10  *Kitchens v. City of San Leandro* analyzed the requirement that to sufficiently plead a
11  disability, a plaintiff must allege "a specific, recognized mental illness." No. 4:22-CV-02373,
12  2022 WL 5221516, at *4 (N.D. Cal. Oct. 5, 2022). In *Kitchens*, officers responded to a call
13  "about a shoplifter brandishing a baseball bat in the store." *Id.* at *1. After a failed attempt to
14  confiscate the bat, an officer drew both a gun and a taser, fired one taser shot at the decedent,
15  causing him to step backwards, then fired a second shot, causing him to bend over and take
16  "halting" steps toward the officer. *Id.* The officer then fired his gun, fatally shooting the
17  decedent. *Id.* The plaintiffs alleged that the decedent was "suffering a mental health episode"
18  while brandishing the bat, which was allegedly readily recognizable to the officers. *Id.* However,
19  the plaintiffs did "not provide a description of how the mental health episode related to a
20  disability, whether this episode was a first occurrence or part of a series of episodes, or whether
21  the mental health episode was related to a broader impairment." *Id.* at *4. The Northern District
22  held that plaintiffs' allegations were "conclusory and insufficient" because "allegations of a
23  mental health episode fall short of the factual specificity required" at the pleading stage. *Id.*
24  Because of the conclusory allegations, paired with the lack of case law "where a party has stated a
25  cognizable ADA disability discrimination claim based on a single, isolated incident of mental
26  illness, particularly where there is no diagnosis of mental health illness or history of mental
27  illness," the court held that the plaintiffs did not satisfy the "specific, recognized mental illness"
28  pleading requirement, and thus failed to identify any qualifying disability. *Id.* (quoting *Bresaz*,

5

136 F. Supp. 3d at 1137).

Similar to the complaint in *Kitchens*, the FAC here contains no allegations that Sosa suffered from a specific mental disorder or that he was ever diagnosed with having a specific mental disorder. Plaintiffs allege Sosa was suffering a "mental health crisis," but do not allege this crisis was the result of "a specific, recognized mental or physical illness." *See Bresaz*, 136 F. Supp. 3d at 1136. Like in *Kitchens*, Plaintiffs here do not describe how the mental health crisis related to a disability, whether this crisis was a first occurrence or part of a series or episodes, or whether the mental health crisis was related to a broader impairment. *See Kitchens*, 2022 WL 5221516, at *4. In fact, Plaintiffs allege the opposite—Sosa had "no mental health history." (Doc. 26, ¶ 10.) Instead, Plaintiffs only allege facts that Sosa suffered from suicidal ideations on the single day that he was killed. This conclusory allegation is insufficient to satisfy the specificity requirement regarding the specific recognized mental illness underlying Decedent's mental health crisis. *See id.*; *see also Hall v. City of Weed*, No. 2:20-cv-01789-TLN-DMC, 2021 WL 4078031, at *5 (E.D. Cal. Sept. 8, 2021) (holding that a singular allegation that the plaintiff was "regarded as having or perceived to have a physical or mental impairment" without the specifics of the circumstance was insufficient for an ADA claim); *Farmer v. Cnty. of Calaveras*, 1:18-CV-00009-DAD-SAV, 2018 WL 1919900, at *6 (E.D. Cal. Apr. 24, 2018) (holding that allegations that merely state the existence of a "mental illness, disability, and medical impairment" were insufficient and conclusory). Therefore, Plaintiffs have failed to plead facts sufficient to show that Sosa suffered from a qualifying mental impairment under the ADA.[1] Accordingly, the Court **GRANTS** Defendants' motion to dismiss with leave to amend.

## CONCLUSION

For the reasons set forth above:

1. Defendants' motion to dismiss the fifth claim is **GRANTED** with leave to amend.
2. Plaintiffs SHALL file any amended complaint within 30 days of the date of service of this order.

---

[1] Because the Court dismisses Plaintiffs' claim on the first element of Title II and the Rehabilitation Act, the Court need not discuss the sufficiency of Plaintiffs' claim on the third element.

6

3. Failure to file any amended complaint will result in the current complaint standing as the operative pleading, with the fifth claim for relief dismissed.

IT IS SO ORDERED.

Dated: __February 3, 2025__

UNITED STATES DISTRICT JUDGE