Kevin G. Little, SBN 149818
Michelle L. Tostenrude, SBN 290121
**LAW OFFICE OF KEVIN G. LITTLE**
Post Office Box 8656
Fresno, California  93747
Telephone:  (559) 342-5800
Facsimile:  (559) 242-2400
E-Mail:  kevin@kevinglittle.com

Attorneys for Plaintiffs Martha Zepeda Olivares, individually and on behalf of the Estate of Maximiliano Sosa, Jr., and Maximiliano Sosa, Sr.

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA – FRESNO DIVISION**

| | |
|---|---|
| MARTHA ZEPEDA OLIVARES, individually and on behalf of the ESTATE OF MAXIMILIANO SOSA, JR.; MAXIMILIANO SOSA, SR.,<br><br>            Plaintiffs,<br><br>        v.<br><br>CITY OF FRESNO; FRESNO POLICE OFFICER JOHN AYERS; FRESNO POLICE OFFICE BRANDON CROCKETT; FRESNO POLICE OFFICER JONATHAN ABRAHAM; FRESNO POLICE OFFICER ANTHONY AGUILAR; UNKNOWN LAW ENFORCEMENT OFFICERS; FORMER POLICE CHIEF PACO BALDERRAMA; and DOES 1-30,<br><br>            Defendants. | Case No. 1:23-cv-01575-JLT-SAB<br><br>**THIRD AMENDED COMPLAINT FOR DAMAGES AND WRONGFUL DEATH; CALIFORNIA CODE OF CIVIL PROCEDURE § 377.32 DECLARATION**<br><br>42 U.S.C. § 1983<br>•    Fourth Amendment-Excessive Force<br>•    Violation of Plaintiff's Right to Familial Relationship<br>•    Municipal/Supervisory Liability-Failure to Train and Supervise<br>•    Municipal Liability-Unconstitutional Custom Practice or Policy<br>Americans With Disabilities Act and the Rehabilitation Act<br>Negligence<br>Wrongful Death<br>Bane Act (Cal. Civ. Code §52.1)<br>Unruh Act (Cal. Civ. Code § 51)<br>Assault/Battery<br><br>    JURY TRIAL DEMANDED |

TO THE HONORABLE COURT:

    Plaintiffs Martha Zepeda Olivares, individually and on behalf of the Estate of

Maximiliano Sosa, Jr., and Maximiliano Sosa, Sr., through their undersigned counsel, hereby

THIRD AMENDED COMPLAINT

-1-

make the following amended allegations against the defendants, and each of them, pursuant to FRCP 15(a):

### JURISDICTION AND VENUE

1.    This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, as it presents federal civil rights claims against state actor defendants and a municipal defendant. This Court has venue over this action pursuant to 28 U.S.C. § 1391(b)(2), as all of the underlying actions took place in this judicial district. Plaintiffs are informed and believe that venue is also proper under 28 U.S.C. § 1391(b)(1).

2.    Plaintiffs fulfilled all the jurisdictional prerequisites to asserting their state law claims, including by submitting a timely claim for damages that has been rejected by the City of Fresno.

### PARTIES

3.    Plaintiff Martha Zepeda Olivares (hereinafter "Martha") is an adult resident of the County of Fresno. Zepeda is the mother of Maximiliano Sosa, Jr., (hereinafter "Max"), who died on November 4, 2023.

4.    Martha also is the successor in interest and legal representative of the Estate of Maximiliano Sosa, Jr..  Martha is Max's mother.  Attached as Exhibit A is the declaration required by California Code of Civil Procedure §377.32. Max's death certificate is pending and will be submitted as soon as it becomes available.

5.    Plaintiff Maximiliano Sosa, Sr. (hereinafter "Max, Sr.") is an adult resident of the County of Fresno.  Max, Sr. is Max's father.

6.    Max died on November 4, 2023, at the age of 33 years old. Max was a resident of Fresno County.  Max was legally separated under the meaning of California Family Code § 70, as he and his estranged spouse, Maria Sosa, had been living apart since February 2023 and had both verbally and through their conduct expressed an intention not to reconcile but instead to end their marriage.  Moreover, because Max and Maria Sosa were legally separated at the time of this incident and also were living apart, she has no interest in this action pursuant to California Family Code § 781.  Therefore, Max's only successors in interest as defined under

THIRD AMENDED COMPLAINT

1    California Code of Civil Procedure §§ 377.11, and 377.30-377.32 are his surviving parents,

2    Martha and Max, Sr., and his two sons, ages 4 and 2 years old.  Given their young age, Max's

3    surviving children are obviously not eligible to represent his interests in this proceeding.

4    7.    Defendant City of Fresno is and at all times mentioned herein a municipal corporation,

5    duly authorized to operate under the laws of the State of California. Under its supervision, the

6    City of Fresno operates the Fresno Police Department (hereinafter "FPD"). City of Fresno is

7    primarily responsible for funding and supervising the Fresno Police Department, which is the

8    law enforcement agency with primary jurisdiction for investigating the alleged incident

9    underlying this case.

10   8.    Defendant Fresno Police Officer John Ayers ("Officer Ayers") is, upon information and

11   belief, a citizen and resident of the State of California, County of Fresno.  With respect to all

12   of the acts complained of herein, Officer Ayers was acting as an officer and employee of the

13   Fresno Police Department.  At all material times herein, Officer Ayers acted individually and

14   within the course and scope of his employment with the Fresno Police Department.  Officer

15   Ayers is sued in his individual capacity for acts he performed under the color of law.

16   9.    Defendant Fresno Police Officer Brandon Crockett ("Officer Crockett") is, upon

17   information and belief, a citizen and resident of the State of California, County of Fresno.

