**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARTHA ZEPEDA OLIVARES, individually and on behalf of the ESTATE OF MAXIMILIANO SOSA JR.; MAXIMILIANO SOSA, SR., <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF FRESNO; UNKNOWN LAW ENFORCEMENT OFFICERS, and DOES 1–30, <br><br> Defendants. | No.  1:23-cv-01575 JLT SAB <br><br> ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS <br><br> (Doc. 75) |

I.    **INTRODUCTION**

Before the Court is Defendants' motion to dismiss Plaintiffs' third amended complaint for failure to state a claim.  (Doc. 75.)  For the reasons set forth below, the motion is **GRANTED IN PART AND DENIED IN PART.**

II.    **BACKGROUND**

At 2:15 a.m. on November 4, 2023, Maximiliano Sosa ("Decedent") helped his intoxicated, estranged wife Maria Sosa back to her apartment.  (Doc. 67 at ¶ 18.)  Decedent left Maria's apartment at approximately 3:30 a.m. and then returned approximately 15 minutes later, at which time law enforcement officers were present.  (*Id.* at ¶ 20.)  Upon seeing the officers, Decedent drove away from the apartment complex but returned at 4:35 a.m.  (*Id.* at ¶¶ 20–21.)  At

1

that time, Decedent parked next to a patrol car and approached Maria's apartment where a law enforcement officer opened the door and allowed him to enter. (*Id.* at ¶ 21.)  Decedent entered the apartment holding a pair of scissors at his side and expressed suicidal ideations and a desire to be shot and killed by law enforcement. (*Id.* at ¶¶ 22–23.)  After a brief period in Maria's apartment, an officer within the apartment told Decedent to exit the apartment. (*Id.* at ¶ 24.)  Upon exiting, an officer outside the apartment shot Decedent with a taser. (*Id.* at ¶ 26.)  Decedent reacted by running forward toward the officers and at least one officer shot him several times. (*Id.*)  Though officers made life-saving efforts, Decedent died at the scene. (*Id.* at ¶ 29.)

On November 7, 2023, Decedent's parents, Martha Zepeda Olivares and Maximiliano Sosa Senior, sued Defendants for various claims stemming from their alleged use of force. (Doc. 1.)  Zepeda Olivares sued on behalf of herself and Decedent's estate. (*Id.*)  On June 21, 2024, Zepeda Olivares became the administrator of Decedent's estate. (Doc. 76 at 12.)  On November 23, 2024, Plaintiffs filed a first amended complaint, which the Court dismissed in part on February 4, 2025. (Docs. 26, 50.)  After filing a second amended complaint on February 24, 2025, Plaintiffs amended a third time on July 1, 2025. (Docs. 51, 67.)  Defendants moved to dismiss Plaintiffs' third amended complaint on August 6, 2025, for failure to state a claim. (Doc. 75.)

Separately, on August 30, 2024, Maria and her two children with Decedent (the "Sosa Plaintiffs") filed their own suit "based on the same set of facts surrounding the incident that led to both lawsuits, involve the same defendants and officers, and raise similar issues regarding excessive force and the City of Fresno's policies." (Doc. 36 at 2.)  The Court consolidated the two actions on January 13, 2025. (Doc. 46.)

III.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  "[D]ismissal for lack of statutory standing is properly viewed as a dismissal for failure to state a claim."  *Vaughn v. Bay*

*Env't Mgmt., Inc.*, 567 F.3d 1021, 1024 (9th Cir. 2009). For purposes of determining statutory standing, "[t]he question is whether the statute grants the plaintiff the cause of action that he asserts." *Bank of Am. Corp. v. City of Miami, Fla.*, 581 U.S. 189, 196–97 (2017).

In deciding a motion to dismiss, "all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020). In assessing the sufficiency of a complaint, all well-pleaded factual allegations must be accepted as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Courts may also "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (citations omitted.) Courts may "take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *U.S. ex rel Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (citation omitted.) A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.*; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). "Dismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro*, 250 F.3d at 732.

If a court dismisses a complaint for failure to state a claim, it should "freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). The "underlying purpose of Rule 15 [is] to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (cleaned up). However, a court has discretion to deny leave to amend due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008).

