**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
dalekgalipo@yahoo.com
Cooper Mayne (SBN 343169)
cmayne@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Phone: (818) 347-3333

*Attorneys for Plaintiffs Maria Sosa, L.S., and M.S.*

LAW OFFICES OF DALE K. GALIPO CIVIL RIGHTS ATTORNEYS

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

MARIA SOSA, et al.,

Plaintiffs,

vs.

CITY OF FRESNO, et al.,

Defendants.

Case No.: 1:23-cv-01575-JLT-SAB
Honorable Jennifer L. Thurston

**SOSA PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS**

Date: November 20, 2026
Time: 9:00 a.m.
Court: Robert E. Coyle U.S. Courthouse
Crtrm: 4

LAW OFFICES OF DALE K. GALIPO CIVIL RIGHTS ATTORNEYS

Under Local Rule 260(b), the Sosa Plaintiffs respond to Defendants' Separate Statement of Undisputed Facts (Dkt. 93-1) as follows. The left column reproduces each of Defendants' facts and the evidence they cite. Citations to "PAMF" are to the Sosa Plaintiffs' Statement of Additional Material Facts, filed concurrently, and citations to "JtSF" are to the Joint Statement of Undisputed Facts (Dkt. 93-2).

| No. | Defendants' Undisputed Fact and Supporting Evidence | Sosa Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 1 | On November 3, 2023, Maria went out to socialize with her friends after work.<br>**Supporting Evidence:** Ex. 23 [Maria Dep.] 50:19-23. | Disputed in part. That Ms. Sosa went out "after work" is not supported by the cited evidence. Undisputed that Ms. Sosa went out with friends that evening. (Declaration of Cooper Mayne ("Mayne Decl.") ¶ 3, Ex. A (Deposition of Maria Sosa, July 28, 2025) ("Maria Sosa Depo") 50:19-23.) |
| 2 | Max offered to pick Maria up and drive her home, and Maria agreed.<br>**Supporting Evidence:** Ex. 10 [Sosa Interview] at 34. Ex. 23 [Maria Dep.] 52:17-23. | Undisputed. |
| 3 | Max and Maria joked with each other over text while Max waited outside the bar.<br>**Supporting Evidence:** Ex. 12 [Screenshots] Ex. 23 [Maria Dep.] 72:13-74:12. | Undisputed. |
| 4 | Max also seemed "normal" earlier in the week, according to his father.<br>**Supporting Evidence:** Ex. 25 [Max Sr. Dep.] 31:10-32:3. | Undisputed that Max Sosa, Sr. so testified. |
| 5 | Max and Maria left the bar together in his Tesla.<br>**Supporting Evidence:** Ex. 23 [Maria Dep.] 53:18-54:12. | Disputed. The fact lacks support. The cited testimony says nothing about leaving the bar together or the Tesla. (Maria Sosa Depo 53:18-54:12.) |
| 6 | At around 3:00 a.m., Max woke Maria up.<br>**Supporting Evidence:** Ex. 10 [Sosa Interview] at 42, 43 Ex. 23 [Maria Dep.] 49:14-50:15; 98:6-99:1 | Disputed in part. The time, "around 3:00 a.m.," is not supported by the cited evidence. Undisputed that Mr. Sosa woke Ms. Sosa. (Defs.' Ex. 10, Dkt. 93-13 (Transcript of Maria Sosa Interview) |

| No. | Defendants' Undisputed Fact and Supporting Evidence | Sosa Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | | ("Maria Sosa Interview") at 42-43; Maria Sosa Depo 49:21.) |
| 7 | Max called Maria a "whore" and a "liar."<br>**Supporting Evidence:** Ex. 10 [Sosa Interview] at 37, 44. Ex. 23 [Maria Dep.] 49:14-50:15; 98:6-99:1 | Undisputed that Ms. Sosa told the investigator that Mr. Sosa used these words. |
| 8 | Maria could tell Max had been drinking.<br>**Supporting Evidence:** Ex. 10 [Sosa Interview] at 34. Ex. 23 [Maria Dep.] 90:8-16. | Disputed. Ms. Sosa believed Mr. Sosa had been drinking, however, she did not see him drink, and there is no evidence she has the ability to tell when someone has been drinking. (Maria Sosa Depo 90:8-16.) |
| 9 | Max had gone through Maria's phone and found text exchanges between Maria and her affair partner that showed they were still in an intimate relationship.<br>**Supporting Evidence:** Ex. 10 [Sosa Interview] at 44. Ex. 12 [Screenshots] Ex. 23 [Maria Dep.] 49:14-50:15; 54:23-55:24; 72:13-74:12; 77:4-25; 97:4-18. | Undisputed that Mr. Sosa found messages between Ms. Sosa and Mr. Lea. The Sosa Plaintiffs object to "affair partner" as argumentative. There is no evidence that any officer knew this fact before the shooting. |
| 10 | Max texted his friends that he "found out" Maria was "still f*cking" her affair partner.<br>**Supporting Evidence:** Ex. 7 [Incident Report] at FRESNO 000203. Ex. 11 [Rodriguez Interview] at FRESNO 000437, 00439-440. Ex. 23 [Maria Dep.] 49:14-50:15; 54:13-15; 55:20-56:1. | Undisputed. The Sosa Plaintiffs object to "affair partner" as argumentative. There is no evidence that any officer knew this fact before the shooting. |
| 11 | Max also texted Maria's affair partner from her phone, asking him to come to Maria's apartment to "f*ck" her and that "the door is unlocked."<br>**Supporting Evidence:** Ex. 10 [Sosa Interview] at 45. Ex. 12 [Screenshots] Ex. 23 [Maria Dep.] 99:12-100:4. | Disputed in part. The Sosa Plaintiffs object to "affair partner" as argumentative. Ms. Sosa inferred that Mr. Sosa sent the message from its timestamp. (Maria Sosa Depo 99:12-100:4.) The fact also misquotes the messages. (Defs.' Ex. 12, Dkt. 93-15 (Screenshots from Maria Sosa's Phone) ("Phone Screenshots") at 5.) There is no evidence that any officer knew this fact before the shooting. |
| 12 | Max also sent himself Maria's affair partner's contact information from her phone. | Undisputed. The Sosa Plaintiffs object to "affair partner" as argumentative. There |

| No. | Defendants' Undisputed Fact and Supporting Evidence | Sosa Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | **Supporting Evidence:** Ex. 10 [Sosa Interview] at 45. Ex. 12 [Screenshots] | is no evidence that any officer knew this fact before the shooting. |
| 13 | Max and Maria argued. **Supporting Evidence:** Ex. 23 [Maria Dep.] 50:1-2; 54:13-15; 59:23-60:4; 114:16-21. | Disputed. The cited testimony does not support the fact as stated. |
| 14 | Max was "out of control" and acting in a way Maria had never seen before. **Supporting Evidence:** Ex. 23 [Maria Dep.] 50:1-2; 54:13-15; 59:23-60:4; 114:16-21. | Disputed in part. Ms. Sosa described Mr. Sosa as out of control "[e]motionally" and in a mental health crisis, and testified he never physically abused or threatened anyone. (Maria Sosa Depo 50:1-3; 54:13-15; 46:3-10.) |
| 15 | Max was "highly emotional" and Maria tried to calm him down. **Supporting Evidence:** Ex. 23 [Maria Dep.] 49:14-50:15; 56:6-17; 57:3-5; 58:19-23. | Undisputed. |
| 16 | Max told Maria he was going to find the affair partner and kill him and kill himself, and left the apartment. **Supporting Evidence:** Ex. 10 [Sosa Interview] at 46, 48. Ex. 23 [Maria Dep.] 49:14-50:15; 56:12-16; 57:3-5; 58:19-23. | Undisputed. The Sosa Plaintiffs object to "affair partner" as argumentative. |
| 17 | Maria told the dispatcher that Max had taken a bottle of tequila and had gone to confront her affair partner. **Supporting Evidence:** Ex. 1 [911 Tr.] at 2-3. Ex. 3 [CAD Report] at FRESNO 000242. Ex. 14 [911 Audio]. Ex. 23 [Maria Dep.] 63:1-5. | Undisputed. The Sosa Plaintiffs object to "affair partner" as argumentative. |
| 18 | Maria told the dispatcher she was scared Max was going to kill himself and her affair partner. **Supporting Evidence:** Ex. 1 [911 Tr.] at 1-2. Ex. 14 [911 Audio]. | Disputed. That Ms. Sosa told the dispatcher she was "scared" is not supported by the cited evidence. |
| 19 | Maria provided the dispatcher a description of Max, what he was wearing, and the car he was driving. **Supporting Evidence:** Ex. 1 [911 Tr.] at 1-2. Ex. 14 [911 Audio]. | Undisputed. |



