Kevin G. Little, SBN 149818
LAW OFFICE OF KEVIN G. LITTLE
P.O. Box 8656
Fresno, California 93747
Telephone: (559) 342-5800
Facsimile: (559) 242-2400
Email: service@kevinglittle.com

Attorney for Plaintiffs MARTHA ZEPEDA OLIVARES, individually and on behalf of the ESTATE OF MAXIMILIANO SOSA, JR., and MAXIMILIANO SOSA, SR.

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION**

MARTHA ZEPEDA OLIVARES, individually and on behalf of the ESTATE OF MAXIMILIANO SOSA, JR.; MAXIMILIANO SOSA, SR.,

Plaintiffs,

v.

CITY OF FRESNO, UNKNOWN LAW ENFORCEMENT OFFICERS, POLICE CHIEF PACO BALDERRAMA and DOES 1-30,

Defendants.

---

MARIA SOSA, L.S. by and through guardian ad litem MARIA SOSA, M.S. by and through guardian ad litem JENNIFER LOPEZ, individually and as successors-in-interest to Maximilian Sosa,

Plaintiffs,

v.

CITY OF FRESNO and DOES 1-5,

Defendants.

Case No. 1:23-cv-01575-JLT-SAB

District Judge: Hon. Jennifer L. Thurston
Magistrate Judge: Hon. Stanley A. Boone

**DECLARATION OF KEVIN G. LITTLE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

[Filed concurrently with Memorandum of Points and Authorities; Response to Separate Statement of Undisputed Facts; Statement of Additional Disputed Facts; Declarations of Martha Zepeda Olivares and Maximiliano Sosa, Sr.; Request for Judicial Notice; Evidentiary Objections]

Date: November 20, 2026
Time: 9:00 a.m.
Crtrm.: 4

TO THE HONORABLE COURT, DEFENDANTS, AND THEIR COUNSEL OF RECORD:

I, Kevin G. Little, declare:



KGL
LAW OFFICE OF KEVIN G. LITTLE
Fresno | San Francisco | San Diego

KGL
LAW OFFICE OF KEVIN G. LITTLE
*Fresno | San Francisco | San Diego*

1. I am an attorney licensed to practice before all courts of the State of California and before this Court, and I am counsel of record for Plaintiffs Martha Zepeda Olivares, individually and on behalf of the Estate of Maximiliano Sosa, Jr., and Maximiliano Sosa, Sr. I have personal knowledge of the facts stated in this declaration, except those stated on information and belief, and if called as a witness I could and would testify competently to them.

2. Defendants submitted excerpts of the certified transcripts of the depositions of Maria Sosa (July 28, 2025), Martha Zepeda Olivares (August 5, 2025), Maximiliano Sosa, Sr. (August 5, 2025), Officer John Ayers (April 22, 2026), Officer Jonathan Abraham (April 23, 2026), Officer Brandon Crockett (April 22, 2026) and Officer Anthony Aguilar (April 23, 2026) as their Exhibits 23 through 29 (Dkt. 93-26 through 93-32). The Sosa Plaintiffs have submitted additional excerpts of the Maria Sosa, Aguilar, Ayers, Abraham and Crockett transcripts as Exhibits A, D, F, G and H to the Declaration of Cooper Mayne (Dkt. 99-3). To avoid duplicating what is already before the Court, Exhibits A through D, G and H to this declaration consist principally of pages on which the Olivares Plaintiffs rely that appear in neither set of excerpts, together with adjoining pages needed to read that testimony in context, a few of which also appear in the Sosa Plaintiffs' excerpts.

3. Attached as Exhibit A are true and exact excerpts of the certified transcript of the deposition of Maria Sosa, taken on July 28, 2025, consisting of the title and appearance pages, pages 20 and 21, and the witness certification and reporter's certificate (pages 149 and 150).

4. Attached as Exhibit B are true and exact excerpts of the certified transcript of the deposition of Officer Jonathan Abraham, taken on April 23, 2026, consisting of the title, appearance and index pages and pages 73, 74, 76 and 77.

5. Attached as Exhibit C are true and exact excerpts of the certified transcript of the deposition of Maximiliano Sosa, Sr., taken on August 5, 2025, consisting of the title and appearance pages (pages 2 and 3), pages 27, 30, 37, 38, 40, 41 and 42, and the reporter's certificate (pages 48 and 49).

KGL
LAW OFFICE OF KEVIN G. LITTLE
*Fresno | San Francisco | San Diego*

6. Attached as Exhibit D are true and exact excerpts of the certified transcript of the deposition of Martha Zepeda Olivares, taken on August 5, 2025, consisting of the title and appearance pages (pages 2 and 3), pages 19, 28, 29, 31, 34, 35, 42 and 43, and the reporter's certificate (pages 67 and 68).

7. Attached as Exhibit E is a true and correct copy of Plaintiff Martha Zepeda Olivares's and Plaintiff Maximiliano Sosa, Sr.'s verified responses to Defendants' Special Interrogatories, Set Two, served on June 3, 2026, including the verification pages.

8. Plaintiffs' Fourth Amended Complaint (Dkt. 85) was filed on July 12, 2026. Plaintiffs served their responses to Defendants' Special Interrogatories, Set Two, on June 3, 2026, more than a month before the Fourth Amended Complaint was filed. Those responses described Ms. Olivares's arrangement to move in with and be supported by the decedent and Mr. Sosa's work with the decedent in his business. Since the responses were served, Defendants have not served any further written discovery on the Olivares Plaintiffs, have not noticed or requested a further deposition of either of them, and have not asked to reopen discovery.

9. Attached as Exhibit F is a true and correct copy of the probate examiner's note for the Petition for Termination of Proceedings and Discharge filed on July 1, 2026, in In re Estate of Maximiliano Sosa, Jr., Fresno Superior Court Case No. 23CEPR01424 (a copy of which is Exhibit K to the Declaration of Cooper Mayne, Dkt. 99-3), as obtained from the Superior Court's published probate examiner notes, which reflects that the hearing was continued to November 4, 2026.

10. Attached as Exhibit G are true and exact excerpts of the certified transcript of the deposition of Officer John Ayers, taken on April 22, 2026, consisting of the title, appearance and index pages and pages 46 and 47.

11. Attached as Exhibit H are true and exact excerpts of the certified transcript of the deposition of Officer Anthony Aguilar, taken on April 23, 2026, consisting of the title, appearance and index pages and pages 54 and 55.

12. The exhibits attached to this declaration are true and correct copies of documents exchanged in discovery and true and exact excerpts of certified depositions lodged concurrently.

13. If called as a witness, I could truthfully and competently testify to the foregoing.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October 30, 2026, at Fresno, California.

*/s/ Kevin G. Little*
KEVIN G. LITTLE

KGL
LAW OFFICE OF KEVIN G. LITTLE
*Fresno | San Francisco | San Diego*

# EXHIBIT A

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

-- o0o --

CERTIFIED COPY

MARTHA ZEPEDA OLIVARES, individually and on behalf of the ESTATE OF MAXIMILIANO SOSA, JR.; MAXIMILIANO SOSA, SR.,

Plaintiffs,

vs.

Case No. 1:23-cv-01575-JLT-SAB

CITY OF FRESNO, UNKNOWN LAW ENFORCEMENT OFFICERS, POLICE CHIEF PACO BALDERRAMA and DOES 1-30,

Defendants.

(CONTINUED ON PAGE 2)

---

VIDEOTAPED VIDEOCONFERENCE DEPOSITION OF
MARIA DEL CARMEN SOSA

Fresno, California
Monday, July 28, 2025
10:10 a.m. to 4:17 p.m.

By: Gracie E. Becerra, CA CSR No. 13136
Our File No.: 8403

FRESNO DEPOSITION REPORTERS
516 WEST SHAW AVE., STE. 111, FRESNO, CALIFORNIA
P.O. BOX 755, WOODLAKE, CALIFORNIA 93286

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

-- o0o --

MARIA SOSA, L.S. by and through guardian ad litem MARIA SOSA, M.S. by and through guardian ad litem JENNIFER LOPEZ, individually, and as successors-in-interest to Maximiliano Sosa,

Plaintiffs,

v. Case No. 1:23-cv-01575-JLT-SAB

CITY OF FRESNO and DOES 1-5,

Defendants.

________________________________

VIDEOTAPED VIDEOCONFERENCE DEPOSITION OF MARIA DEL CARMEN SOSA

Fresno, California
Monday, July 28, 2025
10:10 a.m. to 4:17 p.m.

