Kevin G. Little, SBN 149818
LAW OFFICE OF KEVIN G. LITTLE
P.O. Box 8656
Fresno, California 93747
Telephone: (559) 342-5800
Facsimile: (559) 242-2400
Email: service@kevinglittle.com

Attorney for Plaintiffs MARTHA ZEPEDA OLIVARES, individually and on behalf of the ESTATE OF MAXIMILIANO SOSA, JR., and MAXIMILIANO SOSA, SR.

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION**

MARTHA ZEPEDA OLIVARES, individually and on behalf of the ESTATE OF MAXIMILIANO SOSA, JR.; MAXIMILIANO SOSA, SR.,

Plaintiffs,

v.

CITY OF FRESNO, UNKNOWN LAW ENFORCEMENT OFFICERS, POLICE CHIEF PACO BALDERRAMA and DOES 1-30,

Defendants.

---

MARIA SOSA, L.S. by and through guardian ad litem MARIA SOSA, M.S. by and through guardian ad litem JENNIFER LOPEZ, individually and as successors-in-interest to Maximilian Sosa,

Plaintiffs,

v.

CITY OF FRESNO and DOES 1-5,

Defendants.

Case No. 1:23-cv-01575-JLT-SAB

District Judge: Hon. Jennifer L. Thurston
Magistrate Judge: Hon. Stanley A. Boone

**DECLARATION OF MAXIMILIANO SOSA, SR. IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

[Filed concurrently with Memorandum of Points and Authorities; Response to Separate Statement of Undisputed Facts; Statement of Additional Disputed Facts; Declarations of Kevin G. Little and Martha Zepeda Olivares; Request for Judicial Notice; Evidentiary Objections]

Date: November 20, 2026
Time: 9:00 a.m.
Crtrm.: 4

TO THE HONORABLE COURT, DEFENDANTS, AND THEIR COUNSEL OF RECORD:

I, Maximiliano Sosa, Sr., declare:



KGL
LAW OFFICE OF KEVIN G. LITTLE
Fresno | San Francisco | San Diego

1. I am a plaintiff in this action and the father of Maximiliano Sosa, Jr. ("Max"), who was shot and killed by Fresno police on November 4, 2023. I make this declaration in opposition to Defendants' motion for summary judgment. I have personal knowledge of the facts stated here, and if called as a witness I could and would testify competently to them. My first language is Spanish. This declaration was read to me in Spanish before I signed it, and I understand it.

2. I am a diesel mechanic. I have worked for myself since 2006. My shop is between where Max lived and where I live, and I testified at my deposition that I "live and work in between" them.

3. I own my business, and my income depends on it. I do not take a regular salary or draw. What I have to live on is whatever the business brings in. I do not receive Social Security or a pension.

4. Max worked for me in my business from 2010 to 2014, and he knew diesel engines. In the year before he died he had a job of his own at a Cummins dealer, working on engines. He kept helping me whenever I needed him.

5. In the year before Max died he helped me with my work one or two times a week, after he finished his own job. The work he helped with was the harder work: engines with problems in the computer controls. Max was the only person I knew who knew what I knew about those jobs. Most mechanics I asked could not do them. I asked different people to help, both before and after Max died, and none of them could do those jobs.

6. The jobs that Max helped me with were important to my income. I relied on Max to keep my larger clients, and those clients were vital to my business and to my ability to support myself. With Max's help I was able to keep those clients and keep my business running. Without him, I could not do those jobs.

7. Max's help made a difference in whether I could pay for the things I need to live. The income from the clients Max helped me keep was part of what I used to pay for my housing, food, utilities and other necessities. Since Max died my business has suffered failures. I have looked for someone to replace him and have not found anyone.

KGL
LAW OFFICE OF KEVIN G. LITTLE
*Fresno | San Francisco | San Diego*

KGL
LAW OFFICE OF KEVIN G. LITTLE
*Fresno | San Francisco | San Diego*

8. At my deposition on August 5, 2025, I was asked whether Max ever gave me financial support, and I answered no. I understood the question to ask whether Max supported me regularly. Max helped me from time to time when I needed it, but not regularly. Most of the help Max gave me was helping me keep my business running, and the business is what I live on. My attorney asked me about that at the end of the deposition, and I agreed that Max "was helping me in business that I use to support myself."

9. I planned for Max to take over my business when I became too old to work, and to support me. He was my beneficiary. I expected to rely on the business, and on Max, to support me in my retirement, and Max was the person I had chosen to carry the business on and to look after me.

10. Max and I were very close. In the year before he died I saw him in person two, three or four times a week. We went out to eat or just went out, often with his boys, and we spent at least three hours together and sometimes half the day. We also went camping. Whenever I had a problem, he was there. Since he died, he is just not in my life anymore.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October 30, 2026, at Fresno, California.

Max Sosa

MAXIMILIANO SOSA, SR.

