Kevin G. Little, SBN 149818
LAW OFFICE OF KEVIN G. LITTLE
P.O. Box 8656
Fresno, California 93747
Telephone: (559) 342-5800
Facsimile: (559) 242-2400
Email: service@kevinglittle.com

Attorney for Plaintiffs MARTHA ZEPEDA OLIVARES, individually and on behalf of the ESTATE OF MAXIMILIANO SOSA, JR., and MAXIMILIANO SOSA, SR.

KGL
LAW OFFICE OF KEVIN G. LITTLE
*Fresno | San Francisco | San Diego*

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION**

MARTHA ZEPEDA OLIVARES, individually and on behalf of the ESTATE OF MAXIMILIANO SOSA, JR.; MAXIMILIANO SOSA, SR.,

Plaintiffs,

v.

CITY OF FRESNO, UNKNOWN LAW ENFORCEMENT OFFICERS, POLICE CHIEF PACO BALDERRAMA and DOES 1-30,

Defendants.

---

MARIA SOSA, L.S. by and through guardian ad litem MARIA SOSA, M.S. by and through guardian ad litem JENNIFER LOPEZ, individually and as successors-in-interest to Maximilian Sosa,

Plaintiffs,

v.

CITY OF FRESNO and DOES 1-5,

Defendants.

Case No. 1:23-cv-01575-JLT-SAB

District Judge: Hon. Jennifer L. Thurston
Magistrate Judge: Hon. Stanley A. Boone

**DECLARATION OF MARTHA ZEPEDA OLIVARES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

[Filed concurrently with Memorandum of Points and Authorities; Response to Separate Statement of Undisputed Facts; Statement of Additional Disputed Facts; Declarations of Kevin G. Little and Maximiliano Sosa, Sr.; Request for Judicial Notice; Evidentiary Objections]

Date: November 20, 2026
Time: 9:00 a.m.
Crtrm.: 4

TO THE HONORABLE COURT, DEFENDANTS, AND THEIR COUNSEL OF RECORD:

I, Martha Zepeda Olivares, declare:

KGL
LAW OFFICE OF KEVIN G. LITTLE
*Fresno | San Francisco | San Diego*

1. I am a plaintiff in this action, individually and as the administrator of the Estate of Maximiliano Sosa, Jr., and I am the mother of Maximiliano Sosa, Jr. ("Max"), who was shot and killed by Fresno police on November 4, 2023. I make this declaration in opposition to Defendants' motion for summary judgment. I have personal knowledge of the facts stated here, and if called as a witness I could and would testify competently to them. My first language is Spanish. This declaration was read to me in Spanish before I signed it, and I understand it.

2. In 2023 I lived in a small apartment in Eureka, California, which I rented month to month. I have never owned a home. I lived in Hanford before Eureka. Sometime in 2024 I moved to a smaller, cheaper apartment in Arcata, which is near Eureka, and I live there now. I am on disability and I do not work. I live with my partner, who helps support me but does not support me fully, and we live humbly and on very little. At my deposition I said "Eureka," and the transcript spells it "Yreka."

3. Max and I were close. He visited me in Eureka on my birthday, at Christmas, and on other special days, two or three times a year or more, even though it is about eight hours away from Fresno. I drove to Fresno to see him and my grandsons four or five times a year, and more often after I stopped working. We talked by telephone and by video call between visits.

4. In 2023 Max was raising his two young sons largely on his own while he worked, and he was stretched thin. After I came to help in September and October 2023, Max saw how much help I was to him and asked me to come and live with him in Fresno and help with the boys. We talked about it by telephone, and we agreed that I would move in December 2023.

5. At my deposition I testified that the plan for me to move in with Max was "definite plans for December," and that the plan was "to remain permanently with him in Fresno." I was relocating to Fresno, and Max was going to be part of my financial support there, as he already was. He financed the move, which was already in process when he died.

6. In September and October 2023 I was in Fresno for two to three weeks. I slept at Max's house. I did everything a live-in caregiver does for him and his two sons while he worked.

