Kevin G. Little, SBN 149818
LAW OFFICE OF KEVIN G. LITTLE
P.O. Box 8656
Fresno, California 93747
Telephone: (559) 342-5800
Facsimile: (559) 242-2400
Email: service@kevinglittle.com

Attorney for Plaintiffs MARTHA ZEPEDA OLIVARES, individually and on behalf of the ESTATE OF MAXIMILIANO SOSA, JR., and MAXIMILIANO SOSA, SR.

KGL
LAW OFFICE OF KEVIN G. LITTLE
*Fresno | San Francisco | San Diego*

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION**

MARTHA ZEPEDA OLIVARES, individually and on behalf of the ESTATE OF MAXIMILIANO SOSA, JR.; MAXIMILIANO SOSA, SR.,

Plaintiffs,

v.

CITY OF FRESNO, UNKNOWN LAW ENFORCEMENT OFFICERS, POLICE CHIEF PACO BALDERRAMA and DOES 1-30,

Defendants.

---

MARIA SOSA, L.S. by and through guardian ad litem MARIA SOSA, M.S. by and through guardian ad litem JENNIFER LOPEZ, individually and as successors-in-interest to Maximilian Sosa,

Plaintiffs,

v.

CITY OF FRESNO and DOES 1-5,

Defendants.

Case No. 1:23-cv-01575-JLT-SAB

District Judge: Hon. Jennifer L. Thurston
Magistrate Judge: Hon. Stanley A. Boone

**PLAINTIFFS MARTHA ZEPEDA OLIVARES AND MAXIMILIANO SOSA, SR.'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT [L.R. 260(b)]**

[Filed concurrently with Statement of Additional Disputed Facts; Memorandum of Points and Authorities; Declarations of Kevin G. Little, Martha Zepeda Olivares and Maximiliano Sosa, Sr.; Request for Judicial Notice; Evidentiary Objections]

Date: November 20, 2026
Time: 9:00 a.m.
Crtrm.: 4

TO THE HONORABLE COURT, DEFENDANTS, AND THEIR COUNSEL OF RECORD:

Pursuant to Local Rule 260(b) and Federal Rule of Civil Procedure 56(c), Plaintiffs MARTHA ZEPEDA OLIVARES, individually and on behalf of the ESTATE OF MAXIMILIANO SOSA, JR., and MAXIMILIANO SOSA, SR. (the "Olivares Plaintiffs") submit the following response to Defendants' Separate Statement of Undisputed Facts (Dkt. 93-1) filed in support of Defendants' Motion for Summary Judgment (Dkt. 93). Each of Defendants' itemized facts and its cited supporting evidence is reproduced below as filed, followed by the Olivares Plaintiffs' response.

As to every fact below except Nos. 4, 151–154, 157 and 159–175, the Olivares Plaintiffs incorporate by reference the Sosa Plaintiffs' Response to Defendants' Separate Statement of Undisputed Facts (Dkt. 99-1) and the evidence cited in it, including the Declaration of Cooper Mayne (Dkt. 99-3) and the Declaration of Richard S. Bryce (Dkt. 99-4), as their own response to that fact. The Olivares Plaintiffs respond separately to Nos. 4, 151–154, 157 and 159–175 (Nos. 151–154 are undisputed). On Nos. 168–175 they also incorporate the Sosa Plaintiffs' response in addition to the facts stated here, and on Nos. 42, 43, 65, 86, 107, 108, 128–130, 134, 135, 140 and 144 they incorporate the Sosa Plaintiffs' response and also rely on additional facts, which are restated in the response to each of those Nos. as well as in the Statement of Additional Disputed Facts. Martha Zepeda Olivares incorporates as administrator of the Estate of Maximiliano Sosa, Jr. and individually; Maximiliano Sosa, Sr. incorporates individually. The incorporation is limited. The Olivares Plaintiffs do not adopt any response to the extent it is inconsistent with their own responses or with their Statement of Additional Disputed Facts, and by incorporating they concede nothing as to any claim. Where a fact is material to the Olivares Plaintiffs' Fourteenth Amendment claim, they also rely on their Statement of Additional Disputed Facts and on the Sosa Plaintiffs' Statement of Additional Material Facts (Dkt. 99-2).

The thirteen facts set out in the parties' Joint Statement of Undisputed Facts (Dkt. 93-2) are stipulated. Deposition testimony is cited by transcript page and line. Each transcript is before the Court as Defendants' Exhibits 23 through 29 (Dkt. 93-26 through 93-32); additional pages

KGL
LAW OFFICE OF KEVIN G. LITTLE
Fresno | San Francisco | San Diego

are in Exhibits A, B, D, F, G, H, I and J to the Mayne Declaration (Dkt. 99-3) and in Exhibits A through D, G and H to the Declaration of Kevin G. Little, filed concurrently.

**PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS**

| NO. | DEFENDANTS' UNDISPUTED FACT AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 1. | On November 3, 2023, Maria went out to socialize with her friends after work.<br><br>Supporting Evidence:<br>Ex. 23 [Maria Dep.] 50:19-23. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 1 and the evidence cited in it. Dkt. 99-1, SUF No. 1. |
| 2. | Max offered to pick Maria up and drive her home, and Maria agreed.<br><br>Supporting Evidence:<br>Ex. 10 [Sosa Interview] at 34.<br>Ex. 23 [Maria Dep.] 52:17-23. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 2 and the evidence cited in it. Dkt. 99-1, SUF No. 2. |
| 3. | Max and Maria joked with each other over text while Max waited outside the bar.<br><br>Supporting Evidence:<br>Ex. 12 [Screenshots]<br>Ex. 23 [Maria Dep.] 72:13-74:12. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 3 and the evidence cited in it. Dkt. 99-1, SUF No. 3. |
| 4. | Max also seemed "normal" earlier in the week, according to his father.<br><br>Supporting Evidence:<br>Ex. 25 [Max Sr. Dep.] 31:10-32:3. | Undisputed that Max Sr. so testified. He spent about four hours with Max at the shop on Thursday, November 2, 2023, and described him as "[e]verything norm[al]," with no signs of mental distress or sadness. Ex. 25 (Max Sr. Dep.) 31:5–32:3. |
| 5. | Max and Maria left the bar together in his Tesla.<br><br>Supporting Evidence:<br>Ex. 23 [Maria Dep.] 53:18-54:12. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 5 and the evidence cited in it. Dkt. 99-1, SUF No. 5. |
| 6. | At around 3:00 a.m., Max woke Maria up.<br><br>Supporting Evidence:<br>Ex. 10 [Sosa Interview] at 42, 43<br>Ex. 23 [Maria Dep.] 49:14-50:15; 98:6-99:1 | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 6 and the evidence cited in it. Dkt. 99-1, SUF No. 6. |
| 7. | Max called Maria a "whore" and a "liar."<br><br>Supporting Evidence:<br>Ex. 10 [Sosa Interview] at 37, 44.<br>Ex. 23 [Maria Dep.] 49:14-50:15; 98:6-99:1 | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 7 and the evidence cited in it. Dkt. 99-1, SUF No. 7. |



KGL
LAW OFFICE OF KEVIN G. LITTLE
Fresno | San Francisco | San Diego

KGL
LAW OFFICE OF KEVIN G. LITTLE
*Fresno | San Francisco | San Diego*

| NO. | DEFENDANTS' UNDISPUTED FACT AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 8. | Maria could tell Max had been drinking.<br><br>Supporting Evidence:<br>Ex. 10 [Sosa Interview] at 34.<br>Ex. 23 [Maria Dep.] 90:8-16. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 8 and the evidence cited in it. Dkt. 99-1, SUF No. 8. |
| 9. | Max had gone through Maria's phone and found text exchanges between Maria and her affair partner that showed they were still in an intimate relationship.<br><br>Supporting Evidence:<br>Ex. 10 [Sosa Interview] at 44.<br>Ex. 12 [Screenshots]<br>Ex. 23 [Maria Dep.] 49:14-50:15; 54:23-55:24; 72:13-74:12; 77:4-25; 97:4-18. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 9 and the evidence cited in it. Dkt. 99-1, SUF No. 9. |
| 10. | Max texted his friends that he "found out" Maria was "still f*cking" her affair partner.<br><br>Supporting Evidence:<br>Ex. 7 [Incident Report] at FRESNO 000203.<br>Ex. 11 [Rodriguez Interview] at FRESNO 000437, 00439-440.<br>Ex. 23 [Maria Dep.] 49:14-50:15; 54:13-15; 55:20-56:1. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 10 and the evidence cited in it. Dkt. 99-1, SUF No. 10. |
| 11. | Max also texted Maria's affair partner from her phone, asking him to come to Maria's apartment to "f*ck" her and that "the door is unlocked."<br><br>Supporting Evidence:<br>Ex. 10 [Sosa Interview] at 45.<br>Ex. 12 [Screenshots]<br>Ex. 23 [Maria Dep.] 99:12-100:4. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 11 and the evidence cited in it. Dkt. 99-1, SUF No. 11. |
| 12. | Max also sent himself Maria's affair partner's contact information from her phone.<br><br>Supporting Evidence:<br>Ex. 10 [Sosa Interview] at 45.<br>Ex. 12 [Screenshots] | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 12 and the evidence cited in it. Dkt. 99-1, SUF No. 12. |
| 13. | Max and Maria argued.<br><br>Supporting Evidence:<br>Ex. 23 [Maria Dep.] 50:1-2; 54:13-15; 59:23-60:4; 114:16-21. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 13 and the evidence cited in it. Dkt. 99-1, SUF No. 13. |

KGL
LAW OFFICE OF KEVIN G. LITTLE
Fresno | San Francisco | San Diego

| NO. | DEFENDANTS' UNDISPUTED FACT AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 14. | Max was "out of control" and acting in a way Maria had never seen before.<br><br>Supporting Evidence:<br>Ex. 23 [Maria Dep.] 50:1-2; 54:13-15; 59:23-60:4; 114:16-21. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 14 and the evidence cited in it. Dkt. 99-1, SUF No. 14. |
| 15. | Max was "highly emotional" and Maria tried to calm him down.<br><br>Supporting Evidence:<br>Ex. 23 [Maria Dep.] 49:14-50:15; 56:6-17; 57:3-5; 58:19-23. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 15 and the evidence cited in it. Dkt. 99-1, SUF No. 15. |
| 16. | Max told Maria he was going to find the affair partner and kill him and kill himself, and left the apartment.<br><br>Supporting Evidence:<br>Ex. 10 [Sosa Interview] at 46, 48.<br>Ex. 23 [Maria Dep.] 49:14-50:15; 56:12-16; 57:3-5; 58:19-23. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 16 and the evidence cited in it. Dkt. 99-1, SUF No. 16. |
| 17. | Maria told the dispatcher that Max had taken a bottle of tequila and had gone to confront her affair partner.<br><br>Supporting Evidence:<br>Ex. 1 [911 Tr.] at 2-3.<br>Ex. 3 [CAD Report] at FRESNO 000242.<br>Ex. 14 [911 Audio].<br>Ex. 23 [Maria Dep.] 63:1-5. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 17 and the evidence cited in it. Dkt. 99-1, SUF No. 17. |
| 18. | Maria told the dispatcher she was scared Max was going to kill himself and her affair partner.<br><br>Supporting Evidence:<br>Ex. 1 [911 Tr.] at 1-2.<br>Ex. 14 [911 Audio]. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 18 and the evidence cited in it. Dkt. 99-1, SUF No. 18. |
| 19. | Maria provided the dispatcher a description of Max, what he was wearing, and the car he was driving.<br><br>Supporting Evidence:<br>Ex. 1 [911 Tr.] at 1-2.<br>Ex. 14 [911 Audio]. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 19 and the evidence cited in it. Dkt. 99-1, SUF No. 19. |
| 20. | At 3:10 a.m., Fresno Police Department created a zero-priority call for a suicidal male.<br><br>Supporting Evidence: | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 20 and the evidence cited in it. Dkt. 99-1, SUF No. 20. |

