Mildred K. O'Linn (State Bar No. 159055)
*missy.olinn@manningkass.com*
Maya Sorensen (State Bar No. 250722)
*Maya.Sorensen@manningkass.com*
**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**
801 S. Figueroa St, 15th Floor
Los Angeles, California 90017-3012
Telephone: (213) 624-6900
Facsimile: (213) 624-6999

Attorneys for Defendants, CITY OF FRESNO, FMR. POLICE CHIEF PACO BALDERRAMA, JOHN AYERS, BRANDON CROCKETT, JONATHAN ABRAHAM, and ANTHONY AGUILAR

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION**

| | |
|---|---|
| MARTHA ZEPEDA OLIVARES, individually and on behalf of the ESTATE OF MAXIMILIANO SOSA, JR.; MAXIMILIANO SOSA, SR.,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF FRESNO, UNKNOWN LAW ENFORCEMENT OFFICERS, POLICE CHIEF PACO BALDERRAMA and DOES 1-30,<br><br>Defendants. | Case No. 1:23-cv-01575-JLT-SAB<br><br>District Judge: Jennifer L. Thurston<br>Magistrate Judge: Stanley A. Boone<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT (RESPONSE TO SOSA PLAINTIFFS' OPPOSITION)**<br><br>Judge: Hon. Jennifer L. Thurston<br>Date: November 20, 2026<br>Time: 9:00 a.m.<br>Crtrm.: 4 |
| MARIA SOSA, L.S. by and through guardian ad litem MARIA SOSA, M.S. by and through guardian ad litem JENNIFER LOPEZ, individually and as successors-in-interest to Maximilian Sosa,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF FRESNO and DOES 1-5,<br><br>Defendants. | |

MANNING | KASS

# TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. PLAINTIFFS CONCEDE THE MAJORITY OF DEFENDANTS' ARGUMENTS .......... 1

III. PLAINTIFFS HAVE NOT RAISED A TRIABLE ISSUE OF FACT AS TO THEIR REMAINING CLAIMS .......... 2

A. Fourth Amendment .......... 2

1. The Undisputed Evidence Shows Max Was an Immediate and Deadly Threat to the Officers .......... 2

2. Other *Graham* Factors Favor Defendants .......... 3

3. On Balance, *Graham* Supports the Use of Deadly Force .......... 5

B. The Officers Are Entitled to Qualified Immunity .......... 6

C. Plaintiffs' State Law Claims Fail .......... 8

1. Plaintiffs' Battery Claims Fail with Their Fourth Amendment Claims .......... 8

2. Plaintiffs' Negligence Claim Also Fails .......... 8

3. Plaintiffs' Evidence Does Not Support Bane Act Liability .......... 9

D. If Any Claims Survive, the Court Should Limit Plaintiffs' Damages .......... 10

## ABBREVIATIONS

| Abbreviation | Document |
|---|---|
| AJSF | Amended Joint Statement of Undisputed Facts (filed concurrently) |
| Bryce Depo. | Deposition of Richard Bryce, Exhibit 35 to the Supplemental Declaration of Maya Sorensen in Support of Defendants' Motion for Summary Judgment (filed concurrently) |
| Def. Ex. | Defendants' Exhibits, attached to the Sorensen Declaration (Dkt. No. _ 93-3) or the Supplemental Sorensen Declaration (filed concurrently) |
| Def. RJN | Defendants' Request for Judicial Notice (filed concurrently) |
| Sosa Opp. | Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendants' Motion for Summary Judgment (Dkt. No. 99 [Sosa] and Dkt. No. 100 [Olivares]) |
| R-SUF | Reply to Plaintiffs' Responses to Defendants' Separate Statement of Undisputed Material Fact (filed concurrently) |



MK MANNING | KASS

## I. INTRODUCTION

The Sosa Plaintiffs largely concede the merits of Defendants' motion: they have abandoned their claims for municipal liability (under any theory), and under the Fourteenth Amendment and the Americans with Disabilities Act. The Sosa Plaintiffs' attempt to salvage the remaining half of their complaint is based on an improper hindsight-driven analysis that applies the wrong legal standard and requires the Court to disbelieve what is plainly visible on uncontradicted video evidence: the Officers' body-worn camera footage of Max's deadly attack on them. Because the Court's obligation to the nonmoving party does not require it to misapply the law or to credit a narrative that is plainly contradicted by the undisputed evidence, the Sosa Plaintiffs fail to raise a triable issue of fact. Defendants' motion should be granted.

