Mildred K. O'Linn (State Bar No. 159055)
*missy.olinn@manningkass.com*
Maya Sorensen (State Bar No. 250722)
*Maya.Sorensen@manningkass.com*
**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**
801 S. Figueroa St, 15th Floor
Los Angeles, California 90017-3012
Telephone: (213) 624-6900
Facsimile: (213) 624-6999

Attorneys for Defendants, CITY OF FRESNO, FMR. POLICE CHIEF PACO BALDERRAMA, JOHN AYERS, BRANDON CROCKETT, JONATHAN ABRAHAM, and ANTHONY AGUILAR

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION**

MARTHA ZEPEDA OLIVARES, individually and on behalf of the ESTATE OF MAXIMILIANO SOSA, JR.; MAXIMILIANO SOSA, SR.,

Plaintiffs,

v.

CITY OF FRESNO, UNKNOWN LAW ENFORCEMENT OFFICERS, POLICE CHIEF PACO BALDERRAMA and DOES 1-30,

Defendants.

MARIA SOSA, L.S. by and through guardian ad litem MARIA SOSA, M.S. by and through guardian ad litem JENNIFER LOPEZ, individually and as successors-in-interest to Maximilian Sosa,

Plaintiffs,

v.

CITY OF FRESNO and DOES 1-5,

Defendants.

Case No. 1:23-cv-01575-JLT-SAB

District Judge: Jennifer L. Thurston
Magistrate Judge: Stanley A. Boone

**DEFENDANTS' REPLY TO SOSA PLAINTIFFS' RESPONSE TO SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF SUMMARY JUDGMENT**

Judge: Hon. Jennifer L. Thurston
Date: November 20, 2026
Time: 9:00 a.m.
Crtrm.: 4

Defendants hereby submit their reply to the Sosa Plaintiffs' Response to Defendants' Statement of Undisputed Material Facts. Dkt. No. 99-1.

**PRELIMINARY STATEMENT**

The Court's scheduling order directed the parties to meet and confer before filing any dispositive motions, with one principle aim of the conferral being to stipulate to the relevant facts to the extent possible. Dkt. No. 56 at 5; *see also* Civ. LR 260(c). In compliance with this directive, and with few exceptions, Defendants provided the Sosa Plaintiffs and the Olivares Plaintiffs with the facts set forth in Defendants' Separate Statement of Undisputed Facts were provided to the Sosa Plaintiffs on October 9, 2026 (a week before Defendants' motion was filed), and offered to meet and confer with Plaintiffs if any facts warranted further discussion. The Sosa Plaintiffs responded on October 15, 2026 (the day before the motion was due), agreeing to only 15 of Defendants' proposed facts and stating they were unable to agree to the others "as proposed."[1] The Sosa Plaintiffs did not propose alternative wording, did not identify their disagreements with Defendants' facts "as proposed," and did not respond to Defendants' offer to meet and confer. Defendants were therefore surprised to learn that the Sosa Plaintiffs now consider ***115 additional facts*** "undisputed" (or dispute them solely because of word choice or typographical errors). The Sosa Plaintiffs' failure to stipulate to these facts before Defendants filed the motion served no purpose other than to cause Defendants to expend needless time and effort compiling evidence to support facts that could not reasonably be disputed. That said, where the Sosa Plaintiffs have indicated that a fact is undisputed and the Olivares Plaintiffs have "incorporated" this response (*see* Dkt. No. 100-4), Defendants have added that fact to the Amended Joint Statement of Undisputed Facts, filed concurrently with this Reply.

Defendants object to the Sosa Plaintiffs' use of legal argument and objections in response to Defendants' evidence, which are inappropriate for a statement of facts. *See Falkenstein v. Shipco Transp., Inc.*, No. CV13-08052 BRO (JCX), 2015 WL 11256664, at *3 (C.D. Cal. Aug. 19, 2015) (noting neither "descriptions of the law" nor "legal arguments" are facts, and sustaining objections to party's statement); *Pro-Com Prods. v. King's Express LA, Inc.*, 2020 WL 1652277, at *1 n.1

---

[1] Collectively, the parties were able to stipulate to just 13 facts. See Joint Statement of Undisputed Facts in Support of Defendants' Motion for Summary Judgment [Dkt. No. 93-2].

MANNING | KASS

(C.D. Cal. Feb. 13, 2020) (noting impropriety of evidentiary objections in statement of facts). Defendants also object to the Sosa Plaintiffs' bare notation that several facts are "disputed." It is the Sosa Plaintiffs' responsibility to identify evidence that contradicts Defendants' evidence or the inferences to be drawn therefrom. *See* Civ. LR 260(b) (requiring party opposing summary judgment to "include[e] with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of [the] denial"); Fed. R. Civ. P. 56(e)(2). The Sosa Plaintiffs' statement of undisputed facts does not "show the Court precisely where, if anywhere, it can find evidence to rebut defendants' statements of fact." *O'Neal-Gonzales v. City of Inglewood*, 2008 WL 11637480, at *16 (C.D. Cal. Nov. 25, 2008), *aff'd sub nom. Gonzales v. City of Inglewood*, 472 F. App'x 653 (9th Cir. 2012).

Given the pervasiveness of these issues, defendants maintain that every fact identified in their separate statement should be treated as undisputed. *See Rockwell v. Air & Liquid Sys. Corp.*, 2022 WL 2964821 at n.3 (C.D. Cal. June 8, 2022) (treating all facts as undisputed where "the stated disputes: (1) fail to controvert the proffered 'undisputed' facts; (2) dispute the facts on grounds not germane to the … statements; (3) fail to cite evidence in support of the disputing party's position; and/or (4) are legal arguments that do not dispute the underlying facts"). Notwithstanding the foregoing, defendants have endeavored to respond below to each disputed fact, and respectfully refer the Court to their briefing when legal arguments are raised. Defendants' undisputed facts and supporting evidence are reproduced in the left-hand column, plaintiff's response in the right-hand column, and defendants' response, if any, directly underneath the two columns.

///

///

///

///

///

///

///

///

## DEFENDANTS' REPLY TO SOSA PLAINTIFFS' RESPONSE TO STATEMENT OF UNDISPUTED FACTS

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| 1. | On November 3, 2023, Maria went out to socialize with her friends after work.<br><br>Ex. 23 [Maria Dep.] 50:19-23. | Disputed in part. That Ms. Sosa went out "after work" is not supported by the cited evidence. Undisputed that Ms. Sosa went out with friends that evening. (Declaration of Cooper Mayne ("Mayne Decl.") ¶ 3, Ex. A (Deposition of Maria Sosa, July 28, 2025) ("Maria Sosa Depo") 50:19-23.) |
| **Defendants' Response:** This does not appear to be a genuine dispute, does not establish a triable issue of fact, and Plaintiffs have not offered contradictory evidence. Civ. LR 260(c); Fed. R. Civ. P. 56(e)(2). To the extent undisputed, Defendants have included this fact in the Amended Joint Statement of Undisputed Facts. | | |
| 2. | Max offered to pick Maria up and drive her home, and Maria agreed.<br><br>Ex. 10 [Sosa Interview] at 34.<br><br>Ex. 23 [Maria Dep.] 52:17-23. | Undisputed. |
| 3. | Max and Maria joked with each other over text while Max waited outside the bar.<br><br>Ex. 12 [Screenshots]<br><br>Ex. 23 [Maria Dep.] 72:13-74:12. | Undisputed. |
| 4. | Max also seemed "normal" earlier in the week, according to his father.<br><br>Ex. 25 [Max Sr. Dep.] 31:10-32:3. | Undisputed that Max Sosa, Sr. so testified. |
| 5. | Max and Maria left the bar together in his Tesla.<br><br>Ex. 23 [Maria Dep.] 53:18-54:12. | Disputed. The fact lacks support. The cited testimony says nothing about leaving the bar together or the Tesla. (Maria Sosa Depo 53:18-54:12.) |
| **Defendants' Response:** This does not appear to be a genuine dispute, does not establish a triable issue of fact, and Plaintiffs have not offered contradictory evidence. Civ. LR 260(c); Fed. R. Civ. P. 56(e)(2). | | |

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| 6. | At around **3:00 a.m.**, Max woke Maria up.<br><br>Ex. 10 [Sosa Interview] at 42, 43<br><br>Ex. 23 [Maria Dep.] 49:14-50:15; 98:6-99:1 | Disputed in part. The time, "around 3:00 a.m.," is not supported by the cited evidence. Undisputed that Mr. Sosa woke Ms. Sosa. (Defs.' Ex. 10, Dkt. 93-13 (Transcript of Maria Sosa Interview)<br><br>("Maria Sosa Interview") at 42-43; Maria Sosa Depo 49:21.) |
| **Defendants' Response:** This does not appear to be a genuine dispute, does not establish a triable issue of fact, and Plaintiffs have not offered contradictory evidence. Civ. LR 260(c); Fed. R. Civ. P. 56(e)(2). Maria testified that the text message sent to her affair partner at 2:36 a.m. was sent before she woke up, *see* Fact No. 11, and she called 911 at 3:08 a.m. **Def. Ex. 1**. To the extent undisputed, Defendants have included this fact in the Amended Joint Statement of Undisputed Facts. | | |
| 7. | Max called Maria a "whore" and a "liar."<br><br>Ex. 10 [Sosa Interview] at 37, 44.<br><br>Ex. 23 [Maria Dep.] 49:14-50:15; 98:6-99:1 | Undisputed that Ms. Sosa told the investigator that Mr. Sosa used these words. |
| **Defendants' Response:** It is not clear what the dispute is, if any. This does not appear to be a genuine dispute, does not establish a triable issue of fact, and Plaintiffs have not offered contradictory evidence. Civ. LR 260(c); Fed. R. Civ. P. 56(e)(2). Maria confirmed that "everything I said [to the investigators] was from what I remembered that night." Supplemental Declaration of Maya Sorensen in Support of Motion for Summary Judgment, **Def. Ex. 34** [Maria Dep.] at 102:9-21. To the extent undisputed, Defendants have included this fact in the Amended Joint Statement of Undisputed Facts. | | |
| 8. | Maria could tell Max had been drinking.<br><br>Ex. 10 [Sosa Interview] at 34.<br><br>Ex. 23 [Maria Dep.] 90:8-16. | Disputed. Ms. Sosa believed Mr. Sosa had been drinking, however, she did not see him drink, and there is no evidence she has the ability to tell when someone has been drinking. (Maria Sosa Depo 90:8-16.) |
| **Defendants' Response:** This does not appear to be a genuine dispute, does not establish a triable issue of fact, and Plaintiffs have not offered contradictory evidence. Civ. LR 260(c); Fed. R. Civ. P. 56(e)(2). To the extent undisputed, Defendants have included this fact in the Amended Joint Statement of Undisputed Facts. Maria reported to the dispatcher that Max was drunk, and it is undisputed that the postmortem toxicology report showed his blood alcohol level was 0.09. *See* **Def. Ex. 1** at 2; Amended Joint Statement of Facts, No. 150. | | |

| **NO.** | **UNDISPUTED FACTS AND SUPPORTING EVIDENCE** | **PLAINTIFFS' RESPONSE** |
|---|---|---|
| 9. | Max had gone through Maria's phone and found text exchanges between Maria and her affair partner that showed they were still in an intimate relationship.<br><br>Ex. 10 [Sosa Interview] at 44.<br><br>Ex. 12 [Screenshots]<br><br>Ex. 23 [Maria Dep.] 49:14-50:15; 54:23-55:24; 72:13-74:12; 77:4-25; 97:4-18. | Undisputed that Mr. Sosa found messages between Ms. Sosa and Mr. Lea. The Sosa Plaintiffs object to "affair partner" as argumentative. There is no evidence that any officer knew this fact before the shooting. |
| **Defendants' Response:** Plaintiffs have not offered contradictory evidence, suggesting the dispute is not genuine, nor does this dispute establish a triable issue of fact. Civ. LR 260(c); Fed. R. Civ. P. 56(e)(2). The stated fact does not purport to establish any officer's knowledge; nevertheless, well before the shooting: Maria reported that she was "talking to" another man and that Max was upset because he found out about it. **Def. Ex. 1** at 2. Dispatch broadcast that "MALE UPSET BECAUSE RP [reporting party] SEEING SOME1 ELSE .. THEY'VE BEEN SEPARATED SINCE FEB" **Ex. 3** [CAD Report] at FRESNO 000261. Max also told Abraham, "I wish I had a f*ckin' daughter, but this f*ckin' bitch cheated on me with some f*ckin' n*gga from school." **Ex. 18** [Ayers BWC] at 4:35:35-4:35:47.<br><br>To the extent undisputed, Defendants have included this fact in the Amended Joint Statement of Undisputed Facts.<br><br>Defendants object to Plaintiffs' legal argument and note that this fact as stated does not purport to establish any officer's knowledge of this fact.<br><br>Regarding the identity of the nonparty with whom Maria exchanged text messages, Maria admitted to having an intimate relationship with another man before she and Max separated, and the term "affair partner" is an accurate and objective description of this individual's role in the incident. Declaration of Cooper Alison-Mayne, Dkt. No. 99-3, at 8.[2] Defendants do not believe it is necessary to identify this individual by name in public filings. | | |
| 10. | Max texted his friends that he "found out" Maria was "still f*cking" her affair partner.<br><br>Ex. 7 [Incident Report] at FRESNO 000203.<br><br>Ex. 11 [Rodriguez Interview] at FRESNO 000437, 00439-440.<br><br>Ex. 23 [Maria Dep.] 49:14-50:15; 54:13-15; 55:20-56:1. | Undisputed. The Sosa Plaintiffs object to "affair partner" as argumentative. There is no evidence that any officer knew this fact before the shooting. |

[2] Citations to the Mayne Declaration are to the CM/ECF pagination.

