Mildred K. O'Linn (State Bar No. 159055)
*missy.olinn@manningkass.com*
Maya Sorensen (State Bar No. 250722)
*Maya.Sorensen@manningkass.com*
**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**
801 S. Figueroa St, 15th Floor
Los Angeles, California 90017-3012
Telephone: (213) 624-6900
Facsimile: (213) 624-6999

Attorneys for Defendants, CITY OF FRESNO, FMR. POLICE CHIEF PACO BALDERRAMA, JOHN AYERS, BRANDON CROCKETT, JONATHAN ABRAHAM, and ANTHONY AGUILAR

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION**

MARTHA ZEPEDA OLIVARES, individually and on behalf of the ESTATE OF MAXIMILIANO SOSA, JR.; MAXIMILIANO SOSA, SR.,

Plaintiffs,

v.

CITY OF FRESNO, UNKNOWN LAW ENFORCEMENT OFFICERS, POLICE CHIEF PACO BALDERRAMA and DOES 1-30,

Defendants.

---

MARIA SOSA, L.S. by and through guardian ad litem MARIA SOSA, M.S. by and through guardian ad litem JENNIFER LOPEZ, individually and as successors-in-interest to Maximilian Sosa,

Plaintiffs,

v.

CITY OF FRESNO and DOES 1-5,

Defendants.

Case No. 1:23-cv-01575-JLT-SAB

District Judge: Jennifer L. Thurston
Magistrate Judge: Stanley A. Boone

**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND IN RESPONSE TO OLIVARES PLAINTIFFS' OPPOSITION**

Judge: Hon. Jennifer L. Thurston
Date: November 20, 2026
Time: 9:00 a.m.
Crtrm.: 4

MANNING | KASS

# TABLE OF CONTENTS

**Page**


I. MARTHA LACKS STANDING TO PURSUE MAX'S SURVIVAL CLAIMS ....1

II. MARTHA'S AND MAX SR.'S DECLARATIONS SHOULD BE STRICKEN AND DO NOT ESTABLISH FINANCIAL DEPENDENCE REGARDLESS ....1

- A. The Olivares Plaintiffs Failed to Comply With Their Discovery Obligations, Triggering Rule 37 ....1
- B. The Court Should Disregard Martha's Declaration as a Sham Affidavit....2
- C. The Declarations Do Not Establish Financial Dependence Regardless....3

III. THE OLIVARES PLAINTIFFS FAIL TO RAISE A TRIABLE ISSUE OF FACT AS TO THEIR FOURTEENTH AMENDMENT CLAIM....4

- A. The Officers' Use of Force Did Not Shock the Conscience ....5
- B. Alternatively, the Officers Are Entitled to Qualified Immunity ....8

IV. SUMMARY JUDGMENT IS WARRANTED ON ABANDONED CLAIMS ....9

V. DAMAGES ....10

VI. CONCLUSION ....10

# ABBREVIATIONS

| Abbreviation | Document |
|---|---|
| AJSF | Amended Joint Statement of Undisputed Facts (filed concurrently) |
| Bryce Depo. | Deposition of Richard Bryce, Exhibit 35 to the Supplemental Declaration of Maya Sorensen in Support of Defendants' Motion for Summary Judgment (filed concurrently) |
| Def. Ex. | Defendants' Exhibits, attached to the Sorensen Declaration (Dkt. No. 93-3) or the Supplemental Sorensen Declaration (filed concurrently) |
| Def. RJN | Defendants' Request for Judicial Notice (filed concurrently) |
| Little Decl. | Declaration of Kevin Little in Opposition to Defendants' Motion for Summary Judgment (Dkt. No. 100-1) |
| Martha Decl. | Declaration of Martha Zepeda Olivares in Opposition to Defendants' Motion for Summary Judgment (Dkt. No. 100-3) |
| Max Sr. Decl. | Declaration of Maximiliano Sosa, Sr. in Opposition to Defendants' Motion for Summary Judgment (Dkt. No. 100-2) |
| Opp. | Olivares Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendants' Motion for Summary Judgment (Dkt. No. 100) |
| Sosa Opp. | Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendants' Motion for Summary Judgment (Dkt. No. 99 [Sosa] and Dkt. No. 100 [Olivares]) |
| R-ADF | Defendants' Response to the Olivares Plaintiffs' Statement of Additional Disputed Facts (filed concurrently) |
| R-SUF | Reply to Plaintiffs' Responses to Defendants' Separate Statement of Undisputed Material Fact (filed concurrently) |

## I. INTRODUCTION

Defendants hereby reply to the Olivares Plaintiffs' opposition to the motion.