18   With respect to all of the acts complained of herein, Officer Crockett was acting as an officer

19   and employee of the Fresno Police Department.  At all material times herein, Officer Crockett

20   acted individually and within the course and scope of his employment with the Fresno Police

21   Department.  Officer Crockett is sued in his individual capacity for acts he performed under

22   the color of law.

23   10.   Defendant Fresno Police Officer Jonathan Abraham ("Officer Abraham") is, upon

24   information and belief, a citizen and resident of the State of California, County of Fresno.

25   With respect to all of the acts complained of herein, Officer Abraham was acting as an officer

26   and employee of the Fresno Police Department. At all material times herein, Officer Abraham

27   acted individually and within the course and scope of his employment with the Fresno Police

28   Department.  Officer Abraham is sued in his individual capacity for acts he performed under

THIRD AMENDED COMPLAINT

the color of law.

11.     Defendant Fresno Police Officer Anthony Aguilar ("Officer Aguilar") is, upon information and belief, a citizen and resident of the State of California, County of Fresno. With respect to all of the acts complained of herein, Officer Aguilar was acting as an officer and employee of the Fresno Police Department.  At all material times herein, Officer Aguilar acted individually and within the course and scope of his employment with the Fresno Police Department.  Officer Aguilar is sued in his individual capacity for acts he performed under the color of law.

12.     Defendant Former Chief of Police Paco Balderrama ("Chief Balderrama") at all material times was employed as Chief of Police by Defendant City of Fresno and was acting within the course and scope of that employment. As Chief of Police, Defendant Chief Balderrama was a policy-making official for the City of Fresno with the power to make official and final policy for the Fresno Police Department. Defendant Chief Balderrama is being sued in his individual capacity.

13.     Plaintiffs are ignorant of the true names and/or capacities of defendants sued herein as Unknown Law Enforcement Officers, and therefore sue said defendants by such fictitious names. Plaintiffs will amend this complaint to allege these defendants' true names and capacities when ascertained. Plaintiffs believe and allege that each of these fictitious defendants is legally responsible and liable for the incident, injuries and damages hereinafter set forth.

14.     When the actions of Officers Ayers, Crockett, Abraham and Aguilar, as well as the Unknown Law Enforcement Officers, cannot be specifically attributed to one individual given the current state of discovery, they are collectively referred to as "the Individual Defendant Officers."

## STATEMENT OF FACTS

15.     Max was gainfully employed as a diesel mechanic at the time of his death.  Max had no criminal record, no mental health history, no drug use history, no history of alcohol abuse, and no history of violence. Max had attended a few sessions of marriage counseling earlier in

THIRD AMENDED COMPLAINT

1  February and March 2023 with Maria Sosa, but not for the purpose of addressing any mental

2  health disorder.

3  16.    During the course of the evening of November 3, 2023 and the early morning of

4  November 4, 2023, Max had developed emotional distress and was having a mental health

5  episode that resulted in his being disabled for purposes of federal and state law.  Max had

6  informed the 911 dispatcher that he had no intention of hurting anyone but that he wanted

7  officers to kill him. Clearly in a mental health crisis.

8  17.    Although clearly troubled by the ending of his marriage, Max was leading a normal

9  life, i.e., working and spending time with family and friends, in the months, weeks and days

10  leading up to the incident that resulted in his death.  Just hours before his death, Max had

11  attended his nephew's high school football game and took this photo.



19  18.    Available video footage shows that Max does not appear to be highly intoxicated or

20  under the influence of drugs at the time of his death on November 4, 2023.  He was driving

21  capably and walking normally.  Indeed, Max helped a seemingly intoxicated Maria Sosa back

22  to her apartment at 2:15 a.m., just hours before his death.  The apartment is within the

23  complex known as the Dante Apartments, 5555 N. Dante Avenue, Fresno, California 93722.

24  19.    Max was summoned back to the apartment complex where Maria Sosa lived for reasons

25  that still remain unknown at approximately 3:10 a.m., after he had left only approximately 15

26  minutes earlier.

27  20.    Available video footage shows that Max left Maria Sosa's apartment complex again at

28  approximately 3:30 a.m.  Max was still walking and behaving normally and did not appear to

THIRD AMENDED COMPLAINT

1   be under the influence of anything. Max returned to the apartment complex again

2   approximately 15 minutes later, by which time the Individual Defendant Officers were on

3   scene.  Appearing to have no desire to interact with law enforcement, Max left the apartment

4   complex without exiting his vehicle.

5   21.    Max returned to the apartment complex yet again at approximately 4:35 a.m. Max

6   parked right next to a Fresno Police vehicle and began walking normally towards Maria Sosa's

7   apartment. Upon walking up to the apartment door, Plaintiffs are informed and believe that the

8   Individual Defendant Officers were on scene, and one of them opened the door and allowed

9   Max to walk in.

10  22.    Upon entry into the apartment, Max entered holding a pair of scissors, but they were

11  held down at his side and not in a position where they presented an imminent threat of death

12  or bodily harm to anyone else. Max was clearly exhibiting signs of being in a mental health

13  crisis and wanting to be killed by law enforcement, but he was not doing anything justifying

14  the use of deadly force against him.

15  23.    At this point, the Individual Defendant Officers approached the apartment and stood in

16  the doorway.  While he was inside the apartment, Max never appeared to be a threat requiring

17  the use of deadly force. Instead, Max was clearly in the midst of a mental health crisis where

18  he was expressing suicidal ideations and a desire to be shot and killed.