///

3

## IV.    ANALYSIS

### A.    <u>Plaintiffs Have Statutory Standing to Bring Survival Actions</u>

California Code of Civil Procedure § 377.30 states: "[a] cause of action that survives the death of the person entitled to commence an action or proceeding passes to the decedent's successor in interest, . . . and an action may be commenced by the decedent's personal representative or, if none, by the decedent's successor in interest."  Cal. Code Civ. P. § 377.30. "[A] survival action is not an independent cause of action," but "a procedural vehicle to ensure that a cause of action for or against a person is not lost by reason of the person's death." *Est. of Lopez v. Gelhaus*, 149 F. Supp. 3d 1154, 1166–67 (N.D. Cal. 2016); Cal. Code Civ. P. § 377.20.

The parties do not dispute that Decedent's two children are his heirs and successors in interest, but Plaintiffs assert that as the administrator of Decedent's estate, Zepeda Oliveras may also bring survival actions.  (Docs. 75 at 2; 76 at 5.)  Indeed, as Decedent's personal representative, Zepeda Oliveras may "[c]ommence and maintain actions and proceedings for the benefit of the estate."  Cal. Prob. Code § 9820.  As such, Zepeda Oliveras brings the first, third, fourth, fifth, sixth, eighth, ninth, and tenth causes of action on behalf of Decedent's estate.

Defendants claim Zepeda Oliveras cannot be Decedent's personal representative for this action because she "would have had to be the duly appointed administratrix of decedent's estate at the time of the filing of the initial complaint." *Coats v. K-Mart Corp.*, 215 Cal. App. 3d 961, 968 (1989).  Plaintiffs filed their initial complaint on November 7, 2023, but Zepeda Oliveras did not become the administrator of Decedent's estate until June 21, 2024.  (Docs. 1; 76 at 12.) However, the California Court of Appeals clarified the "hold[ing in *Coats*] that amendments substituting in a real party in interest do not 'relate back'" to the time of filing the initial complaint is limited by the California Supreme Court's ruling in *Klopstock v. Superior Court*, 17 Cal. 2d 13, 19–20 (1941), which permits an amendment to a claim to substitute a real party in interest as long as the cause of action stays the same. *Cloud v. Northrop Grumman Corp.*, 67 Cal. App. 4th 995, 1010 (1998).  The survival actions brought by Zepeda Oliveras are consistent with the claims she brought in the initial complaint.  Furthermore, courts have distinguished *Coats* on the basis that the plaintiff there made no effort until five years after filing the complaint to be

4

appointed the administrator of her son's estate.  *See Horn v. State of Cal.*, No. CIVS050814, 2005 WL 1925917, at * 3 (E.D. Cal. Aug. 10, 2005) (permitting leave to amend four months after filing the initial complaint to bring survival claims in a representative capacity); *see also Orduno v. Hendrix*, No. EDCV162288, 2017 WL 11705427, at *7 (C.D. Cal. Nov. 27, 2017) (denying the defendants' motion to dismiss and relating back the plaintiff's claims once she became the administrator of the decedent's estate eight months after filing the initial complaint.)  Unlike the plaintiff in *Coats*, Zepeda Oliveras satisfied the statutory requirements to become the administrator of her son's estate only seven months after filing this action.  Thus, Plaintiffs' survival claims relate back to their initial filing and have standing to bring their first, third, fourth, fifth, sixth, eighth, ninth, and tenth causes of action on behalf of Decedent's estate. Accordingly, Defendants' motion to dismiss those causes of action brought on behalf of Decedent's estate is **DENIED**.

### B.    Plaintiffs Sufficiently Allege an Enduring Relationship with Decedent

Plaintiffs' second cause of action alleges "[t]he Individual Defendant Officers, acting under color of law, and without due process of law, deprived Plaintiffs of their substantive due process rights to continued familial relations without government interference."  (Doc. 67 at ¶ 43.)  The Ninth Circuit "has consistently recognized that § 1983 claims may proceed under the theory that the Fourteenth Amendment protects the right to the companionship and society between parents and their adult children."  *Greenstone v. Las Vegas Metro. Police Dep't*, 2:23-cv-00290, 2024 WL 385213, at *7 (D. Nev. Jan. 31, 2024).  "Judicially enforceable Fourteenth Amendment interests require enduring relationships reflecting an assumption of parental responsibility and 'stem[] from the emotional attachments that derive from the intimacy of daily association, and from the role it plays in promoting a way of life through the instruction of children.'"  *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1058 (9th Cir. 2018) (quoting *Lehr v. Robertson*, 463 U.S. 248, 261 (1983)).  Indeed, "a Fourteenth Amendment claim for loss of companionship is intended to protect those relationships, including family relationships, that presuppose deep attachments and commitments to the necessarily few other individuals with who one shares not only a special community of thoughts, experiences, and beliefs but also

distinctively personal aspects of one's life." *Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159, 1169 (9th Cir. 2013) (internal citations and quotation marks omitted.)