LAW OFFICES OF DALE K. GALIPO CIVIL RIGHTS ATTORNEYS

| No. | Defendants' Undisputed Fact and Supporting Evidence | Sosa Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 20 | At 3:10 a.m., Fresno Police Department created a zero-priority call for a suicidal male.<br><br>**Supporting Evidence:** Ex. 3 [CAD Report] at FRESNO 000241, 000260. | Undisputed. The call was coded as a suicide call, and its synopsis read "SUICIDAL MALE, NO WEAPS." (Mayne Decl. ¶ 4, Ex. B (Fresno Police Department CAD Report) ("CAD Report") at FRESNO 000241.) |
| 21 | Maria told the officers that Max had left, saying he was going to kill her affair partner or himself.<br><br>**Supporting Evidence:** Ex. 10 [Sosa Interview] at 65. Ex. 23 [Maria Dep.] 65:19-66:7 | Undisputed that Ms. Sosa told the officers this. The Sosa Plaintiffs object to "affair partner" as argumentative. |
| 22 | Maria gave the officers Max's and her affair partner's addresses.<br><br>**Supporting Evidence:** Ex. 7 [Incident Report] at FRESNO 000186-187, FRESNO 000196-197. | Disputed. The fact lacks support. The cited pages say that Ms. Sosa gave Mr. Sosa's identifying information and a vehicle description; they say nothing about addresses. (Mayne Decl. ¶ 5, Ex. C (Detective Rockwell Homicide Supplemental Report) ("Homicide Report") at FRESNO 000186-187, 000196-197.) The Sosa Plaintiffs object to "affair partner" as argumentative. |
| 23 | Ayers, Abraham and Equihua told Maria they would search the area for him and let her know if they found him.<br><br>**Supporting Evidence:** Ex. 7 [Incident Report] at FRESNO 000186-187, FRESNO 000196-197. | Disputed. The fact lacks support. Nothing on the cited pages says the officers told Ms. Sosa they would search the area and let her know. (Homicide Report at FRESNO 000186-187, 000196-197.) The report is also hearsay. |
| 24 | At 3:30 a.m. Max returned to the Dante Apartment Complex.<br><br>**Supporting Evidence:** Ex. 17 [Abraham BWC #1] at 3:30:58. | Disputed. Mr. Sosa returned closer to 3:31 a.m. (Defs.' Ex. 17, Dkt. 93-20 (Officer Abraham Body-Worn Camera Video 1, lodged) ("Abraham BWC 1") at 3:30:58.) |
| 25 | Max attempted to strike Equihua with his vehicle before driving away again.<br><br>**Supporting Evidence:** Ex. 17 [Abraham BWC #1] at 3:30:59. | Disputed. The cited video shows Mr. Sosa's car turning away from the officers. It does not support the inference that he tried to strike anyone with his vehicle. (Abraham BWC 1 at 3:30:59.) |
| 26 | Before driving away, Max shouted, "You want to play games?"<br><br>**Supporting Evidence:** Ex. 17 [Abraham BWC #1] at 3:31:08. | Disputed. The words "You want to play games?" can be heard on the recording, but there is no evidence that Mr. Sosa |

| No. | Defendants' Undisputed Fact and Supporting Evidence | Sosa Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | | spoke them. (Abraham BWC 1 at 3:31:08.) |
| 27 | Equihua commanded Max to "Stop! Stop the vehicle!" **Supporting Evidence:** Ex. 17 [Abraham BWC #1] at 3:31:13. | Disputed in part. The Sosa Plaintiffs dispute that these words were a "command," because there is no evidence that Mr. Sosa could hear them from a distance, inside a vehicle with its windows closed. (Abraham BWC 1 at 3:31:13.) Undisputed that an officer said these words. |
| 28 | Abraham commanded Max to "Stop your car!" **Supporting Evidence:** Ex. 17 [Abraham BWC #1] at 3:31:14. | Disputed in part. The Sosa Plaintiffs dispute that these words were a "command," because there is no evidence that Mr. Sosa could hear them from a distance, inside a vehicle with its windows closed. (Abraham BWC 1 at 3:31:14.) Undisputed that an officer said these words. |
| 29 | Max drove away at high speed. **Supporting Evidence:** Ex. 17 [Abraham BWC #1] at 3:31:14. | Disputed in part. That Mr. Sosa drove away "at high speed" is not supported by the cited evidence. Undisputed that Mr. Sosa drove away. |
| 30 | At 3:32 a.m. Equihua broadcast, "He tried to run me over." **Supporting Evidence:** Ex. 3 [CAD Report] at FRESNO 000242, 000262. | Undisputed that Officer Equihua broadcast this. |
| 31 | At 3:33 a.m. dispatch broadcast "Confirmed 245 [assault with a deadly weapon] on an officer." **Supporting Evidence:** Ex. 3 [CAD Report] at FRESNO 000243, 000264 | Disputed. The fact lacks support. The cited CAD pages contain no "Confirmed 245" broadcast at 3:33 a.m. They show a unit entry, "245 ON AN OFCR," logged at 3:34:44 a.m. (CAD Report at FRESNO 000243, 000264.) |
| 32 | Between 3:33 a.m. and 3:58 a.m., Max led officer on several high-speed chases. **Supporting Evidence:** Ex. 29 [Aguilar Dep.] 28:13-18. | Disputed in part. That the pursuits were "high-speed" is not supported by the cited evidence. Undisputed that officers pursued Mr. Sosa's vehicle several times. Officer Aguilar did not take part in any of the pursuits; he heard about them on the radio. (Mayne Decl. ¶ 6, Ex. D (Deposition of Officer Anthony Aguilar, Apr. 23, 2026) ("Aguilar Depo") 28:13-23.) |

LAW OFFICES OF DALE K. GALIPO CIVIL RIGHTS ATTORNEYS

LAW OFFICES OF DALE K. GALIPO CIVIL RIGHTS ATTORNEYS DKG

| No. | Defendants' Undisputed Fact and Supporting Evidence | Sosa Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 33 | During the vehicle pursuits, Max drove recklessly: speeding, driving opposite traffice, ignoring traffic signs, and performing evasive maneuvers.<br>**Supporting Evidence:** Ex. 3 [CAD Report] at FRESNO 000243, 000245, 000263, 000266, 000269 | Disputed. The only cited evidence is the CAD log, a dispatcher's typed summary of officers' radio reports, which is hearsay within hearsay. (Fed. R. Evid. 802, 805.) Defendants have not met their burden to show that evidence of this fact can be presented in admissible form. (Fed. R. Civ. P. 56(c)(2).) |
| 34 | Officers lost sight of Max's Tesla several times.<br>**Supporting Evidence:** Ex. 3 [CAD Report] at FRESNO 000263, 000269 | Disputed. The only cited evidence is the CAD log, a dispatcher's typed summary of officers' radio reports, which is hearsay within hearsay. (Fed. R. Evid. 802, 805.) Defendants have not met their burden to show that evidence of this fact can be presented in admissible form. (Fed. R. Civ. P. 56(c)(2).) |
| 35 | While the vehicle pursuits were in progress, Maria and Max spoke on the phone.<br>**Supporting Evidence:** Ex. 10 [Sosa Interview] at 65-66. | Undisputed. |
| 36 | Max told Maria that he was going to commit suicide by cop.<br>**Supporting Evidence:** Ex. 23 [Maria Dep.] 103:3-13 | Disputed. Ms. Sosa did not testify that Mr. Sosa told her this. (Maria Sosa Depo 103:3-13.) |
| 37 | Max told Maria that he was going to "take a cop" or "take a pig" with him.<br>**Supporting Evidence:** Ex. 23 [Maria Dep.] 101:16-102:21 | Disputed. The cited evidence does not support the fact as stated. Ms. Sosa does not remember Mr. Sosa making such statements. (Maria Sosa Depo 101:16-102:21.) |
| 38 | At 3:42 a.m. Ayers broadcast that he was going back to the Dante Apartment Complex in case Max returned there.<br>**Supporting Evidence:** Ex. 3 [CAD Report] at FRESNO 000244, 000265. | Undisputed. |
| 39 | At 3:44 a.m. Maria called 9-1-1 again to report that Max made comments about wanting to die.<br>**Supporting Evidence:** Ex. 15 [2nd 911 Audio]. Ex. 23 [Maria Dep.] at 67:10-22. | Undisputed that Ms. Sosa told the dispatcher this. In the same call she told the dispatcher that Mr. Sosa had no weapon. (Mayne Decl. ¶ 7, Ex. E (Transcript of Maria Sosa's 3:44 a.m. 911 Call) ("911 Call Tr.") at 1-2.) |

| No. | Defendants' Undisputed Fact and Supporting Evidence | Sosa Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 40 | Maria told the dispatcher she was worried Max would make it look like he was armed so the police would shoot him.<br><br>**Supporting Evidence:** Ex. 2 [Second 911 Tr.] at 1-2. Ex. 15 [Second 911 Audio]. Ex. 23 [Maria Dep.] 68:3-22. | Undisputed. In the same call she said, "I know he doesn't have any kind of weapon on him," and the dispatcher said officers would be told "he does not have any weapons." (911 Call Tr. at 1-2; Maria Sosa Depo 68:3-22.) |
| 41 | Maria told the dispatcher Max had evaded the police and she did not know where he was.<br><br>**Supporting Evidence:** Ex. 2 [Second 911 Tr.] at 2. Ex. 15 [Second 911 Audio]. | Undisputed. |
| 42 | At 3:46 a.m., dispatch broadcast Max's intention to commit suicide by cop.<br><br>**Supporting Evidence:** Ex. 3 [CAD Report] at FRESNO 000244, 000267. | Undisputed. |
| 43 | At 3:55 a.m. Ayers returned back to Maria's apartment.<br><br>**Supporting Evidence:** Ex. 18 [Ayers BWC] at 3:55:29. | Undisputed. |
| 44 | When Ayers returned, Maria was on the phone with Max and handed the phone to Ayers.<br><br>**Supporting Evidence:** Ex. 18 [Ayers BWC] at 3:55:58-3:56:08. | Undisputed. |
| 45 | Max cursed at Ayers and hung up.<br><br>**Supporting Evidence:** Ex. 18 [Ayers BWC] at 3:56:08-3:56:23. | Undisputed. |
| 46 | At 3:57 a.m. Maria called Max.<br><br>**Supporting Evidence:** Ex. 18 [Ayers BWC] at 3:57:17-3:57:43. | Undisputed. |
| 47 | Ayers tried to talk to Max again but Max hung up.<br><br>**Supporting Evidence:** Ex. 18 [Ayers BWC] at 3:57:17-3:57:43 | Undisputed. |
| 48 | Ayers told Maria that her calling Max was not helping but was making Max angry, and told her not to call him again. | Disputed in part. Ayers says "keep getting him in an angry mood" not "making him angry." |