By: Gracie E. Becerra, CA CSR No. 13136
Our File No.: 8403

-- o0o --

The deposition of Maria Del Carmen Sosa was taken in the above-entitled matter pursuant to stipulation via videoconference by all counsel, Maria Del Carmen Sosa, and the court reporter.

The witness' physical location for the taking of the deposition was: Fresno, California.

The reporter's physical location for the taking of the deposition was: Tulare County, California.

-- o0o --

A P P E A R A N C E S

For the Plaintiffs, MARIA SOSA, L.S. by and through guardian ad litem MARIA SOSA, M.S. by and through guardian ad litem JENNIFER LOPEZ, individually, and as successors-in-interest to Maximiliano Sosa:

LAW OFFICES OF DALE K. GALIPO
By: Cooper Alison-Mayne, Esq.
cmayne@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California 91367
(818) 347-3333

STEVEN A. LERMAN & ASSOCIATES, INC.
By: Nicholas Lerman, Esq.
nmlerman@yahoo.com
6033 West Century Boulevard, Suite 740
Los Angeles, California 90045
(310) 659-8166

For the Plaintiffs, MARTHA ZEPEDA OLIVARES, individually and on behalf of the ESTATE OF MAXIMILIANO SOSA, JR.; MAXIMILIANO SOSA, SR.:

LAW OFFICE OF KEVIN G. LITTLE
By: Kevin G. Little, Esq.
kevin@kevinglittle.com
- and -
Michelle Tostenrude, Esq.
michelle@kevinglittle.com
Post Office Box 8656
Fresno, California 93747
(559) 342-5800

APPEARANCES CONTINUED

For the Defendants, CITY OF FRESNO, UNKNOWN LAW ENFORCEMENT OFFICERS, and POLICE CHIEF PACO BALDERRAMA:

MANNING & KASS, ELLROD, RAMIREZ, TRESTER LLP
By: Lynn L. Carpenter, Esq.
Lynn.Carpenter@manningkass.com
801 S. Figueroa Street, 15th Floor
Los Angeles, California 90017
(213) 624-6900

Also appearing via videoconference:

Maximiliano Sosa, Sr., Plaintiff
Martha Zepeda Olivares, Plaintiff
Heather Gillespie, videographer

-- o0o --

Q. When you say financial problems, do you mean that there wasn't enough money to handle your household obligations?
A. No. We -- we had money. There was just other things that he stressed about having to take care of and that caused a lot of stress in our marriage.
Q. And when you say things that he stressed about, are you referring to personal debt obligations?
A. Yes.
Q. Okay. For how many years during your marriage did Max struggle with personal debt obligations that stressed him?
A. Since just about when we got together and married.
Q. Okay. Were there any other issues that you were aware of that caused Max Sosa to have stress during the time that you lived with him?
A. Yeah. Like obligations towards his family.
Q. And what type of obligations are you referring to?
A. I know he stressed a lot about being able to help them financially when they asked.
Q. And when you say members of his family, which family members are you referring to specifically?
A. His parents.
Q. So his parents Max Sosa, Sr., and then Ms. Olivares?

A. Yes.

Q. Okay. Now, in some of the materials I reviewed, I think it may have been one of your interviews where you indicated that once you and Max married that his parents no longer wanted to have anything to do with you or him. Is that a true statement?

A. No. Max has always had a really great relationship with his parents as have his parents towards him. What I stated was that I felt unwelcomed.

Q. Okay. And did you feel that way the entire time that you were in a relationship with Max as far as his parents were concerned?

A. Just about.

Q. Okay. Did Max have other family members that he felt responsible for or obligated to provide financial assistance?

A. His siblings.

Q. Okay. How many siblings did he have?

A. He has seven, I believe, if I'm counting correctly. Yes.

Q. And where was he in the lineup?

A. I -- I honestly don't know. He has -- let me see. He has three older sisters and then him and then a brother and then three other sisters who are younger.

Q. Okay. And do all of his -- do you know the names

WITNESS CERTIFICATION

I, the undersigned, Maria Del Carmen Sosa, do hereby declare under penalty of perjury that I have read the foregoing deposition and that, to the best of my knowledge, said deposition is true and accurate.

Executed this ______ day of ____________, 20____, at ____________, California.

__________________________________
MARIA DEL CARMEN SOSA

I, Gracie E. Becerra, CSR 13136, do hereby declare:

That, prior to being examined, the witness named in the foregoing deposition was by me duly sworn via video conference pursuant to Section 30(f)(1) of the Federal Rules of Civil Procedure and the deposition is a true record of the testimony given by the witness.

That said deposition was taken down by me in shorthand via video conference and thereafter reduced to text under my direction.

X That the witness was requested to review the transcript and make any changes to the transcript as a result of that review pursuant to Section 30(e) of the Federal Rules of Civil Procedure.

No changes have been provided by the witness during the period allowed.

The changes made by the witness are appended to the transcript.

No request was made that the transcript be reviewed pursuant to Section 30(e) of the Federal Rules of Civil Procedure.

I further declare that I have no interest in the event of the action.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

WITNESS my hand this 12th day of August, 2025.

Gracie E. Becerra

Gracie E. Becerra, CSR 13136

# EXHIBIT B

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

--oOo--

MARIA SOSA, L.S. by and through Guardian ad litem JENNIFER LOPEZ, M.S. by and through guardian ad litem JENNIFER LOPEZ, individually and as successors-in-interest to Maximiliano Sosa,

Plaintiffs,

v. Case No. 1:23-cv-01575-JLT-SAB

CITY OF FRESNO, JOHN AYERS, BRANDON CROCKETT, JONATHAN ABRAHAM, and ANTHONY AGUILAR,

Defendants.
_________________________________/

STENOGRAPHIC REPORTER'S TRANSCRIPT OF

REMOTE VIDEOTAPED DEPOSITION OF

JONATHAN ABRAHAM

THURSDAY, APRIL 23, 2026

Reported Stenographically by:

KIMBERLY D'URSO, CSR 11372, RPR

Job No. 24522

APPEARANCES (Remote)

FOR THE PLAINTIFF:

LAW OFFICES OF DALE K. GALIPO
BY: COOPER MAYNE, ESQ.
21800 Burbank Boulevard, Suite 310
Woodland Hills, California 91367
818.347.3333
cmayne@galipolaw.com

LAW OFFICE OF KEVIN G. LITTLE
BY: KEVIN G. LITTLE, ESQ.
P.O. Box 8656
Fresno, CA 93747
kevin@kevinglittle.com

NICHOLAS MILES LERMAN, ESQ.
6033 West Century Blvd., Ste 740
Los Angeles, CA 90045
nmlerman0@yahoo.com

FOR THE DEFENDANTS:

MANNING & KASS ELLROD RAMIREZ TRESTER, LLP
BY: MILDRED O'LIN, ESQ.
One California Street, Suite 900
San Francisco, CA 941114
Missy.OLinn@manningkass.com

ALSO PRESENT:

Officer Anthony Aguilar
Ms. Zepeda Olivares
Mr. Sosa, Senior
Jasmine Tanoury, Paralegal

Karen Torres-Corona, Videographer

--oOo--

INDEX OF EXAMINATION

WITNESS: JONATHAN ABRAHAM

EXAMINATION BY PAGE

MR. MAYNE................................5

MR. LITTLE..............................65

EXHIBITS FOR REFERENCE

EXHIBIT DESCRIPTION PAGE

3 - Video excerpt, Bates No. 690..................61

--oOo--

available to them, true, including yourself?

MS. O'LINN: Objection. Argumentative, "available."

You can explain.

THE WITNESS: At that time of the scene, there was no officers that had less-lethal shotguns on their person, sir.

BY MR. LITTLE:

Q. Right. Because you usually keep those in the trunk; right?

A. Yes.

Q. All right. And was it your belief, while you were on scene, that at least one of the officers who was responding to the apartment had available in his vehicle, a less-lethal shotgun?

A. To my belief, yes.

Q. And I think you mentioned when you talked to Detective Rockwell, that your less-lethal shotgun was in your vehicle, which you estimated was about 100 feet away from Maria Sosa's apartment?

A. Can you rephrase that, sir, or restate that, sir?

Q. Sure. Yeah.

What's your best estimate as to how far away you parked from Ms. Sosa's apartment? Was it roughly

100 feet?

MS. O'LINN: Can I have that again? I'm sorry. Your voice just dropped off.

MR. LITTLE: Sure. I'm sorry. I don't often get accused of being a soft talker.