KGL
LAW OFFICE OF KEVIN G. LITTLE
*Fresno | San Francisco | San Diego*

**DECLARATION OF TRANSLATOR**

I, Kevin G. Little, declare: I am an attorney licensed to practice in California, and I am fluent in English and Spanish. On October 30, 2026, I translated the foregoing declaration from English into Spanish, and I read the Spanish translation, which is attached, verbatim to Maximiliano Sosa, Sr. He told me that he understood it and that it is true. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October 30, 2026, at Fresno, California.

*/s/ Kevin G. Little*
KEVIN G. LITTLE

**TRADUCCIÓN AL ESPAÑOL (SPANISH TRANSLATION)**

**DECLARACIÓN DE MAXIMILIANO SOSA, SR.**

Olivares v. City of Fresno, No. 1:23-cv-01575-JLT-SAB (E.D. Cal.)

Yo, Maximiliano Sosa, Sr., declaro:

1. Soy demandante en esta acción y soy el padre de Maximiliano Sosa, Jr. (“Max”), a quien la policía de Fresno disparó y mató el 4 de noviembre de 2023. Hago esta declaración en oposición a la moción de sentencia sumaria de los Demandados. Tengo conocimiento personal de los hechos que aquí se exponen y, si fuera llamado como testigo, podría declarar y declararía sobre ellos con competencia. Mi primer idioma es el español. Esta declaración me fue leída en español antes de firmarla, y la entiendo.

2. Soy mecánico de diesel. Trabajo por mi cuenta desde 2006. Mi taller queda entre donde vivía Max y donde vivo yo, y en mi deposición declaré que “vivo y trabajo en medio” de los dos.

3. Soy dueño de mi negocio y mis ingresos dependen de él. No recibo un sueldo regular ni retiro dinero del negocio de manera regular. Lo que tengo para vivir es lo que el negocio produce. No recibo Seguro Social ni pensión.

4. Max trabajó para mí en mi negocio de 2010 a 2014, y conocía los motores diesel. En el año antes de morir tenía un trabajo propio en un distribuidor de Cummins, trabajando en motores. Siguió ayudándome siempre que lo necesitaba.

5. En el año antes de que Max muriera, me ayudaba con mi trabajo una o dos veces por semana, después de terminar su propio trabajo. El trabajo en el que me ayudaba era el más difícil: motores con problemas en los controles de computadora. Max era la única persona que yo conocía que sabía lo que yo sabía sobre esos trabajos. La mayoría de los mecánicos a quienes se lo pedí no podían hacerlos. Pedí ayuda a distintas personas, antes y después de que Max muriera, y ninguna pudo hacer esos trabajos.

6. Los trabajos en los que Max me ayudaba eran importantes para mis ingresos. Yo dependía de Max para conservar a mis clientes más grandes, y esos clientes eran vitales para mi negocio y

para mi capacidad de mantenerme. Con la ayuda de Max pude conservar a esos clientes y mantener mi negocio funcionando. Sin él, yo no podía hacer esos trabajos.

7. La ayuda de Max marcaba la diferencia en si yo podía pagar lo que necesito para vivir. Los ingresos de los clientes que Max me ayudó a conservar eran parte de lo que yo usaba para pagar mi vivienda, comida, servicios y otras necesidades. Desde que Max murió, mi negocio ha sufrido fracasos. He buscado a alguien que lo reemplace y no he encontrado a nadie.

8. En mi deposición del 5 de agosto de 2025 me preguntaron si Max alguna vez me dio apoyo económico, y contesté que no. Yo entendí que la pregunta era si Max me mantenía de manera regular. Max me ayudaba de vez en cuando, cuando yo lo necesitaba, pero no de manera regular. La mayor parte de la ayuda que Max me daba era ayudarme a mantener mi negocio funcionando, y el negocio es de lo que yo vivo. Mi abogado me preguntó sobre eso al final de la deposición, y estuve de acuerdo en que Max "me estaba ayudando en el negocio que yo uso para mantenerme".

9. Yo planeaba que Max se hiciera cargo de mi negocio cuando yo fuera demasiado viejo para trabajar, y que me mantuviera. Él era mi beneficiario. Yo esperaba depender del negocio, y de Max, para mantenerme en mi retiro, y Max era la persona que yo había escogido para continuar el negocio y cuidar de mí.

10. Max y yo éramos muy unidos. En el año antes de que muriera lo veía en persona dos, tres o cuatro veces por semana. Salíamos a comer o simplemente salíamos, muchas veces con sus hijos, y pasábamos juntos por lo menos tres horas y a veces medio día. También íbamos a acampar. Cuando yo tenía un problema, él estaba ahí. Desde que murió, simplemente ya no está en mi vida.

Declaro bajo pena de perjurio conforme a las leyes de los Estados Unidos de América que lo anterior es verdadero y correcto. Firmado el 30 de octubre de 2026, en Fresno, California.

Max Sosa
______________________________
MAXIMILIANO SOSA, SR.