7. While I was in Fresno in September and October 2023, Max gave me $200 in cash at a time, about once or twice a month. He also gave me about $750 in cash to help me move out of my apartment and move to Fresno. All of this was in cash and there is no record of it. I did not spend it on anything other than my living expenses and the move. So Max had already begun to support me before he died.

8. I acted on the plan Max and I made. I gave my landlord verbal notice that I would end my month-to-month tenancy and move out so that I could move to Fresno. It came to nothing, because Max died.

9. I was not working in 2023. I am on disability. When I am in Eureka and Arcata my partner helps support me, but not fully, and we live humbly and on very little. While I was in Fresno I had no means of support of my own, and Max supported me: he gave me $200 in cash at a time, and he gave me the money to move so that I could live with him. I was counting on Max's help with housing and food once I moved to Fresno, and I would not have been able to live there without it.

10. At my deposition on August 5, 2025, I was asked whether Max ever provided me with financial support and whether he supported me when he was alive, and I answered, "No." I understood those questions to be asking whether Max had supported me completely, throughout his adult life, and that was not the case. I did not understand them to ask about the $200 payments he gave me in September and October 2023, or about the money he gave me to move.

11. At my deposition I was asked about my plan to move in with Max, and I answered those questions. I was not asked about the money Max gave me, how much it was, or what I did to prepare to move. My responses to written interrogatories, served on June 3, 2026, described the arrangement and my reliance on it.

12. Max's death ended the arrangement. I lost the money and help Max had begun giving me and had promised me, and the chance to raise my grandsons with him. Sometime in 2024 I moved to a smaller and cheaper apartment in Arcata.

KGL
LAW OFFICE OF KEVIN G. LITTLE
Fresno | San Francisco | San Diego

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October 30, 2026, at Fresno, California.

Martha Zepeda Olivares
MARTHA ZEPEDA OLIVARES

KGL
LAW OFFICE OF KEVIN G. LITTLE
*Fresno | San Francisco | San Diego*

KGL
LAW OFFICE OF KEVIN G. LITTLE
*Fresno | San Francisco | San Diego*

## DECLARATION OF TRANSLATOR

I, Kevin G. Little, declare: I am an attorney licensed to practice in California, and I am fluent in English and Spanish. On October 30, 2026, I translated the foregoing declaration from English into Spanish, and I read the Spanish translation, which is attached, verbatim to Martha Zepeda Olivares. She told me that she understood it and that it is true. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October 30, 2026, at Fresno, California.

*/s/ Kevin G. Little_*
KEVIN G. LITTLE

**TRADUCCIÓN AL ESPAÑOL (SPANISH TRANSLATION)**

**DECLARACIÓN DE MARTHA ZEPEDA OLIVARES**

Olivares v. City of Fresno, No. 1:23-cv-01575-JLT-SAB (E.D. Cal.)

Yo, Martha Zepeda Olivares, declaro:

1. Soy demandante en esta acción, a título individual y como administradora de la Sucesión (Estate) de Maximiliano Sosa, Jr., y soy la madre de Maximiliano Sosa, Jr. (“Max”), a quien la policía de Fresno disparó y mató el 4 de noviembre de 2023. Hago esta declaración en oposición a la moción de sentencia sumaria de los Demandados. Tengo conocimiento personal de los hechos que aquí se exponen y, si fuera llamada como testigo, podría declarar y declararía sobre ellos con competencia. Mi primer idioma es el español. Esta declaración me fue leída en español antes de firmarla, y la entiendo.

2. En 2023 vivía en un apartamento pequeño en Eureka, California, que rentaba mes a mes. Nunca he sido dueña de una casa. Antes de Eureka viví en Hanford. En algún momento de 2024 me mudé a un apartamento más pequeño y más barato en Arcata, que está cerca de Eureka, y ahí vivo ahora. Estoy en incapacidad (disability) y no trabajo. Vivo con mi pareja, quien me ayuda a mantenerme pero no me mantiene por completo, y vivimos con humildad y con muy poco. En mi deposición dije “Eureka”, y la transcripción lo escribe “Yreka”.