KGL
LAW OFFICE OF KEVIN G. LITTLE
Fresno | San Francisco | San Diego

| NO. | DEFENDANTS' UNDISPUTED FACT AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | Ex. 3 [CAD Report] at FRESNO 000241, 000260. | |
| 21. | Maria told the officers that Max had left, saying he was going to kill her affair partner or himself.<br><br>Supporting Evidence:<br>Ex. 10 [Sosa Interview] at 65.<br>Ex. 23 [Maria Dep.] 65:19-66:7 | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 21 and the evidence cited in it. Dkt. 99-1, SUF No. 21. |
| 22. | Maria gave the officers Max's and her affair partner's addresses.<br><br>Supporting Evidence:<br>Ex. 7 [Incident Report] at FRESNO 000186-187, FRESNO 000196-197. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 22 and the evidence cited in it. Dkt. 99-1, SUF No. 22. |
| 23. | Ayers, Abraham and Equihua told Maria they would search the area for him and let her know if they found him.<br><br>Supporting Evidence:<br>Ex. 7 [Incident Report] at FRESNO 000186-187, FRESNO 000196-197. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 23 and the evidence cited in it. Dkt. 99-1, SUF No. 23. |
| 24. | At 3:30 a.m. Max returned to the Dante Apartment Complex.<br><br>Supporting Evidence:<br>Ex. 17 [Abraham BWC #1] at 3:30:58. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 24 and the evidence cited in it. Dkt. 99-1, SUF No. 24. |
| 25. | Max attempted to strike Equihua with his vehicle before driving away again.<br><br>Supporting Evidence:<br>Ex. 17 [Abraham BWC #1] at 3:30:59. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 25 and the evidence cited in it. Dkt. 99-1, SUF No. 25. |
| 26. | Before driving away, Max shouted, "You want to play games?"<br><br>Supporting Evidence:<br>Ex. 17 [Abraham BWC #1] at 3:31:08. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 26 and the evidence cited in it. Dkt. 99-1, SUF No. 26. |
| 27. | Equihua commanded Max to "Stop! Stop the vehicle!"<br><br>Supporting Evidence:<br>Ex. 17 [Abraham BWC #1] at 3:31:13. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 27 and the evidence cited in it. Dkt. 99-1, SUF No. 27. |
| 28. | Abraham commanded Max to "Stop your car!"<br><br>Supporting Evidence:<br>Ex. 17 [Abraham BWC #1] at 3:31:14. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 28 and the evidence cited in it. Dkt. 99-1, SUF No. 28. |

| NO. | DEFENDANTS' UNDISPUTED FACT AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
| --- | --- | --- |
| 29. | Max drove away at high speed.<br><br>Supporting Evidence:<br>Ex. 17 [Abraham BWC #1] at 3:31:14. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 29 and the evidence cited in it. Dkt. 99-1, SUF No. 29. |
| 30. | At 3:32 a.m. Equihua broadcast, "He tried to run me over."<br><br>Supporting Evidence:<br>Ex. 3 [CAD Report] at FRESNO 000242, 000262. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 30 and the evidence cited in it. Dkt. 99-1, SUF No. 30. |
| 31. | At 3:33 a.m. dispatch broadcast "Confirmed 245 [assault with a deadly weapon] on an officer."<br><br>Supporting Evidence:<br>Ex. 3 [CAD Report] at FRESNO 000243, 000264 | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 31 and the evidence cited in it. Dkt. 99-1, SUF No. 31. |
| 32. | Between 3:33 a.m. and 3:58 a.m., Max led officer on several high-speed chases.<br><br>Supporting Evidence:<br>Ex. 29 [Aguilar Dep.] 28:13-18. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 32 and the evidence cited in it. Dkt. 99-1, SUF No. 32. |
| 33. | During the vehicle pursuits, Max drove recklessly: speeding, driving opposite traffice, ignoring traffic signs, and performing evasive maneuvers.<br><br>Supporting Evidence:<br>Ex. 3 [CAD Report] at FRESNO 000243, 000245, 000263, 000266, 000269 | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 33 and the evidence cited in it. Dkt. 99-1, SUF No. 33. |
| 34. | Officers lost sight of Max's Tesla several times.<br><br>Supporting Evidence:<br>Ex. 3 [CAD Report] at FRESNO 000263, 000269 | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 34 and the evidence cited in it. Dkt. 99-1, SUF No. 34. |
| 35. | While the vehicle pursuits were in progress, Maria and Max spoke on the phone.<br><br>Supporting Evidence:<br>Ex. 10 [Sosa Interview] at 65-66. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 35 and the evidence cited in it. Dkt. 99-1, SUF No. 35. |
| 36. | Max told Maria that he was going to commit suicide by cop.<br><br>Supporting Evidence:<br>Ex. 23 [Maria Dep.] 103:3-13 | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 36 and the evidence cited in it. Dkt. 99-1, SUF No. 36. |

KGL
LAW OFFICE OF KEVIN G. LITTLE
*Fresno | San Francisco | San Diego*

KGL
LAW OFFICE OF KEVIN G. LITTLE
Fresno | San Francisco | San Diego

| NO. | DEFENDANTS' UNDISPUTED FACT AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 37. | Max told Maria that he was going to "take a cop" or "take a pig" with him.<br><br>Supporting Evidence:<br>Ex. 23 [Maria Dep.] 101:16-102:21 | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 37 and the evidence cited in it. Dkt. 99-1, SUF No. 37. |
| 38. | At 3:42 a.m. Ayers broadcast that he was going back to the Dante Apartment Complex in case Max returned there.<br><br>Supporting Evidence:<br>Ex. 3 [CAD Report] at FRESNO 000244, 000265. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 38 and the evidence cited in it. Dkt. 99-1, SUF No. 38. |
| 39. | At 3:44 a.m. Maria called 9-1-1 again to report that Max made comments about wanting to die.<br><br>Supporting Evidence:<br>Ex. 15 [2nd 911 Audio].<br>Ex. 23 [Maria Dep.] at 67:10-22. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 39 and the evidence cited in it. Dkt. 99-1, SUF No. 39. |
| 40. | Maria told the dispatcher she was worried Max would make it look like he was armed so the police would shoot him.<br><br>Supporting Evidence:<br>Ex. 2 [Second 911 Tr.] at 1-2.<br>Ex. 15 [Second 911 Audio].<br>Ex. 23 [Maria Dep.] 68:3-22. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 40 and the evidence cited in it. Dkt. 99-1, SUF No. 40. |
| 41. | Maria told the dispatcher Max had evaded the police and she did not know where he was.<br><br>Supporting Evidence:<br>Ex. 2 [Second 911 Tr.] at 2.<br>Ex. 15 [Second 911 Audio]. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 41 and the evidence cited in it. Dkt. 99-1, SUF No. 41. |
| 42. | At 3:46 a.m., dispatch broadcast Max's intention to commit suicide by cop.<br><br>Supporting Evidence:<br>Ex. 3 [CAD Report] at FRESNO 000244, 000267. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 42 and the evidence cited in it. Dkt. 99-1, SUF No. 42. The Olivares Plaintiffs also rely on the following additional facts, which are also set out in ADF Nos. 9–10 (Statement of Additional Disputed Facts). Dispatch broadcast at 3:46 a.m. that Max intended to commit suicide by cop. Ayers returned to the apartment at 3:55 a.m. and Abraham arrived at 4:12 a.m., and the Officers heard a door at 4:35 a.m., so that Ayers had been at the apartment roughly forty minutes and Abraham more than twenty when Max |

KGL
LAW OFFICE OF KEVIN G. LITTLE
Fresno | San Francisco | San Diego

| NO. | DEFENDANTS' UNDISPUTED FACT AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | returned. Defs.' SUF Nos. 42, 43, 65, 86 (Dkt. 93-1) (undisputed in Dkt. 99-1). Ayers and Abraham regarded Max's return as likely. Ayers described "a decent probability" and agreed that he believed Max was "very likely" to come back and intent on suicide by cop; Abraham agreed that there was a high probability Max would come to the apartment and that Max was expressing an intent to force a confrontation with officers and to commit suicide by cop. Ex. 26 (Ayers Dep.) 36:21-25; Mayne Decl. Ex. F (Ayers Dep.) 47:13-20; Ex. 27 (Abraham Dep.) 35:16-20, 50:7-14; Sosa SAMF Nos. 8–9 (Dkt. 99-2). |
| 43. | At 3:55 a.m. Ayers returned back to Maria's apartment.<br><br>Supporting Evidence:<br>Ex. 18 [Ayers BWC] at 3:55:29. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 43 and the evidence cited in it. Dkt. 99-1, SUF No. 43. The Olivares Plaintiffs also rely on the following additional facts, which are also set out in ADF Nos. 9–10 (Statement of Additional Disputed Facts). Dispatch broadcast at 3:46 a.m. that Max intended to commit suicide by cop. Ayers returned to the apartment at 3:55 a.m. and Abraham arrived at 4:12 a.m., and the Officers heard a door at 4:35 a.m., so that Ayers had been at the apartment roughly forty minutes and Abraham more than twenty when Max returned. Defs.' SUF Nos. 42, 43, 65, 86 (Dkt. 93-1) (undisputed in Dkt. 99-1). Ayers and Abraham regarded Max's return as likely. Ayers described "a decent probability" and agreed that he believed Max was "very likely" to come back and intent on suicide by cop; Abraham agreed that there was a high probability Max would come to the apartment and that Max was expressing an intent to force a confrontation with officers and to commit suicide by cop. Ex. 26 (Ayers Dep.) 36:21-25; Mayne Decl. Ex. F (Ayers Dep.) 47:13-20; Ex. 27 (Abraham Dep.) 35:16-20, 50:7-14; Sosa SAMF Nos. 8–9 (Dkt. 99-2). |
| 44. | When Ayers returned, Maria was on the phone with Max and handed the phone to Ayers.<br><br>Supporting Evidence: | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 44 and the evidence cited in it. Dkt. 99-1, SUF No. 44. |

| NO. | DEFENDANTS' UNDISPUTED FACT AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | Ex. 18 [Ayers BWC] at 3:55:58-3:56:08. | |
| 45. | Max cursed at Ayers and hung up.<br><br>Supporting Evidence:<br>Ex. 18 [Ayers BWC] at 3:56:08-3:56:23. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 45 and the evidence cited in it. Dkt. 99-1, SUF No. 45. |
| 46. | At 3:57 a.m. Maria called Max.<br><br>Supporting Evidence:<br>Ex. 18 [Ayers BWC] at 3:57:17-3:57:43. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 46 and the evidence cited in it. Dkt. 99-1, SUF No. 46. |
| 47. | Ayers tried to talk to Max again but Max hung up.<br><br>Supporting Evidence:<br>Ex. 18 [Ayers BWC] at 3:57:17-3:57:43 | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 47 and the evidence cited in it. Dkt. 99-1, SUF No. 47. |
| 48. | Ayers told Maria that her calling Max was not helping but was making Max angry, and told her not to call him again.<br><br>Supporting Evidence:<br>Ex. 18 [Ayers BWC] at 3:57:40-3:57:50. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 48 and the evidence cited in it. Dkt. 99-1, SUF No. 48. |
| 49. | After officers lost track of Max for a third time, FPD Sergeant Oliver directed units to cease pursuit.<br><br>Supporting Evidence:<br>Ex. 3 [CAD Report] at FRESNO 000246, 000269.<br>Ex. 29 [Aguilar Dep.] 28:24-29: | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 49 and the evidence cited in it. Dkt. 99-1, SUF No. 49. |
| 50. | At 3:59 a.m. Maria spoke to Max's close friend, Damian.<br><br>Supporting Evidence:<br>Ex. 18 [Ayers BWC] at 3:59:30-4:00:59. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 50 and the evidence cited in it. Dkt. 99-1, SUF No. 50. |
| 51. | At 4:00 a.m. Maria told Ayers Max has never done anything like this, has never been arrested or placed on an involuntary psychiatric hold.<br><br>Supporting Evidence:<br>Ex. 18 [Ayers BWC] at 4:00:59-4:01:10. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 51 and the evidence cited in it. Dkt. 99-1, SUF No. 51. |
| 52. | At 4:03 a.m. Ayers called Max.<br><br>Supporting Evidence:<br>Ex. 18 [Ayers BWC] at 4:03:09-4:10:47. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 52 and the evidence cited in it. Dkt. 99-1, SUF No. 52. |
| 53. | Ayers told Max he wanted to help him and wanted a "peaceful resolution" to the evening. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to |

KGL
LAW OFFICE OF KEVIN G. LITTLE
Fresno | San Francisco | San Diego

| NO. | DEFENDANTS' UNDISPUTED FACT AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | Supporting Evidence:<br>Ex. 18 [Ayers BWC] at 4:03:09-4:10:47. | SUF No. 53 and the evidence cited in it.<br>Dkt. 99-1, SUF No. 53. |
| 54. | Max told Ayers there was no peaceful resolution.<br><br>Supporting Evidence:<br>Ex. 18 [Ayers BWC] at 4:03:09-4:10:47. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 54 and the evidence cited in it.<br>Dkt. 99-1, SUF No. 54. |
| 55. | Max said, "Tonight I die or he [the affair partner] dies or one of your cops dies."<br><br>Supporting Evidence:<br>Ex. 18 [Ayers BWC] at 4:03:09-4:10:47. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 55 and the evidence cited in it.<br>Dkt. 99-1, SUF No. 55. |
| 56. | Max said, "There is no helping me."<br><br>Supporting Evidence:<br>Ex. 18 [Ayers BWC] at 4:03:09-4:10:47. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 56 and the evidence cited in it.<br>Dkt. 99-1, SUF No. 56. |
| 57. | Max said, "You're gonna have to f*cking kill me."<br><br>Supporting Evidence:<br>Ex. 18 [Ayers BWC] at 4:03:09-4:10:47. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 57 and the evidence cited in it.<br>Dkt. 99-1, SUF No. 57. |
| 58. | Max said, "There is no other way out of this."<br><br>Supporting Evidence:<br>Ex. 18 [Ayers BWC] at 4:03:09-4:10:47. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 58 and the evidence cited in it.<br>Dkt. 99-1, SUF No. 58. |
| 59. | Max said, "One person is gonna die tonight."<br><br>Supporting Evidence:<br>Ex. 18 [Ayers BWC] at 4:03:09-4:10:47. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 59 and the evidence cited in it.<br>Dkt. 99-1, SUF No. 59. |
| 60. | Max said, "I'm not one of those you can save."<br><br>Supporting Evidence:<br>Ex. 18 [Ayers BWC] at 4:03:09-4:10:47. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 60 and the evidence cited in it.<br>Dkt. 99-1, SUF No. 60. |
| 61. | Max said, "I tried to run over one of your cops. I don't give a f*ck."<br><br>Supporting Evidence:<br>Ex. 18 [Ayers BWC] at 4:03:09-4:10:47. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 61 and the evidence cited in it.<br>Dkt. 99-1, SUF No. 61. |
| 62. | Max said, "I want blood tonight."<br><br>Supporting Evidence:<br>Ex. 18 [Ayers BWC] at 4:03:09-4:10:47. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 62 and the evidence cited in it.<br>Dkt. 99-1, SUF No. 62. |