## II. PLAINTIFFS CONCEDE THE MAJORITY OF DEFENDANTS' ARGUMENTS

Defendants begin with what is no longer in dispute: the Sosa Plaintiffs consent to summary judgment on their Second (Fourteenth Amendment), Third (custom and practice), Fourth (failure to train), Fifth (ratification) and Sixth (ADA) causes of action.[1] *See* Sosa Opp. at 11 n.1. They concede they are not entitled to wrongful death damages for any Fourth Amendment or Bane Act violation. *See id.* at 11. And they agree that standing to pursue those survival claims "turns on who represents the estate."[2] *Id.* Defendants don't know why the Sosa Plaintiffs didn't communicate their abandonment of their claims before summary-judgment briefing started, but the Court should enter summary judgment on these claims and issues accordingly.[3]

---

[1] The Sosa Plaintiffs' Ninth cause of action was dismissed by stipulation in October 2025. *See* Sosa MSJ Opp. at 11 n.1; Dkt. No. 79; Dkt. No. 80.

[2] As explained in Defendants' reply to the Olivares Plaintiffs' opposition, the probate court has terminated the estate proceedings and Martha's status as the estate's representative, divesting Martha of standing to pursue Max's survival claims. *See* Def. RJN, Exs. A and B. All parties agree the Sosa Plaintiffs (and they only) can pursue Max's claims. *See* Sosa Opp. at 11 (noting if the probate proceeding is terminated, the Sosa Plaintiffs have standing as his "surviving spouse and children"); Olivares Opp. at 12 ("If the probate court terminates the administration, the Estate's claims continue with the Sosa Plaintiffs.").

[3] Defendants offered to stipulate to dismissal of the Sosa Plaintiffs' abandoned claims with prejudice. As of this filing, the Sosa Plaintiffs have not responded to that offer.



MK MANNING | KASS

## III. PLAINTIFFS HAVE NOT RAISED A TRIABLE ISSUE OF FACT AS TO THEIR REMAINING CLAIMS

### A. Fourth Amendment

#### 1. The Undisputed Evidence Shows Max Was an Immediate and Deadly Threat to the Officers

The parties agree that the key factor in this case is whether Max posed "an immediate threat to the safety of the officers." *See Strickland*, 69 F.4th at 620. As set forth in detail in the motion, this factor weighs conclusively in favor of summary judgment because undisputed video evidence shows that Max was armed with kitchen shears and charging at the Officers (coming within arm's reach of Crockett) when the Officers opened fire. AJSF 89; R-SUF 139, 144. And each of the Officers testified that they reasonably perceived Max as an imminent threat, based on the totality of the circumstances – which included his reckless and aggressive behavior during their entire encounter with him. R-SUF 172-174.

Unable to refute the facts, Plaintiffs resort to distorting the record. "On [their] facts," they say, Max was not a threat. Sosa Opp. at 12. But plaintiffs cannot create a dispute for trial by denying what is plainly apparent on the video: after swatting the air (or the Taser wires, it doesn't matter), a visibly angry Max bared his teeth, gripped the shears and held them up and out, and ran toward the Officers. R-SUF 138, 139. Their expert contends Max did not raise the scissors, make a stabbing or cutting motion, or pose an imminent threat – yet he admitted at deposition that he neither conducted a complete frame-by-frame analysis of the body-worn camera footage (Bryce Depo 29:17-20) nor used a person with technical or video expertise to interpret the footage (Bryce Depo 53:18-21), and has not disclosed any new technical analysis that could support this contention. Furthermore, the expert's opinion that Sosa did not pose an imminent threat and that a reasonable, properly trained officer would not have perceived such a threat improperly substitutes the expert's retrospective interpretation of the recordings for the jury's assessment of the underlying facts and is not supported by a reliable video-analysis methodology. The law authorized the Officers to use deadly force in this incident under the circumstances clearly depicted by the video evidence. *Est. of Hernandez by and through Hernandez v. City of Los Angeles*, 139 F.4th 790, 799 (9th Cir. 2025).