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| **Defendants' Response:** *See* Response to Fact No. 9. | | |
| 11. | Max also texted Maria's affair partner from her phone, asking him to come to Maria's apartment to "f*ck" her and that "the door is unlocked."<br>Ex. 10 [Sosa Interview] at 45.<br>Ex. 12 [Screenshots]<br>Ex. 23 [Maria Dep.] 99:12-100:4. | Disputed in part. The Sosa Plaintiffs object to "affair partner" as argumentative. Ms. Sosa inferred that Mr. Sosa sent the message from its timestamp. (Maria Sosa Depo 99:12-100:4.) The fact also misquotes the messages. (Defs.' Ex. 12, Dkt. 93-15 (Screenshots from Maria Sosa's Phone) ("Phone Screenshots") at 5.) There is no evidence that any officer knew this fact before the shooting. |
| **Defendants' Response:** The screenshots are included in the record and the Court can see for itself the contents of the messages; that the message reads "my door is unlocked" and not "the door is unlocked" is not material. It is also unclear why Plaintiffs dispute this fact but not Facts No. 10 and 12, but as they correctly note, Maria testified she did not recall sending the messages to her affair partner and that they were sent before she woke up. **Def. Ex. 23** [Maria Dep.] 99:12-100:4. Plaintiffs have not offered evidence to establish that anyone else was in Maria's home or had access to her phone at 2:36 a.m. Defendants object to Plaintiffs' legal argument and note that this fact as stated does not purport to establish any officer's knowledge of this fact. The term "affair partner" is accurate and objective and Defendants see no need to identify this individual by name in these proceedings. | | |
| 12. | Max also sent himself Maria's affair partner's contact information from her phone.<br>Ex. 10 [Sosa Interview] at 45.<br>Ex. 12 [Screenshots] | Undisputed. The Sosa Plaintiffs object to "affair partner" as argumentative. There is no evidence that any officer knew this fact before the shooting. |
| **Defendants' Response:** *See* Response to Fact No. 9. | | |
| 13. | Max and Maria argued.<br>Ex. 23 [Maria Dep.] 50:1-2; 54:13-15; 59:23-60:4; 114:16-21. | Disputed. The cited testimony does not support the fact as stated. |
| **Defendants' Response:** This does not appear to be a genuine dispute, does not establish a triable issue of fact, and Plaintiffs have not offered contradictory evidence. Civ. LR 260(c); Fed. R. Civ. P. 56(e)(2). | | |



MK MANNING | KASS

| **NO.** | **UNDISPUTED FACTS AND SUPPORTING EVIDENCE** | **PLAINTIFFS' RESPONSE** |
|---|---|---|
| 14. | Max was "out of control" and acting in a way Maria had never seen before.<br><br>Ex. 23 [Maria Dep.] 50:1-2; 54:13-15; 59:23-60:4; 114:16-21. | Disputed in part. Ms. Sosa described Mr. Sosa as out of control "[e]motionally" and in a mental health crisis, and testified he never physically abused or threatened anyone. (Maria Sosa Depo 50:1-3; 54:13¬15; 46:3-10.) |
| **Defendants' Response:** It is not clear what the dispute is, if any. Defendants do not dispute that Maria offered this additional testimony at her deposition in 2025, but it is not relevant to Max's behavior on the night of the incident. | | |
| 15. | Max was "highly emotional" and Maria tried to calm him down.<br><br>Ex. 23 [Maria Dep.] 49:14-50:15; 56:6-17; 57:3-5; 58:19-23. | Undisputed. |
| 16. | Max told Maria he was going to find the affair partner and kill him and kill himself, and left the apartment.<br><br>Ex. 10 [Sosa Interview] at 46, 48.<br><br>Ex. 23 [Maria Dep.] 49:14-50:15; 56:12-16; 57:3-5; 58:19-23. | Undisputed. The Sosa Plaintiffs object to "affair partner" as argumentative. |
| **Defendants' Response:** *See* Response to Fact No. 9. | | |
| 17. | Maria told the dispatcher that Max had taken a bottle of tequila and had gone to confront her affair partner.<br><br>Ex. 1 [911 Tr.] at 2-3.<br><br>Ex. 3 [CAD Report] at FRESNO 000242.<br><br>Ex. 14 [911 Audio].<br><br>Ex. 23 [Maria Dep.] 63:1-5. | Undisputed. The Sosa Plaintiffs object to "affair partner" as argumentative. |
| **Defendants' Response:** *See* Response to Fact No. 9. | | |
| 18. | Maria told the dispatcher she was scared Max was going to kill himself and her affair partner.<br><br>Ex. 1 [911 Tr.] at 1-2.<br><br>Ex. 14 [911 Audio]. | Disputed. That Ms. Sosa told the dispatcher she was "scared" is not supported by the cited evidence. |

| **NO.** | **UNDISPUTED FACTS AND SUPPORTING EVIDENCE** | **PLAINTIFFS' RESPONSE** |
|---|---|---|
| **Defendants' Response:** This does not appear to be a genuine dispute, does not establish a triable issue of fact, and Plaintiffs have not offered contradictory evidence. Civ. LR 260(c); Fed. R. Civ. P. 56(e)(2). In the cited evidence, Maria states: "Hurry, I need you to please come to my apartment … My ex is … trying to kill himself. *** [H]e's just acting crazy. Please hurry." | | |
| 19. | Maria provided the dispatcher a description of Max, what he was wearing, and the car he was driving.<br><br>Ex. 1 [911 Tr.] at 1-2.<br><br>Ex. 14 [911 Audio]. | Undisputed. |
| 20. | At **3:10 a.m.**, Fresno Police Department created a zero-priority call for a suicidal male.<br><br>Ex. 3 [CAD Report] at FRESNO 000241, 000260. | Undisputed. The call was coded as a suicide call, and its synopsis read "SUICIDAL MALE, NO WEAPS." (Mayne Decl. ¶ 4, Ex. B (Fresno Police Department CAD Report) ("CAD Report") at FRESNO 000241.) |
| **Defendants' Response:** As to the additional information, undisputed. It is also undisputed that when he confronted the Officers, Max was armed with kitchen shears, which was the first time Abraham and Ayers knew he was armed. *See* Amended Joint Statement of Facts, Nos. 88, 89 and 112; Fact No. 110, infra (disputed in part). Crockett and Aguilar knew Max was armed when they arrived on the scene, as he was already brandishing the shears at Abraham and Ayers. *See id.* | | |
| 21. | Maria told the officers that Max had left, saying he was going to kill her affair partner or himself.<br><br>Ex. 10 [Sosa Interview] at 65.<br><br>Ex. 23 [Maria Dep.] 65:19-66:7 | Undisputed that Ms. Sosa told the officers this. The Sosa Plaintiffs object to "affair partner" as argumentative. |
| 22. | Maria gave the officers Max's and her affair partner's addresses.<br><br>Ex. 7 [Incident Report] at FRESNO 000186-187, FRESNO 000196-197. | Disputed. The fact lacks support. The cited pages say that Ms. Sosa gave Mr. Sosa's identifying information and a vehicle description; they say nothing about addresses. (Mayne Decl. ¶ 5, Ex. C (Detective Rockwell Homicide Supplemental Report) ("Homicide Report") at FRESNO 000186-187, 000196-197.) The Sosa Plaintiffs object to "affair partner" as argumentative. |

MK MANNING | KASS

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| **Defendants' Response:** Undisputed that Maria provided a description of Max, including what he was wearing and the vehicle he was driving. Maria also provided to dispatch the name of the apartment complex where her affair partner lived. **Def. Ex. 1** [911 Tr.] at 3; **Def. Ex. 3** [CAD Report] at FRESNO 000241. | | |
| 23. | Ayers, Abraham and Equihua told Maria they would search the area for him and let her know if they found him.<br><br>Ex. 7 [Incident Report] at FRESNO 000186-187, FRESNO 000196-197. | Disputed. The fact lacks support. Nothing on the cited pages says the officers told Ms. Sosa they would search the area and let her know. (Homicide Report at FRESNO 000186-187, 000196-197.) The report is also hearsay. |
| **Defendants' Response:** Undisputed that this evidence does not support the fact, but Plaintiffs do not offer contradictory information. Defendants object to the inclusion of evidentiary objections in a statement of facts and refer the Court to their separately-filed response to the Sosa Plaintiffs' evidentiary objections. | | |
| 24. | At **3:30 a.m.** Max returned to the Dante Apartment Complex.<br><br>Ex. 17 [Abraham BWC #1] at 3:30:58. | Disputed. Mr. Sosa returned closer to 3:31 a.m. (Defs.' Ex. 17, Dkt. 93-20 (Officer Abraham Body-Worn Camera Video 1, lodged) ("Abraham BWC 1") at 3:30:58.) |
| **Defendants' Response:** This dispute is neither genuine nor material. To avoid further dispute, Defendants will amend this fact to state that Max returned to the complex at 3:30:58 a.m. *See* Amended Joint Statement of Undisputed Facts, No. 24. | | |
| 25. | Max attempted to strike Equihua with his vehicle before driving away again.<br><br>Ex. 17 [Abraham BWC #1] at 3:30:59. | Disputed. The cited video shows Mr. Sosa's car turning away from the officers. It does not support the inference that he tried to strike anyone with his vehicle. (Abraham BWC 1 at 3:30:59.) |
| **Defendants' Response:** The video demonstrates that Max swerved toward Equihua, and is consistent with both Equihua's report that Max tried to strike him and Max's statement to Ayers that "I tried to run over one of your cops." *See* Amended Joint Statement of Undisputed Facts, No. 30; Facts No. 61. *infra*. | | |
| 26. | Before driving away, Max shouted, "You want to play games?"<br><br>Ex. 17 [Abraham BWC #1] at 3:31:08. | Disputed. The words "You want to play games?" can be heard on the recording, but there is no evidence that Mr. Sosa spoke them. (Abraham BWC 1 at 3:31:08.) |
| **Defendants' Response:** This does not appear to be a genuine dispute, does not establish a triable issue of fact, and Plaintiffs have not offered contradictory evidence that Max was not the speaker. Civ. LR 260(c); Fed. R. Civ. P. 56(e)(2). | | |

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| 27. | Equihua commanded Max to "Stop! Stop the vehicle!"<br><br>Ex. 17 [Abraham BWC #1] at 3:31:13. | Disputed in part. The Sosa Plaintiffs dispute that these words were a "command," because there is no evidence that Mr. Sosa could hear them from a distance, inside a vehicle with its windows closed. (Abraham BWC 1 at 3:31:13.) Undisputed that an officer said these words. |
| **Defendants' Response:** The video evidence documents what Equihua said. Defendants object to Plaintiffs' legal argument and note that this fact as stated does not purport to establish that Max could hear Equihua. | | |
| 28. | Abraham commanded Max to "Stop your car!"<br><br>Ex. 17 [Abraham BWC #1] at 3:31:14. | Disputed in part. The Sosa Plaintiffs dispute that these words were a "command," because there is no evidence that Mr. Sosa could hear them from a distance, inside a vehicle with its windows closed. (Abraham BWC 1 at 3:31:14.) Undisputed that an officer said these words. |
| **Defendants' Response:** The video evidence documents what Abraham said. Defendants object to Plaintiffs' legal argument and note that this fact as stated does not purport to establish that Max could hear Abraham. | | |
| 29. | Max drove away at high speed.<br><br>Ex. 17 [Abraham BWC #1] at 3:31:14. | Disputed in part. That Mr. Sosa drove away "at high speed" is not supported by the cited evidence. Undisputed that Mr. Sosa drove away. |
| **Defendants' Response:** The video evidence documents the sound of the engine revving and tires squealing as Max drove away. | | |
| 30. | At **3:32 a.m.** Equihua broadcast, "He tried to run me over."<br><br>Ex. 3 [CAD Report] at FRESNO 000242, 000262. | Undisputed that Officer Equihua broadcast this. |
| 31. | At **3:33 a.m.** dispatch broadcast "Confirmed 245 [assault with a deadly weapon] on an officer."<br><br>Ex. 3 [CAD Report] at FRESNO 000243, 000264 | Disputed. The fact lacks support. The cited CAD pages contain no "Confirmed 245" broadcast at 3:33 a.m. They show a unit entry, "245 ON AN OFCR," logged at 3:34:44 a.m. (CAD Report at FRESNO 000243, 000264.) |
| **Defendants' Response:** Undisputed that this happened at 3:34:44, not 3:33. | | |

| **NO.** | **UNDISPUTED FACTS AND SUPPORTING EVIDENCE** | **PLAINTIFFS' RESPONSE** |
|---|---|---|
| 32. | Between **3:33 a.m.** and **3:58 a.m.**, Max led officer on several high-speed chases.<br><br>Ex. 29 [Aguilar Dep.] 28:13-18. | Disputed in part. That the pursuits were "high-speed" is not supported by the cited evidence. Undisputed that officers pursued Mr. Sosa's vehicle several times. Officer Aguilar did not take part in any of the pursuits; he heard about them on the radio. (Mayne Decl. 116, Ex. D (Deposition of Officer Anthony Aguilar, Apr. 23, 2026) ("Aguilar Depo") 28:13¬23.) |
| **Defendants' Response:** Plaintiffs do not offer contradictory evidence, and Defendants' statement is further confirmed by the evidence cited at Facts No. 33, 34, 173 and 174, *infra*. | | |
| 33. | During the vehicle pursuits, Max drove recklessly: speeding, driving opposite traffice, ignoring traffic signs, and performing evasive maneuvers.<br><br>Ex. 3 [CAD Report] at FRESNO 000243, 000245, 000263, 000266, 000269 | Disputed. The only cited evidence is the CAD log, a dispatcher's typed summary of officers' radio reports, which is hearsay within hearsay. (Fed. R. Evid. 802, 805.) Defendants have not met their burden to show that evidence of this fact can be presented in admissible form. (Fed. R. Civ. P. 56(c)(2).) |
| **Defendants' Response:** Defendants object to Plaintiffs' inclusion of legal argument and evidentiary objections in the statement of facts. Defendants note the Plaintiffs have also cited this evidence when they believe it is favorable to them. *See* Fact No. 20. Defendants refer the Court to their separately-filed Response to Sosa Plaintiffs' Evidentiary Objections. | | |
| 34. | Officers lost sight of Max's Tesla several times.<br><br>Ex. 3 [CAD Report] at FRESNO 000263, 000269 | Disputed. The only cited evidence is the CAD log, a dispatcher's typed summary of officers' radio reports, which is hearsay within hearsay. (Fed. R. Evid. 802, 805.) Defendants have not met their burden to show that evidence of this fact can be presented in admissible form. (Fed. R. Civ. P. 56(c)(2).) |
| **Defendants' Response:** *See* Response to Fact No. 33. | | |
| 35. | While the vehicle pursuits were in progress, Maria and Max spoke on the phone.<br><br>Ex. 10 [Sosa Interview] at 65-66. | Undisputed. |