## II. MARTHA LACKS STANDING TO PURSUE MAX'S SURVIVAL CLAIMS

On November 4, 2026, the Fresno County Superior Court terminated the estate proceedings (and Martha's powers as administrator). *See* Def. RJN, Exs. A and B. That is, the contingency the parties anticipated has materialized, and Martha no longer has standing to pursue the following causes survival causes of action: First (Excessive Force); Third (Municipal Liability – Failure to Train); Fourth (Municipal Liability – Custom and Practice); Fifth (ADA); Sixth (Negligence); Eighth (Bane Act); Ninth (Unruh Act); and Tenth (Assault and Battery).[1] Martha's assertion that the Sosa Plaintiffs "are positioned to continue the same survival claims" misses the point. Opp. at 12. The Olivares Plaintiffs filed their own complaint and must demonstrate standing for each cause of action it states. *Carney v. Adams*, 592 U.S. 53, 59 (2020) (the plaintiff "bears the burden of establishing standing as of the time he brought this lawsuit and maintaining it thereafter"). Martha no longer represents Max's estate, and summary judgment is warranted on any cause of action in the Olivares' complaint that is brought on Max's behalf, irrespective of whether the Sosa Plaintiffs' complaint survives Defendants' motion.[2]

## III. MARTHA'S AND MAX SR.'S DECLARATIONS SHOULD BE STRICKEN AND DO NOT ESTABLISH FINANCIAL DEPENDENCE REGARDLESS

### A. The Olivares Plaintiffs Failed to Comply With Their Discovery Obligations, Triggering Rule 37

This action has been pending for three years. As the Olivares Plaintiffs acknowledge, their financial relationship with Max was the subject of both written discovery and deposition questioning. Opp. at 17. Inexcusably, the Olivares Plaintiffs waited until Defendants' summary judgment motion had already been filed (and long after discovery had closed) to disclose information about Max's financial contributions to each of them. Their only explanation for the

---

[1] AJSF 157 establishes that no plaintiff has a Fourth Amendment, negligence, battery or Bane Act claim in their individual capacity. *See* Mot. at 22.

[2] If the Court finds that Martha has standing to assert Max's survival claims notwithstanding the termination of the estate proceedings, Defendants incorporate by reference their response to the Sosa Plaintiff's opposition.

belated disclosure is that they did not understand the questions at deposition, and that Defendants did not serve new discovery requests after they amended their complaint. Neither is persuasive.

Defendants propounded interrogatories seeking information about Max's financial support. *See* Ex. E to Little Decl., at 50-60. The Olivares Plaintiffs were under a continuing duty to supplement their responses to those interrogatories "in a timely manner" once it became apparent the responses were materially "incomplete or incorrect" and the corrective information had not otherwise been disclosed. Fed. R. Civ. P. 26(e)(1); *see also Jones v. Travelers Cas. Ins. Co. of Am.*, 304 F.R.D. 677, 678-79 (N.D. Cal. 2015). Martha's and Max Sr.'s declarations were necessary precisely because their discovery responses were incomplete and neither their deposition testimony nor any other discovery they produced filled in the gaps. The Olivares Plaintiffs did not timely supplement or correct their discovery responses; the "automatic" consequence of that failure is that they cannot use their declarations "to supply evidence" in opposition to Defendants' motion. *See Yeti by Molly Ltd v. Deckers Outdoor Corp.,* 259 F.3d 1101, 1106 (9th Cir.2001) (citing Fed. R. Civ. P. 37(c)). The Olivares Plaintiffs offer no justification for their failure to disclose, and their conclusory assertion it was "harmless" because Defendants didn't serve redundant discovery or ask to re-open their depositions when there was no apparent need to do so (Opp. at 17) is circular. The Olivares Plaintiffs have not met their burden to show that Rule 37(c)'s exclusionary sanction does not apply, and the Court should strike their declarations. *Jones*, 304 F.R.D. at 679 (non-compliant party bears the burden to demonstrate an exception to rule mandating exclusion).