19  24.    As two of the Individual Defendant Officers standing inside the apartment walked

20  towards the outside of the apartment near the entry, another individual defendant officer inside

21  indicated that he would leave the apartment with Maria Sosa. At this point, Max indicated that

22  was not a problem. Max further indicated that he would never hurt Maria, as she was the

23  mother of his children. One of the Individual Defendant Officers located inside the apartment

24  then told Max, "Get out, Get out."

25  25.    At this point, Max started to walk toward the front door, following the direction of one

26  of the Individual Defendant Officers to exit.  While Max still had scissors in his left hand,

27  which was his non-dominant hand, he was not holding them or using them in a manner that

28  justified the use of deadly force on him or presented a risk of death or imminent bodily harm

1  to any third party.

2  26.    Almost immediately upon crossing the threshold and exiting the front door of the

3  apartment, one of the Individual Defendant Officers shot Max with a taser, which was both

4  ineffective and only served to exacerbate the already tense situation. Max then ran forward

5  with his head and his hands down and was shot multiple times by at least one of the Individual

6  Defendant Officers.  Max died almost instantly. Max was not doing anything that justified a

7  use of deadly force against him at the time he was shot and killed.  Instead, he was clearly in

8  need of mental health assistance.

9  27.    At no point during this nearly two hour incident did any of the Individual Defendant

10  Officers utilize the mental health crisis resources that were available to it and that policy

11  required them to use.  At no point during this incident was Max connected to any mental

12  health services, either telephonically or in person, despite his obvious willingness to speak

13  with the Individual Defendant Officers at length.

14  28.    Despite the plethora of tactical options and strategic advantages possessed by the law

15  enforcement personnel on scene, deadly force was used, and in the absence of any apparent

16  justification.  The Individual Defendant Officers instead fired on Max when he was non-

17  dangerous.

18  29.    Max was the subject to attempts to preserve his life after the shooting, which endured

19  for several minutes before it was determined that his life could not be saved.

20  30.    As a result of Max's death, his family, including Martha and Max, Sr. are devastated.

21  Max leaves behind two children he loved dearly, as well as many close family members and

22  friends.

23  **<u>FIRST CAUSE OF ACTION</u>**

24  **Violation of Fourth Amendment of the United States Constitution**

25  **(42 U.S.C. § 1983)**

26  **(On Behalf of the Estate of Maximiliano Sosa, Jr. Against All Individual Defendants)**

27  31.    Plaintiffs re-allege and incorporate by reference the foregoing paragraphs of this

28  complaint.

THIRD AMENDED COMPLAINT

32.    The Individual Defendant Officers, acting under color of law, committed the above-described conduct that violated Max's rights, as provided for under the Fourth Amendment to the United States Constitution, to be free from excessive and/or arbitrary and/or unreasonable use of deadly force against him.

33.    The Individual Defendant Officers acted under the color of law as police officers, used excessive force against Max. When Max walked out of the apartment calmly, officers used a taser on him at a close distance. In automatic reaction to the taser, Max's body moved but did not appear to be in the direction of the officers. In response, officers shot Max. All of these actions were excessive and unreasonable, especially because Max posed no immediate threat of death or serious bodily injury to any officer or anyone else at that time.

34.    The Individual Defendant Officers' unjustified shoot deprived Max of his right to be secure in his person against unreasonable searches and seizures as guaranteed to him under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment and made actionable by §1983.

35.    As a direct and proximate result of the acts and omissions set forth above, Max sustained injuries and damages as alleged above, including but not limited to physical pain, suffering and emotional distress up to the time of his death, and then loss of enjoyment of life, and loss of life thereafter.

36.    Max was forced to endure great conscious pain and suffering because of the Individual Defendant Officers' conduct before his death.

37.    Max did not file a legal action before his death.

38.    Max's estate, represented by Martha, is the successor in interest of Max's claims damages for the conscious pain and suffering incurred, as provided for under 42 U.S.C. §1983.

39.    The Individual Defendant Officers' conduct was willful, wanton, malicious, and done with conscious and reckless disregard for the rights and safety of Max, and therefore warrants the imposition of exemplary and punitive damages against him.

40.    The Individual Defendant Officers acted under color of law by shooting and killing Max without lawful justification and subjecting decedent to excessive force thereby depriving him

of certain constitutional protected rights, including, but not limited to, the right to be free from unreasonable searches and seizures, as guaranteed by the Fourth Amendment to the United States Constitution.

41.    WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

**SECOND CAUSE OF ACTION**

**Violations of Civil Rights to Familial Relationship**

**(42 U.S.C. §1983)**

**(On Behalf of Plaintiffs Martha Zepeda Olivares and Maximiliano Sosa, Sr.**

**and Against All Individual Defendants)**

42.    Plaintiffs re-allege and incorporate by reference the foregoing paragraphs of this complaint.

43.    The Individual Defendant Officers, acting under color of law, and without due process of law, deprived Plaintiffs of their substantive due process rights to continued familial relations without government interference.

44.    Plaintiff Martha Zepeda Olivares and Maximiliano Sosa, Sr. have cognizable interests under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive their son of life in such a manner as to shock the conscience, including but not limited to unwarranted state interference in Plaintiffs' familial relationship with their son, Max.

45.    Max had had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive him of life, liberty, or property in such a manner as to shock the conscience.