Plaintiffs claim that the Ninth Circuit's decision in *Johnson* means that Plaintiffs need not allege that they had an enduring relationship with Decedent.  (Doc. 76 at 8.)  Not so.  Rather, the *Johnson* court on appeal from a motion for summary judgment declined to "scrutinize the strength of the relationship between [the decedent] and his father" and find as a matter of law that "[the decedent] and his father lacked a sufficiently strong father–son bond." *Johnson*, 724 F.3d at 1169–70.  Though courts need not scrutinize the veracity of parents claims of their bonds with their children, "a plaintiff must allege 'enduring relationships reflecting an assumption of parental responsibility.'" *Est. of Harmon v. Cnty. of San Mateo*, No. 21-cv-01463, 2021 WL 5071831, at *1 (N.D. Cal. Oct. 26, 2021) (quoting *Wheeler*, 894 F.3d at 1058.)  Though courts have ruled "the mere existence of a biological link does not merit equivalent constitutional protection" for absent parents, there is no indication that Plaintiffs had anything but an enduring relationship with Decedent.  *Lehr*, 463 U.S. at 261.  Indeed, Plaintiffs allege they are devastated by his death, which has caused them emotional distress and mental anguish.  (Doc. 67 at ¶¶ 3–6, 30, 47.)  This is sufficient under the notice pleadings requirement to bring a loss of companionship claim and any details regarding Plaintiffs' relationship with Decedent may be fleshed out in discovery.

    **C.**    **Plaintiffs Lack Statutory Standing to Bring Wrongful Death Claims**

In addition to bringing survival claims on behalf of Decedent's estate, Plaintiffs also bring wrongful death claims for their second, third, fourth, seventh, and eighth causes of action. California Code of Civil Procedure § 377.60(b) bestows standing to parents who were dependent on the decedent to sue for the decedent's wrongful death.  Cal. Code Civ. P. § 377.60(b).  For purposes of this provision, dependence refers to financial support.  *See Hazelwood v. Hazelwood*, 57 Cal. App. 3d 693, 698 (1976).

Plaintiffs have not plausibly alleged that they were financially dependent on Decedent. Rather, Plaintiffs confuse the pleading standard to argue that they do not need to allege standing with any specificity because their wrongful death claims do not present a legal impossibility. Thugh statutory standing does not require an analysis of the merits, Plaintiffs still "must

demonstrate standing for each claim [they] seek[] to press and for each form of relief sought." *Washington Env't Council v. Bellon*, 732 F.3d 1131, 1139 (9th Cir. 2013). "The plaintiff also bears the burden of proof to establish standing 'with the manner and degree of evidence required at the successive stages of the litigation.'" *Id.* (citation omitted.) Accordingly, at the motion to dismiss stage, Plaintiffs must demonstrate standing with plausible facts. Plaintiffs have not done so and thus fail to sufficiently establish standing for their wrongful death claims.

In their opposition, Plaintiffs request leave to amend to "allege facts to support their standing to sue for wrongful death." (Doc. 96 at 6.) Though Plaintiffs would not be able to sufficiently allege they are Decedent's successors in interest, Plaintiffs can nonetheless cure their lack of statutory standing for their wrongful death claims by sufficiently pleading financial dependency. Therefore, amend my not be futile, and it is **GRANTED**.

Because none of Plaintiffs' wrongful death claims survive the instant motion, the Court declines to address Defendants' alternative request to join them with the consolidated action brought by the Sosa Plaintiffs.

V.    **CONCLUSION**

For the reasons explained above:

1.    Defendants' motion to dismiss, (Doc. 75), is **GRANTED** with leave to amend Plaintiffs' second, third, fourth, seventh, and eighth causes of action brought on behalf of themselves;

2.    Defendants' motion to dismiss, (Doc. 75), is **DENIED** as to Plaintiffs' first, third, fourth, fifth, sixth, eighth, ninth, and tenth causes of action brought on behalf of Decedent's estate;

3.    Plaintiffs may file a fourth amended complaint within 30 days of the date of service of this order;

///

///

///

///

7

4.    If Plaintiffs fail to timely file a fourth amended complaint, this action will proceed on the claims remaining here.

IT IS SO ORDERED.

Dated:    **June 13, 2026**

UNITED STATES DISTRICT JUDGE

8