LAW OFFICES OF DALE K. GALIPO CIVIL RIGHTS ATTORNEYS

LAW OFFICES OF DALE K. GALIPO CIVIL RIGHTS ATTORNEYS

| No. | Defendants' Undisputed Fact and Supporting Evidence | Sosa Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | **Supporting Evidence:** Ex. 18 [Ayers BWC] at 3:57:40-3:57:50. | |
| 49 | After officers lost track of Max for a third time, FPD Sergeant Oliver directed units to cease pursuit.<br><br>**Supporting Evidence:** Ex. 3 [CAD Report] at FRESNO 000246, 000269. Ex. 29 [Aguilar Dep.] 28:24-29: | Undisputed. |
| 50 | At 3:59 a.m. Maria spoke to Max's close friend, Damian.<br><br>**Supporting Evidence:** Ex. 18 [Ayers BWC] at 3:59:30-4:00:59. | Undisputed. |
| 51 | At 4:00 a.m. Maria told Ayers Max has never done anything like this, has never been arrested or placed on an involuntary psychiatric hold.<br><br>**Supporting Evidence:** Ex. 18 [Ayers BWC] at 4:00:59-4:01:10. | Undisputed. |
| 52 | At 4:03 a.m. Ayers called Max.<br><br>**Supporting Evidence:** Ex. 18 [Ayers BWC] at 4:03:09-4:10:47. | Undisputed. |
| 53 | Ayers told Max he wanted to help him and wanted a "peaceful resolution" to the evening.<br><br>**Supporting Evidence:** Ex. 18 [Ayers BWC] at 4:03:09-4:10:47. | Disputed. The Sosa Plaintiffs object that, for this fact and each of Nos. 54 through 62, Defendants cite a seven-and-a-half-minute span of body-worn camera video rather than "the particular portions" of the record relied on. (L.R. 260(a); Fed. R. Civ. P. 56(c)(1)(A).) The Court need not search that span for support. (Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).) |
| 54 | Max told Ayers there was no peaceful resolution.<br><br>**Supporting Evidence:** Ex. 18 [Ayers BWC] at 4:03:09-4:10:47. | Disputed. *See* No. 53, above. |
| 55 | Max said, "Tonight I die or he [the affair partner] dies or one of your cops dies." | Disputed. *See* No. 53, above. The Sosa Plaintiffs also object to "affair partner" as argumentative. |

LAW OFFICES OF DALE K. GALIPO CIVIL RIGHTS ATTORNEYS

| No. | Defendants' Undisputed Fact and Supporting Evidence | Sosa Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | **Supporting Evidence:** Ex. 18 [Ayers BWC] at 4:03:09-4:10:47. | |
| 56 | Max said, "There is no helping me."<br><br>**Supporting Evidence:** Ex. 18 [Ayers BWC] at 4:03:09-4:10:47. | Disputed. *See* No. 53, above. |
| 57 | Max said, "You're gonna have to f*cking kill me."<br><br>**Supporting Evidence:** Ex. 18 [Ayers BWC] at 4:03:09-4:10:47. | Disputed. *See* No. 53, above. |
| 58 | Max said, "There is no other way out of this."<br><br>**Supporting Evidence:** Ex. 18 [Ayers BWC] at 4:03:09-4:10:47. | Disputed. *See* No. 53, above. |
| 59 | Max said, "One person is gonna die tonight."<br><br>**Supporting Evidence:** Ex. 18 [Ayers BWC] at 4:03:09-4:10:47. | Disputed. *See* No. 53, above. |
| 60 | Max said, "I'm not one of those you can save."<br><br>**Supporting Evidence:** Ex. 18 [Ayers BWC] at 4:03:09-4:10:47. | Disputed. *See* No. 53, above. |
| 61 | Max said, "I tried to run over one of your cops. I don't give a f*ck."<br><br>**Supporting Evidence:** Ex. 18 [Ayers BWC] at 4:03:09-4:10:47. | Disputed. *See* No. 53, above. |
| 62 | Max said, "I want blood tonight."<br><br>**Supporting Evidence:** Ex. 18 [Ayers BWC] at 4:03:09-4:10:47. | Disputed. *See* No. 53, above. |
| 63 | At 4:10 a.m. Max hung up the phone, ending the conversation with Ayers.<br><br>**Supporting Evidence:** Ex. 3 [CAD Report] at FRESNO 000246. | Disputed. That Mr. Sosa hung up is not supported by the cited evidence; the CAD entry does not say who ended the call. |
| 64 | At 4:11 a.m. Maria told Ayers that Max had never threatened suicide before and that he had no diagnoses of any mental health disorder. | Disputed in part. Ms. Sosa told him that Mr. Sosa had started therapy, "has a lot of trauma," and "shared with his therapist that he had suicidal thoughts." (Defs.' Ex. 18, Dkt. 93-21 (Officer Ayers Body-Worn Camera, lodged) ("Ayers BWC") at 4:11:11-29.) Officer Ayers asked |

LAW OFFICES OF DALE K. GALIPO CIVIL RIGHTS ATTORNEYS

| No. | Defendants' Undisputed Fact and Supporting Evidence | Sosa Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | **Supporting Evidence:** Ex. 18 [Ayers BWC] at 4:11:03-4:11:40. Ex. 23 [Maria Dep.] 40:10-24. | whether Mr. Sosa was diagnosed with any mental health issues, Ms. Sosa's answer is not decipherable. |
| 65 | At 4:12 a.m. Abraham arrived at Maria's apartment.<br>**Supporting Evidence:** Ex. 18 [Ayers BWC] at 4:12:14. Ex. 19 [Abraham BWC #2] at 4:12:14. | Undisputed. |
| 66 | Ayers and Abraham conferred on the sidewalk outside the apartment.<br>**Supporting Evidence:** Ex. 18 [Ayers BWC] at 4:12:14-4:14:40. Ex. 19 [Abraham BWC #2] at 4:12:14-4:14:40. | Disputed. The cited evidence does not support the fact as stated. Neither officer's camera recorded audio of that conversation. (Ayers BWC; Defs.' Ex. 19, Dkt. 93-22 (Officer Abraham Body-Worn Camera Video 2, lodged) ("Abraham BWC 2").) |
| 67 | At 4:14 a.m., Abraham and Ayers returned to the apartment, where Maria was again talking to Max on the phone.<br>**Supporting Evidence:** Ex. 18 [Ayers BWC] at 4:14:45-4:15:01. Ex. 19 [Abraham BWC #2] at 4:12:14-4:14:40. | Undisputed. |
| 68 | Ayers took the phone from Maria and tried again to talk to Max.<br>**Supporting Evidence:** Ex. 18 [Ayers BWC] at 4:15:00-4:18:26. Ex. 19 [Abraham BWC #2] at 4:12:14-4:14:40. | Undisputed. |
| 69 | Ayers told Max he wanted to help him.<br>**Supporting Evidence:** Ex. 18 [Ayers BWC] at 4:15:00-4:18:26. | Undisputed. |
| 70 | Max said, "There's nothing you can do."<br>**Supporting Evidence:** Ex. 18 [Ayers BWC] at 4:15:00-4:18:26. | Undisputed. |
| 71 | Max said, "When a man reaches rock bottom, that's it."<br>**Supporting Evidence:** Ex. 18 [Ayers BWC] at 4:15:00-4:18:26. | Undisputed. |
| 72 | Max said, "It's either me, him [the affair partner], or one of you f*cking police officers." | Undisputed. The Sosa Plaintiffs object to "affair partner" as argumentative. |

LAW OFFICES OF DALE K. GALIPO CIVIL RIGHTS ATTORNEYS

| No. | Defendants' Undisputed Fact and Supporting Evidence | Sosa Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | **Supporting Evidence:** Ex. 18 [Ayers BWC] at 4:15:00-4:18:26. | |
| 73 | Max said, "Listen, if my wife didn't give a f*ck about me, you think I'm gonna f*cking believe that you give a f*ck about me? No."<br><br>**Supporting Evidence:** Ex. 18 [Ayers BWC] at 4:15:00-4:18:26. | Undisputed. |
| 74 | Max said, "I'm gonna take down not just myself, but you with me."<br><br>**Supporting Evidence:** Ex. 18 [Ayers BWC] at 4:15:00-4:18:26. | Undisputed. |
| 75 | Max said, "I'm gonna come after you, motherf*cker."<br><br>**Supporting Evidence:** Ex. 18 [Ayers BWC] at 4:15:00-4:18:26. | Undisputed. |
| 76 | At 4:18 a.m. Ayers hung up the call.<br><br>**Supporting Evidence:** Ex. 18 [Ayers BWC] at 4:15:00-4:18:26. | Undisputed. |
| 77 | At 4:24 a.m. Abraham, who was holding Maria's phone, told Maria that Damian texted that Max was at a charging station.<br><br>**Supporting Evidence:** Ex. 18 [Ayers BWC] at 4:24:37-4:25:00. Ex. 19 [Abraham BWC #2] at 4:24:37-4:25:00. | Undisputed. |
| 78 | Ayers broadcast that Max was at a charging station, possibly at Herndon & 99.<br><br>**Supporting Evidence:** Ex. 3 [CAD Report] at FRESNO 000246. Ex. 18 [Ayers BWC] at 4:25:13-4:25:32. | Undisputed. |
| 79 | At 4:28 a.m., Abraham and Ayers exited the apartment to canvas the area.<br><br>**Supporting Evidence:** Ex. 18 [Ayers BWC] at 4:28:00-4:28:58. Ex. 19 [Abraham BWC #2] at 4:28:00-4:28:58. | Undisputed. |
| 80 | Ayers radioed that he did not *see* Max or Max's Tesla. | Undisputed. |