BY MR. LITTLE:

Q. But 100 feet -- were you about 100 feet away, in terms of where your patrol car was parked from the apartment?

A. From my recollection, yes. A little --

Q. So -- okay. I didn't want to interrupt. Did you finish your answer?

A. Yes. It was -- from my recollection, yes.

Q. So about 30 yards, roughly, from the apartment?

A. I would -- I would have to say my best estimate would be that 100 feet. It would be a little bit more.

Q. Okay. So did you have -- I don't want to say an expectation, but did you view it as a possibility that Mr. Sosa might return to Ms. Sosa's apartment?

A. Yes. It is a possibility.

Q. Okay. So you weren't necessarily surprised when someone knocked on the door and it turned out to be him?

A. I think he froze.

Q. I'm sorry. Did I freeze?

even to another room of the apartment?

A. I believe Officer Ayers had the first contact with her. He remained majority of the contact with her. I do not know that reason as to why she did not get moved. I was his cover officer at that time.

Q. Okay. There certainly was time for that to have happened, would you agree?

MS. O'LINN: Objection. Calls for speculation.

If you know.

THE WITNESS: From what I remember, I -- I would have to say no.

BY MR. LITTLE:

Q. So in the approximate 15 minutes that you were in the apartment with Ms. Sosa, before Mr. Sosa returned, you don't think there was time to have moved Ms. Sosa to a back room so that Mr. Sosa -- she wouldn't be in his line of sight if he returned to the apartment?

A. I -- well, during that time, he still made multiple attempts to come back to the apartment. I think at that time, we were more concerned for her safety at that time.

Q. Right. And one of the ways that -- would you agree, that you could have promoted her safety would have been to put her in a room where Mr. Sosa would have had to get past officers to contact her?

MS. O'LINN: Objection. Calls for speculation as to the safety of the other rooms.

You can answer.

THE WITNESS: I -- even if he were to get past the officers, he still had the scissors. He still had his behavior, his actions. It still -- she was still a potential risk for him or high potential risk for injury for her still.

BY MR. LITTLE:

Q. Okay. I understand that, but I don't think that's an answer to my question.

Ultimately, you did try to get Ms. Sosa out of the living room where Mr. Sosa was; true?

A. Yes.

Q. But there weren't any efforts to made to get her out of that living room before Mr. Sosa arrived?

MS. O'LINN: To your knowledge.

THE WITNESS: To my knowledge, no.

BY MR. LITTLE:

Q. All right. I think this kind of dovetails with some of Mr. Mayne's questions, but you're trained in a crisis situation, such as what you were confront with on November 4th, 2023, that time, if you can buy time, is your ally?

MS. O'LINN: Objection. Asked and answered.

# EXHIBIT C

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

-- o0o --

CERTIFIED COPY

MARTHA ZEPEDA OLIVARES, individually and on behalf of the ESTATE OF MAXIMILIANO SOSA, JR.; MAXIMILIANO SOSA, SR.,

Plaintiffs,

vs.

Case No. 1:23-cv-01575-JLT-SAB

CITY OF FRESNO, UNKNOWN LAW ENFORCEMENT OFFICERS, POLICE CHIEF PACO BALDERRAMA and DOES 1-30,

Defendants.

---

[CONTINUED ON PAGE 2]

---

VIDEOCONFERENCE VIDEORECORDED DEPOSITION OF
MAXIMILIANO SOSA, SR.

Yreka, California
Tuesday, August 5, 2025
10:09 a.m. to 12:21 p.m.

By: Taylor Ann Waltrip, CA CSR 14090
Our File: 8650

FRESNO DEPOSITION REPORTERS, INC.
516 W. SHAW AVENUE, SUITE 111, FRESNO, CALIFORNIA
PO BOX 755 WOODLAKE, CALIFORNIA 93286

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

-- o0o --

[CONTINUED FROM PAGE 1]

MARIA SOSA, L.S. by and through Guardian ad litem; MARIA SOSA; M.S., by and through Guardian ad litem, JENNIFER LOPEZ, individually and as successors-in-interest to Maximiliano Sosa

Plaintiffs,

vs.

CITY OF FRESNO and DOES 1-5,

Defendants.

VIDEOCONFERENCE VIDEORECORDED DEPOSITION OF
MAXIMILIANO SOSA, SR.

Sanger, California
Tuesday, August 5, 2025
10:09 a.m. to 12:21 p.m.

By: Taylor Ann Waltrip, CA CSR 14090
Our File: 8650

FRESNO DEPOSITION REPORTERS, INC.
516 W. SHAW AVENUE, SUITE 111, FRESNO, CALIFORNIA
PO BOX 755 WOODLAKE, CALIFORNIA 93286

-- o0o --

The deposition of Maximiliano Sosa, Sr., was taken in the above-entitled matter pursuant to stipulations via videoconference by all counsel, the interpreter, Maximiliano Sosa, Sr., and the court reporter.

Maximiliano Sosa, Sr.'s physical location for the taking of the deposition was: Sanger, California.

The reporter's physical location for the taking of the deposition was: Fresno, California.

-- o0o --

A P P E A R A N C E S

For the Plaintiffs, Maria Sosa, L.S. by and through Guardian ad litem Maria Sosa, M.S. by and through guardian ad litem Jennifer Lopez, individually and as successors-in-interest to Maximiliano Sosa:

STEVEN A. LERMAN & ASSOCIATES, INC.
By: Nicholas M. Lerman
Attorney at Law
6033 West Century Boulevard
Suite 740
Los Angeles, California 90045
(310) 659-8166
nlerman@lermanslaw.com
- AND -
LAW OFFICES OF DALE K. GALIPO
By: Cooper Alison-Mayne
Attorney at Law
21800 Burbank Boulevard
Suite 310
Woodland Hills, California 91367
(818) 347-3333
cmayne@galipolaw.com

Q. Okay. And did Max still have the business in his name, even though you didn't move to Mexico?

A. No. In mid 2014, I changed it back to my name because...

Q. Okay. Because you decided to stay in the United States?

A. Yes.

Q. Did -- did Mr. Sosa, Jr., ever have to pay any money owed because of -- because he owned the business?

A. No. Everything that was there, I paid. Anything that needed to be paid, I paid.

Q. Okay. Did Mr. Sosa, Jr., ever work at your diesel business?

A. Yes. From the year 2010 to '14.

Q. Did Max -- I'm sorry. Did Mr. Sosa, Jr., have a paying job in the year before the incident, to your knowledge?

A. Yes.

Q. And do you know where he worked?

MR. LITTLE: "Cummings."

THE INTERPRETER: Thank you, Counsel.

THE WITNESS: He worked at the Cummings agent. It's a dealer where they do engines.

BY MS. SORENSEN:

Q. They do engines, like car engines?

A. We would go out to eat or we would just go out.

(Mr. Mayne exits proceeding.)

BY MS. SORENSEN:

Q. Would he bring his boys with him when he would go out to eat with you?

A. Yes.

Q. And about approximately how many hours would you spend with him on average during these visits?

A. At least three hours. Other times, half of the day.

MR. LITTLE: Proposed correction to the translation: I think the witness said "at least three hours."

THE INTERPRETER: I think that's what I interpreted. At least that is what I remember.

BY MS. SORENSEN:

Q. And before Mr. Sosa, Jr., died, when was the last instance that you spent time visiting with him?

A. So before that Saturday, it was Thursday. We were at the shop.

Q. I'm sorry, you said before that Saturday, you saw him on Thursday? Is that what you said?

A. Yes.

Q. And where was it that you saw him?

A. At my place of work.

Q. And what were you doing together?

things like your diesel business?
A. Yes.
Q. Anything else?
A. Everything. He was always there.
Q. Okay. So -- so are there other ways in which you've been emotionally and/or psychologically impacted other than finding it difficult to concentrate on things he helped you with?
A. It's everything.
Q. Please describe what you mean by "everything."
A. Going out. Camping -- going camping. Whenever I had a problem, he was there. He was always there.
Q. And how does that -- how does the loss of him affect you emotionally now?
A. I -- I'm not able to explain it to you. He's just not in my life anymore.
Q. Are there ways in which the loss of your son has affected your -- your health?
A. A lot.
Q. And in what way?
A. Especially in the -- the desire to keep going.
Q. And what -- what do you mean by that?
A. I think that somebody that somebody that went through the same thing would understand.
Q. And is there -- is -- is there a way you can

describe for me what you mean by it being difficult to -- to keep going on?