3. Max y yo éramos muy unidos. Me visitaba en Eureka el día de mi cumpleaños, en Navidad y en otras fechas especiales, dos o tres veces al año o más, aunque queda a unas ocho horas de Fresno. Yo manejaba a Fresno para verlo a él y a mis nietos cuatro o cinco veces al año, y con más frecuencia después de que dejé de trabajar. Hablábamos por teléfono y por videollamada entre una visita y otra.

4. En 2023 Max estaba criando a sus dos hijos pequeños casi solo mientras trabajaba, y estaba muy presionado. Después de que fui a ayudarlo en septiembre y octubre de 2023, Max vio cuánto lo ayudé y me pidió que me fuera a vivir con él a Fresno y que lo ayudara con los niños. Lo hablamos por teléfono y acordamos que yo me mudaría en diciembre de 2023.

5. En mi deposición declaré que el plan de que me mudara a vivir con Max eran “planes definitivos para diciembre”, y que el plan era “quedarme permanentemente con él en Fresno”. Yo me iba a reubicar a Fresno, y Max iba a ser parte de mi sustento económico allá, como ya lo era. Él financió la mudanza, que ya estaba en marcha cuando murió.

6. En septiembre y octubre de 2023 estuve en Fresno de dos a tres semanas. Dormía en la casa de Max. Hice todo lo que hace una cuidadora que vive en la casa, por él y por sus dos hijos, mientras él trabajaba.

7. Mientras estuve en Fresno en septiembre y octubre de 2023, Max me daba $200 en efectivo cada vez, más o menos una o dos veces al mes. También me dio unos $750 en efectivo para ayudarme a salir de mi apartamento y mudarme a Fresno. Todo fue en efectivo y no hay ningún registro. No gasté ese dinero en nada que no fuera mis gastos de vida y la mudanza. Así que Max ya había empezado a mantenerme antes de morir.

8. Yo actué conforme al plan que Max y yo hicimos. Le di aviso verbal a mi arrendador de que terminaría mi renta mes a mes y me saldría para poder mudarme a Fresno. No llegó a nada, porque Max murió.

9. En 2023 yo no trabajaba. Estoy en incapacidad (disability). Cuando estoy en Eureka y Arcata mi pareja me ayuda a mantenerme, pero no por completo, y vivimos con humildad y con muy poco. Mientras estuve en Fresno no tenía ningún medio propio de sustento, y Max me mantenía: me daba $200 en efectivo cada vez, y me dio el dinero para la mudanza para que yo pudiera vivir con él. Yo contaba con la ayuda de Max para la vivienda y la comida una vez que me mudara a Fresno, y no habría podido vivir allá sin ella.

10. En mi deposición del 5 de agosto de 2025 me preguntaron si Max alguna vez me dio apoyo económico y si me mantenía cuando estaba vivo, y contesté: “No”. Yo entendí que esas preguntas eran sobre si Max me había mantenido por completo, durante toda su vida adulta, y eso no era cierto. No entendí que me preguntaran por los pagos de $200 que me dio en septiembre y octubre de 2023, ni por el dinero que me dio para la mudanza.

11. En mi deposición me preguntaron sobre mi plan de irme a vivir con Max, y contesté esas preguntas. No me preguntaron sobre el dinero que Max me dio, cuánto fue, ni qué hice para

prepararme para la mudanza. Mis respuestas a las preguntas escritas (interrogatorios), entregadas el 3 de junio de 2026, describieron el arreglo y cómo yo dependí de él.

12. La muerte de Max puso fin al arreglo. Perdí el dinero y la ayuda que Max había empezado a darme y que me había prometido, y la oportunidad de ayudar a criar a mis nietos con él. En algún momento de 2024 me mudé a un apartamento más pequeño y más barato en Arcata.

Declaro bajo pena de perjurio conforme a las leyes de los Estados Unidos de América que lo anterior es verdadero y correcto. Firmado el 30 de octubre de 2026, en Fresno, California.

Martha Zepeda Olivares
______________________________
MARTHA ZEPEDA OLIVARES