KGL
LAW OFFICE OF KEVIN G. LITTLE
Fresno | San Francisco | San Diego

KGL
LAW OFFICE OF KEVIN G. LITTLE
Fresno | San Francisco | San Diego

| NO. | DEFENDANTS' UNDISPUTED FACT AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 63. | At 4:10 a.m. Max hung up the phone, ending the conversation with Ayers.<br><br>Supporting Evidence:<br>Ex. 3 [CAD Report] at FRESNO 000246. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 63 and the evidence cited in it. Dkt. 99-1, SUF No. 63. |
| 64. | At 4:11 a.m. Maria told Ayers that Max had never threatened suicide before and that he had no diagnoses of any mental health disorder.<br><br>Supporting Evidence:<br>Ex. 18 [Ayers BWC] at 4:11:03-4:11:40.<br>Ex. 23 [Maria Dep.] 40:10-24. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 64 and the evidence cited in it. Dkt. 99-1, SUF No. 64. |
| 65. | At 4:12 a.m. Abraham arrived at Maria's apartment.<br><br>Supporting Evidence:<br>Ex. 18 [Ayers BWC] at 4:12:14.<br>Ex. 19 [Abraham BWC #2] at 4:12:14. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 65 and the evidence cited in it. Dkt. 99-1, SUF No. 65. The Olivares Plaintiffs also rely on the following additional facts, which are also set out in ADF Nos. 9–10 (Statement of Additional Disputed Facts). Dispatch broadcast at 3:46 a.m. that Max intended to commit suicide by cop. Ayers returned to the apartment at 3:55 a.m. and Abraham arrived at 4:12 a.m., and the Officers heard a door at 4:35 a.m., so that Ayers had been at the apartment roughly forty minutes and Abraham more than twenty when Max returned. Defs.' SUF Nos. 42, 43, 65, 86 (Dkt. 93-1) (undisputed in Dkt. 99-1). Ayers and Abraham regarded Max's return as likely. Ayers described "a decent probability" and agreed that he believed Max was "very likely" to come back and intent on suicide by cop; Abraham agreed that there was a high probability Max would come to the apartment and that Max was expressing an intent to force a confrontation with officers and to commit suicide by cop. Ex. 26 (Ayers Dep.) 36:21-25; Mayne Decl. Ex. F (Ayers Dep.) 47:13-20; Ex. 27 (Abraham Dep.) 35:16-20, 50:7-14; Sosa SAMF Nos. 8–9 (Dkt. 99-2). |
| 66. | Ayers and Abraham conferred on the sidewalk outside the apartment.<br><br>Supporting Evidence:<br>Ex. 18 [Ayers BWC] at 4:12:14-4:14:40.<br>Ex. 19 [Abraham BWC #2] at 4:12:14-4:14:40. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 66 and the evidence cited in it. Dkt. 99-1, SUF No. 66. |

| NO. | DEFENDANTS' UNDISPUTED FACT AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 67. | At 4:14 a.m., Abraham and Ayers returned to the apartment, where Maria was again talking to Max on the phone.<br><br>Supporting Evidence:<br>Ex. 18 [Ayers BWC] at 4:14:45-4:15:01.<br>Ex. 19 [Abraham BWC #2] at 4:12:14-4:14:40. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 67 and the evidence cited in it. Dkt. 99-1, SUF No. 67. |
| 68. | Ayers took the phone from Maria and tried again to talk to Max.<br><br>Supporting Evidence:<br>Ex. 18 [Ayers BWC] at 4:15:00-4:18:26.<br>Ex. 19 [Abraham BWC #2] at 4:12:14-4:14:40. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 68 and the evidence cited in it. Dkt. 99-1, SUF No. 68. |
| 69. | Ayers told Max he wanted to help him.<br><br>Supporting Evidence:<br>Ex. 18 [Ayers BWC] at 4:15:00-4:18:26. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 69 and the evidence cited in it. Dkt. 99-1, SUF No. 69. |
| 70. | Max said, "There's nothing you can do."<br><br>Supporting Evidence:<br>Ex. 18 [Ayers BWC] at 4:15:00-4:18:26. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 70 and the evidence cited in it. Dkt. 99-1, SUF No. 70. |
| 71. | Max said, "When a man reaches rock bottom, that's it."<br><br>Supporting Evidence:<br>Ex. 18 [Ayers BWC] at 4:15:00-4:18:26. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 71 and the evidence cited in it. Dkt. 99-1, SUF No. 71. |
| 72. | Max said, "It's either me, him [the affair partner], or one of you f*cking police officers."<br><br>Supporting Evidence:<br>Ex. 18 [Ayers BWC] at 4:15:00-4:18:26. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 72 and the evidence cited in it. Dkt. 99-1, SUF No. 72. |
| 73. | Max said, "Listen, if my wife didn't give a f*ck about me, you think I'm gonna f*cking believe that you give a f*ck about me? No."<br><br>Supporting Evidence:<br>Ex. 18 [Ayers BWC] at 4:15:00-4:18:26. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 73 and the evidence cited in it. Dkt. 99-1, SUF No. 73. |
| 74. | Max said, "I'm gonna take down not just myself, but you with me."<br><br>Supporting Evidence:<br>Ex. 18 [Ayers BWC] at 4:15:00-4:18:26. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 74 and the evidence cited in it. Dkt. 99-1, SUF No. 74. |
| 75. | Max said, "I'm gonna come after you, motherf*cker." | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to |

KGL
LAW OFFICE OF KEVIN G. LITTLE
*Fresno | San Francisco | San Diego*

| NO. | DEFENDANTS' UNDISPUTED FACT AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | Supporting Evidence:<br>Ex. 18 [Ayers BWC] at 4:15:00-4:18:26. | SUF No. 75 and the evidence cited in it. Dkt. 99-1, SUF No. 75. |
| 76. | At 4:18 a.m. Ayers hung up the call.<br><br>Supporting Evidence:<br>Ex. 18 [Ayers BWC] at 4:15:00-4:18:26. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 76 and the evidence cited in it. Dkt. 99-1, SUF No. 76. |
| 77. | At 4:24 a.m. Abraham, who was holding Maria's phone, told Maria that Damian texted that Max was at a charging station.<br><br>Supporting Evidence:<br>Ex. 18 [Ayers BWC] at 4:24:37-4:25:00.<br>Ex. 19 [Abraham BWC #2] at 4:24:37-4:25:00. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 77 and the evidence cited in it. Dkt. 99-1, SUF No. 77. |
| 78. | Ayers broadcast that Max was at a charging station, possibly at Herndon & 99.<br><br>Supporting Evidence:<br>Ex. 3 [CAD Report] at FRESNO 000246.<br>Ex. 18 [Ayers BWC] at 4:25:13-4:25:32. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 78 and the evidence cited in it. Dkt. 99-1, SUF No. 78. |
| 79. | At 4:28 a.m., Abraham and Ayers exited the apartment to canvas the area.<br><br>Supporting Evidence:<br>Ex. 18 [Ayers BWC] at 4:28:00-4:28:58.<br>Ex. 19 [Abraham BWC #2] at 4:28:00-4:28:58. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 79 and the evidence cited in it. Dkt. 99-1, SUF No. 79. |
| 80. | Ayers radioed that he did not see Max or Max's Tesla.<br><br>Supporting Evidence:<br>Ex. 3 [CAD Report] at FRESNO 000271.<br>Ex. 18 [Ayers BWC] at 4:28:55-4:28-59. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 80 and the evidence cited in it. Dkt. 99-1, SUF No. 80. |
| 81. | At 4:29 a.m., Abraham and Ayers stepped back in to the apartment, where Maria was once again on the phone with Max asking him to "please just tell me where you are."<br><br>Supporting Evidence:<br>Ex. 18 [Ayers BWC] at 4:29:30-4:30:18. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 81 and the evidence cited in it. Dkt. 99-1, SUF No. 81. |
| 82. | Max said, "Tonight I die."<br><br>Supporting Evidence:<br>Ex. 18 [Ayers BWC] at 4:29:30-4:30:18. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 82 and the evidence cited in it. Dkt. 99-1, SUF No. 82. |
| 83. | Max said, "You ruined me." | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to |

KGL
LAW OFFICE OF KEVIN G. LITTLE
Fresno | San Francisco | San Diego

KGL
LAW OFFICE OF KEVIN G. LITTLE
Fresno | San Francisco | San Diego

| NO. | DEFENDANTS' UNDISPUTED FACT AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | Supporting Evidence:<br>Ex. 18 [Ayers BWC] at 4:29:30-4:30:18. | SUF No. 83 and the evidence cited in it. Dkt. 99-1, SUF No. 83. |
| 84. | Max said, "Congratulations, you won."<br><br>Supporting Evidence:<br>Ex. 18 [Ayers BWC] at 4:29:30-4:30:18. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 84 and the evidence cited in it. Dkt. 99-1, SUF No. 84. |
| 85. | At 4:30 a.m. Ayers took the phone from Maria and hung up, telling her not to answer it again.<br><br>Supporting Evidence:<br>Ex. 18 [Ayers BWC] at 4:29:30-4:30:18. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 85 and the evidence cited in it. Dkt. 99-1, SUF No. 85. |
| 86. | At 4:35 a.m. Abraham said "I think a door just – " and went to investigate.<br><br>Supporting Evidence:<br>Ex. 18 [Ayers BWC] at 4:35:04-4:35:10.<br>Ex. 19 [Abraham BWC #2] at 4:35:04-4:35:10.<br>Ex. 26 [Ayers Dep.] 36:2-12.<br>Ex. 27 [Abraham Dep.] 35:21-23; 49:9-25; 75:2-6. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 86 and the evidence cited in it. Dkt. 99-1, SUF No. 86. The Olivares Plaintiffs also rely on the following additional facts, which are also set out in ADF Nos. 9, 21–22 (Statement of Additional Disputed Facts). Dispatch broadcast at 3:46 a.m. that Max intended to commit suicide by cop. Ayers returned to the apartment at 3:55 a.m. and Abraham arrived at 4:12 a.m., and the Officers heard a door at 4:35 a.m., so that Ayers had been at the apartment roughly forty minutes and Abraham more than twenty when Max returned. Defs.' SUF Nos. 42, 43, 65, 86 (Dkt. 93-1) (undisputed in Dkt. 99-1). When the Officers heard a car door at 4:35 a.m. and believed Max had returned, the apartment door was closed, and Ayers and Abraham had their firearms holstered. Until the door was opened, Ayers agreed, they were not facing an imminent threat; he agreed that with the door closed Max could not have posed an immediate threat of death or serious bodily injury to him, Abraham or Maria, and he never considered keeping it closed. Little Decl. Ex. G (Ayers Dep.) 46:8-16; Ex. 26 (Ayers Dep.) 48:2-3, 48:21-24; Sosa SAMF Nos. 21–25 (Dkt. 99-2). Abraham opened the door without looking through the window or the peephole, without using his voice to ask who was outside, and with his firearm and Taser holstered. He testified that, knowing Max intended to force a confrontation and to commit suicide by cop, he would still have considered |