The uncontroverted video evidence contradicts Plaintiffs' conclusion that Max had not hurt

anyone, and "did not intend to." Sosa Opp. at 14. For four minutes, Max yelled, cursed, banged his hands on the counter, stepped toward Abraham while brandishing the scissors, and pointing them at Ayers while saying, "are you the motherf*cker I was talking to?" R-SUF 95, 96, 102, 104, 172; AJSF 103, 107. Even so, the Officers tried to deescalate; it was not until Max gave them no other choice by running toward Crockett, yelling and with the shears pointed upwards, that they opened fire. R-SUF 138, 139, 140. Plaintiffs also ignore that Max had committed serious and violent crimes (Sosa Opp. at 14), including reckless driving, assaulting Equihua and threatening Ayers, which the Officers were entitled to (and did) consider in assessing whether Max was a threat. R-SUF, Nos. 172-175. Even Plaintiffs' expert conceded that a suspect's prior conduct could be a relevant factor in using deadly force. Bryce Depo 56:18-20.

### 2. Other *Graham* Factors Favor Defendants

Plaintiffs' analysis of the other *Graham* factors is similarly flawed. Regarding the *severity of the crime*, this does not favor Plaintiffs (Sosa Opp. at 14) for the reason just stated: while the initial call was for an unarmed, suicidal male, by the time he came back to Maria's apartment, Max had a weapon and had (by his own admission) assaulted an officer with his vehicle and led law enforcement on high-speed chases during which he put lives at risk. R-SUF 61; AJSF 88, 89.

As to the *absence of warnings*: Plaintiffs again ignore what is evident on the video: the Officers had a split second between the ineffective Taser strike and Max charging at them to decide what to do. Def. Ex. 20 [Crockett BWC at 4:39:26-4:39:29]. With Max rapidly closing the distance between himself and Crockett, there was no time for the Officers to warn Max (who declared, "I want you to shoot me" just seconds earlier) that they were about to deploy their weapons.

Regarding *available alternatives*: Here, the Sosa Plaintiffs put on their backward-looking lenses. They say the Officers "had fifty-three minutes" to create a plan to avoid the use of deadly force.[4] Sosa Opp. at 15. That's an overstatement given that for much of that time the Officers were busy pursuing Max in their vehicles. And as the Sosa Plaintiffs continually emphasize, Max was reportedly unarmed (excepting the Tesla he used to assault Equihua). The Sosa Plaintiffs' position

[4] This statement is also demonstrably incorrect as to Crockett and Aguilar, who did not arrive on the scene until 4:37:06 a.m. and 4:37:35 a.m., respectively. *See* AJSF 109, 113.)

presumes that for the 23 minutes that Abraham and Ayers were in Maria's apartment before Max arrived, they were aware that Max had armed himself and would return brandishing his weapon at both of them. They were not. *See* Deft. Ex. 27 [Abraham Dep.] at 27:3-5 ("Q: When did you first learn that he was armed with scissors? A: When he arrived back at the location, sir."). The Sosa Plaintiffs don't explain why it was unreasonable for Abraham and Ayers to instead spend the time trying to locate Max so that he could be safely apprehended, engaging him on the phone and seeking a "peaceful resolution." R-SUF 53; AJSF 68, 69. Instead, the Sosa Plaintiffs ask the Court to infer from fact that the Officers were unable to thwart Max's plan to commit suicide-by-cop that their tactical choices were unreasonable. That is exactly the kind of hindsight-driven analysis the law does not allow.