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| 36. | Max told Maria that he was going to commit suicide by cop.<br><br>Ex. 23 [Maria Dep.] 103:3-13 | Disputed. Ms. Sosa did not testify that Mr. Sosa told her this. (Maria Sosa Depo 103:3-13.) |
| **Defendants' Response:** This does not appear to be a genuine dispute, does not establish a triable issue of fact, and Plaintiffs have not offered contradictory evidence that Max was not the speaker. Civ. LR 260(c); Fed. R. Civ. P. 56(e)(2). Maria testified that "there was no question in [her] mind" after speaking to Max that evening that he intended to commit suicide by cop. **Def. Ex. 23** [Maria Dep.] 103:3-13. Maria reported to the 911 dispatcher that "I think he wants to do something where he makes the police shoot him." **Def. Ex. 2** [911 Tr.] at 2. And Maria's statements are consistent with Max's statements to Ayers and Abraham that he wanted them to shoot him. **Def. Ex. 18** [Ayers BWC] at 4:35:24-4:38:54; **Def. Ex. 19** [Abraham BWC #2] at 4:35:24-4:38:54. | | |
| 37. | Max told Maria that he was going to "take a cop" or "take a pig" with him.<br><br>Ex. 23 [Maria Dep.] 101:16-102:21 | Disputed. The cited evidence does not support the fact as stated. Ms. Sosa does not remember Mr. Sosa making such statements. (Maria Sosa Depo 101:16-102:21.) |
| **Defendants' Response:** This does not appear to be a genuine dispute, does not establish a triable issue of fact, and Plaintiffs have not offered contradictory evidence that Max was not the speaker. Civ. LR 260(c); Fed. R. Civ. P. 56(e)(2). Maria confirmed that she told investigators that Max said "I'm gonna take a cop with me" or "take a pig with me" and that "everything I said [to the investigators] was from what I remembered that night." Supplemental Sorensen Decl., **Def. Ex. 34** [Maria Dep.] at 102:9-21. Maria's recollection is consistent with Max's statements to Ayers that "I'm gonna take down not just myself, but you with me." *See* Amended Joint Statement of Undisputed Facts, No. 74. | | |
| 38. | At **3:42 a.m.** Ayers broadcast that he was going back to the Dante Apartment Complex in case Max returned there.<br><br>Ex. 3 [CAD Report] at FRESNO 000244, 000265. | Undisputed. |
| 39. | At **3:44 a.m.** Maria called 9-1-1 again to report that Max made comments about wanting to die.<br><br>Ex. 15 [2nd 911 Audio].<br><br>Ex. 23 [Maria Dep.] at 67:10-22. | Undisputed that Ms. Sosa told the dispatcher this. In the same call she told the dispatcher that Mr. Sosa had no weapon. (Mayne Decl. ¶ 7, Ex. E (Transcript of Maria Sosa's 3:44 a.m. 911 Call) ("911 Call Tr.") at 1-2.) |

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| **Defendants' Response:** As to the additional information, undisputed. It is also undisputed that when he confronted the Officers, Max was armed with kitchen shears, which was the first time Abraham and Ayers knew he was armed. *See* Amended Joint Statement of Undisputed Facts, Nos. 88, 89, and 112; Fact No. 110, *infra* (disputed in part). Crockett and Aguilar knew Max was armed when they arrived on the scene, as he was already brandishing them at Abraham and Ayers. *See id.* | | |
| 40. | Maria told the dispatcher she was worried Max would make it look like he was armed so the police would shoot him.<br>Ex. 2 [Second 911 Tr.] at 1-2.<br>Ex. 15 [Second 911 Audio].<br>Ex. 23 [Maria Dep.] 68:3-22. | Undisputed. In the same call she said, "I know he doesn't have any kind of weapon on him," and the dispatcher said officers would be told "he does not have any weapons." (911 Call Tr. at 1-2; Maria Sosa Depo 68:3-22.) |
| **Defendants' Response:** *See* Response to Fact No. 39. | | |
| 41. | Maria told the dispatcher Max had evaded the police and she did not know where he was.<br>Ex. 2 [Second 911 Tr.] at 2.<br>Ex. 15 [Second 911 Audio]. | Undisputed. |
| 42. | At **3:46 a.m.**, dispatch broadcast Max's intention to commit suicide by cop.<br>Ex. 3 [CAD Report] at FRESNO 000244, 000267. | Undisputed. |
| 43. | At **3:55 a.m.** Ayers returned back to Maria's apartment.<br>Ex. 18 [Ayers BWC] at 3:55:29. | Undisputed. |
| 44. | When Ayers returned, Maria was on the phone with Max and handed the phone to Ayers.<br>Ex. 18 [Ayers BWC] at 3:55:58-3:56:08. | Undisputed. |
| 45. | Max cursed at Ayers and hung up.<br>Ex. 18 [Ayers BWC] at 3:56:08-3:56:23. | Undisputed. |

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| 46. | At **3:57 a.m.** Maria called Max.<br>Ex. 18 [Ayers BWC] at 3:57:17-3:57:43. | Undisputed. |
| 47. | Ayers tried to talk to Max again but Max hung up.<br>Ex. 18 [Ayers BWC] at 3:57:17-3:57:43 | Undisputed. |
| 48. | Ayers told Maria that her calling Max was not helping but was making Max angry, and told her not to call him again.<br>Ex. 18 [Ayers BWC] at 3:57:40-3:57:50. | Disputed in part. Ayers says "keep getting him in an angry mood" not "making him angry." |
| **Defendants' Response:** It is not clear what the dispute is and Defendants note that the fact as written does not purport to quote Ayers. To avoid further dispute, Defendants will amend this fact to include Ayers' verbatim statement. *See* Amended Joint Statement of Undisputed Facts, No. 48. | | |
| 49. | After officers lost track of Max for a third time, FPD Sergeant Oliver directed units to cease pursuit.<br>Ex. 3 [CAD Report] at FRESNO 000246, 000269.<br>Ex. 29 [Aguilar Dep.] 28:24-29: | Undisputed. |
| 50. | At **3:59 a.m.** Maria spoke to Max's close friend, Damian.<br>Ex. 18 [Ayers BWC] at 3:59:30-4:00:59. | Undisputed. |
| 51. | At **4:00 a.m.** Maria told Ayers Max has never done anything like this, has never been arrested or placed on an involuntary psychiatric hold.<br>Ex. 18 [Ayers BWC] at 4:00:59-4:01:10. | Undisputed. |
| 52. | At **4:03 a.m.** Ayers called Max.<br>Ex. 18 [Ayers BWC] at 4:03:09-4:10:47. | Undisputed. |

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| 53. | Ayers told Max he wanted to help him and wanted a "peaceful resolution" to the evening.<br>Ex. 18 [Ayers BWC] at 4:03:09-4:10:47. | Disputed. The Sosa Plaintiffs object that, for this fact and each of Nos. 54 through 62, Defendants cite a seven-and-a-half-minute span of body-worn camera video rather than "the particular portions" of the record relied on. (L.R. 260(a); Fed. R. Civ. P. 56(c)(1)(A).) The Court need not search that span for support. (Fed. R. Civ. P. 56(c)(3); Carmen v. S.F. Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996).) |
| **Defendants' Response:** The video evidence documents what was said and that Ayers' and Max's call lasted approximately 7 and a half minutes. Defendants' citation to a seven-minute excerpt of a video that spans 48 minutes is reasonable. Plaintiffs do not offer evidence to contradict this fact, suggesting that the dispute is not genuine. Civ. LR 260(c); Fed. R. Civ. P. 56 (e)(2). Defendants further object to the Plaintiffs' inclusion of legal argument in a statement of facts, and refer the Court to their response to the Sosa Plaintiffs' evidentiary objections, filed separately. | | |
| 54. | Max told Ayers there was no peaceful resolution.<br>Ex. 18 [Ayers BWC] at 4:03:09-4:10:47. | Disputed. *See* No. 53, above. |
| **Defendants' Response:** See Response to Fact No. 53. | | |
| 55. | Max said, "Tonight I die or he [the affair partner] dies or one of your cops dies." Ex. 18 [Ayers BWC] at 4:03:09-4:10:47. | Disputed. *See* No. 53, above. The Sosa Plaintiffs also object to "affair partner" as argumentative. |
| **Defendants' Response:** See Response to Fact No. 53. | | |
| 56. | Max said, "There is no helping me."<br>Ex. 18 [Ayers BWC] at 4:03:09-4:10:47. | Disputed. *See* No. 53, above. |
| **Defendants' Response:** See Response to Fact No. 53. | | |
| 57. | Max said, "You're gonna have to f*cking kill me."<br>Ex. 18 [Ayers BWC] at 4:03:09-4:10:47. | Disputed. *See* No. 53, above. |
| **Defendants' Response:** See Response to Fact No. 53. | | |

| **NO.** | **UNDISPUTED FACTS AND SUPPORTING EVIDENCE** | **PLAINTIFFS' RESPONSE** |
|---|---|---|
| 58. | Max said, "There is no other way out of this."<br><br>Ex. 18 [Ayers BWC] at 4:03:09-4:10:47. | Disputed. *See* No. 53, above. |
| **Defendants' Response:** See Response to Fact No. 53. | | |
| 59. | Max said, "One person is gonna die tonight."<br><br>Ex. 18 [Ayers BWC] at 4:03:09-4:10:47. | Disputed. *See* No. 53, above. |
| **Defendants' Response:** See Response to Fact No. 53. | | |
| 60. | Max said, "I'm not one of those you can save."<br><br>Ex. 18 [Ayers BWC] at 4:03:09-4:10:47. | Disputed. *See* No. 53, above. |
| **Defendants' Response:** See Response to Fact No. 53. | | |
| 61. | Max said, "I tried to run over one of your cops. I don't give a f*ck."<br><br>Ex. 18 [Ayers BWC] at 4:03:09-4:10:47. | Disputed. *See* No. 53, above. |
| **Defendants' Response:** See Response to Fact No. 53. | | |
| 62. | Max said, "I want blood tonight."<br><br>Ex. 18 [Ayers BWC] at 4:03:09-4:10:47. | Disputed. *See* No. 53, above. |
| **Defendants' Response:** See Response to Fact No. 53. | | |
| 63. | At **4:10 a.m.** Max hung up the phone, ending the conversation with Ayers.<br><br>Ex. 3 [CAD Report] at FRESNO 000246. | Disputed. That Mr. Sosa hung up is not supported by the cited evidence; the CAD entry does not say who ended the call. |
| **Defendants' Response:** Undisputed that the evidence does not support this fact. Plaintiffs do not offer contradictory evidence and the termination of the call is documented on Ayers' bodyworn camera footage. | | |



MK MANNING | KASS

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| 64. | At **4:11 a.m.** Maria told Ayers that Max had never threatened suicide before and that he had no diagnoses of any mental health disorder.<br><br>Ex. 18 [Ayers BWC] at 4:11:03-4:11:40.<br><br>Ex. 23 [Maria Dep.] 40:10-24. | Disputed in part. Ms. Sosa told him that Mr. Sosa had started therapy, "has a lot of trauma," and "shared with his therapist that he had suicidal thoughts." (Defs.' Ex. 18, Dkt. 93-21 (Officer Ayers Body-Worn Camera, lodged) ("Ayers BWC") at 4:11:11-29.) Officer Ayers asked whether Mr. Sosa was diagnosed with any mental health issues, Ms. Sosa's answer is not decipherable. |
| **Defendants' Response:** The cited video excerpt depicts the conversation between Ayers and Maria, as follows:<br><br>Ayers: So this is just random for him then, this has never happened before?<br><br>Maria: This has never happened. I think -- [inaudible]<br><br>Ayers: Is he diagnosed with any kind of mental health issues or anything?<br><br>Maria: **No.** He never, like – continued with therapy. After we separated he started therapy but it was short-lived. He said he couldn't afford it because of insurance or something like that. I know for a fact he has a lot of trauma.<br><br>**Def. Ex. 18** [Ayers BWC] at 4:11:03-4:11:29. Plaintiffs' additional fact that Max "had started therapy" is contradicted by the cited evidence to the extent it suggests that Max was still in therapy as of November 4, 2023, and the additional fact that Max "shared with his therapist that he had suicidal thoughts" is not supported by the cited evidence. | | |
| 65. | At **4:12 a.m.** Abraham arrived at Maria's apartment.<br><br>Ex. 18 [Ayers BWC] at 4:12:14.<br><br>Ex. 19 [Abraham BWC #2] at 4:12:14. | Undisputed. |
| 66. | Ayers and Abraham conferred on the sidewalk outside the apartment.<br><br>Ex. 18 [Ayers BWC] at 4:12:14-4:14:40.<br><br>Ex. 19 [Abraham BWC #2] at 4:12:14-4:14:40. | Disputed. The cited evidence does not support the fact as stated. Neither officer's camera recorded audio of that conversation. (Ayers BWC; Defs.' Ex. 19, Dkt. 93-22 (Officer Abraham Body-Worn Camera Video 2, lodged) ("Abraham BWC 2").) |
| **Defendants' Response:** The stated fact does not purport to state what Abraham and Ayers discussed, and the video evidence shows them speaking to one another. Plaintiffs do not offer evidence that to contradict this fact, suggesting that the dispute is not genuine, nor does it create a triable issue of fact. Civ. LR 260(c); Fed. R. Civ. P. 56 (e)(2). | | |