**B. The Court Should Disregard Martha's Declaration as a Sham Affidavit**

Even if the Olivares Plaintiffs' discovery misconduct is not enough to warrant striking their declarations, the Court should strike Martha's because "a party cannot create an issue of fact by an affidavit contradicting h[er] prior deposition testimony." *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009). The sham affidavit rule is necessary to maintain the "utility of summary judgment as a procedure for screening out sham issues of fact." *Id.*

Martha asserts that "a declaration that supplies facts the deposition did not reach does not contradict it." Opp. at 17. But her deposition *did* reach this issue: she was asked directly whether Max "ever provided you with financial support" during his lifetime, and she unequivocally answered

***no***. Def. Ex. 24. The information set forth in her declaration does not "elaborat[e]" on this testimony or correct a "minor inconsistenc[y]" – it directly contradicts her response. *Messick v. Horizon Indus.*, 62 F.3d 1227, 1231 (9th Cir.1995). Martha was not asked whether Max supported her "completely" and "throughout his adult life," but claims she thus misunderstood counsel's straightforward question. Martha Decl., ¶ 10; Opp. at 17. Yet neither she nor her attorney asked to have the question clarified, nor did her attorney take the opportunity to elicit corrective testimony before the deposition concluded. In her interrogatory response regarding her entitlement to wrongful death damages, Martha relied on and incorporated her deposition testimony, demonstrating she considered it complete and accurate. *See* Little Decl., Ex. E, at 52. Martha's declaration, which retreats from that testimony, is plainly an attempt to manufacture a dispute to avoid summary judgment and should be stricken. Without it, the Court should find that Martha cannot seek wrongful death damages. And since ***each*** plaintiff must demonstrate standing for ***each*** claim, it's irrelevant that "Max Sr.is [also] a plaintiff on that claim." Opp. at 18; *see Washington Env't Council v. Bellon*, 732 F.3d 1131, 1139 (9th Cir. 2013). If Martha cannot show standing, ***her*** wrongful death cause of action fails.

**C. The Declarations Do Not Establish Financial Dependence Regardless**

Even if the Court considers the declarations, they do not show that either Max Sr. or Martha were financially dependent on Max. Martha avers in vague terms that she and her partner live "humbly and on very little." Martha Decl., ¶ 9. But she has not sworn to any facts from which it can be inferred that she depended on Max's sporadic cash gifts (also imprecisely described, *see id.*, ¶ 7) for life's *necessities*: shelter, food, clothing and medical care. *Don Yoon v. United States*, 2011 WL 6826662, at *9 (S.D. Cal. Dec. 28, 2011) (evidence of financial gifts insufficient to show dependence "without greater context or explanation"). That is what the law requires. Cal. Civ. Proc. Code § 377.60(b); *Frary v. Cnty. of Marin*, 81 F. Supp. 3d 811, 843 (N.D. Cal. 2015). It is not enough that Max's occasional gifts may have allowed Martha to afford things she otherwise could not on her "humble" income, because wrongful death damages for non-heir parents heirs is supposed to compensate those who ***must "find aid elsewhere."*** *Perry v. Medina*, 192 Cal. App. 3d 603, 610 (Ct. App. 1987), *abrogated on other grounds by Saldana v. Globe-Weis Sys. Co.*, 233 Cal. App. 3d 1505 (Ct. App. 1991). *Perry* thus contradicts the argument that ***any*** amount of support is enough

and that plaintiffs are not required to show "whether the parent could have managed without the child." Opp. at 8. And nothing in Martha's declaration shows dependence under *Perry*'s standard. *Est. of Smith v. Holslag*, 2020 WL 7863428, at *12 (S.D. Cal. Dec. 31, 2020) (financial dependence not shown where decedent only sometimes "helped … out [with] groceries and medicine").