46.    Individual Defendant Officers' shooting at Max while he walked out of the apartment and had an involuntary reaction to being tased and not posing a threat to anyone, shocks the conscience. Individual Defendant Officers acted with deliberate indifference to the constitutional rights of Max and Plaintiffs Martha Zepeda Olivares and Maximiliano Sosa, Sr., and with a purpose to harm unrelated to any legitimate law enforcement objective. Specifically, the following, actions, individually and collectively, shock the conscience:

THIRD AMENDED COMPLAINT

- Shooting at a person while having an involuntary reaction to being tased.
- Shooting a person who has been interacting with officers and attempted to walk out of the apartment.
- Shooting at a person having a mental health crisis.
- Shooting a person who is posed no threat to anyone except himself due to his mental health crisis, who actually said, he would not hurt anyone but himself.
- Shooting a person while they were falling down from being tased.
- Shooting a person who was not suspected of having recently committed a crime involving the infliction or threatened infliction of serious physical harm.
- Shooting a person who was not posing an immediate threat to anyone else, or the officers.
- Shooting a person who was not threatening the shooting officer at the time of the fatal shooting.
- Shooting a person who was not threatening to harm any individual person

47.    As a direct and proximate result of these actions, the Individual Defendant Officers violated the substantive due process rights of Plaintiffs to be free from unwarranted interference with their familial relationship with their son Max, and Plaintiffs suffered injuries and damages including physical pain, suffering and emotional distress, mental anguish, and the deprivation of the life-long love, companionship, comfort, support, society, care, and sustenance of their son, and will continue to be so deprived for the remainder of their lives.

48.    The Individual Defendant Officers, acting under color of law, and without due process of law, deprived Plaintiffs of their substantive due process rights to continued familial relations without government interference.

49.    The Individual Defendant Officers specifically committed this misconduct by using unreasonable, unjustified, and excessive deadly force against Max, which caused injuries resulting in his death, as alleged hereinabove.

50.    The conduct of the Individual Defendant Officers was willful, wanton, malicious, and done with conscious and reckless disregard for the rights and safety of their son Max and

THIRD AMENDED COMPLAINT

Plaintiffs, and therefore warrants the imposition of exemplary and punitive damages.

51.    The Individual Defendant Officers specifically committed this misconduct by using unreasonable, unjustified and excessive deadly force against Max, which caused injuries resulting in his death, as alleged hereinabove.

52.    These Individual Defendant Officers also attempted to conceal their misconduct and hide the true cause of Max's demise to deprive Plaintiffs of their rights to seek redress in violation of their rights, privileges, and immunities secured by the Fourteenth Amendment to the United States Constitution.

53.    The Individual Defendant Officers' misconduct in these respects was the proximate cause of injury to Plaintiffs.

54.    WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

**THIRD CAUSE OF ACTION**

**Municipal/Supervisory Liability – Failure to Train and Supervise**

**(42 U.S.C. §1983)**

**(On Behalf of All Plaintiffs Against Defendants City of Fresno**

**and Former Chief Balderrama)**

55.    Plaintiffs re-allege and incorporate by reference the foregoing paragraphs of this complaint.

56.    Plaintiffs are informed and believe and thereon allege that City of Fresno's offending customs, policies, and/or practices were the moving force behind the constitutional violations set forth in the foregoing causes of action, as well as the lack of required supervision by Defendant Former Chief Balderrama.

57.    Plaintiffs are specifically informed and believe that City of Fresno, through the Fresno Police Department and Chief Balderrama, has failed to train, investigate, discipline, or supervise its officers, members, most of whom have been involved in repeated unreasonable uses of deadly or injurious force.  Notwithstanding any formal written policies that ostensibly exist, officers are permitted as a practical matter to use deadly force with impunity, with no meaningful scrutiny, consequences or changes made in how the FPD responds to incidents.

1    Plaintiffs are also informed and believe that these illicit customs, policies and/or practices
2    have been condoned and ratified by those in final decision-making positions.  Plaintiffs
3    anticipate supplementing the bases for municipal liability as discovery proceeds.

4    58.    The City of Fresno's failures included, but are not limited to, training and supervising
5    officers that reasonable alternative non-lethal tactics should be used to control subjects who do
6    not appear to pose an imminent threat of serious injury or harm; are in the midst of a mental
7    health crisis and that where reasonable opportunities for de-escalation of potentially
8    threatening subjects exist, that officers should use effective communication that is not
9    confrontational, escalating, or demanding; reasonably creating time and distance to help de-
10   escalate, to allow the use of effective communication, and to allow the continuing opportunity
11   to use non-lethal tactics, which must be employed to defuse a potential threat in place of lethal
12   force under all circumstances other than those rare occasions, not present here, where deadly
13   force is necessary to prevent the infliction of imminent death or great bodily injury by the
14   person shot and by obtaining proper mental health services.

15   59.    Before the Individual Defendant Officers' shooting of Max, the City and its decision
16   makers and the entire Fresno Police command staff and chain of command, up to and
17   including the Chief of Police, knew the Individual Defendant Officers had a propensity for
18   violence, that they had a propensity to shoot. The City of Fresno and its managers, including
19   Chief Paco Balderrama, did not take the necessary steps to prevent the unnecessary shooting
20   of individuals. These Defendants have not taken the necessary steps to prevent the Individual
21   Defendant Officers and other PFD officers from using inappropriate tactics, including
22   excessive force and unnecessary deadly force, during encounters with individuals.

23   60.    Defendants City of Fresno and Chief Balderrama were deliberately indifferent to the
24   obvious consequences of their failure to train and supervise officers adequately. This failure
25   caused the deprivation of Max's rights alleged above. The failure to train and supervise was so
26   closely related to the deprivation as to be the moving force causing the ultimate injuries.