LAW OFFICES OF DALE K. GALIPO CIVIL RIGHTS ATTORNEYS

| No. | Defendants' Undisputed Fact and Supporting Evidence | Sosa Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | **Supporting Evidence:** Ex. 3 [CAD Report] at FRESNO 000271. Ex. 18 [Ayers BWC] at 4:28:55-4:28-59. | |
| 81 | At 4:29 a.m., Abraham and Ayers stepped back in to the apartment, where Maria was once again on the phone with Max asking him to "please just tell me where you are."<br>**Supporting Evidence:** Ex. 18 [Ayers BWC] at 4:29:30-4:30:18. | Undisputed. |
| 82 | Max said, "Tonight I die."<br>**Supporting Evidence:** Ex. 18 [Ayers BWC] at 4:29:30-4:30:18. | Undisputed. |
| 83 | Max said, "You ruined me."<br>**Supporting Evidence:** Ex. 18 [Ayers BWC] at 4:29:30-4:30:18. | Undisputed. |
| 84 | Max said, "Congratulations, you won."<br>**Supporting Evidence:** Ex. 18 [Ayers BWC] at 4:29:30-4:30:18. | Undisputed. |
| 85 | At 4:30 a.m. Ayers took the phone from Maria and hung up, telling her not to answer it again.<br>**Supporting Evidence:** Ex. 18 [Ayers BWC] at 4:29:30-4:30:18. | Undisputed. |
| 86 | At 4:35 a.m. Abraham said "I think a door just – " and went to investigate.<br>**Supporting Evidence:** Ex. 18 [Ayers BWC] at 4:35:04-4:35:10. Ex. 19 [Abraham BWC #2] at 4:35:04-4:35:10. Ex. 26 [Ayers Dep.] 36:2-12. Ex. 27 [Abraham Dep.] 35:21-23; 49:9-25; 75:2-6. | Undisputed that Officer Abraham said this and went to the door. Both officers believed it was likely Mr. Sosa at the car door before Officer Abraham went to check. (Mayne Decl. ¶ 8, Ex. F (Deposition of Officer John Ayers, Apr. 22, 2026) ("Ayers Depo") 36:2-25; Mayne Decl. ¶ 9, Ex. G (Deposition of Officer Jonathan Abraham, Apr. 23, 2026) ("Abraham Depo") 35:16-23.) |
| 87 | Abraham opened the door to the apartment and saw Max coming up the walkway.<br>**Supporting Evidence:** Ex. 19 [Abraham BWC #2] at 4:35:04-4:35:15. Ex. 26 [Ayers Dep.] 37:18-25. Ex. 27 [Abraham Dep.] 38:13-18; 45:21-46:12. | Undisputed. |

LAW OFFICES OF DALE K. GALIPO CIVIL RIGHTS ATTORNEYS DKG

| No. | Defendants' Undisputed Fact and Supporting Evidence | Sosa Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 88 | Max said, "Are you ready for this?" while raising his right hand, in which he was holding scissors.<br><br>**Supporting Evidence:** Ex. 10 [Sosa Interview] at 74, 76. Ex. 18 [Ayers BWC] at 4:34:14-4:35:17. Ex. 19 [Abraham BWC #2] at 4:35:14-4:35:17. Ex. 26 [Ayers Dep.] 37:18-25. Ex. 27 [Abraham Dep.] 26:25-27:5; 45:21-46:2. | Undisputed. |
| 89 | The scissors Max was holding were kitchen shears, just over 9 inches long, with cutting blades approximately 4 inches long.<br><br>**Supporting Evidence:** Ex. 7 [Incident Report] at FRESNO 000201. Ex. 8 [Photo] at FRESNO 001073. Ex. 9 [Photo] at FRESNO 001083. Ex. 10 [Sosa Interview] at 74, 76. | Undisputed. |
| 90 | Abraham said twice, "Don’t do it, bro."<br><br>**Supporting Evidence:** Ex. 19 [Abraham BWC #2] at 4:35:14-4:35:19. | Undisputed. |
| 91 | There was no time for Abraham to safely close the door.<br><br>**Supporting Evidence:** Ex. 27 [Abraham Dep.] 46:14-47:5; 48:1-12. | Disputed. Officer Abraham's own video shows that he opened the door at 4:35:07 and that Mr. Sosa did not come into view until 4:35:12, walking at an ordinary pace. (Abraham BWC 2 at 4:35:07-12.) Officer Abraham had ample time to close the door, and he never considered doing so. (Abraham Depo 46:14-17.) A jury could disbelieve his testimony that there was no time. (Abraham Depo 46:18-47:5.) |
| 92 | Max entered the apartment and focused his attention on Maria and Ayers.<br><br>**Supporting Evidence:** Ex. 10 [Sosa Interview] at 70. Ex. 18 [Ayers BWC] at 4:35:15-4:35:24. Ex. 19 [Abraham BWC #2] at 4:35:15-4:35:24. Ex. 27 [Abraham Dep.] 46:3-12. | Disputed in part. Mr. Sosa said "I'm not gonna hurt her," Ayers believed him, and Ms. Sosa saw nothing threatening. (JtSF 6; Ayers Depo 52:24-53:6; Maria Sosa Depo 71:1-7.) |
| 93 | Ayers and Abraham both drew their guns and pointed them at Max. | Undisputed. |

LAW OFFICES OF DALE K. GALIPO CIVIL RIGHTS ATTORNEYS DKG

| No. | Defendants' Undisputed Fact and Supporting Evidence | Sosa Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | **Supporting Evidence:** Ex. 18 [Ayers BWC] at 4:35:15-4:35:24. Ex. 19 [Abraham BWC #2] at 4:35:15-4:35:24. | |
| 94 | Ayers and Abraham moved back to increase the distance between themselves and Max.<br>**Supporting Evidence:** Ex. 18 [Ayers BWC] at 4:35:15-4:35:24. Ex. 19 [Abraham BWC #2] at 4:35:15-4:35:24. Ex. 26 [Ayers Dep.] 38:1-4. | Undisputed. |
| 95 | Max raged the Officers, stepping towards them and Maria with the scissors pointed at them.<br>**Supporting Evidence:** Ex. 18 [Ayers BWC] at 4:35:24-4:38:54. Ex. 19 [Abraham BWC #2] at 4:35:24-4:35:54. Ex. 26 [Ayers Dep.] 38:5-7. Ex. 27 [Abraham Dep.] 51:10-17; 52:21-53:15. | Disputed in part. That Mr. Sosa "raged" is a characterization, not a fact, and the Sosa Plaintiffs object to it as argumentative. Undisputed that Mr. Sosa paced back and forth and took steps toward the officers and Ms. Sosa with the scissors in his hand. (Ayers Depo 38:5-7; Abraham Depo 51:15-17.) |
| 96 | Max came within a yard of Abraham with the scissors.<br>**Supporting Evidence:** Ex. 26 [Ayers Dep.] 38:24-39:10. Ex. 27 [Abraham Dep.] 61:9-17. | Disputed in part. Abraham gave varying estimates of one yard and two to three yards. (Abraham Depo 60:12-22; 61:9-17; 51:24-52:2.) |
| 97 | Max told Maria, "This is what you wanted. This is what you f*cking wanted."<br>**Supporting Evidence:** Ex. 18 [Ayers BWC] at 4:35:24-4:38:54. Ex. 19 [Abraham BWC #2] at 4:35:24-4:38:54. | Undisputed. |
| 98 | Maria pleaded with Max, "Please don’t do this" and to think of his children.<br>**Supporting Evidence:** Ex. 10 [Sosa Interview] at 78. Ex. 18 [Ayers BWC] at 4:35:24-4:38:54. Ex. 19 [Abraham BWC #2] at 4:35:24-4:38:54 | Undisputed. |
| 99 | Ayers and Abraham broadcast that Max had returned to the apartment, and requested assistance.<br>**Supporting Evidence:** Ex. 28 [Crockett Dep.] 22:13-23:6. | Undisputed. |

| No. | Defendants' Undisputed Fact and Supporting Evidence | Sosa Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 100 | Between 4:35 a.m. and 4:38 a.m., Abraham and Ayers told Max seven times to "Get back!" and also warned him, "Stop it!" and "I'm telling you."<br><br>**Supporting Evidence:** Ex. 18 [Ayers BWC] at 4:35:24-4:38:54. Ex. 19 [Abraham BWC #2] at 4:35:24-4:38:54. | Undisputed. |
| 101 | Ayers and Abraham spoke to Max firmly but respectfully.<br><br>**Supporting Evidence:** Ex. 18 [Ayers BWC] at 4:35:24-4:38:54. Ex. 19 [Abraham BWC #2] at 4:35:24-4:38:54. | Disputed. That the officers spoke "firmly but respectfully" is a characterization, not a fact, and the Sosa Plaintiffs object to it as argumentative. The officers shouted commands and repeatedly called Mr. Sosa "bro" and "dude." Officer Abraham said, "All right, fuck that guy," about the other man. (Abraham BWC 2 at 4:35:44; 4:36:06-19; 4:37:09; Ayers BWC at 4:37:00-06.) |
| 102 | Ayers and Abraham repeated their offers to help Max.<br><br>**Supporting Evidence:** Ex. 18 [Ayers BWC] at 4:35:24-4:38:54. Ex. 19 [Abraham BWC #2] at 4:35:24-4:38:54. | Disputed. Cited evidence does not support this fact. |
| 103 | Max continued to curse at the Officers and said that no one understood the sacrifices he had made for Maria.<br><br>**Supporting Evidence:** Ex. 18 [Ayers BWC] at 4:35:24-4:38:54. Ex. 19 [Abraham BWC #2] at 4:35:24-4:38:54. | Undisputed. |
| 104 | Max did not comply with the Officers' commands and rejected their attempts to engage him.<br><br>**Supporting Evidence:** Ex. 18 [Ayers BWC] at 4:35:24-4:38:54. Ex. 19 [Abraham BWC #2] at 4:35:24-4:38:54. Ex. 27 [Abraham Dep.] 81:6-82:6. | Disputed. Mr. Sosa complied when Aguilar told him not to step toward him, and no officer told Mr. Sosa to stay inside. (Aguilar Depo 42:3-16; Abraham Depo 81:6-82:6.) |
| 105 | At 4:35:18 a.m. Abraham said, "Don't do it, bro."<br><br>**Supporting Evidence:** Ex. 18 [Ayers BWC] at 4:35:24-4:38:54. Ex. 19 [Abraham BWC #2] at 4:35:24-4:38:54. | Undisputed. |