A. It involves everything.

Q. Okay. And can you be a little bit more specific?

A. When you, as a father, put your family first, give your life for them, and you do everything for them, and then somebody comes just because they have a gun and they put an end to it.

Q. And what I'm trying to do is I'm trying to see how this has -- I can see it has affected you; I'm trying to find out how specifically it's affected you and your health.

A. I don't know how else to explain it to you.

Q. Okay. Do you take any -- do you ever take any medication as a result of this incident?

A. No.

Q. Do you feel depression because of what happened to Mr. Sosa, Jr.?

A. A lot. Too much.

Q. Do you -- do you receive any counseling because of the feelings of depression?

A. No. The only thing I do is sometimes I drink.

Q. Okay. Do you -- do you feel like you -- when you say you drink, you drink alcohol?

A. Yes.

your son died?
A. No.
Q. Do you anticipate receiving any counseling or medical treatment or spiritual advisement related to this incident?
A. Maybe. Maybe, yes.
Q. What type of treatment are you considering?
A. Something as so not to feel pain. I don't know what.
Q. Did you suffer or incur any monetary damages as a result of this incident?
MR. LITTLE: I'm going to object to the form of the question that the extent "monetary damages" is a legal term that might not be understood fully by this witness.
But he can answer.
BY MS. SORENSEN:
Q. You can answer.
A. What was the question?
Q. Yeah. Did you suffer any loss of money as a result of this incident?
A. Yes. A lot.
Q. Okay. What -- how much money did you -- do you estimate that you lost as a result of this incident?
A. I don't have an amount because I had to let go of accounts that he used to help me with.

Q. And by "accounts," do you mean, like, customers?
A. Yes.
Q. And why did you have to let them go?
A. Because he used to help me to do those.
Q. Okay. And you couldn't find anybody else to help you with those?
A. No. No, he was the only one that could help me.
Q. And why was he the only one who could help you?
A. He was the only one who knew what I knew.
Q. And what did -- and can you please describe the nature of these clients or accounts that made it unique for Max to help you?
A. That would -- that would be motors or engines that had problems with the computer.
Q. Okay. And did you try to find anybody else who could help you with that?
A. Yes. But there was none.
Q. And did you ask anybody else to help you?
A. Different people. But they did not know how to do those jobs.
Q. Okay. And how many people did you ask?
A. After his death, I continued to look for somebody. Even now, they say they know, but they really don't know.
Q. Okay. How often would he work on those accounts

with you before he died?
A. Normally it was one or -- or twice per week after work.
Q. And are there any other monetary damages that you suffered as a result of this incident besides those accounts?
A. It was -- it was a double impact because of what he stopped doing and what I stopped doing.
Q. What do you mean by that?
A. The loss of what used to be done before.
Q. Do you mean Mr. Sosa, Jr., lost his job and also couldn't help you at your job anymore?
A. What he used to help me to do at my job.
Q. Okay. What did you mean by it was "double"?
A. What he used to do at my job and what I used to do.
Q. Okay. Are there any other damages or injuries that we have not discussed that you attribute to the loss of your son?
A. I don't know how else to explain it to you.
Q. Okay. I just wanted to make sure that you have told me every way in which this -- in which the loss of your son has impacted your life.
MR. LITTLE: And I'm going to propose an alternate translation. It sounded to me like he said "I really don't

# E R R A T A  S H E E T

Deposition of: ________________________________

Deposition date: ______________________________

Case name: ____________________________________

| Page | Line | Change/Explanation |
|---|---|---|
| ______ | ______ | ________________________________________ |
| ______ | ______ | ________________________________________ |
| ______ | ______ | ________________________________________ |
| ______ | ______ | ________________________________________ |
| ______ | ______ | ________________________________________ |
| ______ | ______ | ________________________________________ |
| ______ | ______ | ________________________________________ |
| ______ | ______ | ________________________________________ |
| ______ | ______ | ________________________________________ |
| ______ | ______ | ________________________________________ |
| ______ | ______ | ________________________________________ |
| ______ | ______ | ________________________________________ |
| ______ | ______ | ________________________________________ |

Date: __________________

Printed name: _______________ Signature: ________________

I, Taylor Ann Waltrip, CSR 14090, do hereby declare:

That, prior to being examined, the witness named in the foregoing deposition was by me duly sworn pursuant to Section 30(f)(1) of the Federal Rules of Civil Procedure and the deposition is a rtue record of the testimony given by the witness.

That said deposition was taken down by me in shorthand at the time and place therein names and thereafter reduced to text under my direction.

__X__ That the witness was requested to review the transcript and make any changes to the transcript as a result of that review pursuant to Section 30(e) of the Federal Rules of Civil Procedure.

_____ No changes have been provided by the witness during the period allowed.

_____ The changes made by the witness are appended to the transcript.

_____ No request was made that the transcript be reviewed pursuant to Section 30(e) of the Federal Rules of Civil Procedure.

I further declare that I have no interest in the event of the action.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

WITNESS my hand this 9th day of August, 2025.

______________________________
Taylor Ann Waltrip, CSR 14090

# EXHIBIT D

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

-- o0o --

CERTIFIED COPY

MARTHA ZEPEDA OLIVARES, individually and on behalf of the ESTATE OF MAXIMILIANO SOSA, JR.; MAXIMILIANO SOSA, SR.,

Plaintiffs,

vs.

Case No. 1:23-cv-01575-JLT-SAB

CITY OF FRESNO, UNKNOWN LAW ENFORCEMENT OFFICERS, POLICE CHIEF PACO BALDERRAMA and DOES 1-30,

Defendants.

---

[CONTINUED ON PAGE 2]

---

VIDEOCONFERENCE VIDEORECORDED DEPOSITION OF
MARTHA ZEPEDA OLIVARES

Yreka, California
Tuesday, August 5, 2025
1:19 p.m. to 4:50 p.m.

By: Taylor Ann Waltrip, CA CSR 14090
Our File: 8404

FRESNO DEPOSITION REPORTERS, INC.
516 W. SHAW AVENUE, SUITE 111, FRESNO, CALIFORNIA
PO BOX 755 WOODLAKE, CALIFORNIA 93286

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

-- o0o --

[CONTINUED FROM PAGE 1]

MARIA SOSA, L.S. by and through Guardian ad litem; MARIA SOSA; M.S., by and through Guardian ad litem, JENNIFER LOPEZ, individually and as successors-in-interest to Maximiliano Sosa

Plaintiffs,

vs.

CITY OF FRESNO and DOES 1-5,

Defendants.

VIDEOCONFERENCE VIDEORECORDED DEPOSITION OF
MARTHA ZEPEDA OLIVARES

Yreka, California
Tuesday, August 5, 2025
1:19 p.m. to 4:50 p.m.

By: Taylor Ann Waltrip, CA CSR 14090
Our File: 8404

FRESNO DEPOSITION REPORTERS, INC.
516 W. SHAW AVENUE, SUITE 111, FRESNO, CALIFORNIA
PO BOX 755 WOODLAKE, CALIFORNIA 93286

-- o0o --

The deposition of Maria Zepeda Olivares was taken in the above-entitled matter pursuant to stipulations via videoconference by all counsel, the interpreter, Maria Zepeda Olivares, and the court reporter.

Maria Zepeda Olivares's physical location for the taking of the deposition was: Yreka, California.

The reporter's physical location for the taking of the deposition was: Fresno, California.