KGL
LAW OFFICE OF KEVIN G. LITTLE
Fresno | San Francisco | San Diego

| NO. | DEFENDANTS' UNDISPUTED FACT AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | opening the door even if he had known Max was right outside. Mayne Decl. Ex. G (Abraham Dep.) 36:21–37:11; Ex. 27 (Abraham Dep.) 50:7-18; Sosa SAMF Nos. 23–24 (Dkt. 99-2). |
| 87. | Abraham opened the door to the apartment and saw Max coming up the walkway.<br><br>Supporting Evidence:<br>Ex. 19 [Abraham BWC #2] at 4:35:04-4:35:15.<br>Ex. 26 [Ayers Dep.] 37:18-25.<br>Ex. 27 [Abraham Dep.] 38:13-18; 45:21-46:12. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 87 and the evidence cited in it. Dkt. 99-1, SUF No. 87. |
| 88. | Max said, "Are you ready for this?" while raising his right hand, in which he was holding scissors.<br><br>Supporting Evidence:<br>Ex. 10 [Sosa Interview] at 74, 76.<br>Ex. 18 [Ayers BWC] at 4:34:14-4:35:17.<br>Ex. 19 [Abraham BWC #2] at 4:35:14-4:35:17.<br>Ex. 26 [Ayers Dep.] 37:18-25.<br>Ex. 27 [Abraham Dep.] 26:25-27:5; 45:21-46:2. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 88 and the evidence cited in it. Dkt. 99-1, SUF No. 88. |
| 89. | The scissors Max was holding were kitchen shears, just over 9 inches long, with cutting blades approximately 4 inches long.<br><br>Supporting Evidence:<br>Ex. 7 [Incident Report] at FRESNO 000201.<br>Ex. 8 [Photo] at FRESNO 001073.<br>Ex. 9 [Photo] at FRESNO 001083.<br>Ex. 10 [Sosa Interview] at 74, 76. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 89 and the evidence cited in it. Dkt. 99-1, SUF No. 89. |
| 90. | Abraham said twice, "Don't do it, bro."<br><br>Supporting Evidence:<br>Ex. 19 [Abraham BWC #2] at 4:35:14-4:35:19. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 90 and the evidence cited in it. Dkt. 99-1, SUF No. 90. |
| 91. | There was no time for Abraham to safely close the door.<br><br>Supporting Evidence:<br>Ex. 27 [Abraham Dep.] 46:14-47:5; 48:1-12. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 91 and the evidence cited in it. Dkt. 99-1, SUF No. 91. |

| NO. | DEFENDANTS' UNDISPUTED FACT AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 92. | Max entered the apartment and focused his attention on Maria and Ayers.<br><br>Supporting Evidence:<br>Ex. 10 [Sosa Interview] at 70.<br>Ex. 18 [Ayers BWC] at 4:35:15-4:35:24.<br>Ex. 19 [Abraham BWC #2] at 4:35:15-4:35:24.<br>Ex. 27 [Abraham Dep.] 46:3-12. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 92 and the evidence cited in it. Dkt. 99-1, SUF No. 92. |
| 93. | Ayers and Abraham both drew their guns and pointed them at Max.<br><br>Supporting Evidence:<br>Ex. 18 [Ayers BWC] at 4:35:15-4:35:24.<br>Ex. 19 [Abraham BWC #2] at 4:35:15-4:35:24. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 93 and the evidence cited in it. Dkt. 99-1, SUF No. 93. |
| 94. | Ayers and Abraham moved back to increase the distance between themselves and Max.<br><br>Supporting Evidence:<br>Ex. 18 [Ayers BWC] at 4:35:15-4:35:24.<br>Ex. 19 [Abraham BWC #2] at 4:35:15-4:35:24.<br>Ex. 26 [Ayers Dep.] 38:1-4. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 94 and the evidence cited in it. Dkt. 99-1, SUF No. 94. |
| 95. | Max raged the Officers, stepping towards them and Maria with the scissors pointed at them.<br><br>Supporting Evidence:<br>Ex. 18 [Ayers BWC] at 4:35:24-4:38:54.<br>Ex. 19 [Abraham BWC #2] at 4:35:24-4:35:54.<br>Ex. 26 [Ayers Dep.] 38:5-7.<br>Ex. 27 [Abraham Dep.] 51:10-17; 52:21-53:15. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 95 and the evidence cited in it. Dkt. 99-1, SUF No. 95. |
| 96. | Max came within a yard of Abraham with the scissors.<br><br>Supporting Evidence:<br>Ex. 26 [Ayers Dep.] 38:24-39:10.<br>Ex. 27 [Abraham Dep.] 61:9-17. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 96 and the evidence cited in it. Dkt. 99-1, SUF No. 96. |
| 97. | Max told Maria, "This is what you wanted. This is what you f*cking wanted."<br><br>Supporting Evidence:<br>Ex. 18 [Ayers BWC] at 4:35:24-4:38:54.<br>Ex. 19 [Abraham BWC #2] at 4:35:24-4:38:54. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 97 and the evidence cited in it. Dkt. 99-1, SUF No. 97. |



KGL
LAW OFFICE OF KEVIN G. LITTLE
*Fresno | San Francisco | San Diego*

KGL
LAW OFFICE OF KEVIN G. LITTLE
Fresno | San Francisco | San Diego

| NO. | DEFENDANTS' UNDISPUTED FACT AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 98. | Maria pleaded with Max, "Please don't do this" and to think of his children.<br><br>Supporting Evidence:<br>Ex. 10 [Sosa Interview] at 78.<br>Ex. 18 [Ayers BWC] at 4:35:24-4:38:54.<br>Ex. 19 [Abraham BWC #2] at 4:35:24-4:38:54 | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 98 and the evidence cited in it. Dkt. 99-1, SUF No. 98. |
| 99. | Ayers and Abraham broadcast that Max had returned to the apartment, and requested assistance.<br><br>Supporting Evidence:<br>Ex. 28 [Crockett Dep.] 22:13-23:6. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 99 and the evidence cited in it. Dkt. 99-1, SUF No. 99. |
| 100. | Between 4:35 a.m. and 4:38 a.m., Abraham and Ayers told Max seven times to "Get back!" and also warned him, "Stop it!" and "I'm telling you."<br><br>Supporting Evidence:<br>Ex. 18 [Ayers BWC] at 4:35:24-4:38:54.<br>Ex. 19 [Abraham BWC #2] at 4:35:24-4:38:54. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 100 and the evidence cited in it. Dkt. 99-1, SUF No. 100. |
| 101. | Ayers and Abraham spoke to Max firmly but respectfully.<br><br>Supporting Evidence:<br>Ex. 18 [Ayers BWC] at 4:35:24-4:38:54.<br>Ex. 19 [Abraham BWC #2] at 4:35:24-4:38:54. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 101 and the evidence cited in it. Dkt. 99-1, SUF No. 101. |
| 102. | Ayers and Abraham repeated their offers to help Max.<br><br>Supporting Evidence:<br>Ex. 18 [Ayers BWC] at 4:35:24-4:38:54.<br>Ex. 19 [Abraham BWC #2] at 4:35:24-4:38:54. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 102 and the evidence cited in it. Dkt. 99-1, SUF No. 102. |
| 103. | Max continued to curse at the Officers and said that no one understood the sacrifices he had made for Maria.<br><br>Supporting Evidence:<br>Ex. 18 [Ayers BWC] at 4:35:24-4:38:54.<br>Ex. 19 [Abraham BWC #2] at 4:35:24-4:38:54. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 103 and the evidence cited in it. Dkt. 99-1, SUF No. 103. |
| 104. | Max did not comply with the Officers' commands and rejected their attempts to engage him. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to |

KGL
LAW OFFICE OF KEVIN G. LITTLE
Fresno | San Francisco | San Diego

| NO. | DEFENDANTS' UNDISPUTED FACT AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | Supporting Evidence:<br>Ex. 18 [Ayers BWC] at 4:35:24-4:38:54.<br>Ex. 19 [Abraham BWC #2] at 4:35:24-4:38:54.<br>Ex. 27 [Abraham Dep.] 81:6-82:6. | SUF No. 104 and the evidence cited in it. Dkt. 99-1, SUF No. 104. |
| 105. | At 4:35:18 a.m. Abraham said, "Don't do it, bro."<br><br>Supporting Evidence:<br>Ex. 18 [Ayers BWC] at 4:35:24-4:38:54.<br>Ex. 19 [Abraham BWC #2] at 4:35:24-4:38:54. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 105 and the evidence cited in it. Dkt. 99-1, SUF No. 105. |
| 106. | At 4:35:23 a.m. Ayers radioed that Max was inside Maria's apartment armed with scissors.<br><br>Supporting Evidence:<br>Ex. 18 [Ayers BWC] at 4:35:23-4:35:27. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 106 and the evidence cited in it. Dkt. 99-1, SUF No. 106. |
| 107. | At 4:36:04 a.m., Max said to Abraham, "Pop it, dude. Are you ready for this?"<br><br>Supporting Evidence:<br>Ex. 18 [Ayers BWC] at 4:35:24-4:38:54.<br>Ex. 19 [Abraham BWC #2] at 4:35:24-4:38:54. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 107 and the evidence cited in it. Dkt. 99-1, SUF No. 107. The Olivares Plaintiffs also rely on the following additional facts, which are also set out in ADF No. 24 (Statement of Additional Disputed Facts). Inside the apartment Max held a pair of kitchen scissors. He made no lunging motion, never tried to injure anyone, and harmed no one. Ayers believed him when he said he would not hurt his wife. When Aguilar told him not to step toward him he complied, holding the scissors pointed down, and less than a minute before the shooting he stood behind the kitchen counter with his hands resting on it. Sosa SAMF Nos. 27–31 (Dkt. 99-2) and the evidence cited there. |
| 108. | At 4:36:54 a.m. Max said, "Have you shot anybody before? Today's gonna be the day."<br><br>Supporting Evidence:<br>Ex. 18 [Ayers BWC] at 4:35:24-4:38:54.<br>Ex. 19 [Abraham BWC #2] at 4:35:24-4:38:54. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 108 and the evidence cited in it. Dkt. 99-1, SUF No. 108. The Olivares Plaintiffs also rely on the following additional facts, which are also set out in ADF No. 24 (Statement of Additional Disputed Facts). Inside the apartment Max held a pair of kitchen scissors. He made no lunging motion, never tried to injure anyone, and harmed no one. Ayers |

| NO. | DEFENDANTS' UNDISPUTED FACT AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | believed him when he said he would not hurt his wife. When Aguilar told him not to step toward him he complied, holding the scissors pointed down, and less than a minute before the shooting he stood behind the kitchen counter with his hands resting on it. Sosa SAMF Nos. 27–31 (Dkt. 99-2) and the evidence cited there. |
| 109. | At 4:37:06 a.m. Crockett arrived to the apartment.<br><br><u>Supporting Evidence:</u><br>Ex. 20 [Crockett BWC] at 4:37:06. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 109 and the evidence cited in it. Dkt. 99-1, SUF No. 109. |
| 110. | Crockett saw that Max was holding kitchen shears in his right hand and pointing them towards Ayers and Maria.<br><br><u>Supporting Evidence:</u><br>Ex. 28 [Crockett Dep.] 28:6-15; 51:24-52:9. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 110 and the evidence cited in it. Dkt. 99-1, SUF No. 110. |
| 111. | At 4:37:16 a.m. Crockett told Max, "Let's chill out, man," to which Max responded "No! F*ck no!"<br><br><u>Supporting Evidence:</u><br>Ex. 18 [Ayers BWC] at 4:37:16-4:37:19.<br>Ex. 19 [Abraham BWC #2] at 4:37:16-4:37:19.<br>Ex. 20 [Crockett BWC] at 4:37:15-4:37:22.<br>Ex. 28 [Crockett Dep.] 53:5-12. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 111 and the evidence cited in it. Dkt. 99-1, SUF No. 111. |
| 112. | At 4:37:29 a.m. Crockett broadcast "One at gunpoint, scissors in right hand."<br><br><u>Supporting Evidence:</u><br>Ex. 3 [CAD Report] at FRESNO 000248, 000273.<br>Ex. 20 [Crockett BWC] at 4:37:29-4:37:37.<br>Ex. 28 [Crockett Dep.] 55:12-56:1. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 112 and the evidence cited in it. Dkt. 99-1, SUF No. 112. |
| 113. | At 4:37:35 a.m. Aguilar arrived to Maria's apartment.<br><br><u>Supporting Evidence:</u><br>Ex. 21 [Aguilar BWC] at 4:37:35-4:37:40. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 113 and the evidence cited in it. Dkt. 99-1, SUF No. 113. |
| 114. | Crockett, who was standing outside the doorway, quickly described the situation inside. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to |