Then there's the door. Like the Olivares Plaintiffs, the Sosa Plaintiffs suggest that the Officers could have avoided Max's death if they had "simply kept the door closed." Sosa Opp. at 15. But whether or not a closed door would have deterred Max – who Maria described as "emotionally out of control" and who was determined to provoke a lethal encounter with the police – is anybody's guess, which is why the law does not permit plaintiffs or the Court to judge the Officers' actions in hindsight. *Wilkinson v. Torres*, 610 F.3d 546, 553 (9th Cir. 2010) ("the Fourth Amendment does not require omniscience"). Plaintiffs' argument assumes that officers could have kept the door closed and Max contained without identifying evidence that they controlled the door, could predict Max's actions, or could maintain containment safely. And Abraham acted reasonably considering the  totality of the circumstances and what he knew (and did not know) at the time: he testified that Max was a threat whether or not he opened the door; he and Ayers were positioned to confront that threat. R-SUF 91.

The Sosa Plaintiffs' other complaints likewise do not align with the undisputed record. They say "all four Officers carried Tasers." Sosa Opp. at 16. Yet the availability of less-lethal force does not render the use of deadly force *per se* unreasonable. *Wilkinson*, 610 F.3d at 551. And the Sosa Plaintiffs don't acknowledge Abraham's testimony that inside the apartment, they were too close to Max for a Taser to be effective, and his belief that its use would have increased the danger to the Officers and Maria. *See* Abraham Dep. [Ex. 27] at 53:16-25; 54:1-6. Neither Aguilar nor Crockett



MK MANNING | KASS

had a clear line of fire to use their Tasers until Max exited the apartment – at which point Aguilar ***did*** use his Taser – which their own expert deemed reasonable (Bryce Depo 60:2-8) – and it was ineffective. *See* R-SUF, No. 136. The Sosa Plaintiffs say the Officers should have waited an additional three seconds for the Taser to work, ignoring the uncontroverted evidence that the Taser did not incapacitate Max, who in less than two seconds closed the distance between himself and Crockett, gripping the shears. R-SUF 136, 138. The Officers were not required to wait for Max to attack one of them to justify the use of deadly force. *Strickland*, 69 F.4th at 622. The Sosa Plaintiffs also say the Officers should have called a crisis negotiator, asserting that is an option when "a suspect is contained and is not an immediate threat." Sosa Opp. at 7, 15. Max was not "contained" at any point during the incident;[5] regardless, Ayers *did* call for additional resources. *R-SUF* 170. But he was unable to secure them, so relied on his own training to deescalate the situation. *Id.*, R-SUF 168, 169, 170. And while the Sosa Plaintiffs' complain that no Officer told Max to "stay inside," Sosa Opp. at 8, it is undisputed that when Max approached the doorway, the Officers told him to "Wait," "Stop," and "Get back." AJSF 131, 133. No rational juror could find that Max did not know he supposed to stay put. As to why the Officers did not leave Max any path of escape (Sosa Opp. at 16, 26): they had probable cause to arrest him for his several violent crimes, and (reasonably) did not intend to let him get away. Def. Ex. 32 [Aguilar Dep.] at 57:21-58:11.

### 3. On Balance, *Graham* Supports the Use of Deadly Force

The Officers' threat assessment necessarily (and reasonably) changed when Max appeared at the doorway threatening them with kitchen shears. R-SUF 20. None of their decisions up to that point were unreasonable in the totality of the circumstances. *Wilkinson*, 610 F.3d at 551 ("[a] reasonable use of deadly force encompasses a range of conduct"). And once Max was in the apartment, his aggressive and noncompliant behavior created a rapidly escalating situation that required the Officers to make a series of split-second decisions.[6] Max, and Max alone, "created the

---

[5] The Sosa Plaintiffs' claim Max was "contained in the apartment" (Sosa Opp. at 20) is demonstrably false: at 4:39:25 a.m., against explicit commands, he walked out its door. AJSF 134.

[6] The Sosa Plaintiffs misrepresent Ayers' testimony (Sosa Opp. at 8): Although Ayers did not believe Max's actions inside the apartment *warranted* the use of deadly force, he explained that ***"[t]here's a difference between 'warranted' and 'justified',"*** and confirmed that "inside the apartment, … ***it may have been justified to use deadly force***, but not warranted." Def. Ex. 33 [Ayers Dep.] at 84:8-85:2.