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| 67. | At **4:14 a.m.**, Abraham and Ayers returned to the apartment, where Maria was again talking to Max on the phone.<br><br>Ex. 18 [Ayers BWC] at 4:14:45-4:15:01.<br><br>Ex. 19 [Abraham BWC #2] at 4:12:14-4:14:40. | Undisputed. |
| 68. | Ayers took the phone from Maria and tried again to talk to Max.<br><br>Ex. 18 [Ayers BWC] at 4:15:00-4:18:26.<br><br>Ex. 19 [Abraham BWC #2] at 4:12:14-4:14:40. | Undisputed. |
| 69. | Ayers told Max he wanted to help him.<br><br>Ex. 18 [Ayers BWC] at 4:15:00-4:18:26. | Undisputed. |
| 70. | Max said, "There's nothing you can do."<br><br>Ex. 18 [Ayers BWC] at 4:15:00-4:18:26. | Undisputed. |
| 71. | Max said, "When a man reaches rock bottom, that's it."<br><br>Ex. 18 [Ayers BWC] at 4:15:00-4:18:26. | Undisputed. |
| 72. | Max said, "It's either me, him [the affair partner], or one of you f*cking police officers."<br><br>Ex. 18 [Ayers BWC] at 4:15:00-4:18:26. | Undisputed. The Sosa Plaintiffs object to "affair partner" as argumentative. |
| 73. | Max said, "Listen, if my wife didn't give a f*ck about me, you think I'm gonna f*cking believe that you give a f*ck about me? No."<br><br>Ex. 18 [Ayers BWC] at 4:15:00-4:18:26. | Undisputed. |

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| 74. | Max said, "I'm gonna take down not just myself, but you with me."<br><br>Ex. 18 [Ayers BWC] at 4:15:00-4:18:26. | Undisputed. |
| 75. | Max said, "I'm gonna come after you, motherf*cker."<br><br>Ex. 18 [Ayers BWC] at 4:15:00-4:18:26. | Undisputed. |
| 76. | At **4:18 a.m.** Ayers hung up the call.<br><br>Ex. 18 [Ayers BWC] at 4:15:00-4:18:26. | Undisputed. |
| 77. | At **4:24 a.m.** Abraham, who was holding Maria's phone, told Maria that Damian texted that Max was at a charging station.<br><br>Ex. 18 [Ayers BWC] at 4:24:37-4:25:00.<br><br>Ex. 19 [Abraham BWC #2] at 4:24:37-4:25:00. | Undisputed. |
| 78. | Ayers broadcast that Max was at a charging station, possibly at Herndon & 99.<br><br>Ex. 3 [CAD Report] at FRESNO 000246.<br><br>Ex. 18 [Ayers BWC] at 4:25:13-4:25:32. | Undisputed. |
| 79. | At **4:28 a.m.**, Abraham and Ayers exited the apartment to canvas the area.<br><br>Ex. 18 [Ayers BWC] at 4:28:00-4:28:58.<br><br>Ex. 19 [Abraham BWC #2] at 4:28:00-4:28:58. | Undisputed. |

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| 80. | Ayers radioed that he did not see Max or Max's Tesla.<br><br>Ex. 3 [CAD Report] at FRESNO 000271.<br><br>Ex. 18 [Ayers BWC] at 4:28:55-4:28-59. | Undisputed. |
| 81. | At **4:29 a.m.**, Abraham and Ayers stepped back in to the apartment, where Maria was once again on the phone with Max asking him to "please just tell me where you are."<br><br>Ex. 18 [Ayers BWC] at 4:29:30-4:30:18. | Undisputed. |
| 82. | Max said, "Tonight I die."<br><br>Ex. 18 [Ayers BWC] at 4:29:30-4:30:18. | Undisputed. |
| 83. | Max said, "You ruined me."<br><br>Ex. 18 [Ayers BWC] at 4:29:30-4:30:18. | Undisputed. |
| 84. | Max said, "Congratulations, you won."<br><br>Ex. 18 [Ayers BWC] at 4:29:30-4:30:18. | Undisputed. |
| 85. | At **4:30 a.m.** Ayers took the phone from Maria and hung up, telling her not to answer it again.<br><br>Ex. 18 [Ayers BWC] at 4:29:30-4:30:18. | Undisputed. |
| 86. | At **4:35 a.m.** Abraham said "I think a door just – " and went to investigate.<br><br>Ex. 18 [Ayers BWC] at 4:35:04-4:35:10.<br><br>Ex. 19 [Abraham BWC #2] at 4:35:04-4:35:10.<br><br>Ex. 26 [Ayers Dep.] 36:2-12.<br><br>Ex. 27 [Abraham Dep.] 35:21-23; 49:9-25; 75:2-6. | Undisputed that Officer Abraham said this and went to the door. Both officers believed it was likely Mr. Sosa at the car door before Officer Abraham went to check. (Mayne Decl. ¶ 8, Ex. F (Deposition of Officer John Ayers, Apr. 22, 2026) ("Ayers Depo") 36:2-25; Mayne Decl. ¶ 9, Ex. G (Deposition of Officer Jonathan Abraham, Apr. 23, 2026) ("Abraham Depo") 35:16-23.) |

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| **Defendants' Response:** Undisputed. | | |
| 87. | Abraham opened the door to the apartment and saw Max coming up the walkway.<br><br>Ex. 19 [Abraham BWC #2] at 4:35:04-4:35:15.<br><br>Ex. 26 [Ayers Dep.] 37:18-25.<br><br>Ex. 27 [Abraham Dep.] 38:13-18; 45:21-46:12. | Undisputed. |
| 88. | Max said, "Are you ready for this?" while raising his right hand, in which he was holding scissors.<br><br>Ex. 10 [Sosa Interview] at 74, 76.<br><br>Ex. 18 [Ayers BWC] at 4:34:14-4:35:17.<br><br>Ex. 19 [Abraham BWC #2] at 4:35:14-4:35:17.<br><br>Ex. 26 [Ayers Dep.] 37:18-25.<br><br>Ex. 27 [Abraham Dep.] 26:25-27:5; 45:21-46:2. | Undisputed. |
| 89. | The scissors Max was holding were kitchen shears, just over 9 inches long, with cutting blades approximately 4 inches long.<br><br>Ex. 7 [Incident Report] at FRESNO 000201.<br><br>Ex. 8 [Photo] at FRESNO 001073.<br><br>Ex. 9 [Photo] at FRESNO 001083.<br><br>Ex. 10 [Sosa Interview] at 74, 76. | Undisputed. |
| 90. | Abraham said twice, "Don't do it, bro."<br><br>Ex. 19 [Abraham BWC #2] at 4:35:14-4:35:19. | Undisputed. |

MANNING | KASS

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| 91. | There was no time for Abraham to safely close the door.<br><br>Ex. 27 [Abraham Dep.] 46:14-47:5; 48:1-12. | Disputed. Officer Abraham's own video shows that he opened the door at 4:35:07 and that Mr. Sosa did not come into view until 4:35:12, walking at an ordinary pace. (Abraham BWC 2 at 4:35:07-12.) Officer Abraham had ample time to close the door, and he never considered doing so. (Abraham Depo 46:14-17.) A jury could disbelieve his testimony that there was no time. (Abraham Depo 46:18¬47:5.) |
| **Defendants' Response:** Disputed. The video shows that Max was walking quickly and closed the distance between himself and Abraham in 3 seconds, as Abraham asked, "Who are you?" Ex. 19 [Abraham BWC 2] at 4:35:12-4:35:15. Abraham testified to his reasons for believing it was not safe to close the door. Defendants object to the term "ordinary pace" as vague and subjective. Defendants object to Plaintiffs' inclusion of legal argument in a statement of facts and refer the Court to their Reply brief. | | |
| 92. | Max entered the apartment and focused his attention on Maria and Ayers.<br><br>Ex. 10 [Sosa Interview] at 70.<br><br>Ex. 18 [Ayers BWC] at 4:35:15-4:35:24.<br><br>Ex. 19 [Abraham BWC #2] at 4:35:15-4:35:24.<br><br>Ex. 27 [Abraham Dep.] 46:3-12. | Disputed in part. Mr. Sosa said "I'm not gonna hurt her," Ayers believed him, and Ms. Sosa saw nothing threatening. (JtSF 6; Ayers Depo 52:24-53:6; Maria Sosa Depo 71:1-7.) |
| **Defendants' Response:** It is not clear what the dispute is, if any. The fact as stated does not purport to establish what Ayers or Maria thought nor does it indicate Max was intent on hurting Maria. Plaintiffs do not offer any evidence that contradicts the stated fact, suggesting the dispute is not genuine; it also does not create a triable issue of fact. Civ. LR 260(c); Fed. R. Civ. P. 56(e)(2). | | |
| 93. | Ayers and Abraham both drew their guns and pointed them at Max.<br><br>Ex. 18 [Ayers BWC] at 4:35:15-4:35:24.<br><br>Ex. 19 [Abraham BWC #2] at 4:35:15-4:35:24. | Undisputed. |

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| 94. | Ayers and Abraham moved back to increase the distance between themselves and Max.<br><br>Ex. 18 [Ayers BWC] at 4:35:15-4:35:24.<br><br>Ex. 19 [Abraham BWC #2] at 4:35:15-4:35:24.<br><br>Ex. 26 [Ayers Dep.] 38:1-4. | Undisputed. |
| 95. | Max raged the Officers, stepping towards them and Maria with the scissors pointed at them.<br><br>Ex. 18 [Ayers BWC] at 4:35:24-4:38:54.<br><br>Ex. 19 [Abraham BWC #2] at 4:35:24-4:35:54.<br><br>Ex. 26 [Ayers Dep.] 38:5-7.<br><br>Ex. 27 [Abraham Dep.] 51:10-17; 52:21-53:15. | Disputed in part. That Mr. Sosa "raged" is a characterization, not a fact, and the Sosa Plaintiffs object to it as argumentative. Undisputed that Mr. Sosa paced back and forth and took steps toward the officers and Ms. Sosa with the scissors in his hand. (Ayers Depo 38:5-7; Abraham Depo 51:15-17.) |
| **Defendants' Response:** The cited video evidence shows Max yelling and cursing at the Officers and Maria, in addition to "pac[ing] back and forth and took steps toward the officers and Ms. Sosa with the scissors in his hand." | | |
| 96. | Max came within a yard of Abraham with the scissors.<br><br>Ex. 26 [Ayers Dep.] 38:24-39:10.<br><br>Ex. 27 [Abraham Dep.] 61:9-17. | Disputed in part. Abraham gave varying estimates of one yard and two to three yards. (Abraham Depo 60:12-22; 61:9¬17; 51:24-52:2.) |
| **Defendants' Response:** Undisputed that Abraham so testified, but Abraham's testimony also shows that any discrepancy is attributable to whether the distance was measured from the scissors to Abraham's chest, or from Max's chest to Abraham's chest, a point he clarified during the deposition. Supplemental Sorensen Decl., **Def. Ex. 31** [Abraham Dep.] at 59:25-60:21; 61:9-17. | | |
| 97. | Max told Maria, "This is what you wanted. This is what you f*cking wanted."<br><br>Ex. 18 [Ayers BWC] at 4:35:24-4:38:54.<br><br>Ex. 19 [Abraham BWC #2] at 4:35:24-4:38:54. | Undisputed. |

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| 98. | Maria pleaded with Max, "Please don't do this" and to think of his children.<br><br>Ex. 10 [Sosa Interview] at 78.<br><br>Ex. 18 [Ayers BWC] at 4:35:24-4:38:54.<br><br>Ex. 19 [Abraham BWC #2] at 4:35:24-4:38:54 | Undisputed. |
| 99. | Ayers and Abraham broadcast that Max had returned to the apartment, and requested assistance.<br><br>Ex. 28 [Crockett Dep.] 22:13-23:6. | Undisputed. |
| 100. | Between **4:35 a.m.** and **4:38 a.m.**, Abraham and Ayers told Max seven times to "Get back!" and also warned him, "Stop it!" and "I'm telling you."<br><br>Ex. 18 [Ayers BWC] at 4:35:24-4:38:54.<br><br>Ex. 19 [Abraham BWC #2] at 4:35:24-4:38:54. | Undisputed. |
| 101. | Ayers and Abraham spoke to Max firmly but respectfully.<br><br>Ex. 18 [Ayers BWC] at 4:35:24-4:38:54.<br><br>Ex. 19 [Abraham BWC #2] at 4:35:24-4:38:54. | Disputed. That the officers spoke "firmly but respectfully" is a characterization, not a fact, and the Sosa Plaintiffs object to it as argumentative. The officers shouted commands and repeatedly called Mr. Sosa "bro" and "dude." Officer Abraham said, "All right, fuck that guy," about the other man. (Abraham BWC 2 at 4:35:44; 4:36:06-19; 4:37:09; Ayers BWC at 4:37:00-06.) |
| **Defendants' Response:** The cited video evidence demonstrates the manner in which Abraham and Ayers interacted with Max. Defendants object to the Plaintiffs' inclusion of legal argument in a statement of facts. | | |