Max Sr.'s declaration fares no better. He argues that Max's "services" count as support and that he isn't required to "show that [Max] handed him cash." Opp. at 15-16. But he ***is*** required to do more than make broad and conclusory statements that "Max's work was part of what made his business." *Id.* at 10; *Davidson v. Apple, Inc.*, 2019 WL 917060, at *11 (N.D. Cal. Feb. 25, 2019) (declining to find triable issue of fact based on "uncorroborated, self-serving[,] … conclusory and speculative" declaration). Like Martha's, Max Sr.'s declaration is devoid of facts from which the inference of dependence can be drawn: Max helped out on an unspecified number of "jobs" for an unspecified number of "clients," the (uncorroborated) loss of whom has caused unspecified "failures." Max Sr. Decl., ¶ 5, 6, 7. Yet he has not averred that since Max's death he has been unable to provide for life's necessities or has had to "seek assistance elsewhere." *Perry*, 192 Cal. App. 3d at 610. There is not enough "context or explanation" in Max Sr.'s declaration upon which a reasonable juror could find that Max Sr. was actually dependent on Max for the necessities of life. *Don Yoon*, 2011 WL 6826662, at *9; *Chavez v. Carpenter*, 91 Cal. App. 4th 1433, 1446 (2001).

Martha and Max Sr. also (again) allude to ***future*** plans, which are irrelevant. *Chavez*, 91 Cal. App. 4th at 1446. Martha states she "was counting on Max's help with housing and food once I moved to Fresno," and Max Sr. reiterates that he "expected to rely" on Max to help him in retirement. Martha Decl., ¶ 9; Max Sr. Decl., ¶ 9. These statements of Plaintiffs' unrealized expectations do not suffice to show they were "actually dependent" on Max when he died. *See Foster v. City of Fresno*, 392 F. Supp. 2d 1140, 1146 (E.D. Cal. 2005); *accord Masunaga v. Gapasin*, 57 Wash. App. 624, 629 (1990) (interpreting similar statute to require dependence as a "current condition, not … anticipated future dependence").

## IV. THE OLIVARES PLAINTIFFS FAIL TO RAISE A TRIABLE ISSUE OF FACT AS TO THEIR FOURTEENTH AMENDMENT CLAIM



MANNING | KASS

**A. The Officers' Use of Force Did Not Shock the Conscience**[3]

The undisputed record shows that the Officers made a series of reasonable choices as they were forced to respond to Max's escalating behavior. That they ultimately did not succeed in thwarting Max's suicide-by-cop agenda does not demonstrate that they acted unreasonably, let alone that in a conscience-shocking manner. The Olivares Plaintiffs' contrary position depends heavily on distortions of the factual record and an impermissible analysis by hindsight. They say that the Officers had "the better part of an hour" to deliberate, presuming (against the evidence) that Abraham and Ayers were aware that Max had armed himself and would return to the apartment brandishing kitchen shears at both of them such that they should have developed a "tactical plan" regarding the use of deadly force.[4] Opp. at 20. Yet Max was reportedly unarmed; the Officers considered him a threat due to his reckless driving, disregard for his own and others' safety, and attempt to strike Equihua with his vehicle, not because he was carrying a weapon. R-SUF 61; AJSF 88, 89. The Olivares Plaintiffs have not shown that a rational juror would conclude in the totality of these circumstances that what Ayers and Abraham did during this interval – trying to locate Max, engaging him on the phone and entreating him to bring the night to a peaceful close – manifested their deliberate indifference to his (or plaintiffs') rights. R-SUF 53; AJSF 68, 69.

The Officers' threat assessment necessarily changed when Max appeared at the doorway threatening them with kitchen shears. *See* Deft. Ex. 27 [Abraham Dep.] at 27:3-5 ("Q: When did you first learn that he was armed with scissors? A: When he arrived back at the location, sir."). Here again, the Olivares Plaintiffs second-guess Abraham's decision to open the door. Opp. at 22. But it is a naïve fantasy to assume that if Abraham had kept the door shut, the confrontation would not have escalated or that a closed door would have deterred an "emotionally out of control" man who was determined to die that night; it is also divorced from the actual record and fails to consider the dozens of split-second decisions Abraham had to make. R-SUF 91. Was Max more or less of a threat

---

[3] Defendants incorporate by reference their reply brief in response to the Sosa Plaintiffs' opposition.

[4] The Olivares Plaintiffs' statement is demonstrably incorrect as to Crockett and Aguilar, who did not arrive on the scene until 4:37:06 a.m. and 4:37:35 a.m., respectively. *See* Amended Joint Statement of Undisputed Facts ("Amended JtSF"), filed concurrently, Facts No. 109 and 113.)