27   61.    Had the Individual Defendant Officers been properly trained and supervised, **they**
28   would have known not to shoot someone when their body was involuntarily reacting to being

THIRD AMENDED COMPLAINT

1  tased, that was in need of mental health services, that intentionally informed that he did not

2  pose a threat to anyone other than himself. Instead, they would have known that they had to

3  use other tactics, such as coordinating with mental health services, and de-escalating Max's

4  threat of self-harm.

5  62.    Had Defendants City of Fresno and Chief Balderrama properly trained and supervised

6  their officers, the Individual Defendant Officers would have been deterred from firing out of

7  concern that their unconstitutional use of deadly force would have severe consequences on

8  their conditions of employment and expose them to criminal prosecution. To the contrary, the

9  Individual Defendant Officers shot Max as he fell from being tased.

10  63.    As a direct and proximate result of the acts and omissions of their acts or omissions set

11  forth above, Max and Plaintiffs sustained injuries and damages as alleged above, including but

12  not limited to Max's physical pain suffering, and emotional distress up to the time of his death,

13  loss of enjoyment of life and loss of life, Plaintiff's wrongful death damages, and Plaintiff's

14  emotional distress at the death of their son.

15  64.    WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

16  **FOURTH CAUSE OF ACTION**

17  **Municipal Liability-Unconstitutional Custom, Practice, or Policy**

18  **(42 U.S.C. §1983)**

19  **(On Behalf of All Plaintiffs Against Defendant City of Fresno)**

20  65.    Plaintiffs re-allege and incorporate by reference the preceding paragraphs of this

21  complaint.

22  66.    Defendants Individual Defendant Officers deprived Max of his rights under the United

23  States Constitution as alleged above.

24  67.    Former Chief Jerry Dyer was a final policy-making authority for the City of Fresno

25  Police Department until Former Chief Paco Balderrama became chief in 2021. See Cal. Gov.

26  Code § 38630(a); Fresno Police Dept. Policy Manual 200. (https://www.fresno.gov/police/wp-

27  content/uploads/sites/5/2022/10/PolicyManual-Redacted-July-2022_Redacted.pdf)

28  68.    The unconstitutional actions and/or omissions of the Individual Defendant Officers

THIRD AMENDED COMPLAINT

1   were pursuant to the following customs, practices, and/or policies which were directed,

2   encouraged, allowed, and/or ratified by policy making officials for the City of Fresno:

3      a. Using or tolerating the use of excessive force, including but not limited to using or

4        tolerating excessive unlawful deadly force including permitting and affirmatively

5        training officers (i) to use deadly force when faced with less than an immediate threat

6        of death or serious bodily injury; (ii) not obtaining proper help to those in mental

7        health crisis and (iii) to use deadly force prematurely, or as a "first resort," or when

8        facing a merely potential threat;

9      b. Allowing police officers who had demonstrated a pattern of using unreasonable force,

10       such as a history of officer-involved-shootings to continue on patrol, posing a danger

11       to the public of continuing to use excessive force without remediation, retraining or

12       discipline;

13     c. Covering up or tolerating violations of constitutional rights, including but not limited by

14       any or all of the following:

15         i.   Failing to properly obtain mental health services;

16         ii.  Failing to properly investigate and/or evaluate complaints or incidents of

17             excessive and unreasonable force, officer-involved shootings, law enforcement

18             related deaths, and unlawful seizures;

19         iii. Failing to promptly, independently, thoroughly, and properly investigate and

20             address officer involved shootings and other law enforcement related deaths;

21         iv.  Ignoring and/or failing to properly and adequately investigate and discipline

22             unconstitutional or unlawful police activity; and

23         v.   Finding that excessive force is "within policy;" and

24         vi.  Encouraging, accommodating, or facilitating a "code of silence," under which

25             officers do not report each other's errors, misconduct, or crimes.

26     d. Using or tolerating inadequate, deficient, and improper procedures for handling,

27       investigating, and reviewing complaints of officer misconduct;

28     e. Failing to have and enforce necessary and appropriate and lawful policies, procedures,

THIRD AMENDED COMPLAINT

1  and training programs to prevent or correct the unconstitutional conduct, customs, and

2  procedures described in this Complaint, with deliberate indifference to the rights and

3  safety of Max and the public and in the face of an obvious need for such policies,

4  procedures, and training programs to prevent recurring and foreseeable violations of

5  rights of the type described herein;

6  f.  Failing to train officers that reasonable available non-lethal tactics must be used against

7  people who do not pose an imminent threat of serious injury or harm or that are solely

8  in need of mental health services; and

9  g.  Failing to train officers that where reasonable opportunities for obtaining mental health

10  help,  de-escalation of potentially threatening individuals exist, that the use of effective

11  communication that is not confrontational, escalating, or demanding; reasonably

12  creating time and distance to help de-escalate, to allow the use of effective

13  communication, and to allow the continuing opportunity to use non-lethal tactics

14  which must be employed to defuse a potential threat in place of lethal force.

15  69.    Defendant City of Fresno's policy makers and managers, including former Chief of

16  Police Dyer and former Chief Balderrama knew of the deficient customs, practices, and/or

17  policies alleged above. Despite having that knowledge, these defendants condoned, tolerated

18  and through actions and inactions thereby ratified such policies. Defendants thus acted with

19  deliberate indifference to the foreseeable effects and consequences of their policies, practices,

20  and customs with respect to the constitutional rights of Max and others similarly situated.

21  70.    Defendant City of Fresno maintained, promulgated, and tolerated unconstitutional

22  customs, practices, and/or policies, as further demonstrated by various incidents involving

23  police officers' uses of unreasonable and excessive force, including the following lawsuits

24  resulting in settlements or verdicts against the City:

25  a. *Oliver Hernandez et al v. City of Fresno*: alleged that after a roughly six-hour standoff

26  at the Village Apartments on 9th street, police said he was armed with an ax, while his

27  family state he was sitting down when he was shot and was not an immediate threat to

28  anyone because he was alone. The case has a currently undisclosed settlement waiting

THIRD AMENDED COMPLAINT

1    for approval by the City Counsel as of 2023.