LAW OFFICES OF DALE K. GALIPO CIVIL RIGHTS ATTORNEYS

LAW OFFICES OF DALE K. GALIPO CIVIL RIGHTS ATTORNEYS

| No. | Defendants' Undisputed Fact and Supporting Evidence | Sosa Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 106 | At 4:35:23 a.m. Ayers radioed that Max was inside Maria's apartment armed with scissors.<br><br>**Supporting Evidence:** Ex. 18 [Ayers BWC] at 4:35:23-4:35:27. | Undisputed. |
| 107 | At 4:36:04 a.m., Max said to Abraham, "Pop it, dude. Are you ready for this?"<br><br>**Supporting Evidence:** Ex. 18 [Ayers BWC] at 4:35:24-4:38:54. Ex. 19 [Abraham BWC #2] at 4:35:24-4:38:54. | Undisputed. |
| 108 | At 4:36:54 a.m. Max said, "Have you shot anybody before? Today's gonna be the day."<br><br>**Supporting Evidence:** Ex. 18 [Ayers BWC] at 4:35:24-4:38:54. Ex. 19 [Abraham BWC #2] at 4:35:24-4:38:54. | Undisputed. |
| 109 | At 4:37:06 a.m. Crockett arrived to the apartment.<br><br>**Supporting Evidence:** Ex. 20 [Crockett BWC] at 4:37:06. | Undisputed. |
| 110 | Crockett saw that Max was holding kitchen shears in his right hand and pointing them towards Ayers and Maria.<br><br>**Supporting Evidence:** Ex. 28 [Crockett Dep.] 28:6-15; 51:24-52:9. | Undisputed that Officer Crockett so testified. He also testified that when he first saw Mr. Sosa, the scissors were down at Mr. Sosa's right side, and Officer Aguilar saw Mr. Sosa hold them pointed down. (Mayne Decl. ¶ 10, Ex. H (Deposition of Officer Brandon Crockett, Apr. 22, 2026) ("Crockett Depo") 51:14-19; Aguilar Depo 41:23-42:2.) |
| 111 | At 4:37:16 a.m. Crockett told Max, "Let's chill out, man," to which Max responded "No! F*ck no!"<br><br>**Supporting Evidence:** Ex. 18 [Ayers BWC] at 4:37:16-4:37:19. Ex. 19 [Abraham BWC #2] at 4:37:16-4:37:19. Ex. 20 [Crockett BWC] at 4:37:15-4:37:22. Ex. 28 [Crockett Dep.] 53:5-12. | Undisputed. |
| 112 | At 4:37:29 a.m. Crockett broadcast "One at gunpoint, scissors in right hand."<br><br>**Supporting Evidence:** Ex. 3 [CAD Report] at FRESNO 000248, 000273. Ex. | Undisputed. |

LAW OFFICES OF DALE K. GALIPO CIVIL RIGHTS ATTORNEYS

| No. | Defendants' Undisputed Fact and Supporting Evidence | Sosa Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | 20 [Crockett BWC] at 4:37:29-4:37:37. Ex. 28 [Crockett Dep.] 55:12-56:1. | |
| 113 | At 4:37:35 a.m. Aguilar arrived to Maria's apartment.<br>**Supporting Evidence:** Ex. 21 [Aguilar BWC] at 4:37:35-4:37:40. | Undisputed. |
| 114 | Crockett, who was standing outside the doorway, quickly described the situation inside.<br>**Supporting Evidence:** Ex. 20 [Crockett BWC] at 4:37:39-4:37:43. Ex. 21 [Aguilar BWC] at 4:37:40-4:37:43. | Undisputed. |
| 115 | At 4:37:43 a.m. Max said, "This is how it ends. This is what you wanted."<br>**Supporting Evidence:** Ex. 18 [Ayers BWC] at 4:37:43-4:37:45. Ex. 19 [Abraham BWC #2] at 4:35:24-4:38:54. | Undisputed. |
| 116 | At 4:38:01 a.m. Max said, "Sorry you guys have to do this, but it's gonna happen either way."<br>**Supporting Evidence:** Ex. 18 [Ayers BWC] at 4:37:57-4:38:03. Ex. 19 [Abraham BWC #2] at 4:35:24-4:38:54. Ex. 21 [Aguilar BWC] at 4:37:55-4:37:59. | Disputed in part. Mr. Sosa did not say "Sorry you guys have to do this, but it's gonna happen either way." Undisputed that Mr. Sosa apologized to the officers. |
| 117 | At 4:38:05 a.m. Abraham said, "If you don't want to talk to us, talk to one of my partners. How about that?"<br>**Supporting Evidence:** Ex. 18 [Ayers BWC] at 4:38:03-4:38:10. Ex. 19 [Abraham BWC #2] at 4:38:03-4:38:10. Ex. 20 [Crockett BWC] at 4:38:02-4:38:10. Ex. 21 [Aguilar BWC] at 4:37:59-4:38:05. | Undisputed. |
| 118 | Max responded, "No, I don't want to talk to any of them f*cking guys. My fate is sealed, my guy."<br>**Supporting Evidence:** Ex. 18 [Ayers BWC] at 4:38:03-4:38:10. Ex. 19 [Abraham BWC #2] at 4:38:03-4:38:10. Ex. 20 [Crockett BWC] at 4:38:02- | Undisputed. |

| No. | Defendants' Undisputed Fact and Supporting Evidence | Sosa Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | 4:38:10. Ex. 21 [Aguilar BWC] at 4:38:03-4:38:07. | |
| 119 | At 4:38:29 a.m. Aguilar asked Max, "Hey, can we talk?"<br>**Supporting Evidence:** Ex. 20 [Crockett BWC] at 4:38:25-4:38:33. Ex. 21 [Aguilar BWC] at 4:38:25-4:38:27. Ex. 29 [Aguilar Dep.] 41:1-18; 43:6-18. | Undisputed. |
| 120 | Max responded, "F*ck no!"and "I am done with this, dude."<br>**Supporting Evidence:** Ex. 19 [Abraham BWC #2] at 4:38:26-4:38:31. Ex. 20 [Crockett BWC] at 4:38:25-4:38:33. Ex. 21 [Aguilar BWC] at 4:38:26-4:38:31. | Undisputed. |
| 121 | At 4:38:13 a.m. Max talked about killing Maria's affair partner. When Ayers said, "He's not here, Max," Max responded, "Exactly. So it's gonna be my life or you guys. That's it. That's all it's gonna come down to."<br>**Supporting Evidence:** Ex. 18 [Ayers BWC] at 4:38:13-4:38:26. Ex. 19 [Abraham BWC #2] at 4:38:13-4:38:31. | Undisputed. The Sosa Plaintiffs object to "affair partner" as argumentative. |
| 122 | At 4:38:38 a.m. Aguilar readied his Taser.<br>**Supporting Evidence:** Ex. 20 [Crockett BWC] at 4:38:37-4:38:43. Ex. 29 [Aguilar Dep.] 30:9-24. | Undisputed. |
| 123 | At 4:38:50 a.m. Abraham gestured to Ayers and Maria to get out of the apartment.<br>**Supporting Evidence:** Ex. 19 [Abraham BWC #2] at 4:38:50-4:38:54. Ex. 21 [Aguilar BWC] at 4:38:45-4:38:50. Ex. 26 [Ayers Dep.] 13-23. Ex. 27 [Abraham Dep.] 58:3-23. | Disputed in part. Abraham gestured for Ayers and Ms. Sosa to leave, and no officer told Mr. Sosa to stay. (Abraham Depo 58:6-13; 81:6-82:6.) |
| 124 | Ayers walked toward the door and exited the apartment.<br>**Supporting Evidence:** Ex. 18 [Ayers BWC] at 4:38:50-4:38:55. Ex. 19 [Abraham BWC #2] at 4:38:50-4:38:54. | Undisputed. |

| No. | Defendants' Undisputed Fact and Supporting Evidence | Sosa Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 125 | Maria remained seated on the couch.<br><br>**Supporting Evidence:** Ex. 19 [Abraham BWC #2] at 4:38:50-4:38:54. | Undisputed. |
| 126 | At 4:38:52 a.m. Aguilar stepped away to call in the details of the Officers' situation.<br><br>**Supporting Evidence:** Ex. 21 [Aguilar BWC] at 4:38:49-4:39:10. Ex. 29 [Aguilar Dep.] 31:20-32:15. | Undisputed. |
| 127 | At 4:38:59 a.m. Max told Abraham he could also leave by the front door.<br><br>**Supporting Evidence:** Ex. 18 [Ayers BWC] at 4:38:55-4:39:06. Ex. 19 [Abraham BWC #2] at 4:38:55-4:39:06. | Undisputed. |
| 128 | At 4:39:02 a.m. Crockett, standing at the threshold, motioned for Maria to come outside.<br><br>**Supporting Evidence:** Ex. 18 [Ayers BWC] at 4:39:03-4:39:12. Ex. 20 [Crockett BWC] at 4:39:02-4:39:15. Ex. 28 [Crockett Dep.] 56:8-11; 59:7-14. | Undisputed. |
| 129 | At 4:39:20 a.m. Abraham said twice, "Maria, get out."<br><br>**Supporting Evidence:** Ex. 18 [Ayers BWC] at 4:39:19-4:39:22. Ex. 19 [Abraham BWC #2] at 4:39:19-4:39:22. Ex. 21 [Aguilar BWC] at 4:39:15-4:39:19. | Undisputed. |
| 130 | Maria stood and started walking toward the door.<br><br>**Supporting Evidence:** Ex. 20 [Crockett BWC] at 4:39:15-4:39:23. | Undisputed. |
| 131 | At 4:39:23 a.m. Max turned and approached the door, facing Ayers, Crockett and Aguilar.<br><br>**Supporting Evidence:** Ex. 18 [Ayers BWC] at 4:39:23-4:39:25. Ex. 19 [Abraham BWC #2] at 4:39:23-4:39:25. Ex. 20 [Crockett BWC] at 4:39:20-4:39:24. | Undisputed. |
| 132 | Crockett and Ayers stepped back. | Undisputed. |