-- o0o --

A P P E A R A N C E S

For the Plaintiffs, Maria Sosa, L.S. by and through Guardian ad litem Maria Sosa, M.S. by and through guardian ad litem Jennifer Lopez, individually and as successors-in-interest to Maximiliano Sosa:

STEVEN A. LERMAN & ASSOCIATES, INC.
By: Nicholas M. Lerman
Attorney at Law
6033 West Century Boulevard
Suite 740
Los Angeles, California 90045
(310) 659-8166
nlerman@lermanslaw.com
- AND -
LAW OFFICES OF DALE K. GALIPO
By: Cooper Alison-Mayne
Attorney at Law
21800 Burbank Boulevard
Suite 310
Woodland Hills, California 91367
(818) 347-3333
cmayne@galipolaw.com

Q. Okay. And then another payment to City of Sanger for $1,870 dated November 16th of 2023, and it looks like it's the same invoice that was previously discussed.
And so you don't know anything about any of these invoices, then?
A. No, no.
Q. Okay.
A. I know they were used for the expenses.
Q. How do you know that?
A. Because my daughter told me. I didn't personally do it, but she -- she's the one that took care of everything.
Q. Okay. Now, Ms. Olivares, other than speaking with your attorney, have you spoken with anyone before coming here to give your testimony today?
A. No.
Q. Where do you currently reside?
A. I live at 322 Arroyo Drive in Yreka, California 96097.
Q. And how long have you lived there?
A. On October 18th, it's is going to be -- it will be seven years. But at this address, three years at in address.
Q. I see. So you've been living in Yreka for seven years?

her fired; is that your testimony?
A. No.
Q. What was -- what was your relationship like with Max -- with Mr. Sosa, Jr., before he died?
A. The best. He was always calling. He always had plans for me and his children.
Q. How -- how frequently would you see each other in person?
A. Always through Face Time and whenever he would come in person to visit me.
Q. And how often would he come in person to visit you in Yreka?
A. Not -- not -- not often. It was an eight-hour distance from -- from him. So he would come visit me on my birthdays and Christmas -- special dates.
Q. I see. So would you estimate -- how many times per year would you estimate he'd go up to Yreka?
A. Two -- two or three times or more, more times.
Q. And would you go down to Fresno to see him and your grandsons?
A. Yes.
Q. And how many times per year would you drive down to Fresno?
A. Four or five times. Before, when I was working, once. But once I stopped working, it was more often.

Q. Okay. And you said that you would Face Time with Mr. Sosa, Jr.?
A. Yes.
Q. And how often would you Face Time with him?
A. That's the way we would communicate most of the time, through Face time. Whenever he was not busy, it would be two, three, or four times per week.
Q. And would you text with him a lot?
A. Yes.
Q. And I -- I have some of your text messages, so I will pull those up.
And Madam Court Reporter, I think I will mark these -- yes. This will be Exhibit 10, I think.
(Exhibit No. 10 was marked and attached.)
BY MS. SORENSEN:
Q. So, Ms. Olivares, are these your text messages between you and Mr. Sosa, Jr.?
A. Yes.
Q. And Ms. Olivares, again, if you need to take a break at any point, you can. Okay?
A. Okay.
Q. Ms. Olivares, what is this text message about? It depicts a picture. What is it, if you know?
A. When Jr. came -- when Jr. came for me in October, I had gifted him -- I had gifted him a bracelet, but it was

while I went to Fresno.
Q. Yes. That's what I said. It sounds -- it seems like he's asking you for photos of your grandsons, and I was going to ask, were you watching them for a few days?
A. For two weeks.
Q. You watched your grandsons in Fresno for two weeks?
A. Yes. At my son's house where he lived.
Q. Okay. And where was -- where was your son?
A. He was working at that time.
Q. Okay. And which -- for this first picture, which is on page 2 of that same Bates number, that same Bates number, who -- who is this a picture of?
A. That would be Max.
Q. And is he the older son of Mr. Sosa, Jr.?
A. Yes.
THE VIDEO OPERATOR: Videographer here. Videographer here. We have five minutes left on this media.
MS. SORENSEN: Oh. Okay.
THE VIDEO OPERATOR: Okay.
MS. SORENSEN: All right. We'll probably have to turn it over. Just let me know when you need to turn it over.
THE VIDEO OPERATOR: Okay. Will do.
BY MS. SORENSEN:
Q. And is this second picture of Lucas?

to say who's going to take care of the children. And I was telling him it pained me in my heart to see him by himself with the children.

In other words, I'm telling him that he doesn't have ready-to-eat food when he arrives home from work. I was also telling him that he was having to wake up the children early to take the children to the babysitter, the person who was going to take care of or watch the kids.

Q. Okay. And was he telling you that everything was going to be okay?

A. That was temporary, that this was temporary.

On the telephone, we had talked about -- that I was going to move in with him in December.

Q. Were you going to move from Yreka down to Fresno to live with Mr. Sosa, Jr.?

A. Yes.

Q. Was anyone else going to move with you?

A. My partner.

Q. And was your partner planning on living with you, Max, and Max's children?

A. Those were the plans for December.

Q. Okay. Were those plans firm, or were you just discussing them with Mr. Sosa, Jr.?

A. They were definite plans for December to move with Jr., my partner and myself.

Q. And how long were you planning on living down in Fresno? Was that going to be forever or just temporary?

A. The plan was to remain permanently with him in Fresno.

Q. Okay. And what does this text message say?

A. The one that you're marking right now, I was thanking him. I was thanking him for his words. I was concerned about -- about his drinking when he found out about what had happened with Maria.

Q. Did you notice him drinking more when he found out that Maria had cheated on him?

A. It wasn't like it was many times. My concern was that he was starting to drink. He would not drink like that before.

Q. Did you notice him becoming more depressed after finding out that Maria had cheated on him?

A. Yes.

Q. And what does this next text message say?

A. I was just reminding him that life goes on, that drinking leads to nothing good, and I was concerned that he was alone. I was telling him that I was proud of him and, again, that drinking leads to nothing good, and that God was with him and that I was praying for him.

Q. And just for the record, these text messages were on page 13 of that same production.

A. You're asking if I received any -- any damage to my body or physical?
Q. Yes.
A. Not to my body, but to my -- my mind, my living. Yes.
Q. Okay. Thank you for answering that. And I will ask you about those kinds of damages in just a little bit.
Did you suffer or incur any monetary damages as a result of this incident?
A. No.
Q. Okay. And let's now talk about the damages that have occurred to you in an emotional and psychological way.
Please describe what you've experienced due to the loss of your son. And I understand that this may be really hard, and you can take a break at any time you want.
A. A lot has changed. Where I'm living -- where I'm living, there's no psychological help. Everyone speaks English. I understand English, but I feel I cannot express all of my feelings and my anger.
About -- about -- about -- about three or four days ago, I had an appointment with my primary doctor. They are helping me to look for someone to whom I can express everything that I am feeling.
I'm afraid of driving. I feel that if I am pulled over by a police officer, I don't know how I am

going to respond. Due to everything that happened to my son, I -- I suffer from panic.

I don't have a lot of -- I don't have a lot of family here where I'm at. I don't have a lot of family here where I'm at. I'm only with my partner and my nephew.

What -- I don't want to go back to Fresno, because when I hear the ambulance and the police, I am filled with -- with not able to -- not having the power to do anything. I -- I -- I feel rage and powerless.

Q. And -- so -- no. Go ahead.

A. I know that life goes on, but -- but it's not the same after my son died.

Q. Okay. Are you afraid all of police now since the incident?

A. Yes. Yes.

Q. And what -- what makes you afraid of police specifically?

A. Because after seeing the video at the police department, I don't feel that I -- that I'm safe with police.

Q. And how did you feel about police before you -- before this incident?

A. I did not feel fear, because I had not experienced something like this before. Now I don't feel like driving. I get -- I'm scared.

# E R R A T A S H E E T

Deposition of: ______________________________

Deposition date: ______________________________

Case name: ______________________________

| Page | Line | Change/Explanation |
|---|---|---|
| ______ | ______ | ______________________________ |
| ______ | ______ | ______________________________ |
| ______ | ______ | ______________________________ |
| ______ | ______ | ______________________________ |
| ______ | ______ | ______________________________ |
| ______ | ______ | ______________________________ |
| ______ | ______ | ______________________________ |
| ______ | ______ | ______________________________ |
| ______ | ______ | ______________________________ |
| ______ | ______ | ______________________________ |
| ______ | ______ | ______________________________ |
| ______ | ______ | ______________________________ |
| ______ | ______ | ______________________________ |

Date: ____________________

Printed name: ________________ Signature: ________________

I, Taylor Ann Waltrip, CSR 14090, do hereby declare:

That, prior to being examined, the witness named in the foregoing deposition was by me duly sworn pursuant to Section 30(f)(1) of the Federal Rules of Civil Procedure and the deposition is a rtue record of the testimony given by the witness.

That said deposition was taken down by me in shorthand at the time and place therein names and thereafter reduced to text under my direction.

__X__ That the witness was requested to review the transcript and make any changes to the transcript as a result of that review pursuant to Section 30(e) of the Federal Rules of Civil Procedure.

_____ No changes have been provided by the witness during the period allowed.

_____ The changes made by the witness are appended to the transcript.

_____ No request was made that the transcript be reviewed pursuant to Section 30(e) of the Federal Rules of Civil Procedure.

I further declare that I have no interest in the event of the action.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

WITNESS my hand this 9th day of August, 2025.