KGL
LAW OFFICE OF KEVIN G. LITTLE
*Fresno | San Francisco | San Diego*

KGL
LAW OFFICE OF KEVIN G. LITTLE
Fresno | San Francisco | San Diego

| NO. | DEFENDANTS' UNDISPUTED FACT AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | Supporting Evidence:<br>Ex. 20 [Crockett BWC] at 4:37:39-4:37:43.<br>Ex. 21 [Aguilar BWC] at 4:37:40-4:37:43. | SUF No. 114 and the evidence cited in it. Dkt. 99-1, SUF No. 114. |
| 115. | At 4:37:43 a.m. Max said, "This is how it ends. This is what you wanted."<br><br>Supporting Evidence:<br>Ex. 18 [Ayers BWC] at 4:37:43-4:37:45.<br>Ex. 19 [Abraham BWC #2] at 4:35:24-4:38:54. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 115 and the evidence cited in it. Dkt. 99-1, SUF No. 115. |
| 116. | At 4:38:01 a.m. Max said, "Sorry you guys have to do this, but it's gonna happen either way."<br><br>Supporting Evidence:<br>Ex. 18 [Ayers BWC] at 4:37:57-4:38:03.<br>Ex. 19 [Abraham BWC #2] at 4:35:24-4:38:54.<br>Ex. 21 [Aguilar BWC] at 4:37:55-4:37:59. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 116 and the evidence cited in it. Dkt. 99-1, SUF No. 116. |
| 117. | At 4:38:05 a.m. Abraham said, "If you don't want to talk to us, talk to one of my partners. How about that?"<br><br>Supporting Evidence:<br>Ex. 18 [Ayers BWC] at 4:38:03-4:38:10.<br>Ex. 19 [Abraham BWC #2] at 4:38:03-4:38:10.<br>Ex. 20 [Crockett BWC] at 4:38:02-4:38:10.<br>Ex. 21 [Aguilar BWC] at 4:37:59-4:38:05. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 117 and the evidence cited in it. Dkt. 99-1, SUF No. 117. |
| 118. | Max responded, "No, I don't want to talk to any of them f*cking guys. My fate is sealed, my guy."<br><br>Supporting Evidence:<br>Ex. 18 [Ayers BWC] at 4:38:03-4:38:10.<br>Ex. 19 [Abraham BWC #2] at 4:38:03-4:38:10.<br>Ex. 20 [Crockett BWC] at 4:38:02-4:38:10.<br>Ex. 21 [Aguilar BWC] at 4:38:03-4:38:07. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 118 and the evidence cited in it. Dkt. 99-1, SUF No. 118. |
| 119. | At 4:38:29 a.m. Aguilar asked Max, "Hey, can we talk?"<br><br>Supporting Evidence:<br>Ex. 20 [Crockett BWC] at 4:38:25-4:38:33. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 119 and the evidence cited in it. Dkt. 99-1, SUF No. 119. |

| NO. | DEFENDANTS' UNDISPUTED FACT AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | Ex. 21 [Aguilar BWC] at 4:38:25-4:38:27.<br>Ex. 29 [Aguilar Dep.] 41:1-18; 43:6-18. | |
| 120. | Max responded, "F*ck no!"and "I am done with this, dude."<br><br>Supporting Evidence:<br>Ex. 19 [Abraham BWC #2] at 4:38:26-4:38:31.<br>Ex. 20 [Crockett BWC] at 4:38:25-4:38:33.<br>Ex. 21 [Aguilar BWC] at 4:38:26-4:38:31. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 120 and the evidence cited in it. Dkt. 99-1, SUF No. 120. |
| 121. | At 4:38:13 a.m. Max talked about killing Maria's affair partner. When Ayers said, "He's not here, Max," Max responded, "Exactly. So it's gonna be my life or you guys. That's it. That's all it's gonna come down to."<br><br>Supporting Evidence:<br>Ex. 18 [Ayers BWC] at 4:38:13-4:38:26.<br>Ex. 19 [Abraham BWC #2] at 4:38:13-4:38:31. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 121 and the evidence cited in it. Dkt. 99-1, SUF No. 121. |
| 122. | At 4:38:38 a.m. Aguilar readied his Taser.<br><br>Supporting Evidence:<br>Ex. 20 [Crockett BWC] at 4:38:37-4:38:43.<br>Ex. 29 [Aguilar Dep.] 30:9-24. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 122 and the evidence cited in it. Dkt. 99-1, SUF No. 122. |
| 123. | At 4:38:50 a.m. Abraham gestured to Ayers and Maria to get out of the apartment.<br><br>Supporting Evidence:<br>Ex. 19 [Abraham BWC #2] at 4:38:50-4:38:54.<br>Ex. 21 [Aguilar BWC] at 4:38:45-4:38:50.<br>Ex. 26 [Ayers Dep.] 13-23.<br>Ex. 27 [Abraham Dep.] 58:3-23. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 123 and the evidence cited in it. Dkt. 99-1, SUF No. 123. |
| 124. | Ayers walked toward the door and exited the apartment.<br><br>Supporting Evidence:<br>Ex. 18 [Ayers BWC] at 4:38:50-4:38:55.<br>Ex. 19 [Abraham BWC #2] at 4:38:50-4:38:54. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 124 and the evidence cited in it. Dkt. 99-1, SUF No. 124. |
| 125. | Maria remained seated on the couch.<br><br>Supporting Evidence: | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to |

KGL
LAW OFFICE OF KEVIN G. LITTLE
*Fresno | San Francisco | San Diego*

KGL
LAW OFFICE OF KEVIN G. LITTLE
Fresno | San Francisco | San Diego

| NO. | DEFENDANTS' UNDISPUTED FACT AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | Ex. 19 [Abraham BWC #2] at 4:38:50-4:38:54. | SUF No. 125 and the evidence cited in it. Dkt. 99-1, SUF No. 125. |
| 126. | At 4:38:52 a.m. Aguilar stepped away to call in the details of the Officers' situation.<br><br>Supporting Evidence:<br>Ex. 21 [Aguilar BWC] at 4:38:49-4:39:10.<br>Ex. 29 [Aguilar Dep.] 31:20-32:15. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 126 and the evidence cited in it. Dkt. 99-1, SUF No. 126. |
| 127. | At 4:38:59 a.m. Max told Abraham he could also leave by the front door.<br><br>Supporting Evidence:<br>Ex. 18 [Ayers BWC] at 4:38:55-4:39:06.<br>Ex. 19 [Abraham BWC #2] at 4:38:55-4:39:06. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 127 and the evidence cited in it. Dkt. 99-1, SUF No. 127. |
| 128. | At 4:39:02 a.m. Crockett, standing at the threshold, motioned for Maria to come outside.<br><br>Supporting Evidence:<br>Ex. 18 [Ayers BWC] at 4:39:03-4:39:12.<br>Ex. 20 [Crockett BWC] at 4:39:02-4:39:15.<br>Ex. 28 [Crockett Dep.] 56:8-11; 59:7-14. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 128 and the evidence cited in it. Dkt. 99-1, SUF No. 128. The Olivares Plaintiffs also rely on the following additional facts, which are also set out in ADF No. 27 (Statement of Additional Disputed Facts). At about 4:39 a.m. the Officers called Maria out of the apartment without telling Max to stay inside or what to do. Ayers walked out ahead of Max into the breezeway, where Crockett and Aguilar were standing, and Abraham stayed in the apartment behind him. Defs.' SUF Nos. 128–130 (Dkt. 93-1); Sosa SAMF Nos. 34–35 (Dkt. 99-2). |
| 129. | At 4:39:20 a.m. Abraham said twice, "Maria, get out."<br><br>Supporting Evidence:<br>Ex. 18 [Ayers BWC] at 4:39:19-4:39:22.<br>Ex. 19 [Abraham BWC #2] at 4:39:19-4:39:22.<br>Ex. 21 [Aguilar BWC] at 4:39:15-4:39:19. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 129 and the evidence cited in it. Dkt. 99-1, SUF No. 129. The Olivares Plaintiffs also rely on the following additional facts, which are also set out in ADF No. 27 (Statement of Additional Disputed Facts). At about 4:39 a.m. the Officers called Maria out of the apartment without telling Max to stay inside or what to do. Ayers walked out ahead of Max into the breezeway, where Crockett and Aguilar were standing, and Abraham stayed in the apartment behind him. Defs.' SUF Nos. 128–130 (Dkt. 93-1); Sosa SAMF Nos. 34–35 (Dkt. 99-2). |
| 130. | Maria stood and started walking toward the door. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to |

| NO. | DEFENDANTS' UNDISPUTED FACT AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | Supporting Evidence:<br>Ex. 20 [Crockett BWC] at 4:39:15-4:39:23. | SUF No. 130 and the evidence cited in it. Dkt. 99-1, SUF No. 130. The Olivares Plaintiffs also rely on the following additional facts, which are also set out in ADF No. 27 (Statement of Additional Disputed Facts). At about 4:39 a.m. the Officers called Maria out of the apartment without telling Max to stay inside or what to do. Ayers walked out ahead of Max into the breezeway, where Crockett and Aguilar were standing, and Abraham stayed in the apartment behind him. Defs.' SUF Nos. 128–130 (Dkt. 93-1); Sosa SAMF Nos. 34–35 (Dkt. 99-2). |
| 131. | At 4:39:23 a.m. Max turned and approached the door, facing Ayers, Crockett and Aguilar.<br><br>Supporting Evidence:<br>Ex. 18 [Ayers BWC] at 4:39:23-4:39:25.<br>Ex. 19 [Abraham BWC #2] at 4:39:23-4:39:25.<br>Ex. 20 [Crockett BWC] at 4:39:20-4:39:24. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 131 and the evidence cited in it. Dkt. 99-1, SUF No. 131. |
| 132. | Crockett and Ayers stepped back.<br><br>Supporting Evidence:<br>Ex. 18 [Ayers BWC] at 4:39:23-4:39:25<br>Ex. 20 [Crockett BWC] at 4:39:20-4:39:27.<br>Ex. 21 [Aguilar BWC] at 4:39:21-4:39:23. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 132 and the evidence cited in it. Dkt. 99-1, SUF No. 132. |
| 133. | The Officers shouted: "Wait!" (one time), "Stop!" (one time); "Get back, bro!" (two times) "Hey!" (one time) and "Chill out!" (two times).<br><br>Supporting Evidence:<br>Ex. 18 [Ayers BWC] at 4:39:22-4:39:26<br>Ex. 19 [Abraham BWC #2] at 4:39:22-4:39:26.<br>Ex. 20 [Crockett BWC] at 4:39:24-4:39:27.<br>Ex. 21 [Aguilar BWC] at 4:39:20-4:39:26.<br>Ex. 27 [Abraham Dep.] 58:3-23.<br>Ex. 28 [Crockett Dep.] 45:10-18; 57:21-58:1; 58:12-16; Crockett 59:15-21<br>Ex. 29 [Aguilar Dep.] 38:9-17. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 133 and the evidence cited in it. Dkt. 99-1, SUF No. 133. |
| 134. | At 4:39:25 a.m. Max crossed the threshold and exited the apartment. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to |



KGL
LAW OFFICE OF KEVIN G. LITTLE
Fresno | San Francisco | San Diego

| NO. | DEFENDANTS' UNDISPUTED FACT AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | Supporting Evidence:<br>Ex. 18 [Ayers BWC] at 4:39:25.<br>Ex. 19 [Abraham BWC #2] at 4:39:25.<br>Ex. 20 [Crockett BWC] at 4:39:20-4:39:25.<br>Ex. 21 [Aguilar BWC] at 4:3922-4:39:23. | SUF No. 134 and the evidence cited in it. Dkt. 99-1, SUF No. 134. The Olivares Plaintiffs also rely on the following additional facts, which are also set out in ADF No. 29 (Statement of Additional Disputed Facts). Max crossed the threshold at 4:39:25 a.m. with the scissors pointed down. Aguilar Tased him one second later, at 4:39:26, without warning. Max moved away from the Taser's pain along the only path leading away from the apartment, through the Officers. At 4:39:28, two seconds into the Taser's five-second cycle, Ayers, Crockett and Abraham fired without warning. Defs.' SUF Nos. 134, 135, 140 (Dkt. 93-1); Ex. 29 (Aguilar Dep.) 50:18-22; Sosa SAMF Nos. 39–44 (Dkt. 99-2); Dkt. 99-1, SUF Nos. 134–140. |
| 135. | At 4:39:26 a.m. Aguilar deployed his Taser, striking Max.<br><br>Supporting Evidence:<br>Ex. 18 [Ayers BWC] at 4:39:26.<br>Ex. 20 [Crockett BWC] at 4:39:27.<br>Ex. 21 [Aguilar BWC] at 4:39:24.<br>Ex. 27 [Abraham Dep.] 58:25-59:19.<br>Ex. 28 [Crockett Dep.] 59:22-24. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 135 and the evidence cited in it. Dkt. 99-1, SUF No. 135. The Olivares Plaintiffs also rely on the following additional facts, which are also set out in ADF Nos. 28–29 (Statement of Additional Disputed Facts). Before Max crossed the threshold Aguilar had decided to Tase him there and had told Crockett so. Aguilar was trained, and agreed, that it is human nature to move away from something that causes pain, and he considered that Max would move away from the Taser. The breezeway was "a very small, tight space" with "not enough room," there was no avenue of escape, and the only directions Max could go led toward Officers: the breezeway where the Officers stood, or back into the apartment toward Abraham. Ex. 29 (Aguilar Dep.) 49:21–50:11, 30:23–31:12; Mayne Decl. Ex. D (Aguilar Dep.) 20:7-14, 23:6-24:19, 55:2-7; Sosa SAMF Nos. 36–38 (Dkt. 99-2). Max crossed the threshold at 4:39:25 a.m. with the scissors pointed down. Aguilar Tased him one second later, at 4:39:26, without warning. Max moved away from the Taser's pain along the only path leading away from the apartment, through the Officers. At 4:39:28, two seconds into the Taser's five-second cycle, Ayers, Crockett and Abraham fired without |