MK MANNING | KASS

urgency" that required the Officers to use deadly force. *Contra* Sosa Opp. at 16. The Court must take account of the Officers' need to make difficult choices in "tense, uncertain and rapidly evolving" circumstances. *Kisela v. Hughes*, 584 U.S. 100, 103 (2018). None of the Sosa Plaintiffs' evidence demonstrates that the Officers acted unreasonably under those conditions.

The Sosa Plaintiffs argue the Court must accept "[their] facts" because the video evidence does not "blatantly contradict" the inference that Max was simply a man in crisis who had never hurt or threatened anyone. Sosa Opp. at 16-17. But the question isn't whether a juror could believe that Max was not a threat, it is whether the Officers reasonably believed that deadly force was necessary. *Handy v. Jones*, 191 F.4th 1050, 1057 (9th Cir. 2026). And in deciding that question, the Court is not required to "abandon common sense or logic," or to draw unjustifiable inferences from the evidence. *Kazan v. Kennedy*, 2016 WL 6084934, at *5 (W.D. Wash. Oct. 18, 2016).

Max made specific threats against Ayers and Maria's affair partner and stated his intention to "take a cop with him." R-SUF 37. He assaulted Equihua with his vehicle. *See* R-SUF 61 ("I tried to run one of your cops over."); Fed. R. Evid. 804(b)(3) (declarant unavailable; admission against interest). Inside Maria's apartment, Max's behavior was aggressive and erratic: he cursed at the Officers and Maria, did not comply with the Officers' commands or accept their offers of help, repeated his threats that "it's gonna be my life or you guys," and paced the floor while brandishing the shears, coming within three feet of Abraham. AJSF 103; R-SUF 95, 121. At the moment the Officers opened fire, Max was within striking distance of Crockett, baring his teeth with the shears pointed upward. R-SUF 138, 139, 144. There is no need for the Court to resolve disputed facts or weigh the evidence: It's all captured on video. And the only ***justifiable*** inference to be drawn from this uncontroverted video evidence is that Max was an imminent threat.

**B. The Officers Are Entitled to Qualified Immunity**

Even if the Court finds the evidence supports the inference that Max was not a threat, the Sosa Plaintiffs cannot overcome the Officers' presumed immunity. *Gasho v. United States*, 39 F.3d 1420, 1438 (9th Cir. 1994). They argue that Defendants' authorities – in particular, *Lal v. California* – are "distinguishable." Sosa Opp. at 17. *Lal* is remarkably analogous, but regardless, it is ***plaintiffs'*** burden to "identify a case where an officer acting under similar circumstances … was held to have



MANNING | KASS

violated the Fourth Amendment." *White v. Pauly*, 580 U.S. 73, 79 (2017). To carry that burden, the Sosa Plaintiffs must identify "existing precedent [that] squarely governs the specific facts at issue." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018). The "specific facts at issue" here are that Max: (1) made explicit and repeated threats against the Officers; (2) did not comply with reasonable commands; (3) was armed with an edged weapon; and (4) was 12 to 18 inches away from an officer, gripping his weapon and pointing it upward, when deadly force was used. The Sosa Plaintiffs' cases do not address these circumstances.

For example, they rely heavily on *Vos v. City of Newport Beach*, 892 F.3d 1024 (9th Cir. 2018). *Vos* is materially distinguishable: the suspect was confined inside a convenience store, surrounded by at least 8 officers and was ***30 feet away from them*** (not 12 inches) when they opened fire. *Id.* at 1030. In *Hart v. City of Redwood City*, the Ninth Circuit rejected the same argument the Sosa Plaintiffs advance here: that *Vos* placed officers who shot a knife-wielding suspect threatening suicide after an unsuccessful Taser deployment on notice that their use of force was unreasonable. 99 F.4th 543, 555 (9th Cir. 2024). Indeed, the *Hart* court found the defendant's use of deadly force objectively reasonable, because the suspect was "approaching at least at a brisk walk, while wielding the knife in front of him." *Id.* at 551. Notably, *Hart* also rejected comparisons to *Glenn v. Washington County*, on which the Sosa Plaintiffs also rely, because unlike the suspect in *Glenn* – who refused commands to drop a 3-inch pocket knife but otherwise "stayed in the same position from the time the officers arrived and took no threatening actions," the suspect in *Hart* approached the officers with his weapon in hand. *Hart*, 99 F.4th at 554.