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| 102. | Ayers and Abraham repeated their offers to help Max.<br><br>Ex. 18 [Ayers BWC] at 4:35:24-4:38:54.<br><br>Ex. 19 [Abraham BWC #2] at 4:35:24-4:38:54. | Disputed. Cited evidence does not support this fact. |
| **Defendants' Response:** The cited video evidence shows that Ayers and Abraham each said to Max, "We can talk this out," to which Max responded (both times), "No we f*cking can't!" Def. **Ex. 18** [Ayers BWC] at 4:35:30-4:35:36; 4:36:28-4:36:34; Def. **Ex 19** [Abraham BWC 2] at 4:35:30-4:35:36; 4:36:28-4:36:34. Abraham also offered Max the chance to talk to one of his partners, which Max refused (Abraham: "If you don't want to talk to us, talk to one of my partners. How about that?" Max: "No, I don't want to talk to any of them f*cking guys. My fate is sealed, my guy.") *See* Amended Joint Statement of Undisputed Facts, Nos. 117, 118. This fact is is further corroborated by the evidence cited in support of Facts No. 119 (undisputed) and 120 (undisputed). | | |
| 103. | Max continued to curse at the Officers and said that no one understood the sacrifices he had made for Maria.<br><br>Ex. 18 [Ayers BWC] at 4:35:24-4:38:54.<br><br>Ex. 19 [Abraham BWC #2] at 4:35:24-4:38:54. | Undisputed. |
| 104. | Max did not comply with the Officers' commands and rejected their attempts to engage him.<br><br>Ex. 18 [Ayers BWC] at 4:35:24-4:38:54.<br><br>Ex. 19 [Abraham BWC #2] at 4:35:24-4:38:54.<br><br>Ex. 27 [Abraham Dep.] 81:6-82:6. | Disputed. Mr. Sosa complied when Aguilar told him not to step toward him, and no officer told Mr. Sosa to stay inside. (Aguilar Depo 42:3-16; Abraham Depo 81:6-82:6.) |
| **Defendants' Response:** It is not clear what the dispute is, as the stated fact does not say anything about whether Max was told to stay inside. In the cited video excerpt, Max was told multiple times to: "back up," "drop it [the scissors]," "Sit down," "Don't do this," and "Stop!", which he did not do. In the cited video excerpt, Max also rejected the Officers' invitations to "talk this out" or "talk to one of my partners." *See also* **Fact No. 102**, *supra*. | | |

MANNING | KASS

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| 105. | At **4:35:18 a.m.** Abraham said, "Don't do it, bro."<br>Ex. 18 [Ayers BWC] at 4:35:24-4:38:54.<br>Ex. 19 [Abraham BWC #2] at 4:35:24-4:38:54. | Undisputed. |
| 106. | At **4:35:23 a.m.** Ayers radioed that Max was inside Maria's apartment armed with scissors.<br>Ex. 18 [Ayers BWC] at 4:35:23-4:35:27. | Undisputed. |
| 107. | At **4:36:04 a.m.**, Max said to Abraham, "Pop it, dude. Are you ready for this?"<br>Ex. 18 [Ayers BWC] at 4:35:24-4:38:54.<br>Ex. 19 [Abraham BWC #2] at 4:35:24-4:38:54. | Undisputed. |
| 108. | At **4:36:54 a.m.** Max said, "Have you shot anybody before? Today's gonna be the day."<br>Ex. 18 [Ayers BWC] at 4:35:24-4:38:54.<br>Ex. 19 [Abraham BWC #2] at 4:35:24-4:38:54. | Undisputed. |
| 109. | At **4:37:06 a.m.** Crockett arrived to the apartment.<br>Ex. 20 [Crockett BWC] at 4:37:06. | Undisputed. |
| 110. | Crockett saw that Max was holding kitchen shears in his right hand and pointing them towards Ayers and Maria.<br>Ex. 28 [Crockett Dep.] 28:6-15; 51:24-52:9. | Undisputed that Officer Crockett so testified. He also testified that when he first saw Mr. Sosa, the scissors were down at Mr. Sosa's right side, and Officer Aguilar saw Mr. Sosa hold them pointed down. (Mayne Decl. ¶ 10, Ex. H (Deposition of Officer Brandon Crockett, Apr. 22, 2026) ("Crockett Depo") 51:14¬19; Aguilar Depo 41:23-42:2.) |

MANNING | KASS

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| **Defendants' Response:** It is not clear what the dispute is, if any. Defendants do not dispute that Crockett provided the additional testimony cited above. | | |
| 111. | At **4:37:16 a.m.** Crockett told Max, "Let's chill out, man," to which Max responded "No! F*ck no!"<br><br>Ex. 18 [Ayers BWC] at 4:37:16-4:37:19.<br><br>Ex. 19 [Abraham BWC #2] at 4:37:16-4:37:19.<br><br>Ex. 20 [Crockett BWC] at 4:37:15-4:37:22.<br><br>Ex. 28 [Crockett Dep.] 53:5-12. | Undisputed. |
| 112. | At **4:37:29 a.m.** Crockett broadcast "One at gunpoint, scissors in right hand."<br><br>Ex. 3 [CAD Report] at FRESNO 000248, 000273.<br><br>Ex. 20 [Crockett BWC] at 4:37:29-4:37:37.<br><br>Ex. 28 [Crockett Dep.] 55:12-56:1. | Undisputed. |
| 113. | At **4:37:35 a.m.** Aguilar arrived to Maria's apartment.<br><br>Ex. 21 [Aguilar BWC] at 4:37:35-4:37:40. | Undisputed. |
| 114. | Crockett, who was standing outside the doorway, quickly described the situation inside.<br><br>Ex. 20 [Crockett BWC] at 4:37:39-4:37:43.<br><br>Ex. 21 [Aguilar BWC] at 4:37:40-4:37:43. | Undisputed. |

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| 115. | At **4:37:43 a.m**. Max said, "This is how it ends. This is what you wanted."<br><br>Ex. 18 [Ayers BWC] at 4:37:43-4:37:45.<br><br>Ex. 19 [Abraham BWC #2] at 4:35:24-4:38:54. | Undisputed. |
| 116. | At **4:38:01 a.m.** Max said, "Sorry you guys have to do this, but it's gonna happen either way."<br><br>Ex. 18 [Ayers BWC] at 4:37:57-4:38:03.<br><br>Ex. 19 [Abraham BWC #2] at 4:35:24-4:38:54.<br><br>Ex. 21 [Aguilar BWC] at 4:37:55-4:37:59. | Disputed in part. Mr. Sosa did not say "Sorry you guys have to do this, but it's gonna happen either way." Undisputed that Mr. Sosa apologized to the officers. |
| **Defendants' Response:** The cited video evidence establishes what Max said; on review, Max may have said "Sorry you guys have to do this, but it's *gotta* happen *this* way." **Def. Ex. 19** [Abraham BWC 2] at 4:37:57-4:38:01. Plaintiffs do not offer any evidence to contradict that Max said these or similar words. Defendants object to Plaintiffs' characterization of Max's statement as an apology. | | |
| 117. | At **4:38:05 a.m.** Abraham said, "If you don't want to talk to us, talk to one of my partners. How about that?"<br><br>Ex. 18 [Ayers BWC] at 4:38:03-4:38:10.<br><br>Ex. 19 [Abraham BWC #2] at 4:38:03-4:38:10.<br><br>Ex. 20 [Crockett BWC] at 4:38:02-4:38:10.<br><br>Ex. 21 [Aguilar BWC] at 4:37:59-4:38:05. | Undisputed. |

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| 118. | Max responded, "No, I don't want to talk to any of them f*cking guys. My fate is sealed, my guy."<br><br>Ex. 18 [Ayers BWC] at 4:38:03-4:38:10.<br><br>Ex. 19 [Abraham BWC #2] at 4:38:03-4:38:10.<br><br>Ex. 20 [Crockett BWC] at 4:38:02-4:38:10.<br><br>Ex. 21 [Aguilar BWC] at 4:38:03-4:38:07. | Undisputed. |
| 119. | At **4:38:29 a.m.** Aguilar asked Max, "Hey, can we talk?"<br><br>Ex. 20 [Crockett BWC] at 4:38:25-4:38:33.<br><br>Ex. 21 [Aguilar BWC] at 4:38:25-4:38:27.<br><br>Ex. 29 [Aguilar Dep.] 41:1-18; 43:6-18. | Undisputed. |
| 120. | Max responded, "F*ck no!"and "I am done with this, dude."<br><br>Ex. 19 [Abraham BWC #2] at 4:38:26-4:38:31.<br><br>Ex. 20 [Crockett BWC] at 4:38:25-4:38:33.<br><br>Ex. 21 [Aguilar BWC] at 4:38:26-4:38:31. | Undisputed. |
| 121. | At **4:38:13 a.m.** Max talked about killing Maria's affair partner. When Ayers said, "He's not here, Max," Max responded, "Exactly. So it's gonna be my life or you guys. That's it. That's all it's gonna come down to."<br><br>Ex. 18 [Ayers BWC] at 4:38:13-4:38:26.<br><br>Ex. 19 [Abraham BWC #2] at 4:38:13-4:38:31. | Undisputed. The Sosa Plaintiffs object to "affair partner" as argumentative. |

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| **Defendants' Response:** See Response to Fact No. 9. | | |
| 122. | At **4:38:38 a.m.** Aguilar readied his Taser.<br><br>Ex. 20 [Crockett BWC] at 4:38:37-4:38:43.<br><br>Ex. 29 [Aguilar Dep.] 30:9-24. | Undisputed. |
| 123. | At **4:38:50 a.m.** Abraham gestured to Ayers and Maria to get out of the apartment.<br><br>Ex. 19 [Abraham BWC #2] at 4:38:50-4:38:54.<br><br>Ex. 21 [Aguilar BWC] at 4:38:45-4:38:50.<br><br>Ex. 26 [Ayers Dep.] 13-23.<br><br>Ex. 27 [Abraham Dep.] 58:3-23. | Disputed in part. Abraham gestured for Ayers and Ms. Sosa to leave, and no officer told Mr. Sosa to stay. (Abraham Depo 58:6-13; 81:6-82:6.) |
| **Defendants' Response:** It is not clear what the dispute is, and Plaintiffs do not offer evidence to contradict that Abraham gestured for Maria and Ayers to leave the apartment. Whether any officer told Max to "stay" is irrelevant, because Max did not attempt to leave at this moment. **Def. Ex. 19** [Abraham BWC #2] at 4:38:50-4:38:54; **Def. Ex. 21** [Aguilar BWC] at 4:38:45-4:38:50. When Max asked Ayers "where are you going?" and started to step towards Ayers, Abraham told him to "Wait, wait, wait." **Def. Ex. 19** [Abraham BWC 2] at 4:38:50-4:38:54. Max was also told to "Wait" and "Stop, dude" when he started walking toward the door. **Def. Ex. 19** [Abraham BWC 2] at 4:39:20-4:39:26; *see also* Amended Joint Statement of Undisputed Facts, No. 133. | | |
| 124. | Ayers walked toward the door and exited the apartment.<br><br>Ex. 18 [Ayers BWC] at 4:38:50-4:38:55.<br><br>Ex. 19 [Abraham BWC #2] at 4:38:50-4:38:54. | Undisputed. |
| 125. | Maria remained seated on the couch.<br><br>Ex. 19 [Abraham BWC #2] at 4:38:50-4:38:54. | Undisputed. |

MANNING | KASS

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| 126. | At **4:38:52 a.m.** Aguilar stepped away to call in the details of the Officers' situation.<br><br>Ex. 21 [Aguilar BWC] at 4:38:49-4:39:10.<br><br>Ex. 29 [Aguilar Dep.] 31:20-32:15. | Undisputed. |
| 127. | At **4:38:59 a.m.** Max told Abraham he could also leave by the front door.<br><br>Ex. 18 [Ayers BWC] at 4:38:55-4:39:06.<br><br>Ex. 19 [Abraham BWC #2] at 4:38:55-4:39:06. | Undisputed. |
| 128. | At **4:39:02 a.m.** Crockett, standing at the threshold, motioned for Maria to come outside.<br><br>Ex. 18 [Ayers BWC] at 4:39:03-4:39:12.<br><br>Ex. 20 [Crockett BWC] at 4:39:02-4:39:15.<br><br>Ex. 28 [Crockett Dep.] 56:8-11; 59:7-14. | Undisputed. |
| 129. | At **4:39:20 a.m.** Abraham said twice, "Maria, get out."<br><br>Ex. 18 [Ayers BWC] at 4:39:19-4:39:22.<br><br>Ex. 19 [Abraham BWC #2] at 4:39:19-4:39:22.<br><br>Ex. 21 [Aguilar BWC] at 4:39:15-4:39:19. | Undisputed. |
| 130. | Maria stood and started walking toward the door.<br><br>Ex. 20 [Crockett BWC] at 4:39:15-4:39:23. | Undisputed. |

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| 131. | At **4:39:23 a.m.** Max turned and approached the door, facing Ayers, Crockett and Aguilar.<br><br>Ex. 18 [Ayers BWC] at 4:39:23-4:39:25.<br><br>Ex. 19 [Abraham BWC #2] at 4:39:23-4:39:25.<br><br>Ex. 20 [Crockett BWC] at 4:39:20-4:39:24. | Undisputed. |
| 132. | Crockett and Ayers stepped back.<br><br>Ex. 18 [Ayers BWC] at 4:39:23-4:39:25<br><br>Ex. 20 [Crockett BWC] at 4:39:20-4:39:27.<br><br>Ex. 21 [Aguilar BWC] at 4:39:21-4:39:23. | Undisputed. |
| 133. | The Officers shouted: "Wait!" (one time), "Stop!" (one time); "Get back, bro!" (two times) "Hey!" (one time) and "Chill out!" (two times).<br><br>Ex. 18 [Ayers BWC] at 4:39:22-4:39:26<br><br>Ex. 19 [Abraham BWC #2] at 4:39:22-4:39:26.<br><br>Ex. 20 [Crockett BWC] at 4:39:24-4:39:27.<br><br>Ex. 21 [Aguilar BWC] at 4:39:20-4:39:26.<br><br>Ex. 27 [Abraham Dep.] 58:3-23.<br><br>Ex. 28 [Crockett Dep.] 45:10-18; 57:21-58:1; 58:12-16; Crockett 59:15-21<br><br>Ex. 29 [Aguilar Dep.] 38:9-17. | Undisputed. |