MK MANNING | KASS

behind the closed door? What if he baited the police into another high-speed chase, putting both civilians and officers in harm's way? Or kicked the door in? Or threatened the neighbors? Or had the means to commit suicide? There is no answer, because these were not the circumstances that the Officers faced. That is exactly why the law does not permit plaintiffs or the court to judge peace officers' conduct in retrospect. *Wilkinson v. Torres*, 610 F.3d 546, 553 (9th Cir. 2010) (the Constitution "does not require omniscience"). Instead, the Olivares Plaintiffs must show that Abraham's decision to open the door and confront the threat considering the facts known (and unknown) to him at the time demonstrated his indifference to Max's wellbeing. Opp. at 22. It didn't.

The Olivares Plaintiffs' other criticisms are equally backward-looking and untethered to the factual record. They complain that the Officers "had Tasers on their belts." Opp. at 22. The Tasers obviously weren't useful when Max was not in the apartment; once he arrived, Abraham testified that they were too close to Max for a Taser to be effective and that its use would likely have increased the danger to the Officers and Maria. *See* Def. Ex. 27 [Abraham Dep.] at 53:16-25; 54:1-6. Neither Aguilar nor Crockett had a clear line of fire to use their Tasers until Max exited the apartment – at which point Aguilar ***did*** use his Taser, and it was ineffective. *See* R-SUF 136. The Olivares Plaintiffs also say the Officers should have called for a crisis negotiator. Ayers did. R-SUF 170. But he was unable to secure one and relied on his training to deescalate the situation. R-SUF 168, 169, 170; R-ADF 15. None of these decisions is "truly shocking" or demonstrates that the Officers "did not care whether Max lived." Opp. at 22. And given the uncontroverted evidence – including the Officers' ***repeated*** entreaties to Max to let them help, to "talk it out," that "I don't want to have to do this," and "I don't want to shoot you," no rational juror would draw that inference. R-SUF 102. Assuming without conceding that the deliberate-indifference standard applies, the evidence falls short.

However, Defendants maintain that once Max returned to the apartment – armed – all of the Officers faced a rapidly escalating situation with no time to deliberate (and undisputedly, Crockett and Aguilar arrived on scene just two minutes before the fatal shooting), such that the purpose to harm standard applies. AJSF 109, 113. It is not met on the undisputed facts. The Olivares Plaintiffs again misrepresent the record regarding the Officers' and Max's actions in the final four minutes of his life. The assertion that Max's conduct was not threatening because he did not "make a lunging





MK MANNING | KASS

motion" or actually harm anyone (Opp. at 24) is belied by the video evidence which demonstrates Max's aggressive and erratic conduct toward Maria and the Officers, including shouting, cursing, stepping toward them while gripping the scissors, brandishing the scissors at Abraham, and pointing them at Ayers while saying, "are you the motherf*cker I was talking to?" R-SUF 172; *accord Napouk v. Las Vegas Metro. Police Dep't*, 123 F.4th 906, 917 (9th Cir. 2024) (rejecting argument that suspect armed with a machete was not an immediate threat because he did not "wave [his weapon] in a threatening manner"). The video evidence shows that Max was not compliant with the Officers' instructions and resisted their offers to help him, instead taunting them, "Have you shot anybody before? Today's gonna be the day." R-SUF No. 172; *see also* AJSF 108. Ayers did state nothing *warranted* the use of deadly force at this point, but the Olivares Plaintiffs pointedly omit his clarifying testimony, in which he explained that ***"[t]here's a difference between 'warranted' and 'justified'***," and confirmed that "inside the apartment, … it may have been justified to use deadly force, but not warranted." Def. Ex. 33 [Ayers Dep.] at 84:8-85:2.

The "scene" changed when Maria got up to leave the apartment, but it was *Max*, not the Officers, who changed it. *Contra* Opp. at 24. As Max approached the door, the Officers said: "***Wait. Stop.***" AJSF 131, 133. No rational juror could find that Max did not understand that he was to stay put. Instead he walked out the door, advancing toward Ayers, Crockett and Aguilar, who were in the breezeway and who – per Aguilar – did not intend to provide Max "an avenue of escape," given that he had assaulted an officer and made direct threats against Ayers. AJSF; 131, 134; R-SUF 139. Aguilar deployed a less-lethal weapon: a Taser. AJSF 135. But the strike did not immobilize Max. R-SUF 136. Plaintiffs say Max was "moving away from the pain," but there is no foundation for that; the video shows a visibly angry Max charging at Crockett, teeth bared, with the shears gripped in his hand and pointed up and out, and coming within 12 to 18 inches of Crockett. R-SUF 138, 139; AJSF 144; R-ADF 29. That answers the Olivares Plaintiffs' question of why the Officers did not wait for the Taser to "do its work" (Opp. at 25): because Max was in striking distance of an officer, brandishing an edged weapon.[5] AJSF 89; R-SUF 138, 139, 144. Peace officers are not required to