2       b. Isiah Murrietta-Golding, Deceased, through his successor in Interest *Christina Pauline*

3         *Lopez, et al v. City of Fresno*, Case No. 1:18-cv-00314-AWI-SKO: alleged that the

4         now deceased Isiah, just merely 16 years old was shot in the back as he fled from

5         police in 2017. The case settled for 4.9 million in 2021.

6       c. *Estate of Casimero Casillas, et al v. City of Fresno*, Case No. 1:16-cv-01042-AWI-SAB:

7         alleged that the now deceased 45-year-old Casimero Casillas fled from a traffic stop,

8         police chased Casillas after attempting to pull him over, for his passenger's failure to

9         wear a seat belt. Casillas made it to a home where he entered. The officer entered the

10        home and shot Casillas. The case settled for 4.4 million in 2021.

11      d. *Landon Wallace v. City of Fresno*, Case No. 1:19-cv-1199-AWI-SAB: alleged that

12        during a probation sweep an officer rounded up several suspects at an apartment

13        complex, a fight between several officers, and the then 17-year-old Wallace. Before

14        Wallace could sit down, FPD Officer Christopher Martinez attacked, punched, and

15        tackled Wallace to the ground resulting in serious injuries. The case settled for

16        $500,000.00 in 2022.

17      e. *Estate of Dylan Noble v. City of Fresno*, Case No. 1:16-cv-01690-DAD-BAM: alleged

18        that the then 19-year-old was shot and killed by Fresno Police in 2016 outside a gas

19        station. Officers said they were looking for an armed suspect, however, Noble was not

20        armed. The case settled for 2.8 million in 2018.

21      f. *Estate of Willis v. City of Fresno*, Case No. 1:09-cv-01766-BAM: alleged Willis fired at

22        one officer while intoxicated. Jury awarded 1.51 million but found him to be 80%

23        liable due to being intoxicated, leaving only $302,000.00 in damages plus attorney's

24        fees and costs of $824,495.00.

25   71.   Plaintiffs allege on information and belief that despite the development of evidence

26   substantiating significant misconduct and brutality in each of these cases, including the

27   identification of multiple officers who witnessed wrongful conduct by their colleagues and

28   failed to intervene or report it, virtually no disciplinary action was taken against any of the

THIRD AMENDED COMPLAINT

offending officers, and their opportunities for continued employment, and even promotions were not affected. As a result, the Fresno Police Department developed de facto and well understood policies and practices that excessive force, up to and including unnecessary deadly force, could be used with impunity and without concern that any disciplinary action or other employment consequences would follow. The Individual Defendant Officers' brazen shooting of Max was the logical and inevitable result of such practices.

72.    Defendant City of Fresno, through the aforementioned policy makers and managers, were responsible for creating, approving, and enforcing the unconstitutional policies, customs and/or practices described herein above. The aforementioned entities and individuals acted with deliberate indifference to the foreseeable effects and consequences of the policies, customs, and/or practices with respect to the constitutional rights of Max and other individuals similarly situated.

73.    The unconstitutional policies, customs, and/or practices described in the above paragraphs and the prior supervisory failures and deliberate indifference of said Defendants were a proximate cause of and moving force behind the violations of Plaintiffs and Max's clearly established and well-settled rights in violation of 42 U.S.C. § 1983 as alleged above.

74.    As a direct and proximate result of the acts and omissions set forth above, Max sustained injuries and damages as alleged above, including but not limited to physical pain, suffering and emotion distress up to the time of his death, loss of enjoyment of life and loss of life as well as penalties, costs and attorneys' fees as set forth in above.

## FIFTH CAUSE OF ACTION

### Americans with Disabilities Act and Rehabilitation Act

**Title II of the ADA, 42 U.S.C. § 12131 et seq.; Rehabilitation Act, 29 U.S.C. § 794 et seq.**

**(On Behalf of the Estate of Maximiliano Sosa, Jr. Against the City of Fresno)**

75.    Plaintiffs re-allege and incorporate by reference the preceding paragraphs of this complaint.

76.    At the relevant time, Max was a qualified individual with a disability within the meaning of both Title II of the ADA and the Rehabilitation Act.

77.   The City of Fresno is a public entity that operates services, programs, and/or activities, including law enforcement, covered by Title II of the ADA.  On information and belief, the City of Fresno receives federal funding, including for police services, and is therefore subject to the Rehabilitation Act.

78.   The City of Fresno denied Max the benefits of Title II ADA services, programs, and/or activities and subjected Max to unlawful discrimination by, among other things, failing to provide reasonable accommodations for his disabilities.

79.   The City of Fresno was aware that its existing policies and practices made it substantially likely that disabled individuals would be denied their federally protected rights under the ADA in use-of-force interactions and acted with deliberate indifference in failing to prevent or mitigate the denial of those rights.

80.   The fatal shooting of Max was a direct and proximate result of the City of Fresno's violations of Title II of the ADA and the Rehabilitation Act.

81.   The City of Fresno is liable for the damages hereinbefore alleged in an amount to be determined at trial.

### SIXTH CAUSE OF ACTION

**Negligence**

**(California Code of Civil Procedure 377.30 et seq.)**

**(On Behalf of the Estate of Maximiliano Sosa, Jr. Against All Defendants)**

82.   Plaintiffs re-allege and incorporate by reference the preceding paragraphs of this complaint.

83.   The Individual Defendant Officers, while working as Fresno Police Officers acting within the course and scope of their duties, were responsible for Max's shooting death.