LAW OFFICES OF DALE K. GALIPO CIVIL RIGHTS ATTORNEYS

LAW OFFICES OF DALE K. GALIPO CIVIL RIGHTS ATTORNEYS

| No. | Defendants' Undisputed Fact and Supporting Evidence | Sosa Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | **Supporting Evidence:** Ex. 18 [Ayers BWC] at 4:39:23-4:39:25 Ex. 20 [Crockett BWC] at 4:39:20-4:39:27. Ex. 21 [Aguilar BWC] at 4:39:21-4:39:23. | |
| 133 | The Officers shouted: "Wait!" (one time), "Stop!" (one time); "Get back, bro!" (two times) "Hey!" (one time) and "Chill out!" (two times).<br><br>**Supporting Evidence:** Ex. 18 [Ayers BWC] at 4:39:22-4:39:26 Ex. 19 [Abraham BWC #2] at 4:39:22-4:39:26. Ex. 20 [Crockett BWC] at 4:39:24-4:39:27. Ex. 21 [Aguilar BWC] at 4:39:20-4:39:26. Ex. 27 [Abraham Dep.] 58:3-23. Ex. 28 [Crockett Dep.] 45:10-18; 57:21-58:1; 58:12-16; Crockett 59:15-21 Ex. 29 [Aguilar Dep.] 38:9-17. | Undisputed. |
| 134 | At 4:39:25 a.m. Max crossed the threshold and exited the apartment.<br><br>**Supporting Evidence:** Ex. 18 [Ayers BWC] at 4:39:25. Ex. 19 [Abraham BWC #2] at 4:39:25. Ex. 20 [Crockett BWC] at 4:39:20-4:39:25. Ex. 21 [Aguilar BWC] at 4:3922-4:39:23. | Undisputed. |
| 135 | At 4:39:26 a.m. Aguilar deployed his Taser, striking Max.<br><br>**Supporting Evidence:** Ex. 18 [Ayers BWC] at 4:39:26. Ex. 20 [Crockett BWC] at 4:39:27. Ex. 21 [Aguilar BWC] at 4:39:24. Ex. 27 [Abraham Dep.] 58:25-59:19. Ex. 28 [Crockett Dep.] 59:22-24. | Undisputed. |
| 136 | The Taser did not immobilize Max, who stumbled briefly and swatted the air in front of him.<br><br>**Supporting Evidence:** Ex. 18 [Ayers BWC] at 4:39:26-4:39:28. Ex. 20 [Crockett BWC] at 4:39:27-4:39:32. Ex. 21 [Aguilar BWC] at 4:39:24-4:39:26. Ex. 28 [Crockett Dep.] 40:10-22; 43:8-16. Ex. 27 [Abraham Dep.] 58:25-59:19. Ex. 29 [Aguilar Dep.] 18:14-23. | Disputed in part. Undisputed that the Taser did not cause neuromuscular incapacitation. The Taser caused Mr. Sosa pain; he stumbled into the wall of the opposite apartment, clutched his torso, and swatted at the wires on his chest, not the air. (Crockett Depo 40:13-19; 43:8-16; Abraham Depo 59:2-11; Aguilar Depo 18:17-23; Defs.' Ex. 20, Dkt. 93-23 (Officer Crockett Body-Worn Camera, lodged) ("Crockett BWC") at 4:39:27; Defs.' Ex. 21, Dkt. 93-24 |

| No. | Defendants' Undisputed Fact and Supporting Evidence | Sosa Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | | (Officer Aguilar Body-Worn Camera, lodged) ("Aguilar BWC") at 4:39:25-26.) |
| 137 | Aguilar did not have time to, and did not attempt to, reload and redeploy the Taser.<br>**Supporting Evidence:** Ex. 29 [Aguilar Dep.] 26:20-27:19 | Undisputed. |
| 138 | At 4:39:27 a.m. Max yelled, gritted his teeth, and charged toward Crockett, Aguilar and Ayers.<br>**Supporting Evidence:** Ex. 18 [Ayers BWC] at 4:39:27-4:39:29. Ex. 19 [Abraham BWC #2] at 4:39:27-4:39:29. Ex. 20 [Crockett BWC] at 4:39:27-4:39:32. Ex. 21 [Aguilar BWC] at 4:39:26-4:39:27. Ex. 27 [Abraham Dep.] 86:24-87:3; 88:6-16. Ex. 28 [Crockett Dep.] 44:20-24; 46:15-21; 67:12-68:6; 68:13-17; 74:14-20. Ex. 29 [Aguilar Dep.] 62:9-25. | Disputed. Mr. Sosa did not charge the officers. After the Taser struck him, he moved away from its pain along the only path open to him, which led into the breezeway where the officers were standing. (Aguilar Depo 23:6-24:19; *see* No. 139, below.) The sound he made was a grunt that Officer Aguilar agreed could have been an expression of pain. (Aguilar Depo 18:17-23; 19:2-6.) No cited testimony says Mr. Sosa gritted his teeth. Nor did he move toward three officers at once; the officers stood in different places. Officer Crockett described himself as "the only person, like, hugged up against this wall," and Officer Aguilar described Mr. Sosa moving toward Crockett and himself. (Crockett Depo 69:10-15; Aguilar Depo 62:18-25.) Officer Crockett told the investigator, "I don't know a hundred percent if he's fixated on me per se," and confirmed that statement at deposition. (Crockett Depo 69:10-23.) Mr. Sosa moved with his head down, and Officer Crockett fired about half a second to a second after Mr. Sosa started moving. (Crockett Depo 46:15-21; 66:2-9.) |
| 139 | Max was gripping the scissors as he charged the Officers.<br>**Supporting Evidence:** Ex. 19 [Abraham BWC #2] at 4:39:27-4:39:29. Ex. 20 [Crockett BWC] at 4:39:28-4:39:30. Ex. 28 [Crockett Dep.] 66:2-9; 67:8-21; 75:6-10; 76:15-23; Ex. 27 [Abraham Dep.] 86:24-87:3; 88:6-16. | Disputed. Mr. Sosa was not charging the officers. He was moving away from the pain of the Taser along the only path open to him. Officer Aguilar considered, when he decided to tase Mr. Sosa, that Mr. Sosa would move away from the source of pain, and he testified that Mr. Sosa had no avenue of escape: across from the apartment door was a closed door and a wall, Officer Abraham was inside the apartment, and the breezeway |



LAW OFFICES OF DALE K. GALIPO CIVIL RIGHTS ATTORNEYS DKG

LAW OFFICES OF DALE K. GALIPO CIVIL RIGHTS ATTORNEYS

| No. | Defendants' Undisputed Fact and Supporting Evidence | Sosa Plaintiffs' Response and Supporting Evidence |
| --- | --- | --- |
| | | was "exactly where we were standing." (Aguilar Depo 23:6-24:19.) "Charging" is the officers' characterization, not a fact. Mr. Sosa walked out of the apartment holding the scissors behind his back; shortly after he crossed the threshold, they were down at his side, and he did not raise them toward anyone. (Ayers BWC, Abraham BWC 2, Crockett BWC, and Aguilar BWC, each at 4:39:23-28; Crockett Depo 66:2-9; 76:15-23.) |
| 140 | Shots fired at 4:39:28 a.m.<br><br>**Supporting Evidence:** Ex. 18 [Ayers BWC] at 4:39:28. Ex. 19 [Abraham BWC #2] at 4:39:28. Ex. 20 [Crockett BWC] at 4:39:28. Ex. 21 [Aguilar BWC] at 4:39:27. Ex. 29 [Aguilar Dep.] 35:2-8. | Undisputed. |
| 141 | Max fell to the ground, still holding the scissors.<br><br>**Supporting Evidence:** Ex. 18 [Ayers BWC] at 4:39:30. Ex. 19 [Abraham BWC #2] at 4:39:30. Ex. 20 [Crockett BWC] at 4:39:31. Ex. 21 [Aguilar BWC] at 4:39:30. | Undisputed. |
| 142 | At 4:39:38 a.m. Max moved his arm and Abraham commanded him to "Let go of – "<br><br>**Supporting Evidence:** Ex. 18 [Ayers BWC] at 4:39:38-4:39:43. Ex. 19 [Abraham BWC #2] at 4:39:38-4:39:43. Ex. 21 [Aguilar BWC] at 4:39:38-4:39:39. | Disputed in part. The Sosa Plaintiffs dispute that Officer Abraham's words were a "command." Mr. Sosa had already been shot and had fallen to the ground, and there is no evidence that he could hear or understand anything said to him at that point. (SUF 140, 141.) Undisputed that Officer Abraham said, "Let go of." |
| 143 | Aguilar called in "Shots fired."<br><br>**Supporting Evidence:** Ex. 3 [CAD Report] at FRESNO 000248, 000274. Ex. 21 [Aguilar BWC] at 4:39:36-4:39:45. | Undisputed. |
| 144 | Max was approximately a foot to a foot-and-a-half away from Crockett when all four Officers fired their service weapons.<br><br>**Supporting Evidence:** Ex. 26 [Ayers Dep.] 85:3-10. Ex. 28 [Crockett Dep.] | Disputed in part. That all four officers fired is not supported by the cited evidence and is contradicted by Defendants' own report. Three officers fired their handguns: Officers Ayers, Crockett, and Abraham. Officer Aguilar fired only his Taser. (Homicide Report at |