_______________________________
Taylor Ann Waltrip, CSR 14090

# EXHIBIT E

Kevin G. Little, SBN 149818
Michelle L. Tostenrude, SBN 290121
**LAW OFFICE OF KEVIN G. LITTLE**
1225 E Divisadero St
Fresno, CA 93721
Telephone: (559) 342-5800
Facsimile: (559) 242-2400
E-Mail: service@kevinglittle.com

Attorneys for Plaintiffs Martha Zepeda Olivares, individually and on behalf of the Estate of Maximiliano Sosa, Jr., and Maximiliano Sosa, Sr.

**KGL**
**LAW OFFICE OF KEVIN G. LITTLE**
Fresno | San Francisco | San Diego

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

MARTHA ZEPEDA OLIVARES, individually and on behalf of the ESTATE OF MAXIMILIANO SOSA, JR.; MAXIMILIANO SOSA, SR.,

Plaintiffs,

vs.

CITY OF FRESNO; FRESNO POLICE OFFICER JOHN AYERS; FRESNO POLICE OFFICE BRANDON CROCKETT; FRESNO POLICE OFFICER JONATHAN ABRAHAM; FRESNO POLICE OFFICER ANTHONY AGUILAR; UNKNOWN LAW ENFORCEMENT OFFICERS; FORMER POLICE CHIEF PACO BALDERRAMA; and DOES 1-30,

Defendants.

Case No.: 1:23-cv-01575-JLT-SAB

**PLAINTIFF MARTHA OLIVARES, individually and on behalf of the ESTATE OF MAXIMILLIANO SOSA, JR., AND MAXIMILLIANO SOSA, SR.'S RESPONSE TO SPECIAL INTERROGATORIES, SET TWO**

Judge: Hon. Jennifer L. Thurston
Dept: Crtrm 4, FL 7
Action Filed: 7/1/2025
Trial Date: 4/6/2027

PROPOUNDING PARTY: Defendant CITY OF FRESNO

RESPONDING PARTY: Plaintiffs MARTHA ZEPEDA OLIVARES, individually and on behalf of the ESTATE OF MAXIMILLIANO SOSA, JR., and MAXIMILIANO SOSA, SR

SET NO.: TWO

KGL
LAW OFFICE OF KEVIN G. LITTLE
Fresno | San Francisco | San Diego

Responding Party has not completed investigation of the facts relating to this case, has not fully completed discovery in this action, and has not completed preparation for trial. All of the responses contained herein are based only upon such information and documents as are presently available to and specifically known to Responding Party and disclosed only those contentions that presently occur to such party. It is anticipated that further discovery, independent investigation, legal research, and analysis may supply additional facts, add meaning to the known facts, as well as establish entirely new factual conclusions and legal contentions, all of which may lead to substantial additions to, changes in, and variations from the contentions herein set forth. The following responses are given without prejudice to Responding Party's right to produce evidence of any subsequently discovered fact or facts that Responding Party may later recall. Responding Party accordingly reserves the right to change any and all responses herein as additional facts are ascertained, analyses are made, legal research is contemplated, and contentions are made. The responses contained herein are made in good faith effort to supply as much factual information and as much specification of legal contentions as is presently known but should in no way be to the prejudice of the Responding Party in relation to further discovery, research or analysis.

**RESPONSE TO SPECIAL INTERROGATORIES**

**INTERROGATORY NO. 11:**

State all facts supporting your contention that the Individual Defendant Officers failed to utilize available mental health crisis resources during the Incident.

**RESPONSE:**

Individual officers were contemporaneously aware of the Decedent's mental health crisis, yet throughout the lengthy incident no mental health professional, trained negotiator, or person trained sufficiently in crisis intervention was summoned to the scene, or even telephoned.

**INTERROGATORY NO. 12:**

Describe in detail all injuries, damages, or losses that Plaintiffs claim resulted from the Incident, including the nature, extent, and current status of each.

**RESPONSE:**

Plaintiffs object to this interrogatory as it has, in substance, already been responded to in Plaintiffs' response to Interrogatories, Set One. Please see Plaintiffs' response to Interrogatory No. 5. Plaintiffs incorporate that prior response by reference.

**<u>INTERROGATORY NO. 13:</u>**

State all facts supporting your contention that Plaintiffs are entitled to damages for loss of companionship, comfort, support, society, care, or sustenance.

**RESPONSE:**

Plaintiffs object to this interrogatory as it has, in substance, already been responded to in Plaintiffs' responses to Interrogatories, Set One. Please see Plaintiffs' responses to Interrogatory Nos. 5 and 8. Plaintiffs incorporate that prior response by reference. Furthermore, as testified to in their deposition, plaintiff Marta Zepeda Olivares had been promised to move in with and be supported by the decedent and had already acted in reliance on that promise, so the loss of the decedent has completely changed her present and future financial plans. As for plaintiff Maximiliano Sosa, Sr., as he testified in his deposition, his son was supporting him in his business and was the person that managed the more difficult jobs that enabled the business to keep its clientele. Decedent also vowed to take over his father's business and support him.

**<u>INTERROGATORY NO. 14:</u>**

State all facts supporting your contention that Decedent was a qualified individual with a disability under the ADA, Rehabilitation Act, or Unruh Act at the time of the Incident.

**RESPONSE:**

At the time of his death, Max Sosa, Jr. was clearly experiencing a severe mental health crisis that was disabling and limiting in nature. The Decedent stated that he wanted to either kill himself or be killed numerous separate times during those early morning hours. Individual officers on scene were contemporaneously aware of the Decedent's mental health crisis, yet throughout the lengthy





KGL
LAW OFFICE OF KEVIN G. LITTLE
Fresno | San Francisco | San Diego

KGL
LAW OFFICE OF KEVIN G. LITTLE
Fresno | San Francisco | San Diego

incident no mental health professional, trained negotiator, or person trained sufficiently in crisis intervention was summoned to the scene, or even telephoned. Decedent received no accommodation for his obvious disability.

**INTERROGATORY NO. 15:**

Describe in detail all facts supporting your contention that the City of Fresno failed to provide reasonable accommodations to Decedent under the ADA, Rehabilitation Act, or Unruh Act.

**RESPONSE:**

At the time of his death, Max Sosa, Jr. was clearly experiencing a severe mental health crisis that was disabling and limiting in nature. The Decedent stated that he wanted to either kill himself or be killed numerous separate times during those early morning hours. Individual officers on scene were contemporaneously aware of the Decedent's mental health crisis, yet throughout the lengthy incident no mental health professional, trained negotiator, or person trained sufficiently in crisis intervention was summoned to the scene, or even telephoned. Decedent received no accommodation for his obvious disability.

**INTERROGATORY NO. 16:**

State all facts supporting your contention that Plaintiffs are the proper successors in interest to the Estate of Maximiliano Sosa, Jr and not his wife Maria Sosa or his children, L.S. and M.S.

**RESPONSE:**

Plaintiffs object to this interrogatory as it has, in substance, already been responded to in Plaintiffs' response to Interrogatories, Set One. Please see Plaintiffs' response to Interrogatory No. 8. Plaintiffs incorporate that prior response by reference.

**INTERROGATORY NO. 17:**

Describe in detail all facts supporting your contention that the Individual Defendant Officers attempted to conceal their conduct or the cause of Decedent's Death.

KGL
LAW OFFICE OF KEVIN G. LITTLE
Fresno | San Francisco | San Diego

**RESPONSE:**

The individual defendants, in their reports and statements and depositions, downplay and misstate the obvious severity of the decedent's mental health crisis, as well as the necessity for the use of deadly force. Plaintiffs contend that deadly force was not necessary and that there was every opportunity to deescalate the situation in the alternative.

**INTERROGATORY NO. 18:**

State all facts supporting your contention that Plaintiffs or Decedent suffered economic damages as a result of the Incident, including lost wages, funeral expenses, or other financial losses.

**RESPONSE:**

Plaintiffs object to this interrogatory as it has, in substance, already been responded to in Plaintiffs' response to Interrogatories, Set One. Please see Plaintiff's response to Interrogatory No. 5. Plaintiffs incorporate that prior response by reference.

**INTERROGATORY NO. 19:**

State all facts that support your contention that Maximiliano Sosa, Jr. was legally separated from Maria Sosa at the time of the Incident.

**RESPONSE:**

Plaintiffs object to this interrogatory as it has, in substance, already been responded to in Plaintiffs' response to Interrogatories, Set One. Please see Plaintiffs' response to Interrogatory No. 8. Plaintiffs incorporate that prior response by reference. Plaintiffs do not intend on continuing with this contention, based on more recent developments and new information.