KGL
LAW OFFICE OF KEVIN G. LITTLE
Fresno | San Francisco | San Diego

| NO. | DEFENDANTS' UNDISPUTED FACT AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | warning. Defs.' SUF Nos. 134, 135, 140 (Dkt. 93-1); Ex. 29 (Aguilar Dep.) 50:18-22; Sosa SAMF Nos. 39–44 (Dkt. 99-2); Dkt. 99-1, SUF Nos. 134–140. |
| 136. | The Taser did not immobilize Max, who stumbled briefly and swatted the air in front of him.<br><br><u>Supporting Evidence:</u><br>Ex. 18 [Ayers BWC] at 4:39:26-4:39:28.<br>Ex. 20 [Crockett BWC] at 4:39:27-4:39:32.<br>Ex. 21 [Aguilar BWC] at 4:39:24-4:39:26.<br>Ex. 28 [Crockett Dep.] 40:10-22; 43:8-16.<br>Ex. 27 [Abraham Dep.] 58:25-59:19.<br>Ex. 29 [Aguilar Dep.] 18:14-23. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 136 and the evidence cited in it. Dkt. 99-1, SUF No. 136. |
| 137. | Aguilar did not have time to, and did not attempt to, reload and redeploy the Taser.<br><br><u>Supporting Evidence:</u><br>Ex. 29 [Aguilar Dep.] 26:20-27:19 | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 137 and the evidence cited in it. Dkt. 99-1, SUF No. 137. |
| 138. | At 4:39:27 a.m. Max yelled, gritted his teeth, and charged toward Crockett, Aguilar and Ayers.<br><br><u>Supporting Evidence:</u><br>Ex. 18 [Ayers BWC] at 4:39:27-4:39:29.<br>Ex. 19 [Abraham BWC #2] at 4:39:27-4:39:29.<br>Ex. 20 [Crockett BWC] at 4:39:27-4:39:32.<br>Ex. 21 [Aguilar BWC] at 4:39:26-4:39:27.<br>Ex. 27 [Abraham Dep.] 86:24-87:3; 88:6-16.<br>Ex. 28 [Crockett Dep.] 44:20-24; 46:15-21; 67:12-68:6; 68:13-17; 74:14-20.<br>Ex. 29 [Aguilar Dep.] 62:9-25. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 138 and the evidence cited in it. Dkt. 99-1, SUF No. 138. |
| 139. | Max was gripping the scissors as he charged the Officers.<br><br><u>Supporting Evidence:</u><br>Ex. 19 [Abraham BWC #2] at 4:39:27-4:39:29.<br>Ex. 20 [Crockett BWC] at 4:39:28-4:39:30.<br>Ex. 28 [Crockett Dep.] 66:2-9; 67:8-21; 75:6-10; 76:15-23;<br>Ex. 27 [Abraham Dep.] 86:24-87:3; 88:6-16. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 139 and the evidence cited in it. Dkt. 99-1, SUF No. 139. |

KGL
LAW OFFICE OF KEVIN G. LITTLE
*Fresno | San Francisco | San Diego*

| NO. | DEFENDANTS' UNDISPUTED FACT AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 140. | Shots fired at 4:39:28 a.m.<br><br>Supporting Evidence:<br>Ex. 18 [Ayers BWC] at 4:39:28.<br>Ex. 19 [Abraham BWC #2] at 4:39:28.<br>Ex. 20 [Crockett BWC] at 4:39:28.<br>Ex. 21 [Aguilar BWC] at 4:39:27.<br>Ex. 29 [Aguilar Dep.] 35:2-8. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 140 and the evidence cited in it. Dkt. 99-1, SUF No. 140. The Olivares Plaintiffs also rely on the following additional facts, which are also set out in ADF Nos. 29–30 (Statement of Additional Disputed Facts). Max crossed the threshold at 4:39:25 a.m. with the scissors pointed down. Aguilar Tased him one second later, at 4:39:26, without warning. Max moved away from the Taser's pain along the only path leading away from the apartment, through the Officers. At 4:39:28, two seconds into the Taser's five-second cycle, Ayers, Crockett and Abraham fired without warning. Defs.' SUF Nos. 134, 135, 140 (Dkt. 93-1); Ex. 29 (Aguilar Dep.) 50:18-22; Sosa SAMF Nos. 39–44 (Dkt. 99-2); Dkt. 99-1, SUF Nos. 134–140. Abraham fired from behind Max, seeing mostly his back, toward the area where Crockett, Ayers and Aguilar were standing, although he was trained to avoid firing in the direction of other Officers because of crossfire. One bullet entered Max's mid-back and passed through his right lung and heart. Ex. 27 (Abraham Dep.) 86:6–87:10; Mayne Decl. Ex. I (Coroner's Report) at FRESNO 000230, 000234; Sosa SAMF No. 46 (Dkt. 99-2). |
| 141. | Max fell to the ground, still holding the scissors.<br><br>Supporting Evidence:<br>Ex. 18 [Ayers BWC] at 4:39:30.<br>Ex. 19 [Abraham BWC #2] at 4:39:30.<br>Ex. 20 [Crockett BWC] at 4:39:31.<br>Ex. 21 [Aguilar BWC] at 4:39:30. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 141 and the evidence cited in it. Dkt. 99-1, SUF No. 141. |
| 142. | At 4:39:38 a.m. Max moved his arm and Abraham commanded him to "Let go of –"<br><br>Supporting Evidence:<br>Ex. 18 [Ayers BWC] at 4:39:38-4:39:43.<br>Ex. 19 [Abraham BWC #2] at 4:39:38-4:39:43.<br>Ex. 21 [Aguilar BWC] at 4:39:38-4:39:39. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 142 and the evidence cited in it. Dkt. 99-1, SUF No. 142. |
| 143. | Aguilar called in "Shots fired." | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to |

KGL LAW OFFICE OF KEVIN G. LITTLE Fresno \| San Francisco \| San Diego

KGL
LAW OFFICE OF KEVIN G. LITTLE
*Fresno | San Francisco | San Diego*

| NO. | DEFENDANTS' UNDISPUTED FACT AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | Supporting Evidence: Ex. 3 [CAD Report] at FRESNO 000248, 000274. Ex. 21 [Aguilar BWC] at 4:39:36-4:39:45. | SUF No. 143 and the evidence cited in it. Dkt. 99-1, SUF No. 143. |
| 144. | Max was approximately a foot to a foot-and-a-half away from Crockett when all four Officers fired their service weapons. Supporting Evidence: Ex. 26 [Ayers Dep.] 85:3-10. Ex. 28 [Crockett Dep.] 45:6-9; 73:15-23; 76:15-23. Ex. 29 [Aguilar Dep.] 63:1-4. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 144 and the evidence cited in it. Dkt. 99-1, SUF No. 144. The Olivares Plaintiffs also rely on the following additional facts, which are also set out in ADF Nos. 29–30 (Statement of Additional Disputed Facts). Max crossed the threshold at 4:39:25 a.m. with the scissors pointed down. Aguilar Tased him one second later, at 4:39:26, without warning. Max moved away from the Taser's pain along the only path leading away from the apartment, through the Officers. At 4:39:28, two seconds into the Taser's five-second cycle, Ayers, Crockett and Abraham fired without warning. Defs.' SUF Nos. 134, 135, 140 (Dkt. 93-1); Ex. 29 (Aguilar Dep.) 50:18-22; Sosa SAMF Nos. 39–44 (Dkt. 99-2); Dkt. 99-1, SUF Nos. 134–140. Abraham fired from behind Max, seeing mostly his back, toward the area where Crockett, Ayers and Aguilar were standing, although he was trained to avoid firing in the direction of other Officers because of crossfire. One bullet entered Max's mid-back and passed through his right lung and heart. Ex. 27 (Abraham Dep.) 86:6–87:10; Mayne Decl. Ex. I (Coroner's Report) at FRESNO 000230, 000234; Sosa SAMF No. 46 (Dkt. 99-2). |
| 145. | Max was close enough to Crockett to have grabbed Crockett's gun. Supporting Evidence: Ex. 27 [Abraham Dep.] 58:25-59:19. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 145 and the evidence cited in it. Dkt. 99-1, SUF No. 145. |
| 146. | At 4:39:50 a.m. Crockett retrieved a medical kit from his vehicle. Supporting Evidence: Ex. 20 [Crockett BWC] at 4:39:27-4:39:50. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 146 and the evidence cited in it. Dkt. 99-1, SUF No. 146. |
| 147. | At 40:40:10 a.m. Aguilar approached Max, retrieved the scissors and tossed them away. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to |

| NO. | DEFENDANTS' UNDISPUTED FACT AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | Supporting Evidence:<br>Ex. 20 [Crockett BWC] at 4:40:10-4:40:12.<br>Ex. 21 [Aguilar BWC] at 4:40:07-4:40:10. | SUF No. 147 and the evidence cited in it. Dkt. 99-1, SUF No. 147. |
| 148. | At 4:40:40 a.m. the Officers began administering emergency medical aid to Max.<br><br>Supporting Evidence:<br>Ex. 20 [Crockett BWC] at 4:40:40.<br>Ex. 21 [Aguilar BWC] at 4:40:38. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 148 and the evidence cited in it. Dkt. 99-1, SUF No. 148. |
| 149. | The coroner determined the cause of Max's death was a gunshot wound to the chest.<br><br>Supporting Evidence:<br>Ex. 5 [Coroner's Report] at FRESNO 000239. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 149 and the evidence cited in it. Dkt. 99-1, SUF No. 149. |
| 150. | Max's blood alcohol level was 0.09.<br><br>Supporting Evidence:<br>Ex. 6 [Toxicology Report] at FRESNO000300. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 150 and the evidence cited in it. Dkt. 99-1, SUF No. 150. |
| 151. | Max Sr. is Max's biological father.<br><br>Supporting Evidence:<br>Ex. 23 [Max. Sr. Dep.] 12:13-18. | Undisputed. |
| 152. | Martha is Max's biological mother.<br><br>Supporting Evidence:<br>Ex. 23 [Max. Sr. Dep.] 12:13-18; 14:9-10.<br>Ex. 24 [Martha Dep.] 20:25-21:11. | Undisputed. |
| 153. | M.S. and L.S. are Max's biological children.<br><br>Supporting Evidence:<br>Ex. 23 [Maria Dep.] 32:5-10. | Undisputed. See also Joint Statement of Undisputed Facts ¶ 8 (Dkt. 93-2). |
| 154. | Max and Maria were married on July 11, 2014.<br><br>Supporting Evidence:<br>Ex. 23 [Maria Dep.] 18:3-4. | Undisputed. See also Joint Statement of Undisputed Facts ¶ 9 (Dkt. 93-2). |
| 155. | Max and Maria were married but living separately as of November 4, 2023.<br><br>Supporting Evidence:<br>Ex. 23 [Maria Dep.] 26:1-17; 42:14-17; | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 155 and the evidence cited in it. Dkt. 99-1, SUF No. 155. |



KGL
LAW OFFICE OF KEVIN G. LITTLE
Fresno | San Francisco | San Diego

KGL
LAW OFFICE OF KEVIN G. LITTLE
Fresno | San Francisco | San Diego

| NO. | DEFENDANTS' UNDISPUTED FACT AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | Ex. 25 [Max Sr. Dep.] 27:4-7. | |
| 156. | One of the reasons Max and Maria separated was that Maria had a relationship with another man, who was one of her coworkers.<br><br><u>Supporting Evidence:</u><br>Ex. 10 [Sosa Interview] at 9, 10.<br>Ex. 23 [Maria Dep.] 30:3-7; 30:24-31:16; 137:19-25.<br>Ex. 25 [Max Sr. Dep.] 28:20-25. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 156 and the evidence cited in it. Dkt. 99-1, SUF No. 156. |
| 157. | Max Sr., Martha, M.S. and L.S. were not present when Max was shot and killed.<br><br><u>Supporting Evidence:</u><br>Ex. 25 [Max. Sr.] 21:4-12. | Undisputed that Max Sr. and Martha were not present when Max was shot. Ex. 25 (Max Sr. Dep.) 21:4-12. As to M.S. and L.S., the Olivares Plaintiffs join the Sosa Plaintiffs' response. The fact is immaterial to every claim at issue; no claim requires that a plaintiff have witnessed the shooting. |
| 158. | Maria was in the apartment when Max was shot and killed and did not see Max's actions towards the Officers or the Officers' actions towards Max once Max left the apartment.<br><br><u>Supporting Evidence:</u><br>Ex. 10 [Sosa Interview] at 80.<br>Ex. 23 [Maria Dep.] 47:15-17; 108:23-109:4. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 158 and the evidence cited in it. Dkt. 99-1, SUF No. 158. |
| 159. | In 2014, Max Sr. signed over his business to Max.<br><br><u>Supporting Evidence:</u><br>Ex. 10 [Sosa Interview] at 5, 6.<br>Ex. 23 [Maria Dep.] 116:8-15;<br>Ex. 25 [Max. Sr. Dep.] 16:15-22; 25:25-26:6. | Undisputed in part. Max Sr. testified that in 2014 he put the business in Max's name because he intended to go to Mexico, that he did not go, and that in mid-2014 he "changed it back to [his] name." Ex. 25 (Max Sr. Dep.) 26:1–27:7; see also 16:21-23. The business was therefore Max's only briefly, and has been Max Sr.'s since mid-2014. Disputed to the extent the fact implies a lasting transfer of ownership. |
| 160. | Max assumed over $50,000 in debt as a result of taking over his father's business.<br><br><u>Supporting Evidence:</u><br>Ex. 10 [Sosa Interview] at 5, 6, 8.<br>Ex. 23 [Maria Dep.] 115:19-25. | Disputed. Max Sr. testified that Max never had to pay money owed because of the business: "Everything that was there, I paid. Anything that needed to be paid, I paid." Ex. 25 (Max Sr. Dep.) 27:8-11. The business was back in Max Sr.'s name from mid-2014. Id. 27:1-7. In any event the fact is immaterial to the Olivares Plaintiffs' claims. |