*S.B. v. County of San Diego* is likewise distinguishable. In that case, there was no body worn camera footage, and the officers on scene gave conflicting accounts of whether the suspect was on his knees when he grabbed his knife and ***how far away he was from the closest officer***. 864 F.3d 1010, 1014 (9th Cir. 2017). Without objective evidence of the officers' position in relation to the suspect. *Id.* Here, however, there is objective evidence of the Officers' position in relation to Max: the video footage corroborates the Officers uniform testimony that Max was ***12 to 18 inches*** from

MK MANNING | KASS

Crockett when the Officers opened fire. R-SUF No. 144, 145.[7]

Alternatively, the Court should find that it was not unreasonable for the Officers to perceive that Max was not compliant with their commands and "rapidly approach[ing] them" while wielding his kitchen shears. *Hart*, 99 F.4th at 554. Their consequent "reasonable but mistaken" belief that the law permitted them to use deadly force entitles them to qualified immunity. *Ashcroft v. Al-Kidd*, 563 U.S. 731, 743 (2011).[8]

**C. Plaintiffs' State Law Claims Fail**

**1. Plaintiffs' Battery Claims Fail with Their Fourth Amendment Claims**

Despite telling this Court earlier that "a brief that addresses the reasonableness of the officers' use of force" would "resolve most of the case," Dkt. No. 91 at 4, the Sosa Plaintiffs now argue that their battery cause of action is materially distinct from their constitutional excessive force claim. It isn't: "the reasonableness standard applied to state law battery by a peace officer matches the reasonableness standard used for Fourth Amendment excessive force claims." *Reyes v. City of Santa Ana*, 832 F. App'x 487, 491 (9th Cir. 2020) (citing *Yount v. City of Sacramento*, 43 Cal.4th 885, 76 Cal. Rptr. 3d 787, 802, 183 P.3d 471 (2008) ). And it fails for the same reasons.

**2. Plaintiffs' Negligence Claim Also Fails**

As Defendants anticipated, the Sosa Plaintiffs also try to leverage *Hayes* into permitting a negligence claim on a factual record that would not support an excessive force claim. Sosa Opp. at 22-23. Defendants don't dispute that the Officers' pre-shooting conduct is relevant "to the extent it shows, as part of the totality of circumstances, that ***the shooting itself*** was negligent." *Hayes v. Cnty. of San Diego*, 57 Cal. 4th 622, 631 (2013). But a finding of reasonableness on the undisputed facts does not require the Court to myopically focus on the moment the Officers' guns were fired. And

---

[7] The Sosa Plaintiffs also cite the Ninth Circuit's decision in *Kisela v. Hughes*, but as they correctly note, the Supreme Court reversed that decision because no precedent established the shooting was unconstitutional. Sosa Opp. at 21. But the *Kisela* court did not decide or even suggest that the officer's conduct was objectively unreasonable – in other words, it did not decide the first prong of the qualified immunity analysis in any party's favor, including the plaintiff's. *See* 584 U.S. 108.

[8] The Sosa Plaintiffs also say the Officers "own training confirms they were on notice" that deadly force could be used "only against an immediate threat." Sosa Opp. at 22. Given that the Officers' use of force in this case was found to be within policy and consistent with their training, Defendants agree. *See* Def. Ex. 37 at FRESNO 001580.



MK MANNING | KASS

"as long as an officer's conduct falls ***within the range of conduct*** that is reasonable under the circumstances, there is no requirement that he or she choose the 'most reasonable' action or the conduct that is the least likely to cause harm." *Hayes*, 57 Cal. 4th at 632; *Martinez v. Cnty. of Los Angeles*, 47 Cal. App. 4th 334, 345 (1996). For the reasons discussed above and in Defendants' moving papers (and disregarding their many misrepresentations of the record), the Sosa Plaintiffs have not shown that any of the Officers' pre-force tactical decisions, considered against the totality of the circumstances and considering what the Officers knew at the time, were outside of this range of reasonableness. For the same reason, the Officers can readily avail themselves of the protections of Penal Code section 835a. *See* Cal. Penal Code § 835a(c)(1)(A); *Hofer v. Emley*, 2019 WL 4575389, at *17 (N.D. Cal. Sept. 20, 2019) (recognizing the statute precludes tort liability for the use of force in such circumstances).