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| 134. | At **4:39:25 a.m.** Max crossed the threshold and exited the apartment.<br>Ex. 18 [Ayers BWC] at 4:39:25.<br>Ex. 19 [Abraham BWC #2] at 4:39:25.<br>Ex. 20 [Crockett BWC] at 4:39:20-4:39:25.<br>Ex. 21 [Aguilar BWC] at 4:3922-4:39:23. | Undisputed. |
| 135. | At **4:39:26 a.m.** Aguilar deployed his Taser, striking Max.<br>Ex. 18 [Ayers BWC] at 4:39:26.<br>Ex. 20 [Crockett BWC] at 4:39:27.<br>Ex. 21 [Aguilar BWC] at 4:39:24.<br>Ex. 27 [Abraham Dep.] 58:25-59:19.<br>Ex. 28 [Crockett Dep.] 59:22-24. | Undisputed. |
| 136. | The Taser did not immobilize Max, who stumbled briefly and swatted the air in front of him.<br>Ex. 18 [Ayers BWC] at 4:39:26-4:39:28.<br>Ex. 20 [Crockett BWC] at 4:39:27-4:39:32.<br>Ex. 21 [Aguilar BWC] at 4:39:24-4:39:26.<br>Ex. 28 [Crockett Dep.] 40:10-22; 43:8-16.<br>Ex. 27 [Abraham Dep.] 58:25-59:19.<br>Ex. 29 [Aguilar Dep.] 18:14-23. | Disputed in part. Undisputed that the Taser did not cause neuromuscular incapacitation. The Taser caused Mr. Sosa pain; he stumbled into the wall of the opposite apartment, clutched his torso, and swatted at the wires on his chest, not the air. (Crockett Depo 40:13¬19; 43:8-16; Abraham Depo 59:2-11; Aguilar Depo 18:17-23; Defs.' Ex. 20, Dkt. 93-23 (Officer Crockett Body-Worn Camera, lodged) ("Crockett BWC") at 4:39:27; Defs.' Ex. 21, Dkt. 93-24 (Officer Aguilar Body-Worn Camera, lodged) ("Aguilar BWC") at 4:39:25-26.) |
| **Defendants' Response:** The cited video evidence depicts what happened. Plaintiffs' evidence does not establish that Max felt pain or that any of his actions thereafter were a response to pain. Defendants refer the Court to their objection to and motion to strike the Bryce Declaration, filed concurrently. | | |
| 137. | Aguilar did not have time to, and did not attempt to, reload and redeploy the Taser.<br>Ex. 29 [Aguilar Dep.] 26:20-27:19 | Undisputed. |



MK MANNING | KASS

| **NO.** | **UNDISPUTED FACTS AND SUPPORTING EVIDENCE** | **PLAINTIFFS' RESPONSE** |
|---|---|---|
| 138. | At **4:39:27 a.m.** Max yelled, gritted his teeth, and charged toward Crockett, Aguilar and Ayers.<br>Ex. 18 [Ayers BWC] at 4:39:27-4:39:29.<br>Ex. 19 [Abraham BWC #2] at 4:39:27-4:39:29.<br>Ex. 20 [Crockett BWC] at 4:39:27-4:39:32.<br>Ex. 21 [Aguilar BWC] at 4:39:26-4:39:27.<br>Ex. 27 [Abraham Dep.] 86:24-87:3; 88:6-16.<br>Ex. 28 [Crockett Dep.] 44:20-24; 46:15-21; 67:12-68:6; 68:13-17; 74:14-20.<br>Ex. 29 [Aguilar Dep.] 62:9-25. | Disputed. Mr. Sosa did not charge the officers. After the Taser struck him, he moved away from its pain along the only path open to him, which led into the breezeway where the officers were standing. (Aguilar Depo 23:6-24:19; *see* No. 139, below.) The sound he made was a grunt that Officer Aguilar agreed could have been an expression of pain. (Aguilar Depo 18:17-23; 19:2-6.) No cited testimony says Mr. Sosa gritted his teeth. Nor did he move toward three officers at once; the officers stood in different places. Officer Crockett described himself as "the only person, like, hugged up against this wall," and Officer Aguilar described Mr. Sosa moving toward Crockett and himself (Crockett Depo 69:10-15; Aguilar Depo 62:18-25.) Officer Crockett told the investigator, "I don't know a hundred percent if he's fixated on me per se," and confirmed that statement at deposition. (Crockett Depo 69:10-23.) Mr. Sosa moved with his head down, and Officer Crockett fired about half a second to a second after Mr. Sosa started moving. (Crockett Depo 46:15¬21; 66:2-9.) |
| **Defendants' Response:** The cited video evidence establishes the stated fact, including that Max had the scissors clenched in his hand and pointed up and outward as he bared his teeth, quickened his pace, and moved in the direction of Crockett, Ayers and Aguilar. **Def. Ex. 19** [Abraham BWC 2] at 4:39:27-4:39:30; **Def. Ex. 20** [Crockett BWC] at 4:39:27-4:39:30. None of the cited evidence establishes that Max's advance on the Officers was a response to pain. Defendants object to Plaintiffs' inclusion of legal argument in the statement of facts and refer the Court to their Reply brief, response to the Sosa Plaintiffs' statement of additional disputed facts, and objection to and motion to strike the Bryce Declaration, filed concurrently. | | |

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| 139. | Max was gripping the scissors as he charged the Officers.<br>Ex. 19 [Abraham BWC #2] at 4:39:27-4:39:29.<br>Ex. 20 [Crockett BWC] at 4:39:28-4:39:30.<br>Ex. 28 [Crockett Dep.] 66:2-9; 67:8-21; 75:6-10; 76:15-23;<br>Ex. 27 [Abraham Dep.] 86:24-87:3; 88:6-16. | Disputed. Mr. Sosa was not charging the officers. He was moving away from the pain of the Taser along the only path open to him. Officer Aguilar considered, when he decided to tase Mr. Sosa, that Mr. Sosa would move away from the source of pain, and he testified that Mr. Sosa had no avenue of escape: across from the apartment door was a closed door and a wall, Officer Abraham was inside the apartment, and the breezeway was "exactly where we were standing." (Aguilar Depo 23:6-24:19.) "Charging" is the officers' characterization, not a fact. Mr. Sosa walked out of the apartment holding the scissors behind his back; shortly after he crossed the threshold, they were down at his side, and he did not raise them toward anyone. (Ayers BWC, Abraham BWC 2, Crockett BWC, and Aguilar BWC, each at 4:39:23-28; Crockett Depo 66:2-9; 76:15-23.) |
| **Defendants' Response:** *See* Response to Fact No. 138. Aguilar testified that it was not the Officers' intention to provide Max with "an avenue to escape," because they had probable cause to arrest him for driving under the influence, assault on a police officer, and criminal threats. Supplemental Sorensen Decl., **Def. Ex 32** [Aguilar Dep.] at 57:21-58:11. | | |
| 140. | Shots fired at **4:39:28 a.m.**<br>Ex. 18 [Ayers BWC] at 4:39:28.<br>Ex. 19 [Abraham BWC #2] at 4:39:28.<br>Ex. 20 [Crockett BWC] at 4:39:28.<br>Ex. 21 [Aguilar BWC] at 4:39:27.<br>Ex. 29 [Aguilar Dep.] 35:2-8. | Undisputed. |

MANNING | KASS

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| 141. | Max fell to the ground, still holding the scissors.<br>Ex. 18 [Ayers BWC] at 4:39:30.<br>Ex. 19 [Abraham BWC #2] at 4:39:30.<br>Ex. 20 [Crockett BWC] at 4:39:31.<br>Ex. 21 [Aguilar BWC] at 4:39:30. | Undisputed. |
| 142. | At **4:39:38 a.m.** Max moved his arm and Abraham commanded him to "Let go of – "<br>Ex. 18 [Ayers BWC] at 4:39:38-4:39:43.<br>Ex. 19 [Abraham BWC #2] at 4:39:38-4:39:43.<br>Ex. 21 [Aguilar BWC] at 4:39:38-4:39:39. | Disputed in part. The Sosa Plaintiffs dispute that Officer Abraham's words were a "command." Mr. Sosa had already been shot and had fallen to the ground, and there is no evidence that he could hear or understand anything said to him at that point. (SUF 140, 141.) Undisputed that Officer Abraham said, "Let go of." |
| **Defendants' Response:** It is not clear what the dispute is and nothing in the stated fact purports to establish that Max could hear Abraham's words. Abraham's actions are depicted in the cited video evidence. | | |
| 143. | Aguilar called in "Shots fired."<br>Ex. 3 [CAD Report] at FRESNO 000248, 000274.<br>Ex. 21 [Aguilar BWC] at 4:39:36-4:39:45. | Undisputed. |

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| 144. | Max was approximately a foot to a foot-and-a-half away from Crockett when all four Officers fired their service weapons.<br><br>Ex. 26 [Ayers Dep.] 85:3-10.<br><br>Ex. 28 [Crockett Dep.] 45:6-9; 73:15-23; 76:15-23.<br><br>Ex. 29 [Aguilar Dep.] 63:1-4. | Disputed in part. That all four officers fired is not supported by the cited evidence and is contradicted by Defendants' own report. Three officers fired their handguns: Officers Ayers, Crockett, and Abraham. Officer Aguilar fired only his Taser. (Homicide Report at FRESNO 000168; Aguilar Depo 30:12¬24; 63:15-18.) Officer Abraham fired from two to three yards behind Mr. Sosa, in the direction of Mr. Sosa's back. (Abraham Depo 86:6-23; Homicide Report at FRESNO 000186.) No testimony places Mr. Sosa within a foot and a half of Officer Crockett when Officer Aguilar fired the Taser. Officer Aguilar's estimate is of the distance when he heard the shots, after Mr. Sosa took two steps to his left and then "closed distance fairly quickly." (Aguilar Depo 62:18-25; 63:1-4.) Undisputed that Officers Ayers, Crockett, and Aguilar estimated that Mr. Sosa was about a foot to a foot and a half from Officer Crockett when the shots were fired. |
| **Defendants' Response:** Undisputed that Aguilar fired his Taser and did not discharge his service weapon; undisputed that Aguilar fired his Taser only once, before the other Officers fired their weapons, and that he was farther away than a foot to a foot-and-a-half. As to the distance from which Abraham fired his weapon, undisputed but irrelevant. | | |
| 145. | Max was close enough to Crockett to have grabbed Crockett's gun.<br><br>Ex. 27 [Abraham Dep.] 58:25-59:19. | Disputed in part. Undisputed that Officer Abraham testified that he thought Mr. Sosa at one point was within arm's reach of Officer Crockett's gun. A jury could find that Mr. Sosa was not close enough to grab it: Officer Abraham was two to three yards behind Mr. Sosa and saw mostly his back, and no evidence shows Mr. Sosa reached for a gun. (Abraham Depo 86:6-23; Crockett Depo 66:2-9; 75:6-10.) |

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
| --- | --- | --- |
| **Defendants' Response:** The stated fact does not purport to establish that Max reached for a gun. The Sosa Plaintiffs do not dispute the Officers' estimate that Max was a between 12 and 18 inches from Crockett (*See* Response to Fact No. 144) – in other words, within an arm's distance – and this estimate is consistent with the video evidence. *See* **Def. Ex. 19** [Abraham BWC 2] at 4:39:20-4:39:29; **Def. Ex. 20** [Crockett BWC 4:39:27-4:39:30. Plaintiffs do not offer any evidence to contradict that at that distance, Max could have put his hand on Crockett's gun. Defendants object to Plaintiffs' inclusion of legal argument in the statement of facts and refer the Court to their Reply brief and response to Plaintiffs' statements of additional disputed facts. | | |
| 146. | At **4:39:50 a.m.** Crockett retrieved a medical kit from his vehicle.<br>Ex. 20 [Crockett BWC] at 4:39:27-4:39:50. | Undisputed. |
| 147. | At **40:40:10 a.m.** Aguilar approached Max, retrieved the scissors and tossed them away.<br>Ex. 20 [Crockett BWC] at 4:40:10-4:40:12.<br>Ex. 21 [Aguilar BWC] at 4:40:07-4:40:10. | Undisputed. The time is miswritten as "40:40:10." |
| **Defendants' Response:** Undisputed and corrected in the Amended Joint Statement of Undisputed Facts. | | |
| 148. | At **4:40:40 a.m.** the Officers began administering emergency medical aid to Max.<br>Ex. 20 [Crockett BWC] at 4:40:40.<br>Ex. 21 [Aguilar BWC] at 4:40:38. | Undisputed. |