[5] The Olivares Plaintiffs' suggestion that Aguilar did not fire his weapon because he did not perceive an

"wait to be targeted by a suspect before [they] can shoot in self-defense." *Handy v. Jones*, 191 F.4th 1050, 1059 (9th Cir. 2026). And nothing in the record shows any Officer "act[ed] with anything other than the legitimate law enforcement objectives of self-defense and defense of each other." *Napouk*, 123 F.4th at 923 (applying "purpose to harm" standard).

The Olivares Plaintiffs have not come forward with evidence from which a rational juror could find that the Officers were deliberately indifferent to Max's safety or acted with a purpose to harm him. The Court should enter judgment in Defendants' favor on this cause of action.

**B. Alternatively, the Officers Are Entitled to Qualified Immunity**

The Olivares Plaintiffs assert the Officers are not entitled to qualified immunity on their Fourteenth Amendment claim if they "killed [Max] with a purpose to harm." Opp. at 27. In support, they rely exclusively on *A.D. v. California Highway Patrol*, 712 F.3d 446 (9th Cir. 2013). *A.D.* could not be further from the facts of this case, and does not define Martha's and Max Sr.'s rights with the necessary "high degree of specificity" to place the unlawfulness of the Officers' conduct "beyond debate." *Zorn v. Linton*, 607 U.S. 568, 571-72 (2026). In that case, the decedent led officers on a high-speed chase. *A.D.*, 712 F.3d at 450. Officers ultimately cornered her in a cul-de-sac, where one officer, *against his superior officer's instructions*, fired multiple rounds at the decedent through the passenger-side window. *Id.* at 451. No other officer at the scene fired a shot. *Id.* Recalling that the Officers' alleged "purpose to harm" Max is that they "had no plan," opened the door, and did not wait an additional three seconds for the Taser to "do its work," Opp. at 25-26, there is nothing in *A.D.* that would have put the Officers on notice that those failures (assuming they were indeed failures) could be deemed to have rendered their use of deadly force "so unnecessary that it did not serve the legitimate purpose of stopping a dangerous suspect." *Lopez v. City of Mesa*, 2024 WL 3250380 (9th Cir. 2024); *E.V. v. City of Covina*, 2026 WL 2334322 (9th Cir. Aug. 12, 2026).

Even if the Court finds the Olivares Plaintiffs have raised a triable issue of fact that the Officers' conduct shocked the conscience, they have not met their burden to identify analogous

imminent threat, Opp. at 25, is disingenuous. Approximately two seconds lapsed between Aguilar firing his Taser and the other Officers firing their weapons. It is undisputed that he had no time to reload or redeploy his Taser, and the implication that he instead had time to unholster his gun and fire it (let alone that he chose not to do so for any reason) lacks any factual support. *See* AJSF 135, 137, 140.



MANNING | KASS

authority that clearly established the same. *See Hopson v. Alexander*, 71 F.4th 692, 697 (9th Cir. 2023). The Court should grant the motion on this alternative basis.

## V. SUMMARY JUDGMENT IS WARRANTED ON ABANDONED CLAIMS

The Sosa Plaintiffs explicitly abandoned their *Monell* claims; the Olivares Plaintiffs do not. Opp. at 18. Yet aside from a single sentence in their introduction that their *Monell* claims survive "to the extent they rest on the Fourteenth Amendment violation,"[6] the Olivares Plaintiffs have not adduced ***any*** evidence of a custom, policy, practice, or deficiency in training. Opp. at 1; *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (the nonmoving party must "identify with reasonable particularity the evidence that precludes summary judgment"). And beyond the passing reference to these claims in the introduction, they have neither made arguments nor cited authorities in support of *Monell* liability. The Court should find the Olivares Plaintiffs have waived or abandoned their *Monell* claims. *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp*., 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) ("[F]ailure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue.") (collecting cases). At a minimum, the Olivares Plaintiffs have not met their burden to "produce a factual predicate" from which the Court could find they have raised a question for trial. *Zaragoza v. Lynch*, 2025 WL 2780316, at *3 (E.D. Cal. Sept. 30, 2025). And because the only cause of action stated against Chief Balderrama is the Olivares Plaintiffs' abandoned failure-to-train claim, Chief Balderrama should be dismissed from the action whether or not any other claims survive.[7]