84.   At all times, the Individual Defendant Officers had a duty to act with due care in the execution and enforcement of any right, law, or legal obligation. That duty includes, but is not limited to, using reasonable care to prevent harm or injury to others while using appropriate law enforcement tactics, giving appropriate commands, giving warnings, and not using any force unless necessary, using less than lethal options, utilizing available mental health

THIRD AMENDED COMPLAINT

1  resources, and only using deadly force as a last resort. Additionally, the general duties of

2  reasonable care included but are not limited to the following:

3  85.    To properly and adequately hire, investigate, train, supervise, monitor, evaluate, and

4  discipline their employees against, and/or law enforcement officers to ensure that those

5  employees/agents/officers act at all times in the public interest and in conformance with law.

6  86.    To make, enforce, and at all times act in conformance with policies and customs that are

7  lawful and protective of individual rights including those of plaintiffs and Max and to refrain

8  from making, enforcing, and/or tolerating the wrongful policies and customs listed above.

9  87.    The Individual Defendant Officers through their actions and omissions breached their

10  duties of care and wrongfully caused the death of Max.

11  88.    Defendant City of Fresno is vicariously liable for the wrongful acts of its employees and

12  agents including the Individual Defendant Officers under California Government Code §

13  815.2(a).

14  89.    Max died as a direct and proximate result of the Individual Defendant Officers'

15  wrongful and negligent acts and omissions and as a direct and proximate result.  Pursuant to

16  California Code of Civil Procedure §§ 377.30, *et seq.,* the negligence cause of action

17  supported by these facts survives Max's death.

18  90.    WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

19                            **<u>SEVENTH CAUSE OF ACTION</u>**

20                                      **Wrongful Death**

21                  **(California Code of Civil Procedure 377.60 et seq.)**

22  **(On Behalf of Plaintiffs Martha Zepeda Oliveras and Maximiliano Sosa, Sr. Against All**

23          **Defendants, Unknown Law Enforcement Officers, and Does 1-30)**

24  91.    Plaintiffs re-allege and incorporate by reference the preceding paragraphs of this

25  complaint.

26  92.    The Individual Defendant Officers, while working as Fresno Police Officers acting

27  within the course and scope of their duties, were responsible for Max's shooting death.

28  93.    At all times, the Individual Defendant Officers had a duty to act with due care in the

THIRD AMENDED COMPLAINT

1  execution and enforcement of any right, law, or legal obligation. That duty includes, but is not

2  limited to, using reasonable care to prevent harm or injury to others while using appropriate

3  law enforcement tactics, giving appropriate commands, giving warnings, and not using any

4  force unless necessary, using less than lethal options, utilizing available mental health

5  resources, and only using deadly force as a last resort. Additionally, the general duties of

6  reasonable care included but are not limited to the following:

7  94.    To properly and adequately hire, investigate, train, supervise, monitor, evaluate, and

8  discipline their employees against, and/or law enforcement officers to ensure that those

9  employees/agents/officers act at all times in the public interest and in conformance with law.

10  95.    To make, enforce, and at all times act in conformance with policies and customs that are

11  lawful and protective of individual rights including those of plaintiffs and Max and to refrain

12  from making, enforcing, and/or tolerating the wrongful policies and customs listed above.

13  96.    The Individual Defendant Officers through their actions and omissions breached their

14  duties of care and wrongfully caused the death of Max.

15  97.    Defendant City of Fresno is vicariously liable for the wrongful acts of its employees and

16  agents including the Individual Defendant Officers under California Government Code §

17  815,2(a).

18  98.    Max died as a direct and proximate result of Defendants' wrongful and negligent acts

19  and omissions and as a direct and proximate result Plaintiffs Martha Zepeda Oliveras and

20  Maximiliano Sosa, Sr. sustained injuries and damages arising from their son's wrongful death,

21  including, but not limited to being deprived of the life-long love, companionship, comfort,

22  support, society, care, and sustenance of their son, and will continue to be so deprived for the

23  remainder of their lives. Pursuant to California Code of Civil Procedure §§ 377.60, *et seq.,* the

24  Plaintiffs are authorized to sue for the harm caused to them by Max's wrongful death.

25  99.    WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

26  ///

27  ///

28  ///

THIRD AMENDED COMPLAINT

<u>**EIGHTH CAUSE OF ACTION**</u>

**Violation of Bane Act (Cal. Civil Code § 52.1)**

**(On Behalf of All Plaintiffs Against All Defendants)**

100.    Plaintiffs re-allege and incorporate by reference the preceding paragraphs of this complaint.

101.    California Civil Code, §52.1 (the Bane Act), prohibits any person from interfering with another person's exercise or enjoyment of his constitutional rights by threats, intimidation, or coercion (or using unconstitutionally excessive force).

102.    Conduct that violates the Fourth Amendment violates the California Bane Act.

103.    The Individual Defendant Officers' use of deadly force was excessive and unreasonable under the circumstances, especially since Max was having a mental health crisis, clearly indicated through words and actions he would not harm anyone, except for himself. Max was walking out of an apartment in a non-threatening manner, verbally and through actions. The gunshots at Max occurred while his body had an involuntary reaction to being tased. Max was only in need of mental health services. Defendants' actions thus deprived Max of his right to be free from unreasonable searches and seizures under the Fourth Amendment and applied to state actors by the Fourteenth Amendment.