LAW OFFICES OF DALE K. GALIPO CIVIL RIGHTS ATTORNEYS

| No. | Defendants' Undisputed Fact and Supporting Evidence | Sosa Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | 45:6-9; 73:15-23; 76:15-23. Ex. 29 [Aguilar Dep.] 63:1-4. | FRESNO 000168; Aguilar Depo 30:12-24; 63:15-18.) Officer Abraham fired from two to three yards behind Mr. Sosa, in the direction of Mr. Sosa's back. (Abraham Depo 86:6-23; Homicide Report at FRESNO 000186.) No testimony places Mr. Sosa within a foot and a half of Officer Crockett when Officer Aguilar fired the Taser. Officer Aguilar's estimate is of the distance when he heard the shots, after Mr. Sosa took two steps to his left and then "closed distance fairly quickly." (Aguilar Depo 62:18-25; 63:1-4.) Undisputed that Officers Ayers, Crockett, and Aguilar estimated that Mr. Sosa was about a foot to a foot and a half from Officer Crockett when the shots were fired. |
| 145 | Max was close enough to Crockett to have grabbed Crockett's gun.<br>**Supporting Evidence:** Ex. 27 [Abraham Dep.] 58:25-59:19. | Disputed in part. Undisputed that Officer Abraham testified that he thought Mr. Sosa at one point was within arm's reach of Officer Crockett's gun. A jury could find that Mr. Sosa was not close enough to grab it: Officer Abraham was two to three yards behind Mr. Sosa and saw mostly his back, and no evidence shows Mr. Sosa reached for a gun. (Abraham Depo 86:6-23; Crockett Depo 66:2-9; 75:6-10.) |
| 146 | At 4:39:50 a.m. Crockett retrieved a medical kit from his vehicle.<br>**Supporting Evidence:** Ex. 20 [Crockett BWC] at 4:39:27-4:39:50. | Undisputed. |
| 147 | At 40:40:10 a.m. Aguilar approached Max, retrieved the scissors and tossed them away.<br>**Supporting Evidence:** Ex. 20 [Crockett BWC] at 4:40:10-4:40:12. Ex. 21 [Aguilar BWC] at 4:40:07-4:40:10. | Undisputed. The time is miswritten as "40:40:10." |
| 148 | At 4:40:40 a.m. the Officers began administering emergency medical aid to Max. | Undisputed. |

LAW OFFICES OF DALE K. GALIPO CIVIL RIGHTS ATTORNEYS

| No. | Defendants' Undisputed Fact and Supporting Evidence | Sosa Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | **Supporting Evidence:** Ex. 20 [Crockett BWC] at 4:40:40. Ex. 21 [Aguilar BWC] at 4:40:38. | |
| 149 | The coroner determined the cause of Max's death was a gunshot wound to the chest.<br><br>**Supporting Evidence:** Ex. 5 [Coroner's Report] at FRESNO 000239. | Disputed in part. That the cause of death was a single gunshot wound is not supported by the cited evidence; the cited page (FRESNO 000239) is a toxicology page. Undisputed that the coroner found the cause of death to be "gunshot wounds to chest." (Mayne Decl. ¶ 11, Ex. I (Fresno County Coroner's Report) ("Coroner's Report") at FRESNO 000226, 000230.) Mr. Sosa sustained four gunshot wounds to his torso. One entered his mid-back and traveled forward through his right lung and heart. (*Id.* at FRESNO 000230, 000234.) |
| 150 | Max's blood alcohol level was 0.09.<br><br>**Supporting Evidence:** Ex. 6 [Toxicology Report] at FRESNO000300. | Undisputed. |
| 151 | Max Sr. is Max's biological father.<br><br>**Supporting Evidence:** Ex. 23 [Max. Sr. Dep.] 12:13-18. | Undisputed. |
| 152 | Martha is Max's biological mother.<br><br>**Supporting Evidence:** Ex. 23 [Max. Sr. Dep.] 12:13-18; 14:9-10. Ex. 24 [Martha Dep.] 20:25-21:11. | Undisputed. |
| 153 | M.S. and L.S. are Max's biological children.<br><br>**Supporting Evidence:** Ex. 23 [Maria Dep.] 32:5-10. | Undisputed. |
| 154 | Max and Maria were married on July 11, 2014.<br><br>**Supporting Evidence:** Ex. 23 [Maria Dep.] 18:3-4. | Undisputed. |
| 155 | Max and Maria were married but living separately as of November 4, 2023.<br><br>**Supporting Evidence:** Ex. 23 [Maria Dep.] 26:1-17; 42:14-17; Ex. 25 [Max Sr. Dep.] 27:4-7. | Undisputed. The separation was mutual, and they saw each other regularly. (Maria Sosa Depo 26:1-6; 42:14-17; 143:22-144:22.) |

LAW OFFICES OF DALE K. GALIPO CIVIL RIGHTS ATTORNEYS

| No. | Defendants' Undisputed Fact and Supporting Evidence | Sosa Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 156 | One of the reasons Max and Maria separated was that Maria had a relationship with another man, who was one of her coworkers.<br><br>**Supporting Evidence:** Ex. 10 [Sosa Interview] at 9, 10. Ex. 23 [Maria Dep.] 30:3-7; 30:24-31:16; 137:19-25. Ex. 25 [Max Sr. Dep.] 28:20-25. | Disputed. Mr. Sosa learned of Mr. Lea only after the mutual separation, so it could not be his reason; Max Sosa, Sr. testimony lacks foundation. (Maria Sosa Depo 26:1-6; 31:1-16; Fed. R. Evid. 602.) |
| 157 | Max Sr., Martha, M.S. and L.S. were not present when Max was shot and killed.<br><br>**Supporting Evidence:** Ex. 25 [Max. Sr.] 21:4-12. | Undisputed. |
| 158 | Maria was in the apartment when Max was shot and killed and did not *see* Max's actions towards the Officers or the Officers' actions towards Max once Max left the apartment.<br><br>**Supporting Evidence:** Ex. 10 [Sosa Interview] at 80. Ex. 23 [Maria Dep.] 47:15-17; 108:23-109:4. | Undisputed. |
| 159 | In 2014, Max Sr. signed over his business to Max.<br><br>**Supporting Evidence:** Ex. 10 [Sosa Interview] at 5, 6. Ex. 23 [Maria Dep.] 116:8-15; Ex. 25 [Max. Sr. Dep.] 16:15-22; 25:25-26:6. | Undisputed. |
| 160 | Max assumed over $50,000 in debt as a result of taking over his father's business.<br><br>**Supporting Evidence:** Ex. 10 [Sosa Interview] at 5, 6, 8. Ex. 23 [Maria Dep.] 115:19-25. | Undisputed. |
| 161 | Max's wages were garnished for a period of time due to the business liability he assumed from his father.<br><br>**Supporting Evidence:** Ex. 23 [Maria Dep.] 116:22-24. | Undisputed. |
| 162 | The business debt from Max Sr.'s business had not resolved at the time of Max's death. | Undisputed. |

LAW OFFICES OF DALE K. GALIPO CIVIL RIGHTS ATTORNEYS DKG

| No. | Defendants' Undisputed Fact and Supporting Evidence | Sosa Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | **Supporting Evidence:** Ex. 23 [Maria Dep.] 116:16-21. | |
| 163 | Max did not provide Max Sr. with financial support during his lifetime.<br>**Supporting Evidence:** Ex. 23 [Max Sr. Dep.] 29:14-16; 45:24-46:9. | Undisputed. |
| 164 | Max Sr. testified Max helped him with his business and that Max Sr. planned to have Max take over the business.<br>**Supporting Evidence:** Ex. 23 [Max Sr. Dep.] 45:24-46:9. | Undisputed. |
| 165 | Max Sr. testified he was relying on his business to support him after he retired.<br>**Supporting Evidence:** Ex. 23 [Max Sr. Dep.] 45:24-46:9. | Undisputed. |
| 166 | Max did not provide Martha with financial support during his lifetime.<br>**Supporting Evidence:** Ex. 24 [Martha Dep.] 37:5-11. | Undisputed. |
| 167 | Martha testified Max "was always talking about supporting me whenever I became old."<br>**Supporting Evidence:** Ex. 24 [Martha Dep.] 37:5-11. | Disputed in part. The fact misquotes Ms. Zepeda Olivares's testimony. |
| 168 | All of the Officers were trained in crisis management, deescalation techniques and dealing with individuals in crisis as part of their training.<br>**Supporting Evidence:** Ex. 26 [Ayers Dep.] 16:18-17:13; 22:7-14. Ex. 27 [Abraham Dep.] 20:2-12. Ex. 28 [Crockett Dep.] 15:5-16:3; 73:5-14. Ex. 29 [Aguilar Dep.] 59:18-24. Ex. 30 [Alvarez Dep.] at 39:11-40:22; 47:2-49:20; 65:1-67:1. | Disputed. No officer had CIT, CNT, or specialized crisis training, and Ayers felt the incident was beyond his training. (Ayers Depo 17:5-13; 41:23-42:13; Abraham Depo 23:3-15; Aguilar Depo 11:24-12:4.) |
| 169 | The Officers tried several deescalation techniques during the incident, including: increasing distance from the suspect; trying to establish rapport, including using the suspect's first name; speaking in a calm tone; offering assistance and reassurance; showing force; training a | Disputed. Much of the cited testimony describes training, not what the officers did. (Ayers Depo 22:7-14; 62:21-24; Aguilar Depo 60:10-17.) No officer summoned CNT, discussed a tactical plan, or considered less-lethal force, and no one told Mr. Sosa to stay inside. |