**INTERROGATORY NO. 20:**

State the factual basis for your claim that your daughter, Selise Sosa, paid for or managed the expenses submitted as damages in this action.

**RESPONSE:**

Selise Sosa speaks English far better than her parents and helped them in matters related to Max's expenses in the aftermath of the decedent's passing.

**<u>INTERROGATORY NO. 21:</u>**

State the factual basis for your claim that Maria Sosa prevented you from seeing your grandchildren.

**RESPONSE:**

Plaintiffs object to this interrogatory, since "claim" is vague and is subject to various interpretations. Plaintiffs have not alleged a cause of action in this lawsuit of the sort referenced in this interrogatory. Plaintiffs will not respond further.

**<u>INTERROGATORY NO. 22:</u>**

State the factual basis for your claim that you lost business accounts or customers as a result of the Incident.

**RESPONSE:**

The Decedent helped his father, Maximilliano Sr., manage client accounts and other work related issues that only the Decedent and his father knew how to handle. After Max's death, Plaintiff has been unable to find someone with a similar skill set. Additionally, Plaintiff Maximilliano Sosa, Sr. relied on the Decedent to help him with jobs, and his death resulted in the loss of that help. Max Jr.'s death also caused Plaintiff to miss work due to his grief. These issues were covered in Mr. Sosa's deposition.

**<u>INTERROGATORY NO. 23:</u>**

State the factual basis for your claim that you never personally communicated with Maria Sosa's employer nor did you instruct anyone to communicate with Maria Sosa's employer regarding her personal matters.

KGL
LAW OFFICE OF KEVIN G. LITTLE
Fresno | San Francisco | San Diego

KGL
LAW OFFICE OF KEVIN G. LITTLE
Fresno | San Francisco | San Diego

**RESPONSE:**

Plaintiffs object to this interrogatory, because it seeks explanation for a self-explanatory contention. It is therefore vague. Plaintiffs' contention is based on their knowledge and actions.

**INTERROGATORY NO. 24:**

State the factual basis for your claim that you did not communicate with Anna Yuriar regarding Maria Sosa's personal matters.

**RESPONSE:**

Plaintiffs object to this interrogatory, because it seeks explanation for a self-explanatory contention. It is therefore vague. Plaintiffs' contention is based on their knowledge and actions.

**INTERROGATORY NO. 25:**

State the factual basis for your claim that you did not instruct Anna Yuriar to communicate with Maria Sosa's employer.

**RESPONSE:**

Plaintiffs object to this interrogatory, because it seeks explanation for a self-explanatory contention. It is therefore vague. Plaintiffs' contention is based on their knowledge and actions.

Dated: June 3, 2026

LAW OFFICE OF KEVIN G. LITTLE

*/s/ Kevin G. Little*
Kevin G. Little
Attorneys for Plaintiffs Martha Zepeda Olivares, individually and on behalf of the Estate of Maximiliano Sosa, Jr., and Maximiliano Sosa, Sr.

KGL
LAW OFFICE OF KEVIN G. LITTLE
Fresno | San Francisco | San Diego

# PROOF OF SERVICE

My business address is 1225 E. Divisadero Street, Fresno, CA 93721. I am employed in Fresno County, California. I am over the age of 18 years and am not a party to this case.

On the date indicated below, I served the foregoing document(s) described as PLAINTIFF MARTHA OLIVARES, individually and on behalf of the ESTATE OF MAXIMILLIANO SOSA, JR., AND MAXIMILLIANO SOSA, SR.'S RESPONSE TO SPECIAL INTERROGATORIES, SET TWO to all interested parties in this action as indicated in the attached service list and in the manner as described below:

☐ (BY MAIL) I am readily familiar with the business' practice for collection and processing of correspondence for mailing, and that correspondence, with postage thereon fully prepaid, will be deposited with the United States Postal Service on the date noted below in the ordinary course of business at Fresno, California.

☐ (BY PERSONAL SERVICE) I caused delivery of such envelope(s) by hand, to the office(s) of the address(es) on the proceeding page.

☑ (BY ELECTRONIC MAIL) I caused such documents to be scanned into PDF format and sent via electronic mail to the electronic mail address(es) of the address(es) designated on the proceeding page.

☐ (BY FACSIMILE) I caused the above-referenced document to be delivered by facsimile to the facsimile number(s) of the address(es) on the proceeding page.

☐ (BY OVERNIGHT COURIER) I caused the above-referenced envelope(s) to be delivered to an overnight courier service for delivery to the address(es) on the proceeding page.

**EXECUTED ON June 3, 2026 at Fresno, California.**

☐ (STATE) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☑ (FEDERAL) I declare that I am employed in this office as a member of the bar of this court at whose direction this service was made.

*/s/ Jasmine Tanoury*
JASMINE TANOURY

**PROOF OF SERVICE - SERVICE LIST**

Dale Galipo
Cooper Mayne
LAW OFFICES OF DALE K. GALIPO
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Telephone: 818-347-3333
Fax:
dalekgalipo@yahoo.com,
*Attorney for Non-Party Maria Sosa*

Mildred K. O'Linn
Maya Sorensen
MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP (LOS ANGELES)
801 S. Figueroa St, 15th floor
Los Angeles, CA 90017
Telephone: 213-624-6900
Fax: (213) 624-6999
missy.olinn@manningkass.com, Maya.Sorensen@manningkass.com,
nichole.santiago@manningkass.com, christopher.kinney@manningkass.com,
angela.thompson@manningkass.com, delia.flores@manningkass.com
*Attorney for Defendants, CITY OF FRESNO, UNKNOWN LAW ENFORCEMENT OFFICERS, and POLICE CHIEF PACO BALDERRAMA*

**VERIFICATION**

I am Martha Zepeda Olivares, individually and on behalf of the Estate of Maximiliano Sosa, Jr., Plaintiff in the matter of Estate of Maximiliano Sosa Jr. v. City of Fresno; County Superior Court Case No.: 1:23-cv-01575-JLT-SAB. I am familiar with the contents of the foregoing responses to the Interrogatories, Set Two. The information supplied therein is based on my own personal knowledge and/or has been supplied by my attorneys or other agents and is therefore provided as required by law. The information contained in the foregoing document is true, except as to the matters which were provided by my attorneys or other agents, and, as to those matters, I am informed and believe that they are true.

I declare under penalty of perjury according to the laws of the State of California that the above is true and correct.

Date: May 26, 2026

Martha Zepeda Olivares
Martha Zepeda Olivares,
individually and on behalf of the
Estate of Maximiliano Sosa, Jr.

KGL

**VERIFICATION**

I am Maximiliano Sosa, Sr., Plaintiff in the matter of Estate of Maximiliano Sosa Jr. v. City of Fresno; County Superior Court Case No.: 1:23-cv-01575-JLT-SAB. I am familiar with the contents of the foregoing responses to the Interrogatories, Set Two. The information supplied therein is based on my own personal knowledge and/or has been supplied by my attorneys or other agents and is therefore provided as required by law. The information contained in the foregoing document is true, except as to the matters which were provided by my attorneys or other agents, and, as to those matters, I am informed and believe that they are true.

I declare under penalty of perjury according to the laws of the State of California that the above is true and correct.

Date: May 26, 2026

Max Sosa
Maximiliano Sosa, Sr.