KGL
LAW OFFICE OF KEVIN G. LITTLE
Fresno | San Francisco | San Diego

| NO. | DEFENDANTS' UNDISPUTED FACT AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 161. | Max's wages were garnished for a period of time due to the business liability he assumed from his father.<br><br>Supporting Evidence:<br>Ex. 23 [Maria Dep.] 116:22-24. | Disputed. See response to No. 160. Max Sr. testified that he, not Max, paid what was owed on the business. Ex. 25 (Max Sr. Dep.) 27:8-11. The Olivares Plaintiffs have seen no evidence beyond Maria's testimony that Max's wages were garnished for the business's liabilities, and the fact is immaterial to their claims. |
| 162. | The business debt from Max Sr.'s business had not resolved at the time of Max's death.<br><br>Supporting Evidence:<br>Ex. 23 [Maria Dep.] 116:16-21. | Disputed. See responses to Nos. 160 and 161. Max Sr. testified that the business's obligations were paid by him. Ex. 25 (Max Sr. Dep.) 27:8-11. |
| 163. | Max did not provide Max Sr. with financial support during his lifetime.<br><br>Supporting Evidence:<br>Ex. 23 [Max Sr. Dep.] 29:14-16; 45:24-46:9. | Undisputed that Max Sr. so testified when asked whether Max ever provided financial support. Ex. 25 (Max Sr. Dep.) 29:14-16. Disputed to the extent the fact implies that Max did not help him or that Max Sr. was not dependent on Max. Max Sr. understood the question to ask about regular support. Max helped him from time to time when he needed it, but not regularly, and most of Max's help was keeping his business running, which is how he supports himself. Sosa Sr. Decl. ¶ 8; Ex. 25 (Max Sr. Dep.) 45:24–46:3 (Max "was helping [me] in business that [I] use to support [my]self"). Max did the harder computer-diagnostic jobs once or twice a week after his own work, and no one else could do them (id. 41:5-14, 41:25–42:3); Max Sr. saw him two to four times a week (id. 29:17-20); and after Max died he lost the accounts Max had helped him keep and has been unable to find anyone who can do the work (id. 40:21–41:24). Sosa Sr. Decl. ¶¶ 5–7. See also Pls.' Resp. to Def.'s Interrogatories, Set Two, No. 22 (Little Decl. Ex. E); ADF Nos. 1–4. In addition: Max Sr. owns his business and his income depends on it. He takes no regular salary or draw and receives no Social Security or pension, and he relies on the business to support himself. Ex. 25 (Max Sr. Dep.) 45:24–46:9; Sosa Sr. Decl. ¶¶ 3, 9. |
| 164. | Max Sr. testified Max helped him with his business and that Max Sr. planned to have Max take over the business. | Undisputed. Max Sr. testified that Max helped him in his business and that Max was his "beneficiary," the person he planned to have take over the business |

KGL
LAW OFFICE OF KEVIN G. LITTLE
*Fresno | San Francisco | San Diego*

| NO. | DEFENDANTS' UNDISPUTED FACT AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | Supporting Evidence:<br>Ex. 23 [Max Sr. Dep.] 45:24-46:9. | when he became too old to work. Ex. 25 (Max Sr. Dep.) 45:24–46:6. See also id. 40:24–42:3 and Interrogatory Response No. 13 (Little Decl. Ex. E). See also ADF Nos. 1–4. In addition: Max Sr. has owned and operated a diesel-mechanic business since 2006. In the years before his death he saw Max two to four times a week, and Max helped him with the more difficult jobs, one or two times a week after work, on engines and motors with computer problems. Max "was the only one who knew what I knew." Ex. 25 (Max Sr. Dep.) 16:11-18, 29:17-20, 41:5-14, 41:25–42:3; Sosa Sr. Decl. ¶¶ 2, 4–5; Little Decl. Ex. E, Nos. 13, 22. Max Sr. owns his business and his income depends on it. He takes no regular salary or draw and receives no Social Security or pension, and he relies on the business to support himself. Ex. 25 (Max Sr. Dep.) 45:24–46:9; Sosa Sr. Decl. ¶¶ 3, 9. |
| 165. | Max Sr. testified he was relying on his business to support him after he retired.<br><br>Supporting Evidence:<br>Ex. 23 [Max Sr. Dep.] 45:24-46:9. | Undisputed. Max Sr. testified that he was relying on his business to help support himself after he retired. Ex. 25 (Max Sr. Dep.) 46:7-9. The Olivares Plaintiffs rely on this fact, together with No. 164, as evidence of Max Sr.'s dependence on Max. See also ADF Nos. 3–4. Max Sr. owns his business and his income depends on it; he takes no regular salary or draw and receives no Social Security or pension. Ex. 25 (Max Sr. Dep.) 45:24–46:9; Sosa Sr. Decl. ¶¶ 3, 9. |
| 166. | Max did not provide Martha with financial support during his lifetime.<br><br>Supporting Evidence:<br>Ex. 24 [Martha Dep.] 37:5-11. | Undisputed that Martha so testified when asked whether Max supported her while he was alive. Ex. 24 (Martha Dep.) 37:5-11. Disputed to the extent the fact implies that Martha had received no support from Max or was not relying on him. She understood the question to ask whether Max had supported her completely and throughout his adult life. Olivares Decl. ¶ 10. In September and October 2023 she was in Fresno for two to three weeks, slept at Max's house and did the work of a live-in caregiver for his two sons. While she was there Max gave her $200 in cash once or twice a month, and he gave her about $750 in cash to move out of her month-to-month |

KGL
LAW OFFICE OF KEVIN G. LITTLE
Fresno | San Francisco | San Diego

| NO. | DEFENDANTS' UNDISPUTED FACT AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | apartment and move to Fresno. In Fresno she had no means of support of her own and Max supported her. Olivares Decl. ¶¶ 6–9. Max had asked her to come and live with him and help with the boys, and the plan was for her to move in December 2023 and remain permanently. Ex. 24 (Martha Dep.) 34:12–35:4; Olivares Decl. ¶¶ 4–5; Interrogatory Response No. 13 (Little Decl. Ex. E) (Martha "had been promised to move in with and be supported by the decedent and had already acted in reliance on that promise"); ADF No. 5. |
| 167. | Martha testified Max "was always talking about supporting me whenever I became old."<br><br><u>Supporting Evidence:</u><br>Ex. 24 [Martha Dep.] 37:5-11. | Undisputed that Martha so testified. Ex. 24 (Martha Dep.) 37:5-11. Martha's full answer was that Max "would always talk about supporting me when[ever] I became old." Id. 37:7-8. The Olivares Plaintiffs rely on the statement as evidence of Max's intent and of Martha's reliance, and incorporate their response to No. 166. See also ADF No. 5. Max asked Martha to move into his home in Fresno as the live-in caregiver for his two young sons and agreed to support her; she gave notice on her tenancy, and the move came to nothing because Max died. Ex. 24 (Martha Dep.) 34:12–35:4, 31:5-8, 37:12-24; Olivares Decl. ¶¶ 4–9. |
| 168. | All of the Officers were trained in crisis management, deescalation techniques and dealing with individuals in crisis as part of their training.<br><br><u>Supporting Evidence:</u><br>Ex. 26 [Ayers Dep.] 16:18-17:13; 22:7-14.<br>Ex. 27 [Abraham Dep.] 20:2-12.<br>Ex. 28 [Crockett Dep.] 15:5-16:3; 73:5-14.<br>Ex. 29 [Aguilar Dep.] 59:18-24.<br>Ex. 30 [Alvarez Dep.] at 39:11-40:22; 47:2-49:20; 65:1-67:1. | Undisputed that each Officer testified to instruction on responding to persons in crisis at the academy, in field training, and in-service. Disputed to the extent the fact implies the Officers had specialized crisis-negotiation training or applied it here. Ayers is not a certified crisis negotiator, and testified he did not feel he was trained enough for this incident. Ex. 26 (Ayers Dep.) 42:1-2, 42:13; Mayne Decl. Ex. F (Ayers Dep.) 78:5-15. No Officer called a crisis negotiator to the scene. Ex. 27 (Abraham Dep.) 82:8-13; Mayne Decl. Ex. G (Abraham Dep.) 83:1-5; Ex. 28 (Crockett Dep.) 56:2-7. The Officers were also trained that in a crisis time is the officer's ally, that clear communication with the person in crisis is very important, and that unjustified escalation is to be avoided, yet they made no plan, and chose neither to wait for a negotiator nor to use |

KGL
LAW OFFICE OF KEVIN G. LITTLE
*Fresno | San Francisco | San Diego*

| NO. | DEFENDANTS' UNDISPUTED FACT AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | the less-lethal options they had. Mayne Decl. Ex. F (Ayers Dep.) 60:23–61:6, 77:1-4, 77:10-17; ADF Nos. 12–20, 23. Ayers and Abraham spent roughly fifteen minutes together in the apartment with Maria before Max returned and did not discuss a tactical plan, whether non-lethal force would be used or by whom, or who would act as cover officer; Ayers testified there was no "explicit plan" and no discussion of which of them would be the less-lethal option, and, asked whether he had communicated the tactical objective to the other Officers, answered, "We did not have the time to." Mayne Decl. Ex. G (Abraham Dep.) 69:4-7, 30:22–31:4; Little Decl. Ex. B (Abraham Dep.) 76:13-21; Mayne Decl. Ex. F (Ayers Dep.) 44:11-13, 44:24–45:8, 77:10-17. To Abraham's knowledge no effort was made to move Maria out of the living room before Max returned. Mayne Decl. Ex. G (Abraham Dep.) 77:12-18. All four Officers carried Tasers; Ayers, Abraham and Crockett also carried batons. Mayne Decl. Ex. F (Ayers Dep.) 45:9-24; Mayne Decl. Ex. G (Abraham Dep.) 39:20-24. Aguilar agreed that an Officer using a Taser can be covered by Officers with less-lethal or lethal weapons, and that a bean bag shotgun is a less-lethal weapon. Mayne Decl. Ex. D (Aguilar Dep.) 55:8-23, 55:24–56:2. The Olivares Plaintiffs also incorporate the Sosa Plaintiffs' response to No. 168 (Dkt. 99-1, SUF No. 168). See also Sosa Plaintiffs' SAMF Nos. 13–19, 49 (Dkt. 99-2). |
| 169. | The Officers tried several deescalation techniques during the incident, including: increasing distance from the suspect; trying to establish rapport, including using the suspect's first name; speaking in a calm tone; offering assistance and reassurance; showing force; training a weapon on the suspect; and requesting additional officers to the scene.<br><br><u>Supporting Evidence:</u><br>Ex. 23 [Maria Dep.] 104:18-107:3.<br>Ex. 26 [Ayers Dep.] 22:7-14; 56:25-57:11; 62:21-24. | Disputed in part. The Olivares Plaintiffs dispute that showing force and training a weapon on Max were de-escalation techniques. The Officers described that conduct as providing "lethal coverage" for the less-lethal officer. Mayne Decl. Ex. G (Abraham Dep.) 72:3-7; Ex. 28 (Crockett Dep.) 73:1-4. Crockett's only words to Max were "Just chill," and the de-escalation he identified was a radio broadcast for more officers. Ex. 28 (Crockett Dep.) 55:4-6, 55:12–56:1. No negotiator was tried by phone or on scene. Mayne Decl. Ex. G (Abraham Dep.) 83:7- |