The Sosa Plaintiffs again point to the Officers' training and the Department's policies – and again omit to state that the Officers' use of force was evaluated and found to be within policy and justified. *See* Def. Ex. 37. It is unclear how a juror could find that the Officers "failed to follow police protocol" (Sosa Opp. at 25) when the Department itself did not make such a finding.

**3. Plaintiffs' Evidence Does Not Support Bane Act Liability**

For the same reasons discussed in this brief and in Defendants' response to the Olivares Plaintiffs' opposition, none of the Officers' tactical decisions leading up to the use of force was unreasonable, let alone evinces deliberate indifference. The Sosa Plaintiffs' facile description of the Officers' difficult decision to open fire as "shoot[ing] Max merely for holding scissors" (Sosa Opp. at 30) ignores the totality of the events of the night, which required them to continually re-assess and respond to Max's belligerent and escalating behavior. That the Officers were ultimately unsuccessful in preventing Max's suicide-by-cop does not demonstrate that they acted recklessly, and the Sosa Plaintiffs' contrary position can only be reached by drawing absurd inferences from the undisputed facts.[9]

[9] The Ninth Circuit recently certified the following question to the California Supreme Court:

> What is the standard for determining whether a particular constitutional right is "clearly delineated and plainly applicable under the [Bane Act]? What is the difference between this

**D. If Any Claims Survive, the Court Should Limit Plaintiffs' Damages**

For the same reasons just described, the Sosa Plaintiffs fail to demonstrate that punitive damages are warranted. It is not enough to say that the Officer's conduct was intentional; the Sosa Plaintiffs must adduce clear and convincing evidence of any Officer's malice or despicable conduct. They have not, for the reasons stated herein.

## IV. CONCLUSION

For the reasons stated above and in the motion, no rational juror would find on this record that the Officers' use of deadly force under the circumstances was unreasonable. The undisputed evidence shows that Max escalated his aggression throughout the course of the Officers' encounter with him, ultimately leaving them with no option but to open fire. Plaintiffs' opposition, based on conjecture, unsupportable inferences and a backward-looking assessment of the Officers' tactical decisions, does not establish a material fact for trial. Even if a juror could conclude that the use of deadly force was excessive, the Officers are entitled to qualified immunity because no clearly established law put the Officers on notice that the use of deadly force against a suspect who made explicit and repeated threats against them, did not comply with commands, and was armed with a pair of kitchen shears and was within an arm's length of an officer with his weapon pointed up would be unreasonable. Plaintiffs' tort causes of action for negligence, battery and the Bane Act fail for the same reasons: no evidence supports the inference that the Officers' pre-force tactical decisions forced the fatal encounter, and no evidence would lead a rational juror to conclude that the Officers intended to violate Max's rights. Defendants' motion should be granted. If anycauses of action survive, Defendants request the Court strike their request for punitive damages because the Sosa Plaintiffs have not adduced clear and convincing evidence that the Officers acted maliciously.

///

---

standard and the standard used to determine if the law is "clearly established" for purposes of federal qualified immunity under 42 U.S.C. § 1983, if any?

*See Johnson v. Adgar*, -- F.4th -- , 2026 WL 3298632 (9th Cir. Nov. 2, 2026). The Ninth Circuit's certification suggests that Bane Act liability may not be viable where qualified immunity applies, further calling into doubt the Officers' liability under the statute.

DATED: November 9, 2026

Respectfully submitted,

**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**

By: /s/ Maya Sorensen

Maya Sorensen
Attorneys for Defendants, CITY OF FRESNO, FMR. POLICE CHIEF PACO BALDERRAMA, JOHN AYERS, BRANDON CROCKETT, JONATHAN ABRAHAM, and ANTHONY AGUILAR