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS’ RESPONSE |
|---|---|---|
| 149. | The coroner determined the cause of Max’s death was a gunshot wound to the chest.<br><br>Ex. 5 [Coroner’s Report] at FRESNO 000239. | Disputed in part. That the cause of death was a single gunshot wound is not supported by the cited evidence; the cited page (FRESNO 000239) is a toxicology page. Undisputed that the coroner found the cause of death to be "gunshot wounds to chest." (Mayne Decl. ¶ 11, Ex. I (Fresno County Coroner's Report) ("Coroner's Report") at FRESNO 000226, 000230.) Mr. Sosa sustained four gunshot wounds to his torso. One entered his mid-back and traveled forward through his right lung and heart. (Id. at FRESNO 000230, 000234.) |
| **Defendants’ Response:** Undisputed as to Max’s cause of death, which Defendants intended to cite Ex. 5 [Coroner’s Report] at FRESNO 00023**0** to support. As to Plaintiffs’ other stated facts, they are undisputed but irrelevant. | | |
| 150. | Max’s blood alcohol level was 0.09.<br><br>Ex. 6 [Toxicology Report] at FRESNO000300. | Undisputed. |
| 151. | Max Sr. is Max’s biological father.<br><br>Ex. 23 [Max. Sr. Dep.] 12:13-18. | Undisputed. |
| 152. | Martha is Max’s biological mother.<br><br>Ex. 23 [Max. Sr. Dep.] 12:13-18; 14:9-10.<br><br>Ex. 24 [Martha Dep.] 20:25-21:11. | Undisputed. |
| 153. | M.S. and L.S. are Max’s biological children.<br><br>Ex. 23 [Maria Dep.] 32:5-10. | Undisputed. |
| 154. | Max and Maria were married on July 11, 2014.<br><br>Ex. 23 [Maria Dep.] 18:3-4. | Undisputed. |
| 155. | Max and Maria were married but living separately as of November 4, 2023. Ex. 23 [Maria Dep.] 26:1-17; 42:14-17;<br><br>Ex. 25 [Max Sr. Dep.] 27:4-7. | Undisputed. The separation was mutual, and they saw each other regularly. (Maria Sosa Depo 26:1-6; 42:14-17; 143:22-144:22.) |

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| **Defendants' Response:** Undisputed but irrelevant. | | |
| 156. | One of the reasons Max and Maria separated was that Maria had a relationship with another man, who was one of her coworkers.<br>Ex. 10 [Sosa Interview] at 9, 10.<br>Ex. 23 [Maria Dep.] 30:3-7; 30:24-31:16; 137:19-25.<br>Ex. 25 [Max Sr. Dep.] 28:20-25. | Disputed. Mr. Sosa learned of Mr. Lea only after the mutual separation, so it could not be his reason; Max Sosa, Sr. testimony lacks foundation. (Maria Sosa Depo 26:1-6; 31:1-16; Fed. R. Evid. 602.) |
| **Defendants' Response:** Undisputed. | | |
| 157. | Max Sr., Martha, M.S. and L.S. were not present when Max was shot and killed.<br>Ex. 25 [Max. Sr.] 21:4-12. | Undisputed. |
| 158. | Maria was in the apartment when Max was shot and killed and did not see Max's actions towards the Officers or the Officers' actions towards Max once Max left the apartment.<br>Ex. 10 [Sosa Interview] at 80.<br>Ex. 23 [Maria Dep.] 47:15-17; 108:23-109:4. | Undisputed. |
| 159. | In 2014, Max Sr. signed over his business to Max.<br>Ex. 10 [Sosa Interview] at 5, 6.<br>Ex. 23 [Maria Dep.] 116:8-15;<br>Ex. 25 [Max. Sr. Dep.] 16:15-22; 25:25-26:6. | Undisputed. |
| 160. | Max assumed over $50,000 in debt as a result of taking over his father's business.<br>Ex. 10 [Sosa Interview] at 5, 6, 8.<br>Ex. 23 [Maria Dep.] 115:19-25. | Undisputed. |

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| 161. | Max's wages were garnished for a period of time due to the business liability he assumed from his father.<br><br>Ex. 23 [Maria Dep.] 116:22-24. | Undisputed. |
| 162. | The business debt from Max Sr.'s business had not resolved at the time of Max's death.<br><br>Ex. 23 [Maria Dep.] 116:16-21. | Undisputed. |
| 163. | Max did not provide Max Sr. with financial support during his lifetime.<br><br>Ex. 23 [Max Sr. Dep.] 29:14-16; 45:24-46:9. | Undisputed. |
| 164. | Max Sr. testified Max helped him with his business and that Max Sr. planned to have Max take over the business.<br><br>Ex. 23 [Max Sr. Dep.] 45:24-46:9. | Undisputed. |
| 165. | Max Sr. testified he was relying on his business to support him after he retired.<br><br>Ex. 23 [Max Sr. Dep.] 45:24-46:9. | Undisputed. |
| 166. | Max did not provide Martha with financial support during his lifetime.<br><br>Ex. 24 [Martha Dep.] 37:5-11. | Undisputed. |
| 167. | Martha testified Max "was always talking about supporting me whenever I became old."<br><br>Ex. 24 [Martha Dep.] 37:5-11. | Disputed in part. The fact misquotes Ms. Zepeda Olivares's testimony. |

| **NO.** | **UNDISPUTED FACTS AND SUPPORTING EVIDENCE** | **PLAINTIFFS' RESPONSE** |
|---|---|---|
| 168. | All of the Officers were trained in crisis management, deescalation techniques and dealing with individuals in crisis as part of their training.<br><br>Ex. 26 [Ayers Dep.] 16:18-17:13; 22:7-14.<br><br>Ex. 27 [Abraham Dep.] 20:2-12.<br><br>Ex. 28 [Crockett Dep.] 15:5-16:3; 73:5-14.<br><br>Ex. 29 [Aguilar Dep.] 59:18-24.<br><br>Ex. 30 [Alvarez Dep.] at 39:11-40:22; 47:2-49:20; 65:1-67:1. | Disputed. No officer had CIT, CNT, or specialized crisis training, and Ayers felt the incident was beyond his training. (Ayers Depo 17:5-13; 41:23-42:13; Abraham Depo 23:3-15; Aguilar Depo 11:24-12:4.) |
| **Defendants' Response:** Nothing in the cited fact purports to establish that the Officers had "specialized" crisis training, and Plaintiffs do not cite any evidence to contradict the Officers' testimony that their training included crisis management, deescalation techniques and dealing with individuals in crisis. Civ. LR 260(c), Fed. R. Civ. P. 56(e)(2). The remaining additional "facts" do not contradict the stated fact and are improper argumentation in a statement of facts. Defendants refer the Court to their reply briefs and responses to Plaintiffs' statements of additional disputed facts. and to their objection to and motion to strike the Bryce Declaration, filed concurrently. | | |
| 169. | The Officers tried several deescalation techniques during the incident, including: increasing distance from the suspect; trying to establish rapport, including using the suspect's first name; speaking in a calm tone; offering assistance and reassurance; showing force; training a weapon on the suspect; and requesting additional officers to the scene.<br><br>Ex. 23 [Maria Dep.] 104:18-107:3.<br><br>Ex. 26 [Ayers Dep.] 22:7-14; 56:25-57:11; 62:21-24.<br><br>Ex. 27 [Abraham Dep.] at 84:25-25:3.<br><br>Ex. 28 [Crockett Dep.] 55:12-56:1.<br><br>Ex. 29 [Aguilar Dep.] 58:12-59:4; 59:25-60:9; 60:10-17. | Disputed. Much of the cited testimony describes training, not what the officers did. (Ayers Depo 22:7-14; 62:21-24; Aguilar Depo 60:10-17.) No officer summoned CNT, discussed a tactical plan, or considered less-lethal force, and <u>no one told Mr. Sosa to stay inside</u>. (Crockett Depo 56:2-7; Aguilar Depo 47:19-48:12; Ayers Depo 44:3-13; 65:10¬15; Abraham Depo 52:21-24; 81:6-82:6; 82:8-13.) No officer had CIT, CNT, or specialized crisis training, and Ayers felt the incident was beyond his training. (Ayers Depo 17:5-13; 41:23-42:13; Abraham Depo 23:3-15; Aguilar Depo 11:24-12:4.) The cite to Abraham Dep. is not a valid page range. |

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| **Defendants' Response:** Plaintiffs do not cite any evidence to contradict that, consistent with their training, the Officers used all of these deescalation techniques during the incident. Civ. LR 260(c), Fed. R. Civ. P. 56(e)(2). The remaining additional "facts" do not contradict the stated fact and are not accurate (see Fact No. 133 (undisputed)). Defendants object to the Sosa Plaintiffs' inclusion of legal argument in a statement of facts and refer the Court to their Reply brief. | | |
| 170. | Ayers tried to contact his sergeant to discuss the availability of other resources, including a crisis negotiator, had the sergeant deemed one necessary.<br>Ex. 26 [Ayers Dep.] 42:14-43:5; 80:23-81:9; 18:8-16. | Undisputed. |
| 171. | The Officers were trained that deadly force is justified if a suspect poses an immediate threat of death or serious bodily injury, based on the totality of the circumstances.<br>Ex. 28 [Crockett Dep.] 31:17-23; 35:24-36:5.<br>Ex. 27 [Abraham Dep.] 18:11-23; 56:22-57:1.<br>Ex. 26 [Ayers Dep.] 19:18-22. | Undisputed. |

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| 172. | Ayers believed Max presented a threat of death or serious bodily injury to Ayers, Maria and the other Officers at all times while Max was in Maria's apartment.<br><br>Ex. 26 [Ayers Dep.] 39:11-22; 39:24-40:5; 48:4-19; 55:1-22; 56:1-6; 62:25-63:21; 64:5-17; 72:12-73:5. | Disputed. Officer Ayers so testified, but whether he actually held that belief the entire time Mr. Sosa was in the apartment is a credibility question, and a jury could find that he did not. For stretches of that time Mr. Sosa was on the far side of the kitchen counter, banging his head on the counter, not looking toward anyone, with the scissors pointed down. (Abraham Depo 40:22-25; Ayers Depo 69:1-11; Aguilar Depo 41:23-42:2.) Less than a minute before the shooting, Mr. Sosa had his back turned to the officers and then stood behind the kitchen counter with his hands resting on it. (Ayers BWC at 4:38:43-48.) Mr. Sosa never lunged at, struck at, or jabbed at anyone, and when Officer Aguilar told him not to step toward him, he stepped back. (Abraham Depo 51:24-52:2; Aguilar Depo 37:4-15; 42:3-16.) Officer Ayers himself told the investigator that Mr. Sosa's steps toward the officers were not "anything that would have warranted, you know, using deadly force," and he testified that he believed Mr. Sosa would not harm Ms. Sosa. (Ayers Depo 41:3-13; 52:24-53:6.) |

**Defendants' Response:** Plaintiffs do not cite any evidence to contradict the stated fact. Civ. LR 260(c), Fed. R. Civ. P. 56(e)(2). The remaining additional "facts" do not contradict the stated fact, are misleadingly presented, and/or irrelevant.

Plaintiffs' additional facts are further disputed as follows:

Regarding the statement that "for stretches of time, Mr. Sosa was on the far side of the kitchen counter, banging his head on the counter, not looking toward anyone, with the scissors pointed down": The cited testimony does not support this fact. The "stretch of time" appears to refer to approximately six second during which Max was banging his hand and the scissors (not his head) on the kitchen counter, during which Abraham motioned for Ayers and Maria to leave. *See* **Def. Ex. 18** [Ayers BWC] at 4:38:44-4:38:51; **Def. Ex. 19** [Abraham BWC 2] at 4:38:44-4:38:51. At no time did Max retreat into the kitchen. *See id.*

Regarding the statement that "Sosa never lunged at, struck at, or jabbed at anyone, and when Officer Aguilar told him not to step toward him, he stepped back.": Max's aggressive and erratic conduct toward Maria and the Officers, including but not limited to shouting, cursing, stepping toward them while gripping the scissors, asking Abraham "are you ready for this?" while brandishing the scissors at him, and asking Ayers "are you the motherf*cker I was talking to?" are all demonstrated on the objective video evidence. **Def. Ex. 18** [Ayers BWC] at 4:35:13-4:39:24; **Def. Ex. 19** [Abraham BWC 2] at 4:35:13-4:39:24. The same objective video evidence shows that Max was not compliant with the Officers' instructions and resisted their offers to help him. **Def. Ex. 18** [Ayers BWC] at 4:35:24-4:38:54; **Def. Ex. 19** [Abraham BWC #2] at 4:35:24-4:38:54. Consistent with this video evidence, Abraham testified that Max "was taking steps toward me, Officer Ayers and Mrs. Sosa, with the pair of scissors in his hands, still." **Def. Ex. 27** [Abraham Dep.] at 51:10-17.

Regarding the statement that "Ayers himself" told the investigator that Max's behavior in the apartment did not warrant the use of deadly force, Ayers explained to counsel at his deposition:

> Q: [W]as your testimony, essentially, that when you were in the apartment and Mr. Sosa was taking steps towards the officer, or you, it wasn't anything that would have warranted deadly force?
>
> A: Yes.
>
> Q. Is that your opinion today?
>
> A. Yes. ***There's a difference between "warranted" and "justified."*** So warranted could be my opinion as to what I thought at the time, whether or not it was warranted for me to use deadly force; but that's regardless on if it was justified. So what I was saying earlier is that it would have been justified; but at the time, I didn't feel like it was warranted to use deadly force outside the apartment.
>
> Q: ***So your testimony today is that inside the apartment, … it may have been justified to use deadly force, but not warranted?***
>
> A: ***Yes.***

Supplemental Sorensen Decl., **Def. Ex. 33** [Ayers Dep.] at 84:8-85:2.