The Olivares Plaintiffs' opposition is similarly devoid of any argument, authority or evidence to support their allegation that Defendants violated the Americans with Disabilities Act or

---

[6] They don't. As pled, their *Monell* claims are tied explicitly to the allegations that ***Max's*** rights were violated. *See*, *e.g*., Dkt. No. 85 at 13 ("Defendants City of Fresno and Chief Balderrama were deliberately indifferent to the obvious consequences of their failure to train and supervise officers … [and] [t]his failure caused the deprivation of ***Max's rights*** as alleged above"); *id.* at 16 (referring to Defendants' "deliberate indifference to the foreseeable effects and consequences of their policies, practices, and customs with respect to the ***constitutional rights of Max*** and others similarly situated"). Plaintiffs cannot present a new theory of liability in their summary judgment opposition. *Ortiz v. Lopez*, 688 F.Supp.2d 1072, 1082 (E.D.Cal.2010).

[7] After the Olivares Plaintiffs filed their opposition, Defendants contacted their counsel to propose a stipulation dismissing the *Monell* claims and Chief Balderrama, but received no response.

the Unruh Act.[8] They also do not contradict (and appear to concede) that their separately-stated Bane Act claim is a survival claim only and does not entitle them to wrongful death damages. *See* Mot. at 21; Dkt. No. 85 at 21-22 (stating Bane Act claim "on behalf of all plaintiffs" and seeking damages for funeral and burial expenses); Opp. at 28. Regardless, they have not proffered any legal authority or factual predicate to support this cause of action that is brought on behalf of "all plaintiffs." For the same reasons stated above, the Court should deem the Olivares Plaintiffs' ADA, Unruh Act, and individual-capacity Bane Act claims waived or abandoned, or should find plaintiffs have not carried their summary judgment burden with respect to these claims.

## VI. DAMAGES

The Olivares Plaintiffs concede that they are not entitled to wrongful death damages for Max's Fourth Amendment or Bane Act claims. Opp. at 23; *see also* Mot. at 44-45. The remainder of their briefing on damages either asserts their entitlement to damages that are not in dispute, or joins the Sosa Plaintiffs' briefing, to which Defendants respond separately.

## VII. CONCLUSION

For the reasons set forth above, Defendants request that the Court enter judgment in Defendants favor on all causes of action stated in the Olivares Plaintiffs' Fourth Amended Complaint. Given the termination of the estate proceedings, Martha has no standing to pursue the First, Third, Fourth, Fifth, Sixth, Eighth, Ninth and Tenth causes of action; regardless, the Olivares Plaintiffs abandoned or waived their Monell, ADA, Unruh Act, and individual-capacity Bane Act claims by failing to brief them. They fail to raise a triable issue of fact as to their Second and Seventh causes of action (Fourteenth Amendment and wrongful death) for the reasons stated in this brief and in Defendants' reply to the Sosa Plaintiffs' opposition, which is incorporated by reference. If the Olivares Plaintiffs' two causes of action survive, Defendants request the Court strike their request for punitive damages because the Olivares Plaintiffs have not adduced clear and convincing evidence that the Officers acted maliciously.

///

---

[8] The Sosa Plaintiffs did not state a cause of action under the Unruh Act, so the Olivares Plaintiffs' joinder in the Sosa Plaintiffs' briefing does not salvage this claim. *See generally* Dkt. No. 63.



MK MANNING | KASS

DATED: November 9, 2026

Respectfully submitted,

**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**

By: /s/ Maya Sorensen

Maya Sorensen
Attorneys for Defendants, CITY OF FRESNO, FMR. POLICE CHIEF PACO BALDERRAMA, JOHN AYERS, BRANDON CROCKETT, JONATHAN ABRAHAM, and ANTHONY AGUILAR

MANNING | KASS