104.    At the time of the deadly shooting Max did not pose an immediate threat of death or serious bodily injury and Max never verbally threatened anyone immediately prior to the deadly shooting. Max was in need of mental health services. There's direct and circumstantial evidence that the Individual Defendant Officers intentionally violated Max's rights under § 1983 by unlawfully detaining him, by attempting to unlawfully arrest him and by fatally shooting Max multiple times, while he was already subdued from a taser.

105.    The Individual Defendant Officers, while working as police officers for the Fresno Police Department and acting within the course and scope of their duties, interfered with, and attempted to interfere with the rights of the laws, to access to the courts, and to be free from state actions that shock the conscience, by threatening or committing acts involving violence, threats, coercion, or intimidation.

THIRD AMENDED COMPLAINT

106.    Max was caused to suffer extreme mental and physical pain and suffering a loss of life and of earning capacity. Plaintiffs have also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of Max and will continue to be so deprived for the remainder of their natural lives. Plaintiffs are also claiming funeral and burial expenses and a loss of financial support.

107. The conduct of the Individual Defendant Officers was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Max entitling Plaintiffs to an award of exemplary and punitive damages. Plaintiffs bring this claim as successors-in-interest to Max and seek survival damages for the violation of Max's rights.

108. The Plaintiff's also seek attorneys' fees under this claim.

## NINTH CAUSE OF ACTION

### Violation of the Unruh Act (Cal. Civil Code § 51)

**(On Behalf of the Estate of Maximiliano Sosa, Jr. Against the City of Fresno)**

109. Plaintiffs re-allege and incorporate by reference the preceding paragraphs of this complaint.

110. At the relevant time, Max was a qualified individual with a disability within the meaning of the Unruh Act.

111. The City of Fresno is a public entity that operates services, programs, and/or activities, including law enforcement, covered by the Unruh Act.

112. In violation of the Unruh Act, the City of Fresno denied Max the benefits of services, programs, and/or activities and subjected Max to unlawful discrimination by, among other things, failing to provide reasonable accommodations for his disabilities.

113. The City of Fresno was aware that its existing policies and practices made it substantially likely that disabled individuals would be denied their federally protected rights under the Unruh Act in use-of-force interactions and acted with deliberate indifference in failing to prevent or mitigate the denial of those rights.

114. The fatal shooting of Max was a direct and proximate result of the City of Fresno's violations of the Unruh Act.

1    115. The City of Fresno is liable for the damages hereinbefore alleged in an amount to be

2    determined at trial.

3                                    **TENTH CAUSE OF ACTION**

4                                        **Assault and Battery**

5                                      **(California Common Law)**

6        **(On Behalf of the Estate of Maximiliano Sosa, Jr. Against All Defendants)**

7    116. Plaintiffs re-allege and incorporate by reference the preceding paragraphs of this

8    complaint.

9    117. The use of deadly and excessive force against Max, as alleged hereinabove, was

10   harmful and offensive contact to which he did not consent.

11   118. The defendants, either acting directly, or vicariously through their employees or agents,

12   were responsible for this harmful, offensive, unconsented contact.

13   119. The defendants' harmful, offensive, unconsented contact proximately caused the

14   Plaintiff's damages, as requested herein.  These injuries and damages are compensable under

15   California law.

16   120. WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

17                                           **PRAYER**

18        WHEREFORE, Plaintiffs prays for relief, as follows:

19        1.        For general damages in a sum to be determined at trial;

20        2.        For special damages, including but not limited to past, present, and/or future

21   wage loss, income and support, medical expenses and other special damages in a sum to be

22   determined according to proof;

23        3.        For funeral and burial expenses according to proof;

24        4.        For punitive damages and exemplary damages in amounts to be determined

25   according to proof as to the individual Defendants and each of them;

26        5.        Any and all permissible statutory damages;

27        6.        For reasonable attorney's fee pursuant to 42 U.S.C. §1988 and U.S.C. §794A;

28        7.        For cost of suit herein incurred.

THIRD AMENDED COMPLAINT

8.    For prejudgment interest.

9.    For such other relief as the Court may deem proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury, consistent with their rights under the Seventh

Amendment and other applicable law.

Dated: June 25, 2025                    /s/ Kevin G. Little
                                        Kevin G. Little
                                        Michelle Tostenrude
                                        Attorneys for Plaintiffs Martha Zepeda Olivares,
                                        individually and on behalf of the Estate of
                                        Maximiliano Sosa, Jr. and Maximiliano Sosa, Sr.

THIRD AMENDED COMPLAINT

## CODE OF CIVIL PROCEDURE 377.32
## DECLARATION OF MARTHA ZEPEDA OLIVARES

The undersigned, Martha Zepeda Olivares, hereby declares as follows under penalty of perjury:

1.      The decedent's true name was Maximiliano Sosa, Jr., and he was my son.

2.      The decedent died on November 4, 2023 in Fresno County, California.  I am informed and believe his death investigation remains pending and no death certificate is currently available.

3.      No proceeding is now pending in California for administration of the decedent's estate.

4.      I am one of the decedent's surviving parents, heir and his successor in interest (as defined in Section 377.11 of the California Code of Civil Procedure) and succeed to the decedent's interest in this action or proceeding.

5.      I am authorized to act on behalf of the decedent with respect to the decedent's interest in the action or proceeding.

6.      No other person has a superior right to commence this proceeding for the decedent.

7.      If called to testify as to the foregoing, I could truthfully and competently testify as to the above stated facts.

Sworn under penalty of perjury under the laws of the United States of America, this 25th day of June, 2025.

*/s/ Martha Zepeda Olivares*
Martha Zepeda Olivares

THIRD AMENDED COMPLAINT