LAW OFFICES OF DALE K. GALIPO CIVIL RIGHTS ATTORNEYS DKG

| No. | Defendants' Undisputed Fact and Supporting Evidence | Sosa Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | weapon on the suspect; and requesting additional officers to the scene.<br>**Supporting Evidence:** Ex. 23 [Maria Dep.] 104:18-107:3. Ex. 26 [Ayers Dep.] 22:7-14; 56:25-57:11; 62:21-24. Ex. 27 [Abraham Dep.] at 84:25-25:3. Ex. 28 [Crockett Dep.] 55:12-56:1. Ex. 29 [Aguilar Dep.] 58:12-59:4; 59:25-60:9; 60:10-17. | (Crockett Depo 56:2-7; Aguilar Depo 47:19-48:12; Ayers Depo 44:3-13; 65:10-15; Abraham Depo 52:21-24; 81:6-82:6; 82:8-13.) No officer had CIT, CNT, or specialized crisis training, and Ayers felt the incident was beyond his training. (Ayers Depo 17:5-13; 41:23-42:13; Abraham Depo 23:3-15; Aguilar Depo 11:24-12:4.) The cite to Abraham Dep. is not a valid page range. |
| 170 | Ayers tried to contact his sergeant to discuss the availability of other resources, including a crisis negotiator, had the sergeant deemed one necessary.<br>**Supporting Evidence:** Ex. 26 [Ayers Dep.] 42:14-43:5; 80:23-81:9; 18:8-16. | Undisputed. |
| 171 | The Officers were trained that deadly force is justified if a suspect poses an immediate threat of death or serious bodily injury, based on the totality of the circumstances.<br>**Supporting Evidence:** Ex. 28 [Crockett Dep.] 31:17-23; 35:24-36:5. Ex. 27 [Abraham Dep.] 18:11-23; 56:22-57:1. Ex. 26 [Ayers Dep.] 19:18-22. | Undisputed. |
| 172 | Ayers believed Max presented a threat of death or serious bodily injury to Ayers, Maria and the other Officers at all times while Max was in Maria's apartment.<br>**Supporting Evidence:** Ex. 26 [Ayers Dep.] 39:11-22; 39:24-40:5; 48:4-19; 55:1-22; 56:1-6; 62:25-63:21; 64:5-17; 72:12-73:5. | Disputed. Officer Ayers so testified, but whether he actually held that belief the entire time Mr. Sosa was in the apartment is a credibility question, and a jury could find that he did not. For stretches of that time Mr. Sosa was on the far side of the kitchen counter, banging his head on the counter, not looking toward anyone, with the scissors pointed down. (Abraham Depo 40:22-25; Ayers Depo 69:1-11; Aguilar Depo 41:23-42:2.) Less than a minute before the shooting, Mr. Sosa had his back turned to the officers and then stood behind the kitchen counter with his hands resting on it. (Ayers BWC at 4:38:43-48.) Mr. Sosa never lunged at, struck at, or jabbed at anyone, and when Officer Aguilar told him not to step toward him, he stepped back. (Abraham |

LAW OFFICES OF DALE K. GALIPO CIVIL RIGHTS ATTORNEYS

| No. | Defendants' Undisputed Fact and Supporting Evidence | Sosa Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | | Depo 51:24-52:2; Aguilar Depo 37:4-15; 42:3-16.) Officer Ayers himself told the investigator that Mr. Sosa's steps toward the officers were not "anything that would have warranted, you know, using deadly force," and he testified that he believed Mr. Sosa would not harm Ms. Sosa. (Ayers Depo 41:3-13; 52:24-53:6.) |
| 173 | Abraham believed Max presented a threat of death or serious bodily injury to Abraham, Maria and the other Officers at all times while Max was in Maria's apartment.<br><br>**Supporting Evidence:** Ex. 27 [Abraham Dep.] 43:9-24; 50:19-51:8; 54:7-56:20; 63:8-14; 63:22-64:5. | Disputed. Officer Abraham so testified, but whether he actually held that belief the entire time Mr. Sosa was in the apartment is a credibility question, and a jury could find that he did not. When asked to explain it, Officer Abraham pointed principally to Mr. Sosa's driving and the pursuits earlier in the night, adding only generally "his behavior at the time"; he did not point to any attempt to stab or strike anyone with the scissors. (Abraham Depo 54:7-56:20.) In the apartment Mr. Sosa made no lunging motions, never struck at or jabbed at anyone, and for stretches stood on the far side of the kitchen counter banging his head, not looking toward anyone, with the scissors pointed down. (Abraham Depo 40:22-25; 51:24-52:2; Aguilar Depo 37:4-15; 41:23-42:2.) Less than a minute before the shooting, Mr. Sosa had his back turned to the officers and then stood behind the kitchen counter with his hands resting on it. (Ayers BWC at 4:38:43-48.) When Officer Aguilar told him not to step toward him, he stepped back. (Aguilar Depo 42:3-16.) Officer Abraham never considered using his Taser. (Abraham Depo 52:21-24.) |
| 174 | Crockett believed Max presented a threat of death or serious bodily injury to Crockett, Maria and the other Officers from the moment he arrived on the scene until shots were fired.<br><br>**Supporting Evidence:** Ex. 28 [Crockett Dep.] 28:23-30:11; 30:12-31:4; 31:25-32:3; 35:17-23; 49:4-14. | Disputed. Officer Crockett so testified, but whether he actually held that belief from the moment he arrived is a credibility question, and a jury could find that he did not. When Officer Crockett arrived, Mr. Sosa had the scissors down at his right side and was not advancing on anyone; he took only small steps within his immediate area. (Crockett Depo |

LAW OFFICES OF DALE K. GALIPO CIVIL RIGHTS ATTORNEYS

| No. | Defendants' Undisputed Fact and Supporting Evidence | Sosa Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | | 29:18-21; 51:14-19; Crockett BWC at 4:37:07.) For the more than two minutes between Officer Crockett's arrival and the shooting, the officers talked with Mr. Sosa, and Mr. Sosa never lunged at, struck at, or jabbed at anyone. (SUF 109, 140; Abraham Depo 51:24-52:2; Aguilar Depo 37:4-15; *see* Crockett BWC.) Officer Crockett based his belief on the totality of the night's events, including Mr. Sosa's earlier driving, the pursuits, his threats, and his return to the residence armed with kitchen shears; he did not point to any attempt to stab or strike anyone with them. (Crockett Depo 30:12-31:4.) |
| 175 | Aguilar believed Max presented a threat of death or serious bodily injury to Aguilar, Maria and the other Officers from the moment he arrived on the scene until shots were fired.<br><br>**Supporting Evidence:** Ex. 29 [Aguilar Dep.] 49:21-50:11 | Disputed. The fact lacks support. The cited testimony explains only why Officer Aguilar decided to use the Taser; it states no belief held from the moment he arrived. (Aguilar Depo 49:21-50:11.) Mr. Sosa complied with Officer Aguilar and did not lunge, strike, or jab. (*Id.* at 42:3-16; 37:4-15.) |
| 176 | The Department's Use of Force Policy states: "The use of deadly force is only justified when the officer reasonably believes it is necessary in the following circumstances (Penal Code § 835a): (a) An officer may use deadly force to protect themselves or others from what they reasonably believe is an imminent threat of death or serious bodily injury to the officer or another person. (b) An officer may use deadly force to apprehend a fleeing person for any felony that threatened or resulted in death or serious bodily injury, if the officer reasonably believes that the person will cause death or serious bodily injury to another unless immediately apprehended."<br><br>**Supporting Evidence:** Ex. 13 [Policy 300] at 4. | Undisputed. |
| 177 | In the five years preceding Max's death, there were six other incidents of the use of | Undisputed. |

| No. | Defendants' Undisputed Fact and Supporting Evidence | Sosa Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | deadly force against an individual in crisis who was armed with an edged weapon.<br>**Supporting Evidence:** Ex. 30 [Alvarez Dep.] 11:6-12:25. | |
| 178 | Only one of the six cases resulted in settlement and none resulted in a verdict.<br>**Supporting Evidence:** Ex. 30 [Alvarez Dep.] 60:22-61:7. | Undisputed. |
| 179 | The use of force was determined to be within policy and justified in each of the six cases.<br>**Supporting Evidence:** Ex. 30 [Alvarez Dep.] 19:8-20; 22:19-23:1; 28:9-14; 32:17-21; 33:8-16; 37:19-25. | Undisputed. |
| 180 | The District Attorney or Department of Justice reviewed each of the six cases and did not bring charges or make any findings of criminality.<br>**Supporting Evidence:** Ex. 30 [Alvarez Dep.] 19:8-20; 22:19-23:1; 28:9-14; 32:17-22; 33:8-16; 37:19-25. | Undisputed. |
| 181 | In the five years preceding Max's death, the Fresno Police Department has never determined in connection with a use of deadly force that the officers involved did not use sufficient deescalation efforts.<br>**Supporting Evidence:** Ex. 30 [Alvarez Dep.] 44:20-45:1. | Undisputed. |
| 182 | Before Max returned to Maria's apartment a final time, he spoke to his friend Damian, who tried to persuade Max to stop what he was doing.<br>**Supporting Evidence:** Ex. 11 [Incident Report] at FRESNO000436, FRESNO 000441. | Disputed. The only cited evidence is a police report summarizing what Mr. Rodriguez told an investigator, which is hearsay within hearsay. (Defs.' Ex. 11, Dkt. 93-14 (Rodriguez Interview Report) ("Rodriguez Report") at FRESNO 000436, 000441; Fed. R. Evid. 802, 805.) Defendants have not met their burden to show that evidence of this fact can be presented in admissible form. (Fed. R. Civ. P. 56(c)(2).) There is also no evidence that any officer knew of this conversation before the shooting. |



LAW OFFICES OF DALE K. GALIPO CIVIL RIGHTS ATTORNEYS

| No. | Defendants' Undisputed Fact and Supporting Evidence | Sosa Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 183 | Max just said, "Thank you for everything. I love you." **Supporting Evidence:** Ex. 11 [Incident Report] at FRESNO000436, FRESNO 000441. | Disputed. The only cited evidence is a police report summarizing what Mr. Rodriguez told an investigator Mr. Sosa said, which is hearsay within hearsay. (Rodriguez Report at FRESNO 000441; Fed. R. Evid. 802, 805.) Defendants have not met their burden to show that evidence of this fact can be presented in admissible form. (Fed. R. Civ. P. 56(c)(2).) There is also no evidence that any officer knew of this statement before the shooting. |

Dated: October 30, 2026

**LAW OFFICES OF DALE K. GALIPO**

By: /s/ Cooper Mayne
Dale K. Galipo
Cooper Mayne

*Attorneys for Plaintiffs Maria Sosa, L.S., and M.S.*

LAW OFFICES OF DALE K. GALIPO CIVIL RIGHTS ATTORNEYS