KGL

# EXHIBIT F

**1B Maximilliano Sosa, JR (Estate) 23CEPR01424**

**Attorney: Cooper Alison-Mayne, (for Petitioner, Maria Sosa, Lucas Sosa, and Maximiliano Sosa, III)**
**Attorney: Kevin G. Little (for Administrator, Martha Zepeda)**

**Petition for Termination of Proceedings and Discharge**

| | | | | |
|---|---|---|---|---|
| **Age:**<br>**DOB:** | | | | **NEEDS/PROBLEMS/COMMENTS:**<br><br>**CONTINUED TO 11/4/2026 by Examiner.** Additional time is needed for review the petition for termination.<br><br>Appearance on 9/29/2026 is not necessary/required. |
| | | | | |
| | | | | |
| | | | | |
| **Cont. from** | | | | |
| | **Aff.Sub.Wit.** | | | |
| | **Verified** | | | |
| | **Inventory** | | | |
| | **PTC** | | | |
| | **Not.Cred.** | | | |
| | **Notice of Hrg** | | | |
| | **Aff.Mail** | | | |
| | **Aff.Pub.** | | | |
| | **Sp.Ntc.** | | | |
| | **Pers.Serv.** | | | |
| | **Conf. Screen** | | | |
| | **Letters** | | | |
| | **Duties/Supp** | | | |
| | **Objections** | | | |
| | **Video Receipt** | | | |
| | **CI Report** | | | |
| | **9202** | | | |
| | **Order** | | | |
| | **Aff. Posting** | | | **Reviewed by:** cvn |
| | **Status Rpt** | | | **Reviewed on:** 9/28/2026 |
| | **UCCJEA** | | | **Updates:** |
| | **Citation** | | | **Recommendation:** |
| | **FTB Notice** | | | **File 1B – Sosa** |

**1B**

# EXHIBIT G

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

--oOo--

MARIA SOSA, L.S. by and through Guardian ad litem JENNIFER LOPEZ, M.S. by and through guardian ad litem JENNIFER LOPEZ, individually and as successors-in-interest to Maximiliano Sosa,

Plaintiffs,

v. Case No. 1:23-cv-01575-JLT-SAB

CITY OF FRESNO, JOHN AYERS, BRANDON CROCKETT, JONATHAN ABRAHAM, and ANTHONY AGUILAR,

Defendants.
_________________________________/

STENOGRAPHIC REPORTER'S TRANSCRIPT OF

REMOTE VIDEOTAPED DEPOSITION OF

JOHN AYERS

WEDNESDAY, APRIL 22, 2026

Reported Stenographically by:

KIMBERLY D'URSO, CSR 11372, RPR

Job No. 24521

John Ayers

APPEARANCES (Remote)

FOR THE PLAINTIFF:

LAW OFFICES OF DALE K. GALIPO
BY: COOPER MAYNE, ESQ.
21800 Burbank Boulevard, Suite 310
Woodland Hills, California 91367
818.347.3333
cmayne@galipolaw.com

LAW OFFICE OF KEVIN G. LITTLE
BY: KEVIN G. LITTLE, ESQ.
P.O. Box 8656
Fresno, CA 93747
kevin@kevinglittle.com

FOR THE DEFENDANTS:

MANNING & KASS ELLROD RAMIREZ TRESTER, LLP
BY: MILDRED O'LIN, ESQ.
One California Street, Suite 900
San Francisco, CA 941114
Missy.OLinn@manningkass.com

ALSO PRESENT:

Said Hofiani, Videographer

--oOo--

INDEX OF EXAMINATION

WITNESS: JOHN AYERS

EXAMINATION BY PAGE

MR. MAYNE..........................6, 81

MR. LITTLE...........................59

EXHIBITS FOR REFERENCE

EXHIBIT DESCRIPTION PAGE

Ex 1 - Statement.............................89

--oOo--

Officer Abraham had available?

A. I do not.

Q. Did you know at the time whether he had a Taser?

A. Yes.

Q. And he did have a Taser?

A. Yes.

Q. Before the door was opened -- so after you heard a door close outside, but before the door was opened, you and Officer Abraham had your firearms holstered; is that right?

A. Yes.

Q. And you were not facing any imminent threat; is that right?

MS. O'LINN: Until the door was open.

THE WITNESS: Until the door was open, no.

BY MR. MAYNE:

Q. And at that point, you believed that Max was -- sorry -- that Mr. Sosa was likely going to come back to the apartment; is that right?

MS. O'LINN: Objection. Argumentative.

You can answer the question.

THE WITNESS: I don't understand the question.

(Reporter clarification.)

BY MR. MAYNE:

Q. And I'm just going off of your statement. So my understanding was that, based on your conversations with Mr. Sosa, you believed that there was a high probability that he would come back to the apartment, and that's why you called some backup resources?

A. Yes, based on multiple different aspects of things: Him trying to run over my partner. The pursuits staying in the same area as the apartment. Him threatening me, specifically, and other officers, whenever I was on the phone with him.

I felt like he was going to return to the apartment, just based on all of those.

Q. So now going to that moment when the door is closed. At that moment, you still held that belief that Max was very likely to come back to the apartment; is that correct?

A. Yes.

Q. And you believed, at that point, that he was intent on committing suicide by cop; is that correct?

A. Yes.

Q. Do you recall whether there was a window to the right of the door, looking from the inside?

A. I don't recall.

Q. Did you ever consider looking out the window to see who was outside, instead of opening the door?

# EXHIBIT H

Anthony Aguilar

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

--oOo--

MARIA SOSA, L.S. by and through Guardian ad litem JENNIFER LOPEZ, M.S. by and through guardian ad litem JENNIFER LOPEZ, individually and as successors-in-interest to Maximiliano Sosa,

Plaintiffs,

v. Case No. 1:23-cv-01575-JLT-SAB

CITY OF FRESNO, JOHN AYERS, BRANDON CROCKETT, JONATHAN ABRAHAM, and ANTHONY AGUILAR,

Defendants.
_________________________________/

STENOGRAPHIC REPORTER'S TRANSCRIPT OF

REMOTE VIDEOTAPED DEPOSITION OF

ANTHONY AGUILAR

THURSDAY, APRIL 23, 2026

Reported Stenographically by:

KIMBERLY D'URSO, CSR 11372, RPR

Job No. 24522

APPEARANCES (Remote)

FOR THE PLAINTIFF:

LAW OFFICES OF DALE K. GALIPO
BY: COOPER MAYNE, ESQ.
21800 Burbank Boulevard, Suite 310
Woodland Hills, California 91367
818.347.3333
cmayne@galipolaw.com

LAW OFFICE OF KEVIN G. LITTLE
BY: KEVIN G. LITTLE, ESQ.
P.O. Box 8656
Fresno, CA 93747
kevin@kevinglittle.com

NICHOLAS MILES LERMAN, ESQ.
6033 West Century Blvd., Ste 740
Los Angeles, CA 90045
nmlerman0@yahoo.com

FOR THE DEFENDANTS:

MANNING & KASS ELLROD RAMIREZ TRESTER, LLP
BY: MILDRED O'LIN, ESQ.
One California Street, Suite 900
San Francisco, CA 941114
Missy.OLinn@manningkass.com

ALSO PRESENT:

Officer Jonathan Abraham
Ms. Zepeda Olivares
Mr. Sosa, Senior
Jasmine Tanoury, Paralegal

Karen Torres-Corona, Videographer

--oOo--

# INDEX OF EXAMINATION

WITNESS: ANTHONY AGUILAR


| EXAMINATION BY | PAGE |
| --- | --- |
| MR. MAYNE | 5 |
| MR. LITTLE | 39 |
| MS. O'LINN | 57 |


## EXHIBITS FOR REFERENCE

| EXHIBIT | DESCRIPTION | PAGE |
| --- | --- | --- |

(None marked.)

--oOo--

Anthony Aguilar

staircase?

A. Correct.

Q. Okay. So Mr. Sosa, what did you expect to happen to him, if he -- if your Taser deployment was unsuccessful?

MS. O'LINN: Objection. Argumentative as phrased.

At what point?

MR. LITTLE: Okay.

BY MR. LITTLE:

Q. At the time you fired your Taser, did you have any expectation as to what would happen to him if that activation was unsuccessful?

MS. O'LINN: Again, scope, and totality of the circumstances. Unclear. Calls for speculation. Vague and ambiguous. Incomplete hypothetical.

MR. LITTLE: Okay. All right.

BY MR. LITTLE:

Q. So if -- didn't you, at the time that you deployed your Taser, believe that if it was ineffective and if Mr. Sosa remained in possession of those scissors, that he was going to be shot?

MS. O'LINN: Same objection.

If you know.

THE WITNESS: No.

Anthony Aguilar

BY MR. LITTLE:
Q. Okay. Now, we talked a little bit about avenue of escape, and I think you agree there was no avenue of escape available to Mr. Sosa; right?
A. Correct.
Q. Neither in the apartment nor in the breezeway?
A. Correct.
Q. Okay. So would you agree that someone utilizing the Taser can be covered by other officers who are utilizing both -- I'm sorry. Let me rephrase.
Would you agree that an officer utilizing a Taser can be covered by officers with either less-lethal or lethal amu- -- weapons?
MS. O'LINN: Objection. Incomplete hypothetical. Argumentative. Calls for speculation.
THE WITNESS: Can you rephrase that, sir? I'm sorry.
BY MR. LITTLE:
Q. Sure. If you are using a Taser, you could be covered by multiple officers, some with less-lethal and some with lethal weapons?
MS. O'LINN: Same objection.
THE WITNESS: Correct.
BY MR. LITTLE:
Q. Okay. And an example of a less-lethal weapon