KGL
LAW OFFICE OF KEVIN G. LITTLE
Fresno | San Francisco | San Diego

| NO. | DEFENDANTS' UNDISPUTED FACT AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | Ex. 27 [Abraham Dep.] at 84:25-25:3.<br>Ex. 28 [Crockett Dep.] 55:12-56:1.<br>Ex. 29 [Aguilar Dep.] 58:12-59:4; 59:25-60:9; 60:10-17. | 13. Abraham told detectives that "someone who's better at negotiating … probably could talk him down." Mayne Decl. Ex. G (Abraham Dep.) 72:14-21. The Officers did not communicate a plan to one another. Mayne Decl. Ex. F (Ayers Dep.) 77:10-17; Mayne Decl. Ex. G (Abraham Dep.) 78:11-21. They also did not use the less-lethal options they had: Crockett's bean bag shotgun stayed in his vehicle, Ayers did not consider less-lethal force, and Abraham did not consider his Taser. Mayne Decl. Ex. H (Crockett Dep.) 18:21-23, 20:13-15; Mayne Decl. Ex. F (Ayers Dep.) 65:10-15; Ex. 27 (Abraham Dep.) 52:21-24. ADF Nos. 12–20. All four Officers carried Tasers, and Ayers had pepper spray in his bag. Crockett knew when he arrived that Max wanted to commit suicide by cop and did not consider bringing the shotgun from his vehicle. Abraham believed at least one responding Officer had a less-lethal shotgun in his vehicle, his own patrol car was parked about a hundred feet from the apartment, and no Officer had a less-lethal shotgun on his person when Max returned. Mayne Decl. Ex. F (Ayers Dep.) 45:9-24; Mayne Decl. Ex. H (Crockett Dep.) 18:7-23, 20:13-15; Little Decl. Ex. B (Abraham Dep.) 73:5-16, 74:7-16. Abraham testified that, depending on the circumstances, "a less-lethal option would be more feasible." Mayne Decl. Ex. G (Abraham Dep.) 72:3-7. Aguilar agreed that an Officer using a Taser can be covered by Officers with less-lethal or lethal weapons. Mayne Decl. Ex. D (Aguilar Dep.) 55:8-23. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to the remainder of No. 169 (Dkt. 99-1, SUF No. 169). See also Sosa Plaintiffs' SAMF Nos. 9–16, 40 (Dkt. 99-2). |
| 170. | Ayers tried to contact his sergeant to discuss the availability of other resources, including a crisis negotiator, had the sergeant deemed one necessary.<br><br><u>Supporting Evidence:</u><br>Ex. 26 [Ayers Dep.] 42:14-43:5; 80:23-81:9; 18:8-16. | Undisputed that Ayers tried to reach Sergeant Oliver by phone and radio, and wanted a crisis negotiator sent if the sergeant thought one necessary. Ex. 26 (Ayers Dep.) 42:14-24, 43:3-11. Disputed to the extent the fact implies any negotiator was obtained or that the effort succeeded. Ayers never reached the sergeant before |

KGL
LAW OFFICE OF KEVIN G. LITTLE
Fresno | San Francisco | San Diego

| NO. | DEFENDANTS' UNDISPUTED FACT AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | the shooting (id. 42:22-24), testified it "would have definitely been beneficial to have a CNT" (Ex. 26 (Ayers Dep.) 81:5-9), and no Officer called a negotiator or anyone with negotiation training. Ex. 27 (Abraham Dep.) 82:8-13; Mayne Decl. Ex. G (Abraham Dep.) 83:1-5; Ex. 28 (Crockett Dep.) 56:2-7. No one tried to have a negotiator reach Max by telephone, although Ayers had spoken to Max by telephone that night. Mayne Decl. Ex. G (Abraham Dep.) 83:7-13; Mayne Decl. Ex. F (Ayers Dep.) 44:20-22. ADF Nos. 15–17. See also Sosa Plaintiffs' SAMF Nos. 13–19 (Dkt. 99-2). |
| 171. | The Officers were trained that deadly force is justified if a suspect poses an immediate threat of death or serious bodily injury, based on the totality of the circumstances.<br><br>Supporting Evidence:<br>Ex. 28 [Crockett Dep.] 31:17-23; 35:24-36:5.<br>Ex. 27 [Abraham Dep.] 18:11-23; 56:22-57:1.<br>Ex. 26 [Ayers Dep.] 19:18-22. | Undisputed that the Officers testified they were trained that deadly force is justified when a suspect poses an immediate threat of death or serious bodily injury. The Olivares Plaintiffs dispute that Max posed such a threat (see Nos. 172–175). The Officers were also trained that time is an ally "when feasible," that clear communication with a person in crisis is very important, and that unjustified escalation is to be avoided. Mayne Decl. Ex. F (Ayers Dep.) 60:23–61:6, 77:1-4, 77:19-23; Mayne Decl. Ex. G (Abraham Dep.) 78:2-3. ADF No. 23. |
| 172. | Ayers believed Max presented a threat of death or serious bodily injury to Ayers, Maria and the other Officers at all times while Max was in Maria's apartment.<br><br>Supporting Evidence:<br>Ex. 26 [Ayers Dep.] 39:11-22; 39:24-40:5; 48:4-19; 55:1-22; 56:1-6; 62:25-63:21; 64:5-17; 72:12-73:5. | Disputed. The cited testimony states Ayers's belief; it does not establish that Max posed an immediate threat of death or serious bodily injury, and a jury could find otherwise. Ayers gave a prior statement that Max's movements inside the apartment were not "anything that would have warranted … deadly force," and testified that statement was accurate. Ex. 26 (Ayers Dep.) 40:6-10; Mayne Decl. Ex. F (Ayers Dep.) 41:3-13. Ayers agreed that until the apartment door was opened he and Abraham were not facing an imminent threat, that with the door closed Max could not have posed an immediate threat of death or serious bodily injury to Ayers, Abraham or Maria, and that he never considered keeping the door closed. Little Decl. Ex. G (Ayers Dep.) 46:8-16; Ex. 26 (Ayers Dep.) 48:2-3, 48:21-24. Ayers had no explicit communication with the other |

| NO. | DEFENDANTS' UNDISPUTED FACT AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Officers about the tactical objective. Id. 77:10-17. ADF Nos. 12, 21, 25. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to No. 172 (Dkt. 99-1, SUF No. 172). See also Sosa Plaintiffs' SAMF Nos. 9–11, 23–25, 33 (Dkt. 99-2). |
| 173. | Abraham believed Max presented a threat of death or serious bodily injury to Abraham, Maria and the other Officers at all times while Max was in Maria's apartment.<br><br>Supporting Evidence:<br>Ex. 27 [Abraham Dep.] 43:9-24; 50:19-51:8; 54:7-56:20; 63:8-14; 63:22-64:5. | Disputed. Abraham testified that Max was "not a serious threat" before Abraham opened the door, and that the better course was to keep Max contained inside the apartment, where alone and contained "it would be more of a better way for a de-escalation." Mayne Decl. Ex. G (Abraham Dep.) 37:12-18, 44:8-18, 80:18–81:5. He testified that, knowing Max intended to force a confrontation and to commit suicide by cop, he would still have considered opening the door even had he known Max was right outside. Ex. 27 (Abraham Dep.) 50:7-18. ADF Nos. 22, 25. Abraham opened the door without looking through the window or the peephole, without using his voice to ask who was outside, and with his firearm and Taser holstered. Mayne Decl. Ex. G (Abraham Dep.) 36:21–37:11. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to No. 173 (Dkt. 99-1, SUF No. 173). See also Sosa Plaintiffs' SAMF Nos. 23–25, 30, 33 (Dkt. 99-2). |
| 174. | Crockett believed Max presented a threat of death or serious bodily injury to Crockett, Maria and the other Officers from the moment he arrived on the scene until shots were fired.<br><br>Supporting Evidence:<br>Ex. 28 [Crockett Dep.] 28:23-30:11; 30:12-31:4; 31:25-32:3; 35:17-23; 49:4-14. | Disputed. Crockett testified he had no direct communication with Max other than "Just chill," and that he saw no other Officer call for crisis personnel. Ex. 28 (Crockett Dep.) 55:4-6, 56:2-7. He described Max taking "small steps." Ex. 28 (Crockett Dep.) 29:18-21. Crockett agreed that the scissors were in Max's right hand at his side and that he had told an investigator he was not sure Max was even fixated on him. Ex. 28 (Crockett Dep.) 66:2-19. The cited testimony states Crockett's belief and does not establish the fact. ADF Nos. 25, 31. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to No. 174 (Dkt. 99-1, SUF No. 174). See also Sosa Plaintiffs' SAMF Nos. 23–25, 40 (Dkt. 99-2). |
| 175. | Aguilar believed Max presented a threat of death or serious bodily injury to Aguilar, | Disputed. Aguilar's cited testimony explains why he planned to use a Taser; it |

KGL
LAW OFFICE OF KEVIN G. LITTLE
*Fresno | San Francisco | San Diego*

KGL
LAW OFFICE OF KEVIN G. LITTLE
*Fresno | San Francisco | San Diego*

| NO. | DEFENDANTS' UNDISPUTED FACT AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | Maria and the other Officers from the moment he arrived on the scene until shots were fired.<br><br>Supporting Evidence:<br>Ex. 29 [Aguilar Dep.] 49:21-50:11 | does not state a belief that Max posed an imminent threat of death or serious bodily injury at all times. Ex. 29 (Aguilar Dep.) 49:21–50:11. Aguilar testified the scissors were pointed down. Ex. 29 (Aguilar Dep.) 50:18-22. He had decided before Max crossed the threshold to Tase him there, was trained that people move away from pain, and considered that Max would do so, in a space with no avenue of escape. Mayne Decl. Ex. D (Aguilar Dep.) 20:7-14, 23:6-24:19, 55:2-7; Ex. 29 (Aguilar Dep.) 49:21–50:11. ADF No. 28. Aguilar had told Crockett he would Tase Max the moment he crossed the threshold, and described the breezeway as "a very small, tight space" with "not enough room." Ex. 29 (Aguilar Dep.) 49:21–50:11, 30:23–31:12; Sosa SAMF Nos. 36–38 (Dkt. 99-2). The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to No. 175 (Dkt. 99-1, SUF No. 175). |
| 176. | The Department's Use of Force Policy states: "The use of deadly force is only justified when the officer reasonably believes it is necessary in the following circumstances (Penal Code § 835a): (a) An officer may use deadly force to protect themselves or others from what they reasonably believe is an imminent threat of death or serious bodily injury to the officer or another person. (b) An officer may use deadly force to apprehend a fleeing person for any felony that threatened or resulted in death or serious bodily injury, if the officer reasonably believes that the person will cause death or serious bodily injury to another unless immediately apprehended."<br><br>Supporting Evidence:<br>Ex. 13 [Policy 300] at 4. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 176 and the evidence cited in it. Dkt. 99-1, SUF No. 176. |
| 177. | In the five years preceding Max's death, there were six other incidents of the use of deadly force against an individual in crisis who was armed with an edged weapon.<br><br>Supporting Evidence:<br>Ex. 30 [Alvarez Dep.] 11:6-12:25. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 177 and the evidence cited in it. Dkt. 99-1, SUF No. 177. |

| NO. | DEFENDANTS' UNDISPUTED FACT AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 178. | Only one of the six cases resulted in settlement and none resulted in a verdict.<br><br>Supporting Evidence:<br>Ex. 30 [Alvarez Dep.] 60:22-61:7. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 178 and the evidence cited in it. Dkt. 99-1, SUF No. 178. |
| 179. | The use of force was determined to be within policy and justified in each of the six cases.<br><br>Supporting Evidence:<br>Ex. 30 [Alvarez Dep.] 19:8-20; 22:19-23:1; 28:9-14; 32:17-21; 33:8-16; 37:19-25. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 179 and the evidence cited in it. Dkt. 99-1, SUF No. 179. |
| 180. | The District Attorney or Department of Justice reviewed each of the six cases and did not bring charges or make any findings of criminality.<br><br>Supporting Evidence:<br>Ex. 30 [Alvarez Dep.] 19:8-20; 22:19-23:1; 28:9-14; 32:17-22; 33:8-16; 37:19-25. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 180 and the evidence cited in it. Dkt. 99-1, SUF No. 180. |
| 181. | In the five years preceding Max's death, the Fresno Police Department has never determined in connection with a use of deadly force that the officers involved did not use sufficient deescalation efforts.<br><br>Supporting Evidence:<br>Ex. 30 [Alvarez Dep.] 44:20-45:1. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 181 and the evidence cited in it. Dkt. 99-1, SUF No. 181. |
| 182. | Before Max returned to Maria's apartment a final time, he spoke to his friend Damian, who tried to persuade Max to stop what he was doing.<br><br>Supporting Evidence:<br>Ex. 11 [Incident Report] at FRESNO000436, FRESNO 000441. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 182 and the evidence cited in it. Dkt. 99-1, SUF No. 182. |
| 183. | Max just said, "Thank you for everything. I love you."<br><br>Supporting Evidence:<br>Ex. 11 [Incident Report] at FRESNO000436, FRESNO 000441. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 183 and the evidence cited in it. Dkt. 99-1, SUF No. 183. |

KGL
LAW OFFICE OF KEVIN G. LITTLE
*Fresno | San Francisco | San Diego*

Dated: October 30, 2026

LAW OFFICE OF KEVIN G. LITTLE

By: _/s/ Kevin G. Little_
Kevin G. Little
Attorney for Plaintiffs MARTHA ZEPEDA OLIVARES, individually and on behalf of the ESTATE OF MAXIMILIANO SOSA, JR., and MAXIMILIANO SOSA, SR.

KGL
LAW OFFICE OF KEVIN G. LITTLE
Fresno | San Francisco | San Diego