As to the additional "facts" set forth by the Olivares Plaintiffs, Defendants object that they are compound, irrelevant, misleadingly presented and argumentative. Defendants refer the Court to their reply briefs and responses to Plaintiffs' statements of additional disputed facts. and to



MANNING | KASS

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| their objection to and request to strike the Bryce Declaration, filed concurrently. | | |
| 173. | Abraham believed Max presented a threat of death or serious bodily injury to Abraham, Maria and the other Officers at all times while Max was in Maria's apartment.<br><br>Ex. 27 [Abraham Dep.] 43:9-24; 50:19-51:8; 54:7-56:20; 63:8-14; 63:22-64:5. | Disputed. Officer Abraham so testified, but whether he actually held that belief the entire time Mr. Sosa was in the apartment is a credibility question, and a jury could find that he did not. When asked to explain it, Officer Abraham pointed principally to Mr. Sosa's driving and the pursuits earlier in the night, adding only generally "his behavior at the time"; he did not point to any attempt to stab or strike anyone with the scissors. (Abraham Depo 54:7-56:20.) In the apartment Mr. Sosa made no lunging motions, never struck at or jabbed at anyone, and for stretches stood on the far side of the kitchen counter banging his head, not looking toward anyone, with the scissors pointed down. (Abraham Depo 40:22-25; 51:24-52:2; Aguilar Depo 37:4-15; 41:23-42:2.) Less than a minute before the shooting, Mr. Sosa had his back turned to the officers and then stood behind the kitchen counter with his hands resting on it. (Ayers BWC at 4:38:43-48.) When Officer Aguilar told him not to step toward him, he stepped back. (Aguilar Depo 42:3-16.) Officer Abraham never considered using his Taser. (Abraham Depo 52:21-24.) |

MK MANNING | KASS

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|

**Defendants' Response:** The Sosa Plaintiffs do not cite any evidence to contradict the stated fact. Civ. LR 260(c), Fed. R. Civ. P. 56(e)(2). The remaining additional "facts" do not contradict the stated fact, are misleadingly presented, and/or irrelevant.

The Sosa Plaintiffs' additional facts are further disputed as follows:

Regarding the argumentative statement that "Abraham pointed principally to Mr. Sosa's driving and the pursuits earlier in the night, adding only generally 'his behavior at the time,'" in the testimony cited by Defendants, Abraham explained that Max's demonstrated disregard for his own and others' safety throughout the evening, coupled with his erratic and aggressive conduct inside the apartment, caused Abraham to believe Max was a threat. **Def. Ex. 27** [Abraham Dep.] 43:9-24; 50:19-51:8; 54:7-56:20; 63:8-14; 63:22-64:5 Abraham also stated that he was trained to consider the totality of the circumstances to determine whether the use of deadly force is justified, and that his threat assessment included the fact that Max was possibly drunk driving, tried striking an officer, fled and evaded police, disregarded public safety, and made direct threats to Officer Ayers and Maria's affair partner. Supplemental Sorensen Decl., **Def. Ex. 31** [Abraham Dep.] at 18:11-23; 37:23-38:12.

Regarding the statement that "Sosa never attempted to stab or strike anyone with the scissors," Max's aggressive and erratic conduct toward Maria and the Officers, including but not limited to shouting, cursing, stepping toward them while gripping the scissors, asking Abraham "are you ready for this?" while brandishing the scissors at him, and asking Ayers "are you the motherf*cker I was talking to?" are all demonstrated on the objective video evidence. **Def. Ex. 18** [Ayers BWC] at 4:35:13-4:39:24; **Def. Ex. 19** [Abraham BWC 2] at 4:35:13-4:39:24. The same objective video evidence shows that Max was not compliant with the Officers' instructions and resisted their offers to help him. **Def. Ex. 18** [Ayers BWC] at 4:35:24-4:38:54; **Def. Ex. 19** [Abraham BWC #2] at 4:35:24-4:38:54.

Regarding the statement that "Abraham never considered using his Taser," Abraham testified it would have been inappropriate to use the Taser inside the apartment because Max "was so close in vicinity between me, Officer Ayers, Mrs. Sosa … it would have been too close." **Def. Ex. 27** [Abraham Dep.] at 53:16-25. Abraham also considered that inside the apartment, if Max "overcame the Taser," Abraham did not have any lethal cover. *Id.*, 54:1-6.

Defendants refer the Court to their reply briefs and responses to Plaintiffs' statements of additional disputed facts. and to their objection to and request to strike the Bryce Declaration, filed concurrently.

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| 174. | Crockett believed Max presented a threat of death or serious bodily injury to Crockett, Maria and the other Officers from the moment he arrived on the scene until shots were fired.<br><br>Ex. 28 [Crockett Dep.] 28:23-30:11; 30:12-31:4; 31:25-32:3; 35:17-23; 49:4-14. | Disputed. Officer Crockett so testified, but whether he actually held that belief from the moment he arrived is a credibility question, and a jury could find that he did not. When Officer Crockett arrived, Mr. Sosa had the scissors down at his right side and was not advancing on anyone; he took only small steps within his immediate area. (Crockett Depo 29:18-21; 51:14-19; Crockett BWC at 4:37:07.) For the more than two minutes between Officer Crockett's arrival and the shooting, the officers talked with Mr. Sosa, and Mr. Sosa never lunged at, struck at, or jabbed at anyone. (SUF 109, 140; Abraham Depo 51:24-52:2; Aguilar Depo 37:4-15; *see* Crockett BWC.) Officer Crockett based his belief on the totality of the night's events, including Mr. Sosa's earlier driving, the pursuits, his threats, and his return to the residence armed with kitchen shears; he did not point to any attempt to stab or strike anyone with them. (Crockett Depo 30:12¬31:4.) |

MANNING | KASS

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| **Defendants' Response:** Plaintiffs do not cite any evidence to contradict the stated fact. Civ. LR 260(c), Fed. R. Civ. P. 56(e)(2). The remaining additional "facts" do not contradict the stated fact, are misleadingly presented, and/or irrelevant.<br><br>Plaintiffs' additional facts are further disputed as follows:<br><br>Regarding the argumentative statement that "Abraham pointed principally to Mr. Sosa's driving and the pursuits earlier in the night, adding only generally 'his behavior at the time,'" in the testimony cited by Defendants, Abraham explained that Max's demonstrated disregard for his own and others' safety throughout the evening, coupled with his erratic and aggressive conduct inside the apartment, caused Abraham to believe Max was a threat. **Def. Ex. 27** [Abraham Dep.] 43:9-24; 50:19-51:8; 54:7-56:20; 63:8-14; 63:22-64:5 Abraham also stated that he was trained to consider the totality of the circumstances to determine whether the use of deadly force is justified, and that his threat assessment included the fact that Max was possibly drunk driving, tried striking an officer, fled and evaded police, disregarded public safety, and made direct threats to Officer Ayers and Maria's affair partner. Supplemental Sorensen Decl., **Def. Ex. 31** [Abraham Dep.] at 18:11-23; 37:23-38:12.<br><br>Like Abraham, Crockett testified that he was trained to assess the totality of the circumstances and he considered Max a threat based on his behavior during the entire call for service. **Def. Ex. 28** [Crockett Dep.] at 30:2-31:4.<br><br>Regarding the statement that "Sosa never attempted to stab or strike anyone with the scissors," Max's aggressive and erratic conduct toward Maria and the Officers, including but not limited to shouting, cursing, stepping toward them while gripping the scissors, asking Abraham "are you ready for this?" while brandishing the scissors at him, and asking Ayers "are you the motherf*cker I was talking to?" are all demonstrated on the objective video evidence. **Def. Ex. 18** [Ayers BWC] at 4:35:13-4:39:24; **Def. Ex. 19** [Abraham BWC 2] at 4:35:13-4:39:24. The same objective video evidence shows that Max was not compliant with the Officers' instructions and resisted their offers to help him. **Def. Ex. 18** [Ayers BWC] at 4:35:24-4:38:54; **Def. Ex. 19** [Abraham BWC #2] at 4:35:24-4:38:54.<br><br>Regarding the statement that "Abraham never considered using his Taser," Abraham testified it would have been inappropriate to use the Taser inside the apartment because Max "was so close in vicinity between me, Officer Ayers, Mrs. Sosa … it would have been too close." **Def. Ex. 27** [Abraham Dep.] at 53:16-25. Abraham also considered that inside the apartment, if Max "overcame the Taser," Abraham did not have any lethal cover. *Id.*, 54:1-6.<br><br>Defendants refer the Court to their reply briefs and responses to Plaintiffs' statements of additional disputed facts. and to their objection to and request to strike the Bryce Declaration, filed concurrently. | | |



MANNING | KASS

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| 175. | Aguilar believed Max presented a threat of death or serious bodily injury to Aguilar, Maria and the other Officers from the moment he arrived on the scene until shots were fired.<br><br>Ex. 29 [Aguilar Dep.] 49:21-50:11 | Disputed. The fact lacks support. The cited testimony explains only why Officer Aguilar decided to use the Taser; it states no belief held from the moment he arrived. (Aguilar Depo 49:21-50:11.) Mr. Sosa complied with Officer Aguilar and did not lunge, strike, or jab. (Id. at 42:3-16; 37:4-15.) |
| **Defendants' Response:** It is not clear what the dispute is, as Aguilar's testimony as to why he fired his Taser bears on his perception of Max as a threat. Plaintiffs do not cite any evidence to contradict the stated fact. Civ. LR 260(c), Fed. R. Civ. P. 56(e)(2). The remaining additional "facts" do not contradict the stated fact, are inaccurate, or are misleadingly presented.<br><br>Regarding the statement that Max was compliant and did not lunge, strike or jab, Defendants refer to their response to Fact No. 173. It is also undisputed that Max exited the apartment despite instructions to "Wait" and "Stop." *See* Amended Joint Statement of Undisputed Facts, No. 133.<br><br>Defendants object to Plaintiffs' inclusion of legal argument in a statement of facts. Defendants refer the Court to their reply briefs and responses to Plaintiffs' statements of additional disputed facts. and to their objection to and request to strike the Bryce Declaration, filed concurrently. | | |

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| 176. | The Department's Use of Force Policy states:<br><br>"The use of deadly force is only justified when the officer reasonably believes it is necessary in the following circumstances (Penal Code § 835a):<br><br>(a) An officer may use deadly force to protect themselves or others from what they reasonably believe is an imminent threat of death or serious bodily injury to the officer or another person.<br><br>(b) An officer may use deadly force to apprehend a fleeing person for any felony that threatened or resulted in death or serious bodily injury, if the officer reasonably believes that the person will cause death or serious bodily injury to another unless immediately apprehended."<br><br>Ex. 13 [Policy 300] at 4. | Undisputed. |
| 177. | In the five years preceding Max's death, there were six other incidents of the use of deadly force against an individual in crisis who was armed with an edged weapon.<br><br>Ex. 30 [Alvarez Dep.] 11:6-12:25. | Undisputed. |
| 178. | Only one of the six cases resulted in settlement and none resulted in a verdict.<br><br>Ex. 30 [Alvarez Dep.] 60:22-61:7. | Undisputed. |
| 179. | The use of force was determined to be within policy and justified in each of the six cases.<br><br>Ex. 30 [Alvarez Dep.] 19:8-20; 22:19-23:1; 28:9-14; 32:17-21; 33:8-16; 37:19-25. | Undisputed. |

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| 180. | The District Attorney or Department of Justice reviewed each of the six cases and did not bring charges or make any findings of criminality.<br><br>Ex. 30 [Alvarez Dep.] 19:8-20; 22:19-23:1; 28:9-14; 32:17-22; 33:8-16; 37:19-25. | Undisputed. |
| 181. | In the five years preceding Max's death, the Fresno Police Department has never determined in connection with a use of deadly force that the officers involved did not use sufficient deescalation efforts.<br><br>Ex. 30 [Alvarez Dep.] 44:20-45:1. | Undisputed. |
| 182. | Before Max returned to Maria's apartment a final time, he spoke to his friend Damian, who tried to persuade Max to stop what he was doing.<br><br>Ex. 11 [Incident Report] at FRESNO000436, FRESNO 000441. | Disputed. The only cited evidence is a police report summarizing what Mr. Rodriguez told an investigator, which is hearsay within hearsay. (Defs.' Ex. 11, Dkt. 93-14 (Rodriguez Interview Report) ("Rodriguez Report") at FRESNO 000436, 000441; Fed. R. Evid. 802, 805.) Defendants have not met their burden to show that evidence of this fact can be presented in admissible form. (Fed. R. Civ. P. 56(c)(2).) There is also no evidence that any officer knew of this conversation before the shooting. |
| **Defendants' Response:** Plaintiffs have not offered any evidence to contradict the stated fact, which Defendants note does not purport to establish that any officer knew this fact (nor is it offered for this purpose). Defendants object to Plaintiffs' inclusion of argument and evidentiary objections in the statement of facts, and refer the Court to their Response to the Sosa Plaintiffs' Evidentiary Objections. | | |

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
| --- | --- | --- |
| 183. | Max just said, "Thank you for everything. I love you."<br><br>Ex. 11 [Incident Report] at FRESNO000436, FRESNO 000441. | Disputed. The only cited evidence is a police report summarizing what Mr. Rodriguez told an investigator Mr. Sosa said, which is hearsay within hearsay. (Rodriguez Report at FRESNO 000441; Fed. R. Evid. 802, 805.) Defendants have not met their burden to show that evidence of this fact can be presented in admissible form. (Fed. R. Civ. P. 56(c)(2).) There is also no evidence that any officer knew of this statement before the shooting. |
| **Defendants' Response:** Plaintiffs have not offered any evidence to contradict the stated fact, which Defendants note does not purport to establish that any officer knew this fact (nor is it offered for this purpose). Defendants object to Plaintiffs' inclusion of argument and evidentiary objections in the statement of facts, and refer the Court to their Response to the Sosa Plaintiffs' Evidentiary Objections. | | |

DATED: November 9, 2026

Respectfully submitted,

**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**

By: /s/ Maya Sorensen
Maya Sorensen
Attorneys for Defendants, CITY OF FRESNO, FMR. POLICE CHIEF PACO BALDERRAMA, JOHN AYERS, BRANDON CROCKETT, JONATHAN ABRAHAM, and ANTHONY AGUILAR