Mildred K. O'Linn (State Bar No. 159055)
*missy.olinn@manningkass.com*
Maya Sorensen (State Bar No. 250722)
*Maya.Sorensen@manningkass.com*
**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**
801 S. Figueroa St, 15th Floor
Los Angeles, California 90017-3012
Telephone: (213) 624-6900
Facsimile: (213) 624-6999

Attorneys for Defendants, CITY OF FRESNO, FMR. POLICE CHIEF PACO BALDERRAMA, JOHN AYERS, BRANDON CROCKETT, JONATHAN ABRAHAM, and ANTHONY AGUILAR

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION**

MARTHA ZEPEDA OLIVARES, individually and on behalf of the ESTATE OF MAXIMILIANO SOSA, JR.; MAXIMILIANO SOSA, SR.,

Plaintiffs,

v.

CITY OF FRESNO, UNKNOWN LAW ENFORCEMENT OFFICERS, POLICE CHIEF PACO BALDERRAMA and DOES 1-30,

Defendants.

---

MARIA SOSA, L.S. by and through guardian ad litem MARIA SOSA, M.S. by and through guardian ad litem JENNIFER LOPEZ, individually and as successors-in-interest to Maximilian Sosa,

Plaintiffs,

v.

CITY OF FRESNO and DOES 1-5,

Defendants.

Case No. 1:23-cv-01575-JLT-SAB

District Judge: Jennifer L. Thurston
Magistrate Judge: Stanley A. Boone

**DEFENDANTS' REPLY TO OLIVARES PLAINTIFFS' RESPONSE TO SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF SUMMARY JUDGMENT**

Judge: Hon. Jennifer L. Thurston
Date: November 20, 2026
Time: 9:00 a.m.
Crtrm.: 4

Defendants hereby submit their reply to the Olivares Plaintiffs' Response to Defendants' Statement of Undisputed Material Facts. Dkt. No. 100-4.

**PRELIMINARY STATEMENT**

The Court's scheduling order directed the parties to meet and confer before filing any dispositive motions, with one principle aim of the conferral being to stipulate to the relevant facts to the extent possible. Dkt. No. 56 at 5; *see also* Civ. LR 260(c). In compliance with this directive, and with few exceptions, Defendants provided the Sosa Plaintiffs and the Olivares Plaintiffs with the facts set forth in Defendants' Separate Statement of Undisputed Facts were provided to the Sosa Plaintiffs on October 9, 2026 (a week before Defendants' motion was filed), and offered to meet and confer with Plaintiffs if any facts warranted further discussion. The Olivares Plaintiffs responded on October 15, 2026 (the day before the motion was due), agreeing to only 15 of Defendants' proposed facts and stating they were unable to agree to the others "as proposed."[1] The Olivares Plaintiffs did not propose alternative wording, did not identify their disagreements with Defendants' facts "as proposed," and did not respond to Defendants' offer to meet and confer. Defendants were therefore surprised to learn that the Olivares Plaintiffs now consider ***over 100 additional facts*** "undisputed" (or dispute them solely because of word choice or typographical errors). The Olivares Plaintiffs' failure to stipulate to these facts before Defendants filed the motion served no purpose other than to cause Defendants to expend needless time and effort compiling evidence to support facts that could not reasonably be disputed. That said, where the Sosa Plaintiffs have indicated that a fact is undisputed and the Olivares Plaintiffs have "incorporated" this response (*see* Dkt. No. 100-4), Defendants have added that fact to the Amended Joint Statement of Undisputed Facts, filed concurrently with this Reply.

Defendants object to the Olivares Plaintiffs' use of legal argument and objections in response to Defendants' evidence, which are inappropriate for a statement of facts. *See Falkenstein v. Shipco Transp., Inc.*, No. CV13-08052 BRO (JCX), 2015 WL 11256664, at *3 (C.D. Cal. Aug. 19, 2015) (noting neither "descriptions of the law" nor "legal arguments" are facts, and sustaining objections

---

[1] Collectively, the parties were able to stipulate to just 13 facts. See Joint Statement of Undisputed Facts in Support of Defendants' Motion for Summary Judgment [Dkt. No. 93-2].

to party's statement); *Pro-Com Prods. v. King's Express LA*, *Inc.*, 2020 WL 1652277, at *1 n.1 (C.D. Cal. Feb. 13, 2020) (noting impropriety of evidentiary objections in statement of facts). Defendants also object to the Olivares Plaintiffs' bare notation that several facts are "disputed." It is the Sosa Plaintiffs' responsibility to identify evidence that contradicts Defendants' evidence or the inferences to be drawn therefrom. *See* Civ. LR 260(b) (requiring party opposing summary judgment to "include[e] with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of [the] denial"); Fed. R. Civ. P. 56(e)(2). The Olivares Plaintiffs' statement of undisputed facts does not "show the Court precisely where, if anywhere, it can find evidence to rebut defendants' statements of fact." *O'Neal-Gonzales v. City of Inglewood*, 2008 WL 11637480, at *16 (C.D. Cal. Nov. 25, 2008), *aff'd sub nom. Gonzales v. City of Inglewood*, 472 F. App'x 653 (9th Cir. 2012).

Given the pervasiveness of these issues, defendants maintain that every fact identified in their separate statement should be treated as undisputed. *See Rockwell v. Air & Liquid Sys. Corp*., 2022 WL 2964821 at n.3 (C.D. Cal. June 8, 2022) (treating all facts as undisputed where "the stated disputes: (1) fail to controvert the proffered 'undisputed' facts; (2) dispute the facts on grounds not germane to the … statements; (3) fail to cite evidence in support of the disputing party's position; and/or (4) are legal arguments that do not dispute the underlying facts"). Notwithstanding the foregoing, defendants have endeavored to respond below to each disputed fact, and respectfully refer the Court to their briefing when legal arguments are raised. Defendants' undisputed facts and supporting evidence are reproduced in the left-hand column, plaintiff's response in the right-hand column, and defendants' response, if any, directly underneath the two columns.

///

///

///

///

///

///

///

## DEFENDANTS' REPLY TO OLIVARES PLAINTIFFS' RESPONSE TO STATEMENT OF UNDISPUTED FACTS

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 1. | On November 3, 2023, Maria went out to socialize with her friends after work.<br>Ex. 23 [Maria Dep.] 50:19-23. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 1 and the evidence cited in it. Dkt. 99-1, SUF No. 1. |
| **Defendants' Response:** This does not appear to be a genuine dispute, does not establish a triable issue of fact, and Plaintiffs have not offered contradictory evidence. Civ. LR 260(c); Fed. R. Civ. P. 56(e)(2). To the extent undisputed, Defendants have included this fact in the Amended Joint Statement of Undisputed Facts. | | |
| 2. | Max offered to pick Maria up and drive her home, and Maria agreed.<br>Ex. 10 [Sosa Interview] at 34.<br>Ex. 23 [Maria Dep.] 52:17-23. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 2 and the evidence cited in it. Dkt. 99-1, SUF No. 2. |
| 3. | Max and Maria joked with each other over text while Max waited outside the bar.<br>Ex. 12 [Screenshots]<br>Ex. 23 [Maria Dep.] 72:13-74:12. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 3 and the evidence cited in it. Dkt. 99-1, SUF No. 3. |
| 4. | Max also seemed "normal" earlier in the week, according to his father.<br>Ex. 25 [Max Sr. Dep.] 31:10-32:3. | Undisputed that Max Sr. so testified. He spent about four hours with Max at the shop on Thursday, November 2, 2023, and described him as "[e]verything norm[al]," with no signs of mental distress or sadness. Ex. 25 (Max Sr. Dep.) 31:5–32:3. |
| 5. | Max and Maria left the bar together in his Tesla.<br>Ex. 23 [Maria Dep.] 53:18-54:12. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 5 and the evidence cited in it. Dkt. 99-1, SUF No. 5. |
| **Defendants' Response:** This does not appear to be a genuine dispute, does not establish a triable issue of fact, and Plaintiffs have not offered contradictory evidence. Civ. LR 260(c); Fed. R. Civ. P. 56(e)(2). | | |
| 6. | At around **3:00 a.m.**, Max woke Maria up.<br>Ex. 10 [Sosa Interview] at 42, 43<br>Ex. 23 [Maria Dep.] 49:14-50:15; 98:6-99:1 | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 6 and the evidence cited in it. Dkt. 99-1, SUF No. 6. |

<table>
<tr><th><u>NO.</u></th><th><u>UNDISPUTED FACTS AND SUPPORTING EVIDENCE</u></th><th><u>PLAINTIFFS’ RESPONSE AND SUPPORTING EVIDENCE</u></th></tr>
<tr><td colspan="3">Defendants’ Response: This does not appear to be a genuine dispute, does not establish a triable issue of fact, and Plaintiffs have not offered contradictory evidence. Civ. LR 260(c); Fed. R. Civ. P. 56(e)(2). Maria testified that the text message sent to her affair partner at 2:36 a.m. was sent before she woke up, and she called 911 at 3:08 a.m. To the extent undisputed, Defendants have included this fact in the Amended Joint Statement of Undisputed Facts.</td></tr>
<tr><td>7.</td><td>Max called Maria a “whore” and a “liar.”<br><br>Ex. 10 [Sosa Interview] at 37, 44.<br><br>Ex. 23 [Maria Dep.] 49:14-50:15; 98:6-99:1</td><td>Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs’ response to SUF No. 7 and the evidence cited in it. Dkt. 99-1, SUF No. 7.</td></tr>
<tr><td colspan="3">Defendants’ Response: It is not clear what the dispute is, if any. This does not appear to be a genuine dispute, does not establish a triable issue of fact, and Plaintiffs have not offered contradictory evidence. Civ. LR 260(c); Fed. R. Civ. P. 56(e)(2). Maria confirmed that “everything I said [to the investigators] was from what I remembered that night.” Supplemental Declaration of Maya Sorensen in Support of Motion for Summary Judgment, Ex. 34 [Maria Dep.] at 102:9-21. To the extent undisputed, Defendants have included this fact in the Amended Joint Statement of Undisputed Facts.</td></tr>
<tr><td>8.</td><td>Maria could tell Max had been drinking.<br><br>Ex. 10 [Sosa Interview] at 34.<br><br>Ex. 23 [Maria Dep.] 90:8-16.</td><td>Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs’ response to SUF No. 8 and the evidence cited in it. Dkt. 99-1, SUF No. 8.</td></tr>
<tr><td colspan="3">Defendants’ Response: This does not appear to be a genuine dispute, does not establish a triable issue of fact, and Plaintiffs have not offered contradictory evidence. Civ. LR 260(c); Fed. R. Civ. P. 56(e)(2). To the extent undisputed, Defendants have included this fact in the Amended Joint Statement of Undisputed Facts. Maria reported to the dispatcher that Max was drunk, and it is undisputed that the postmortem toxicology report showed his blood alcohol level was 0.09. See Def. Ex. 1 [911 Tr.] at 2; Amended Joint Statement of Facts, No. 150.</td></tr>
<tr><td>9.</td><td>Max had gone through Maria’s phone and found text exchanges between Maria and her affair partner that showed they were still in an intimate relationship.<br><br>Ex. 10 [Sosa Interview] at 44.<br><br>Ex. 12 [Screenshots]<br><br>Ex. 23 [Maria Dep.] 49:14-50:15; 54:23-55:24; 72:13-74:12; 77:4-25; 97:4-18.</td><td>Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs’ response to SUF No. 9 and the evidence cited in it. Dkt. 99-1, SUF No. 9.</td></tr>
</table>

<table>
<tr><th><u>NO.</u></th><th><u>UNDISPUTED FACTS AND SUPPORTING EVIDENCE</u></th><th><u>PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE</u></th></tr>
<tr><td colspan="3">Defendants' Response: Plaintiffs have not offered contradictory evidence, suggesting the dispute is not genuine, nor does this dispute establish a triable issue of fact. Civ. LR 260(c); Fed. R. Civ. P. 56(e)(2). The stated fact does not purport to establish any officer's knowledge; nevertheless, well before the shooting: Maria reported that she was "talking to" another man and that Max was upset because he found out about it. Def. Ex. 1 [911 Tr.] at 2. Dispatch broadcast that "MALE UPSET BECAUSE RP [reporting party] SEEING SOME1 ELSE .. THEY'VE BEEN SEPARATED SINCE FEB" Def. Ex. 3 [CAD Report] at FRESNO 000261. Max also told Abraham, "I wish I had a f*ckin' daughter, but this f*ckin' bitch cheated on me with some f*ckin' n*gga from school." Def. Ex. 18 [Ayers BWC] at 4:35:35-4:35:47.<br><br>To the extent undisputed, Defendants have included this fact in the Amended Joint Statement of Undisputed Facts.<br><br>Defendants object to Plaintiffs' legal argument and note that this fact as stated does not purport to establish any officer's knowledge of this fact.<br><br>Regarding the identity of the nonparty with whom Maria exchanged text messages, Maria admitted to having an intimate relationship with another man before she and Max separated, and the term "affair partner" is an accurate and objective description of this individual's role in the incident. Declaration of Cooper Alison-Mayne, Dkt. No. 99-3, at 8.[2] Defendants do not believe it is necessary to identify this individual by name in public filings.</td></tr>
<tr><td>10.</td><td>Max texted his friends that he "found out" Maria was "still f*cking" her affair partner.<br><br>Ex. 7 [Incident Report] at FRESNO 000203.<br><br>Ex. 11 [Rodriguez Interview] at FRESNO 000437, 00439-440.<br><br>Ex. 23 [Maria Dep.] 49:14-50:15; 54:13-15; 55:20-56:1.</td><td>Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 10 and the evidence cited in it. Dkt. 99-1, SUF No. 10.</td></tr>
<tr><td colspan="3">Defendants' Response: See Response to Fact No. 9.</td></tr>
<tr><td>11.</td><td>Max also texted Maria's affair partner from her phone, asking him to come to Maria's apartment to "f*ck" her and that "the door is unlocked."<br><br>Ex. 10 [Sosa Interview] at 45.<br><br>Ex. 12 [Screenshots]<br><br>Ex. 23 [Maria Dep.] 99:12-100:4.</td><td>Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 11 and the evidence cited in it. Dkt. 99-1, SUF No. 11.</td></tr>
</table>

[2] Citations to the Mayne Declaration are to the CM/ECF pagination.

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| **Defendants' Response:** The screenshots are included in the record and the Court can see for itself the contents of the messages; that the message reads "my door is unlocked" and not "the door is unlocked" is not material. It is also unclear why the Plaintiffs dispute this fact but not Facts No. 10 and 12, but as they correctly note, Maria testified she did not recall sending the messages to her affair partner and that they were sent before she woke up. Ex. 23 [Maria Dep.] 99:12-100:4. Plaintiffs have not offered evidence to establish that anyone else was in Maria's home or had access to her phone at 2:36 a.m. Defendants object to Plaintiffs' legal argument and note that this fact as stated does not purport to establish any officer's knowledge of this fact. The term "affair partner" is accurate and objective and Defendants see no need to identify this individual by name in these proceedings. | | |
| 12. | Max also sent himself Maria's affair partner's contact information from her phone.<br>Ex. 10 [Sosa Interview] at 45.<br>Ex. 12 [Screenshots] | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 12 and the evidence cited in it. Dkt. 99-1, SUF No. 12. |
| **Defendants' Response:** *See* Response to Fact No. 9. | | |
| 13. | Max and Maria argued.<br>Ex. 23 [Maria Dep.] 50:1-2; 54:13-15; 59:23-60:4; 114:16-21. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 13 and the evidence cited in it. Dkt. 99-1, SUF No. 13. |
| **Defendants' Response:** This does not appear to be a genuine dispute, does not establish a triable issue of fact, and Plaintiffs have not offered contradictory evidence. Civ. LR 260(c); Fed. R. Civ. P. 56(e)(2). | | |
| 14. | Max was "out of control" and acting in a way Maria had never seen before.<br>Ex. 23 [Maria Dep.] 50:1-2; 54:13-15; 59:23-60:4; 114:16-21. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 14 and the evidence cited in it. Dkt. 99-1, SUF No. 14. |
| **Defendants' Response:** It is not clear what the dispute is, if any. Defendants do not dispute that Maria offered this additional testimony at her deposition in 2025, but it is not relevant to Max's behavior on the night of the incident. | | |
| 15. | Max was "highly emotional" and Maria tried to calm him down.<br>Ex. 23 [Maria Dep.] 49:14-50:15; 56:6-17; 57:3-5; 58:19-23. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 15 and the evidence cited in it. Dkt. 99-1, SUF No. 15. |

MK MANNING | KASS

<table>
<tr><th><u>NO.</u></th><th><u>UNDISPUTED FACTS AND SUPPORTING EVIDENCE</u></th><th><u>PLAINTIFFS’ RESPONSE AND SUPPORTING EVIDENCE</u></th></tr>
<tr><td>16.</td><td>Max told Maria he was going to find the affair partner and kill him and kill himself, and left the apartment.<br><br>Ex. 10 [Sosa Interview] at 46, 48.<br><br>Ex. 23 [Maria Dep.] 49:14-50:15; 56:12-16; 57:3-5; 58:19-23.</td><td>Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs’ response to SUF No. 16 and the evidence cited in it. Dkt. 99-1, SUF No. 16.</td></tr>
<tr><td colspan="3">Defendants’ Response: See Response to Fact No. 9.</td></tr>
<tr><td>17.</td><td>Maria told the dispatcher that Max had taken a bottle of tequila and had gone to confront her affair partner.<br><br>Ex. 1 [911 Tr.] at 2-3.<br><br>Ex. 3 [CAD Report] at FRESNO 000242.<br><br>Ex. 14 [911 Audio].<br><br>Ex. 23 [Maria Dep.] 63:1-5.</td><td>Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs’ response to SUF No. 17 and the evidence cited in it. Dkt. 99-1, SUF No. 17.</td></tr>
<tr><td colspan="3">Defendants’ Response: See Response to Fact No. 9.</td></tr>
<tr><td>18.</td><td>Maria told the dispatcher she was scared Max was going to kill himself and her affair partner.<br><br>Ex. 1 [911 Tr.] at 1-2.<br><br>Ex. 14 [911 Audio].</td><td>Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs’ response to SUF No. 18 and the evidence cited in it. Dkt. 99-1, SUF No. 18.</td></tr>
<tr><td colspan="3">Defendants’ Response: This does not appear to be a genuine dispute, does not establish a triable issue of fact, and Plaintiffs have not offered contradictory evidence. Civ. LR 260(c); Fed. R. Civ. P. 56(e)(2). In the cited evidence, Maria states: “Hurry, I need you to please come to my apartment … My ex is … trying to kill himself. *** [H]e’s just acting crazy. Please hurry.”</td></tr>
<tr><td>19.</td><td>Maria provided the dispatcher a description of Max, what he was wearing, and the car he was driving.<br><br>Ex. 1 [911 Tr.] at 1-2.<br><br>Ex. 14 [911 Audio].</td><td>Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs’ response to SUF No. 19 and the evidence cited in it. Dkt. 99-1, SUF No. 19.</td></tr>
<tr><td>20.</td><td>At 3:10 a.m., Fresno Police Department created a zero-priority call for a suicidal male.<br><br>Ex. 3 [CAD Report] at FRESNO 000241, 000260.</td><td>Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs’ response to SUF No. 20 and the evidence cited in it. Dkt. 99-1, SUF No. 20.</td></tr>
</table>

MK MANNING | KASS

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| **Defendants' Response:** As to the additional information, undisputed. It is also undisputed that when he confronted the Officers, Max was armed with kitchen shears, which was the first time Abraham and Ayers knew he was armed. *See* Amended Joint Statement of Facts, Nos. 88, 89 and 112; Fact No. 110, infra (disputed in part). Crockett and Aguilar knew Max was armed when they arrived on the scene, as he was already brandishing the shears at Abraham and Ayers. *See id.* | | |
| 21. | Maria told the officers that Max had left, saying he was going to kill her affair partner or himself.<br>Ex. 10 [Sosa Interview] at 65.<br>Ex. 23 [Maria Dep.] 65:19-66:7 | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 21 and the evidence cited in it. Dkt. 99-1, SUF No. 21. |
| 22. | Maria gave the officers Max's and her affair partner's addresses.<br>Ex. 7 [Incident Report] at FRESNO 000186-187, FRESNO 000196-197. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 22 and the evidence cited in it. Dkt. 99-1, SUF No. 22. |
| **Defendants' Response:** Undisputed that Maria provided a description of Max, including what he was wearing and the vehicle he was driving. Maria also provided to dispatch the name of the apartment complex where her affair partner lived. **Def. Ex. 1** [911 Tr.] at 3; **Def. Ex. 3** [CAD Report] at FRESNO 000241. | | |
| 23. | Ayers, Abraham and Equihua told Maria they would search the area for him and let her know if they found him. Ex. 7 [Incident Report] at FRESNO 000186-187, FRESNO 000196-197. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 23 and the evidence cited in it. Dkt. 99-1, SUF No. 23. |
| **Defendants' Response:** Undisputed that this evidence does not support the fact, but Plaintiffs do not offer contradictory information. Defendants object to the inclusion of evidentiary objections in a statement of facts and refer the Court to their separately-filed response to the Sosa Plaintiffs' evidentiary objections. | | |
| 24. | At **3:30 a.m.** Max returned to the Dante Apartment Complex.<br>Ex. 17 [Abraham BWC #1] at 3:30:58. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 24 and the evidence cited in it. Dkt. 99-1, SUF No. 24. |
| **Defendants' Response:** This dispute is neither genuine nor material. To avoid further dispute, Defendants will amend this fact to state that Max returned to the complex at 3:30:58 a.m. *See* Amended Joint Statement of Undisputed Facts, No. 24. | | |
| 25. | Max attempted to strike Equihua with his vehicle before driving away again.<br>Ex. 17 [Abraham BWC #1] at 3:30:59. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 25 and the evidence cited in it. Dkt. 99-1, SUF No. 25. |

<table>
<tr><th><u>NO.</u></th><th><u>UNDISPUTED FACTS AND SUPPORTING EVIDENCE</u></th><th><u>PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE</u></th></tr>
<tr><td colspan="3">Defendants' Response: The video demonstrates that Max swerved toward Equihua, and is consistent with both Equihua's report that Max tried to strike him and Max's statement to Ayers that "I tried to run over one of your cops." See Amended Joint Statement of Undisputed Facts, No. 30; Facts No. 61. infra.</td></tr>
<tr><td>26.</td><td>Before driving away, Max shouted, "You want to play games?"<br><br>Ex. 17 [Abraham BWC #1] at 3:31:08.</td><td>Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 26 and the evidence cited in it. Dkt. 99-1, SUF No. 26.</td></tr>
<tr><td colspan="3">Defendants' Response: This does not appear to be a genuine dispute, does not establish a triable issue of fact, and Plaintiffs have not offered contradictory evidence that Max was not the speaker. Civ. LR 260(c); Fed. R. Civ. P. 56(e)(2).</td></tr>
<tr><td>27.</td><td>Equihua commanded Max to "Stop! Stop the vehicle!"<br><br>Ex. 17 [Abraham BWC #1] at 3:31:13.</td><td>Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 27 and the evidence cited in it. Dkt. 99-1, SUF No. 27.</td></tr>
<tr><td colspan="3">Defendants' Response: The video evidence documents what Equihua said. Defendants object to Plaintiffs' legal argument and note that this fact as stated does not purport to establish that Max could hear Equihua.</td></tr>
<tr><td>28.</td><td>Abraham commanded Max to "Stop your car!"<br><br>Ex. 17 [Abraham BWC #1] at 3:31:14.</td><td>Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 28 and the evidence cited in it. Dkt. 99-1, SUF No. 28.</td></tr>
<tr><td colspan="3">Defendants' Response: The video evidence documents what Abraham said. Defendants object to Plaintiffs' legal argument and note that this fact as stated does not purport to establish that Max could hear Abraham.</td></tr>
<tr><td>29.</td><td>Max drove away at high speed.<br><br>Ex. 17 [Abraham BWC #1] at 3:31:14.</td><td>Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 29 and the evidence cited in it. Dkt. 99-1, SUF No. 29.</td></tr>
<tr><td colspan="3">Defendants' Response: The video evidence documents the sound of the engine revving and tires squealing as Max drove away.</td></tr>
<tr><td>30.</td><td>At 3:32 a.m. Equihua broadcast, "He tried to run me over."<br><br>Ex. 3 [CAD Report] at FRESNO 000242, 000262.</td><td>Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 30 and the evidence cited in it. Dkt. 99-1, SUF No. 30.</td></tr>
</table>

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 31. | At **3:33 a.m.** dispatch broadcast "Confirmed 245 [assault with a deadly weapon] on an officer."<br>Ex. 3 [CAD Report] at FRESNO 000243, 000264 | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 31 and the evidence cited in it. Dkt. 99-1, SUF No. 31. |
| **Defendants' Response:** Undisputed that this happened at 3:34:44, not 3:33. | | |
| 32. | Between **3:33 a.m.** and **3:58 a.m.**, Max led officer on several high-speed chases.<br>Ex. 29 [Aguilar Dep.] 28:13-18. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 32 and the evidence cited in it. Dkt. 99-1, SUF No. 32. |
| **Defendants' Response:** Plaintiffs do not offer contradictory evidence, and Defendants' statement is further confirmed by the evidence cited at Facts No. 33, 34, 173 and 174, *infra*. | | |
| 33. | During the vehicle pursuits, Max drove recklessly: speeding, driving opposite traffic, ignoring traffic signs, and performing evasive maneuvers.<br>Ex. 3 [CAD Report] at FRESNO 000243, 000245, 000263, 000266, 000269 | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 33 and the evidence cited in it. Dkt. 99-1, SUF No. 33. |
| **Defendants' Response:** Defendants object to Plaintiffs' inclusion of legal argument and evidentiary objections in the statement of facts. Defendants note the Plaintiffs have also cited this evidence when they believe it is favorable to them. *See* Fact No. 20. Defendants refer the Court to their separately-filed Response to Sosa Plaintiffs' Evidentiary Objections. | | |
| 34. | Officers lost sight of Max's Tesla several times.<br>Ex. 3 [CAD Report] at FRESNO 000263, 000269 | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 34 and the evidence cited in it. Dkt. 99-1, SUF No. 34. |
| **Defendants' Response:** *See* Response to Fact No. 33. | | |
| 35. | While the vehicle pursuits were in progress, Maria and Max spoke on the phone.<br>Ex. 10 [Sosa Interview] at 65-66. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 35 and the evidence cited in it. Dkt. 99-1, SUF No. 35. |
| 36. | Max told Maria that he was going to commit suicide by cop.<br>Ex. 23 [Maria Dep.] 103:3-13 | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 36 and the evidence cited in it. Dkt. 99-1, SUF No. 36. |

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| **Defendants' Response:** This does not appear to be a genuine dispute, does not establish a triable issue of fact, and Plaintiffs have not offered contradictory evidence that Max was not the speaker. Civ. LR 260(c); Fed. R. Civ. P. 56(e)(2). Maria testified that "there was no question in [her] mind" after speaking to Max that evening that he intended to commit suicide by cop. **Def. Ex. 23** [Maria Dep.] 103:3-13. Maria reported to the 911 dispatcher that "I think he wants to do something where he makes the police shoot him." **Def. Ex. 2** [911 Tr.] at 2. And Maria's statements are consistent with Max's statements to Ayers and Abraham that he wanted them to shoot him. **Def. Ex. 18** [Ayers BWC] at 4:35:24-4:38:54; **Def. Ex. 19** [Abraham BWC #2] at 4:35:24-4:38:54. | | |
| 37. | Max told Maria that he was going to "take a cop" or "take a pig" with him.<br>Ex. 23 [Maria Dep.] 101:16-102:21 | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 37 and the evidence cited in it. Dkt. 99-1, SUF No. 37. |
| **Defendants' Response:** This does not appear to be a genuine dispute, does not establish a triable issue of fact, and Plaintiffs have not offered contradictory evidence that Max was not the speaker. Civ. LR 260(c); Fed. R. Civ. P. 56(e)(2). Maria confirmed that she told investigators that Max said "I'm gonna take a cop with me" or "take a pig with me" and that "everything I said [to the investigators] was from what I remembered that night." Supplemental Sorensen Decl., **Def. Ex. 34** [Maria Dep]. 102:9-21. Maria's recollection is consistent with Max's statements to Ayers that "I'm gonna take down not just myself, but you with me." *See* Amended Joint Statement of Undisputed Facts, No. 74. | | |
| 38. | At **3:42 a.m.** Ayers broadcast that he was going back to the Dante Apartment Complex in case Max returned there.<br>Ex. 3 [CAD Report] at FRESNO 000244, 000265. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 38 and the evidence cited in it. Dkt. 99-1, SUF No. 38. |
| 39. | At **3:44 a.m.** Maria called 9-1-1 again to report that Max made comments about wanting to die.<br>Ex. 15 [2nd 911 Audio].<br>Ex. 23 [Maria Dep.] at 67:10-22. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 39 and the evidence cited in it. Dkt. 99-1, SUF No. 39. |
| **Defendants' Response:** As to the additional information, undisputed. It is also undisputed that when he confronted the Officers, Max was armed with kitchen shears, which was the first time Abraham and Ayers knew he was armed. *See* Amended Joint Statement of Undisputed Facts, Nos. 88, 89, and 112; Fact No. 110, *infra* (disputed in part). Crockett and Aguilar knew Max was armed when they arrived on the scene, as he was already brandishing them at Abraham and Ayers. *See id.* | | |

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 40. | Maria told the dispatcher she was worried Max would make it look like he was armed so the police would shoot him.<br>Ex. 2 [Second 911 Tr.] at 1-2.<br>Ex. 15 [Second 911 Audio].<br>Ex. 23 [Maria Dep.] 68:3-22. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 40 and the evidence cited in it. Dkt. 99-1, SUF No. 40. |
| **Defendants' Response:** *See* Response to Fact No. 39. | | |
| 41. | Maria told the dispatcher Max had evaded the police and she did not know where he was.<br>Ex. 2 [Second 911 Tr.] at 2.<br>Ex. 15 [Second 911 Audio]. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 41 and the evidence cited in it. Dkt. 99-1, SUF No. 41. |

MANNING | KASS

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 42. | At **3:46 a.m.**, dispatch broadcast Max's intention to commit suicide by cop.<br><br>Ex. 3 [CAD Report] at FRESNO 000244, 000267. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 42 and the evidence cited in it. Dkt. 99-1, SUF No. 42. The Olivares Plaintiffs also rely on the following additional facts, which are also set out in ADF Nos. 9–10 (Statement of Additional Disputed Facts). Dispatch broadcast at 3:46 a.m. that Max intended to commit suicide by cop. Ayers returned to the apartment at 3:55 a.m. and Abraham arrived at 4:12 a.m., and the Officers heard a door at 4:35 a.m., so that Ayers had been at the apartment roughly forty minutes and Abraham more than twenty when Max returned. Defs.' SUF Nos. 42, 43, 65, 86 (Dkt. 93-1) (undisputed in Dkt. 99-1). Ayers and Abraham regarded Max's return as likely. Ayers described "a decent probability" and agreed that he believed Max was "very likely" to come back and intent on suicide by cop; Abraham agreed that there was a high probability Max would come to the apartment and that Max was expressing an intent to force a confrontation with officers and to commit suicide by cop. Ex. 26 (Ayers Dep.) 36:21-25; Mayne Decl. Ex. F (Ayers Dep.) 47:13-20; Ex. 27 (Abraham Dep.) 35:16-20, 50:7-14; Sosa SAMF Nos. 8–9 (Dkt. 99-2). |

**Defendants' Response:** The Olivares Plaintiffs' incorporation of the Sosa Plaintiffs' response renders this fact **undisputed**. As to the additional information, Defendants object that it is compound, irrelevant and argumentative. Defendants refer the Court to their reply brief in response to the Olivares Plaintiffs' opposition, response to the Olivares Plaintiffs' statement of additional disputed facts, and objection to and motion to strike the Bryce Declaration, filed concurrently.

| **NO.** | **UNDISPUTED FACTS AND SUPPORTING EVIDENCE** | **PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE** |
|---|---|---|
| 43. | At **3:55 a.m.** Ayers returned back to Maria's apartment.<br><br>Ex. 18 [Ayers BWC] at 3:55:29. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 43 and the evidence cited in it. Dkt. 99-1, SUF No. 43. The Olivares Plaintiffs also rely on the following additional facts, which are also set out in ADF Nos. 9–10 (Statement of Additional Disputed Facts). Dispatch broadcast at 3:46 a.m. that Max intended to commit suicide by cop. Ayers returned to the apartment at 3:55 a.m. and Abraham arrived at 4:12 a.m., and the Officers heard a door at 4:35 a.m., so that Ayers had been at the apartment roughly forty minutes and Abraham more than twenty when Max returned. Defs.' SUF Nos. 42, 43, 65, 86 (Dkt. 93-1) (undisputed in Dkt. 99-1). Ayers and Abraham regarded Max's return as likely. Ayers described "a decent probability" and agreed that he believed Max was "very likely" to come back and intent on suicide by cop; Abraham agreed that there was a high probability Max would come to the apartment and that Max was expressing an intent to force a confrontation with officers and to commit suicide by cop. Ex. 26 (Ayers Dep.) 36:21-25; Mayne Decl. Ex. F (Ayers Dep.) 47:13-20; Ex. 27 (Abraham Dep.) 35:16-20, 50:7-14; Sosa SAMF Nos. 8–9 (Dkt. 99-2). |
| **Defendants' Response:** *See* Response to Fact No. 42. | | |
| 44. | When Ayers returned, Maria was on the phone with Max and handed the phone to Ayers.<br><br>Ex. 18 [Ayers BWC] at 3:55:58-3:56:08. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 44 and the evidence cited in it. Dkt. 99-1, SUF No. 44. |
| 45. | Max cursed at Ayers and hung up.<br><br>Ex. 18 [Ayers BWC] at 3:56:08-3:56:23. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 45 and the evidence cited in it. Dkt. 99-1, SUF No. 45. |

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 46. | At **3:57 a.m.** Maria called Max.<br>Ex. 18 [Ayers BWC] at 3:57:17-3:57:43. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 46 and the evidence cited in it. Dkt. 99-1, SUF No. 46. |
| 47. | Ayers tried to talk to Max again but Max hung up.<br>Ex. 18 [Ayers BWC] at 3:57:17-3:57:43 | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 47 and the evidence cited in it. Dkt. 99-1, SUF No. 47. |
| 48. | Ayers told Maria that her calling Max was not helping but was making Max angry, and told her not to call him again.<br>Ex. 18 [Ayers BWC] at 3:57:40-3:57:50. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 48 and the evidence cited in it. Dkt. 99-1, SUF No. 48. |
| **Defendants' Response:** It is not clear what the dispute is and Defendants note that the fact as written does not purport to quote Ayers. To avoid further dispute, Defendants will amend this fact to include Ayers' verbatim statement. *See* Amended Joint Statement of Undisputed Facts, No. 48. | | |
| 49. | After officers lost track of Max for a third time, FPD Sergeant Oliver directed units to cease pursuit.<br>Ex. 3 [CAD Report] at FRESNO 000246, 000269.<br>Ex. 29 [Aguilar Dep.] 28:24-29: | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 49 and the evidence cited in it. Dkt. 99-1, SUF No. 49. |
| 50. | At **3:59 a.m.** Maria spoke to Max's close friend, Damian.<br>Ex. 18 [Ayers BWC] at 3:59:30-4:00:59. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 50 and the evidence cited in it. Dkt. 99-1, SUF No. 50. |
| 51. | At **4:00 a.m.** Maria told Ayers Max has never done anything like this, has never been arrested or placed on an involuntary psychiatric hold.<br>Ex. 18 [Ayers BWC] at 4:00:59-4:01:10. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 51 and the evidence cited in it. Dkt. 99-1, SUF No. 51. |
| 52. | At **4:03 a.m.** Ayers called Max.<br>Ex. 18 [Ayers BWC] at 4:03:09-4:10:47. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 52 and the evidence cited in it. Dkt. 99-1, SUF No. 52. |

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 53. | Ayers told Max he wanted to help him and wanted a "peaceful resolution" to the evening.<br><br>Ex. 18 [Ayers BWC] at 4:03:09-4:10:47. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 53 and the evidence cited in it. Dkt. 99-1, SUF No. 53. |
| **Defendants' Response:** The video evidence documents what was said and that Ayers' and Max's call lasted approximately 7 and a half minutes. Defendants' citation to a seven-minute excerpt of a video that spans 48 minutes is reasonable. Plaintiffs do not offer evidence to contradict this fact, suggesting that the dispute is not genuine. Civ. LR 260(c); Fed. R. Civ. P. 56 (e)(2). Defendants further object to the Plaintiffs' inclusion of legal argument in a statement of facts, and refer the Court to their response to the Sosa Plaintiffs' evidentiary objections, filed separately. | | |
| 54. | Max told Ayers there was no peaceful resolution.<br><br>Ex. 18 [Ayers BWC] at 4:03:09-4:10:47. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 54 and the evidence cited in it. Dkt. 99-1, SUF No. 54. |
| **Defendants' Response:** See Response to Fact No. 53. | | |
| 55. | Max said, "Tonight I die or he [the affair partner] dies or one of your cops dies."<br><br>Ex. 18 [Ayers BWC] at 4:03:09-4:10:47. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 55 and the evidence cited in it. Dkt. 99-1, SUF No. 55. |
| **Defendants' Response:** See Response to Fact No. 53. | | |
| 56. | Max said, "There is no helping me."<br><br>Ex. 18 [Ayers BWC] at 4:03:09-4:10:47. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 56 and the evidence cited in it. Dkt. 99-1, SUF No. 56. |
| **Defendants' Response:** See Response to Fact No. 53. | | |
| 57. | Max said, "You're gonna have to f*cking kill me."<br><br>Ex. 18 [Ayers BWC] at 4:03:09-4:10:47. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 57 and the evidence cited in it. Dkt. 99-1, SUF No. 57. |
| **Defendants' Response:** See Response to Fact No. 53. | | |

MANNING | KASS

MANNING | KASS

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 58. | Max said, "There is no other way out of this."<br><br>Ex. 18 [Ayers BWC] at 4:03:09-4:10:47. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 58 and the evidence cited in it. Dkt. 99-1, SUF No. 58. |
| 59. | Max said, "One person is gonna die tonight."<br><br>Ex. 18 [Ayers BWC] at 4:03:09-4:10:47. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 59 and the evidence cited in it. Dkt. 99-1, SUF No. 59. |
| **Defendants' Response:** See Response to Fact No. 53. | | |
| 60. | Max said, "I'm not one of those you can save."<br><br>Ex. 18 [Ayers BWC] at 4:03:09-4:10:47. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 60 and the evidence cited in it. Dkt. 99-1, SUF No. 60. |
| **Defendants' Response:** See Response to Fact No. 53. | | |
| 61. | Max said, "I tried to run over one of your cops. I don't give a f*ck."<br><br>Ex. 18 [Ayers BWC] at 4:03:09-4:10:47. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 61 and the evidence cited in it. Dkt. 99-1, SUF No. 61. |
| **Defendants' Response:** See Response to Fact No. 53. | | |
| 62. | Max said, "I want blood tonight."<br><br>Ex. 18 [Ayers BWC] at 4:03:09-4:10:47. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 62 and the evidence cited in it. Dkt. 99-1, SUF No. 62. |
| **Defendants' Response:** See Response to Fact No. 53. | | |
| 63. | At **4:10 a.m.** Max hung up the phone, ending the conversation with Ayers.<br><br>Ex. 3 [CAD Report] at FRESNO 000246. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 63 and the evidence cited in it. Dkt. 99-1, SUF No. 63. |
| **Defendants' Response:** Undisputed that the evidence does not support this fact. Plaintiffs do not offer contradictory evidence and the termination of the call is documented on Ayers' bodyworn camera footage. | | |

| <u>**NO.**</u> | <u>**UNDISPUTED FACTS AND SUPPORTING EVIDENCE**</u> | <u>**PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE**</u> |
|---|---|---|
| 64. | At **4:11 a.m.** Maria told Ayers that Max had never threatened suicide before and that he had no diagnoses of any mental health disorder.<br><br>Ex. 18 [Ayers BWC] at 4:11:03-4:11:40.<br><br>Ex. 23 [Maria Dep.] 40:10-24. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 64 and the evidence cited in it. Dkt. 99-1, SUF No. 64. |

**Defendants' Response:** The cited video excerpt depicts the conversation between Ayers and Maria, as follows:

> Ayers: So this is just random for him then, this has never happened before?
>
> Maria: This has never happened. I think -- [inaudible]
>
> Ayers: Is he diagnosed with any kind of mental health issues or anything?
>
> Maria: **No.** He never, like – continued with therapy. After we separated he started therapy but it was short-lived. He said he couldn't afford it because of insurance or something like that. I know for a fact he has a lot of trauma.

**Def. Ex. 18** [Ayers BWC] at 4:11:03-4:11:29. Plaintiffs' additional fact that Max "had started therapy" is contradicted by the cited evidence to the extent it suggests that Max was still in therapy as of November 4, 2023, and the additional fact that Max "shared with his therapist that he had suicidal thoughts" is not supported by the cited evidence.

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 65. | At **4:12 a.m.** Abraham arrived at Maria's apartment.<br>Ex. 18 [Ayers BWC] at 4:12:14.<br>Ex. 19 [Abraham BWC #2] at 4:12:14. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 65 and the evidence cited in it. Dkt. 99-1, SUF No. 65. The Olivares Plaintiffs also rely on the following additional facts, which are also set out in ADF Nos. 9–10 (Statement of Additional Disputed Facts). Dispatch broadcast at 3:46 a.m. that Max intended to commit suicide by cop. Ayers returned to the apartment at 3:55 a.m. and Abraham arrived at 4:12 a.m., and the Officers heard a door at 4:35 a.m., so that Ayers had been at the apartment roughly forty minutes and Abraham more than twenty when Max returned. Defs.' SUF Nos. 42, 43, 65, 86 (Dkt. 93-1) (undisputed in Dkt. 99-1). Ayers and Abraham regarded Max's return as likely. Ayers described "a decent probability" and agreed that he believed Max was "very likely" to come back and intent on suicide by cop; Abraham agreed that there was a high probability Max would come to the apartment and that Max was expressing an intent to force a confrontation with officers and to commit suicide by cop. Ex. 26 (Ayers Dep.) 36:21-25; Mayne Decl. Ex. F (Ayers Dep.) 47:13-20; Ex. 27 (Abraham Dep.) 35:16-20, 50:7-14; Sosa SAMF Nos. 8–9 (Dkt. 99-2). |
| **Defendants' Response:** The Olivares Plaintiffs' incorporation of the Sosa Plaintiffs' response renders this fact **undisputed**. As to the additional information, Defendants object that it is compound, irrelevant and argumentative. Defendants refer the Court to their reply brief in response to the Olivares Plaintiffs' opposition, response to the Olivares Plaintiffs' statement of additional disputed facts, and objection to and motion to strike the Bryce Declaration, filed concurrently. | | |
| 66. | Ayers and Abraham conferred on the sidewalk outside the apartment.<br>Ex. 18 [Ayers BWC] at 4:12:14-4:14:40.<br>Ex. 19 [Abraham BWC #2] at 4:12:14-4:14:40. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 66 and the evidence cited in it. Dkt. 99-1, SUF No. 66. |

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| **Defendants' Response:** The stated fact does not purport to state what Abraham and Ayers discussed, and the video evidence shows them speaking to one another. Plaintiffs do not offer evidence that to contradict this fact, suggesting that the dispute is not genuine, nor does it create a triable issue of fact. Civ. LR 260(c); Fed. R. Civ. P. 56 (e)(2). | | |
| 67. | At **4:14 a.m.**, Abraham and Ayers returned to the apartment, where Maria was again talking to Max on the phone. Ex. 18 [Ayers BWC] at 4:14:45-4:15:01.<br>Ex. 19 [Abraham BWC #2] at 4:12:14-4:14:40. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 67 and the evidence cited in it. Dkt. 99-1, SUF No. 67. |
| 68. | Ayers took the phone from Maria and tried again to talk to Max.<br>Ex. 18 [Ayers BWC] at 4:15:00-4:18:26.<br>Ex. 19 [Abraham BWC #2] at 4:12:14-4:14:40. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 68 and the evidence cited in it. Dkt. 99-1, SUF No. 68. |
| 69. | Ayers told Max he wanted to help him.<br>Ex. 18 [Ayers BWC] at 4:15:00-4:18:26. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 69 and the evidence cited in it. Dkt. 99-1, SUF No. 69. |
| 70. | Max said, "There's nothing you can do."<br>Ex. 18 [Ayers BWC] at 4:15:00-4:18:26. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 70 and the evidence cited in it. Dkt. 99-1, SUF No. 70. |
| 71. | Max said, "When a man reaches rock bottom, that's it."<br>Ex. 18 [Ayers BWC] at 4:15:00-4:18:26. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 71 and the evidence cited in it. Dkt. 99-1, SUF No. 71. |
| 72. | Max said, "It's either me, him [the affair partner], or one of you f*cking police officers."<br>Ex. 18 [Ayers BWC] at 4:15:00-4:18:26. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 72 and the evidence cited in it. Dkt. 99-1, SUF No. 72. |

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 73. | Max said, "Listen, if my wife didn't give a f*ck about me, you think I'm gonna f*cking believe that you give a f*ck about me? No."<br><br>Ex. 18 [Ayers BWC] at 4:15:00-4:18:26. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 73 and the evidence cited in it. Dkt. 99-1, SUF No. 73. |
| 74. | Max said, "I'm gonna take down not just myself, but you with me."<br><br>Ex. 18 [Ayers BWC] at 4:15:00-4:18:26. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 74 and the evidence cited in it. Dkt. 99-1, SUF No. 74. |
| 75. | Max said, "I'm gonna come after you, motherf*cker."<br><br>Ex. 18 [Ayers BWC] at 4:15:00-4:18:26. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 75 and the evidence cited in it. Dkt. 99-1, SUF No. 75. |
| 76. | At **4:18 a.m.** Ayers hung up the call. Ex. 18 [Ayers BWC] at 4:15:00-4:18:26. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 76 and the evidence cited in it. Dkt. 99-1, SUF No. 76. |
| 77. | At **4:24 a.m.** Abraham, who was holding Maria's phone, told Maria that Damian texted that Max was at a charging station.<br><br>Ex. 18 [Ayers BWC] at 4:24:37-4:25:00.<br><br>Ex. 19 [Abraham BWC #2] at 4:24:37-4:25:00. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 77 and the evidence cited in it. Dkt. 99-1, SUF No. 77. |
| 78. | Ayers broadcast that Max was at a charging station, possibly at Herndon & 99.<br><br>Ex. 3 [CAD Report] at FRESNO 000246.<br><br>Ex. 18 [Ayers BWC] at 4:25:13-4:25:32. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 78 and the evidence cited in it. Dkt. 99-1, SUF No. 78. |
| 79. | At **4:28 a.m.**, Abraham and Ayers exited the apartment to canvas the area. Ex. 18 [Ayers BWC] at 4:28:00-4:28:58.<br><br>Ex. 19 [Abraham BWC #2] at 4:28:00-4:28:58. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 79 and the evidence cited in it. Dkt. 99-1, SUF No. 79. |

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 80. | Ayers radioed that he did not see Max or Max's Tesla.<br>Ex. 3 [CAD Report] at FRESNO 000271.<br>Ex. 18 [Ayers BWC] at 4:28:55-4:28-59. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 80 and the evidence cited in it. Dkt. 99-1, SUF No. 80. |
| 81. | At **4:29 a.m.**, Abraham and Ayers stepped back in to the apartment, where Maria was once again on the phone with Max asking him to "please just tell me where you are."<br>Ex. 18 [Ayers BWC] at 4:29:30-4:30:18. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 81 and the evidence cited in it. Dkt. 99-1, SUF No. 81. |
| 82. | Max said, "Tonight I die."<br>Ex. 18 [Ayers BWC] at 4:29:30-4:30:18. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 82 and the evidence cited in it. Dkt. 99-1, SUF No. 82. |
| 83. | Max said, "You ruined me."<br>Ex. 18 [Ayers BWC] at 4:29:30-4:30:18. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 83 and the evidence cited in it. Dkt. 99-1, SUF No. 83. |
| 84. | Max said, "Congratulations, you won."<br>Ex. 18 [Ayers BWC] at 4:29:30-4:30:18. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 84 and the evidence cited in it. Dkt. 99-1, SUF No. 84. |
| 85. | At **4:30 a.m.** Ayers took the phone from Maria and hung up, telling her not to answer it again.E<br>x. 18 [Ayers BWC] at 4:29:30-4:30:18. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 85 and the evidence cited in it. Dkt. 99-1, SUF No. 85. |

| | | |
|---|---|---|
| 86. | At **4:35 a.m.** Abraham said “I think a door just – ” and went to investigate.<br><br>Ex. 18 [Ayers BWC] at 4:35:04-4:35:10.<br><br>Ex. 19 [Abraham BWC #2] at 4:35:04-4:35:10.<br><br>Ex. 26 [Ayers Dep.] 36:2-12.<br><br>Ex. 27 [Abraham Dep.] 35:21-23; 49:9-25; 75:2-6. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs’ response to SUF No. 86 and the evidence cited in it. Dkt. 99-1, SUF No. 86. The Olivares Plaintiffs also rely on the following additional facts, which are also set out in ADF Nos. 9, 21–22 (Statement of Additional Disputed Facts). Dispatch broadcast at 3:46 a.m. that Max intended to commit suicide by cop. Ayers returned to the apartment at 3:55 a.m. and Abraham arrived at 4:12 a.m., and the Officers heard a door at 4:35 a.m., so that Ayers had been at the apartment roughly forty minutes and Abraham more than twenty when Max returned. Defs.’ SUF Nos. 42, 43, 65, 86 (Dkt. 93-1) (undisputed in Dkt. 99-1). When the Officers heard a car door at 4:35 a.m. and believed Max had returned, the apartment door was closed, and Ayers and Abraham had their firearms holstered. Until the door was opened, Ayers agreed, they were not facing an imminent threat; he agreed that with the door closed Max could not have posed an immediate threat of death or serious bodily injury to him, Abraham or Maria, and he never considered keeping it closed. Little Decl. Ex. G (Ayers Dep.) 46:8-16; Ex. 26 (Ayers Dep.) 48:2-3, 48:21-24; Sosa SAMF Nos. 21–25 (Dkt. 99-2). Abraham opened the door without looking through the windowor the peephole, without using his voice to ask who was outside, and with his firearm and Taser holstered. He testified that, knowing Max intended to force a confrontation and to commit suicide by cop, he would still have considered opening the door even if he had known Max was right outside. Mayne Decl. Ex. G (Abraham Dep.) 36:21–37:11; Ex. 27 (Abraham Dep.) 50:7-18; Sosa SAMF Nos. 23–24 (Dkt. 99-2). |

**Defendants’ Response:** As to the additional information provided by the Sosa Plaintiffs, undisputed. As to the additional information provided by the Olivares Plaintiffs, Defendants

| **NO.** | **UNDISPUTED FACTS AND SUPPORTING EVIDENCE** | **PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE** |
|---|---|---|
| object that it is compound, irrelevant and argumentative. Defendants refer the Court to their reply brief in response to the Olivares Plaintiffs' opposition, response to the Olivares Plaintiffs' statement of additional disputed facts, and objection to and motion to strike the Bryce Declaration, filed concurrently. The Court is referred to Defendants' response to the Olivares Plaintiffs' statement of additional disputed facts. | | |
| 87. | Abraham opened the door to the apartment and saw Max coming up the walkway.<br>Ex. 19 [Abraham BWC #2] at 4:35:04-4:35:15.<br>Ex. 26 [Ayers Dep.] 37:18-25.<br>Ex. 27 [Abraham Dep.] 38:13-18; 45:21-46:12. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 87 and the evidence cited in it. Dkt. 99-1, SUF No. 87. |
| 88. | Max said, "Are you ready for this?" while raising his right hand, in which he was holding scissors.<br>Ex. 10 [Sosa Interview] at 74, 76.<br>Ex. 18 [Ayers BWC] at 4:34:14-4:35:17.<br>Ex. 19 [Abraham BWC #2] at 4:35:14-4:35:17.<br>Ex. 26 [Ayers Dep.] 37:18-25.<br>Ex. 27 [Abraham Dep.] 26:25-27:5; 45:21-46:2. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 88 and the evidence cited in it. Dkt. 99-1, SUF No. 88. |
| 89. | The scissors Max was holding were kitchen shears, just over 9 inches long, with cutting blades approximately 4 inches long.<br>Ex. 7 [Incident Report] at FRESNO 000201.<br>Ex. 8 [Photo] at FRESNO 001073.<br>Ex. 9 [Photo] at FRESNO 001083.<br>Ex. 10 [Sosa Interview] at 74, 76. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 89 and the evidence cited in it. Dkt. 99-1, SUF No. 89. |
| 90. | Abraham said twice, "Don't do it, bro."<br>Ex. 19 [Abraham BWC #2] at 4:35:14-4:35:19. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 90 and the evidence cited in it. Dkt. 99-1, SUF No. 90. |

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 91. | There was no time for Abraham to safely close the door.<br><br>Ex. 27 [Abraham Dep.] 46:14-47:5; 48:1-12. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 91 and the evidence cited in it. Dkt. 99-1, SUF No. 91. |
| **Defendants' Response:** Disputed. The video shows that Max was walking quickly and closed the distance between himself and Abraham in 3 seconds, as Abraham asked, "Who are you?" Ex. 19 [Abraham BWC 2] at 4:35:12-4:35:15. Abraham testified to his reasons for believing it was not safe to close the door. Defendants object to the term "ordinary pace" as vague and subjective. Defendants object to Plaintiffs' inclusion of legal argument in a statement of facts and refer the Court to their Reply brief. | | |
| 92. | Max entered the apartment and focused his attention on Maria and Ayers.<br><br>Ex. 10 [Sosa Interview] at 70.<br><br>Ex. 18 [Ayers BWC] at 4:35:15-4:35:24.<br><br>Ex. 19 [Abraham BWC #2] at 4:35:15-4:35:24.<br><br>Ex. 27 [Abraham Dep.] 46:3-12. | Incorporated. The Olivares Plaintiffs attention on Maria and Ayers. incorporate the Sosa Plaintiffs' response to SUF No. 92 and the evidence cited in it.<br>Dkt. 99-1, SUF No. 92. |
| **Defendants' Response:** It is not clear what the dispute is, if any. The fact as stated does not purport to establish what Ayers or Maria thought nor does it indicate Max was intent on hurting Maria. Plaintiffs do not offer any evidence that contradicts the stated fact, suggesting the dispute is not genuine; it also does not create a triable issue of fact. Civ. LR 260(c); Fed. R. Civ. P. 56(e)(2). | | |
| 93. | Ayers and Abraham both drew their guns and pointed them at Max.<br><br>Ex. 18 [Ayers BWC] at 4:35:15-4:35:24.<br><br>Ex. 19 [Abraham BWC #2] at 4:35:15-4:35:24. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 93 and the evidence cited in it. Dkt. 99-1, SUF No. 93. |
| 94. | Ayers and Abraham moved back to increase the distance between themselves and Max.<br><br>Ex. 18 [Ayers BWC] at 4:35:15-4:35:24.<br><br>Ex. 19 [Abraham BWC #2] at 4:35:15-4:35:24.<br><br>Ex. 26 [Ayers Dep.] 38:1-4. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 94 and the evidence cited in it. Dkt. 99-1, SUF No. 94. |

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 95. | Max raged the Officers, stepping towards them and Maria with the scissors pointed at them.<br><br>Ex. 18 [Ayers BWC] at 4:35:24-4:38:54.<br><br>Ex. 19 [Abraham BWC #2] at 4:35:24-4:35:54.<br><br>Ex. 26 [Ayers Dep.] 38:5-7.<br><br>Ex. 27 [Abraham Dep.] 51:10-17; 52:21-53:15. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 95 and the evidence cited in it. Dkt. 99-1, SUF No. 95. |
| **Defendants' Response:** The cited video evidence shows Max yelling and cursing at the Officers and Maria, in addition to "pac[ing] back and forth and took steps toward the officers and Ms. Sosa with the scissors in his hand." | | |
| 96. | Max came within a yard of Abraham with the scissors.<br><br>Ex. 26 [Ayers Dep.] 38:24-39:10.<br><br>Ex. 27 [Abraham Dep.] 61:9-17. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 96 and the evidence cited in it. Dkt. 99-1, SUF No. 96. |
| **Defendants' Response:** Undisputed that Abraham so testified, but Abraham's testimony also shows that any discrepancy is attributable to whether the distance was measured from the scissors to Abraham's chest, or from Max's chest to Abraham's chest, a point he clarified during the deposition. Supplemental Sorensen Decl., **Def. Ex. 31** [Abraham Dep.] at 59:25-60:21; 61:9-17. | | |
| 97. | Max told Maria, "This is what you wanted. This is what you f*cking wanted."<br><br>Ex. 18 [Ayers BWC] at 4:35:24-4:38:54.<br><br>Ex. 19 [Abraham BWC #2] at 4:35:24-4:38:54. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 97 and the evidence cited in it. Dkt. 99-1, SUF No. 97. |
| 98. | Maria pleaded with Max, "Please don't do this" and to think of his children.<br><br>Ex. 10 [Sosa Interview] at 78.<br><br>Ex. 18 [Ayers BWC] at 4:35:24-4:38:54.<br><br>Ex. 19 [Abraham BWC #2] at 4:35:24-4:38:54 | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 98 and the evidence cited in it. Dkt. 99-1, SUF No. 98. |



MK MANNING | KASS

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 99. | Ayers and Abraham broadcast that Max had returned to the apartment, and requested assistance.<br><br>Ex. 28 [Crockett Dep.] 22:13-23:6. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 99 and the evidence cited in it. Dkt. 99-1, SUF No. 99. |
| 100. | Between **4:35 a.m.** and **4:38 a.m.**, Abraham and Ayers told Max seven times to "Get back!" and also warned him, "Stop it!" and "I'm telling you."<br><br>Ex. 18 [Ayers BWC] at 4:35:24-4:38:54.<br><br>Ex. 19 [Abraham BWC #2] at 4:35:24-4:38:54. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 100 and the evidence cited in it. Dkt. 99-1, SUF No. 100. |
| 101. | Ayers and Abraham spoke to Max firmly but respectfully.<br><br>Ex. 18 [Ayers BWC] at 4:35:24-4:38:54.<br><br>Ex. 19 [Abraham BWC #2] at 4:35:24-4:38:54. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 101 and the evidence cited in it. Dkt. 99-1, SUF No. 101. |
| **Defendants' Response:** The cited video evidence demonstrates the manner in which Abraham and Ayers interacted with Max. Defendants object to Plaintiffs' inclusion of legal argument in a statement of facts. | | |
| 102. | Ayers and Abraham repeated their offers to help Max.<br><br>Ex. 18 [Ayers BWC] at 4:35:24-4:38:54.<br><br>Ex. 19 [Abraham BWC #2] at 4:35:24-4:38:54. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 102 and the evidence cited in it. Dkt. 99-1, SUF No. 102. |
| **Defendants' Response:** The cited video evidence shows that Ayers and Abraham each said to Max, "We can talk this out," to which Max responded (both times), "No we f*cking can't!" **Def. Ex. 18** [Ayers BWC] at 4:35:30-4:35:36; 4:36:28-4:36:34; **Def. Ex 19** [Abraham BWC 2] at 4:35:30-4:35:36; 4:36:28-4:36:34. Abraham also offered Max the chance to talk to one of his partners, which Max refused (Abraham: "If you don't want to talk to us, talk to one of my partners. How about that?" Max: "No, I don't want to talk to any of them f*cking guys. My fate is sealed, my guy.") *See* Amended Joint Statement of Undisputed Facts, Nos. 117, 118. This fact is is further corroborated by the evidence cited in support of Facts No. 119 (undisputed) and 120 (undisputed). | | |

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 103. | Max continued to curse at the Officers and said that no one understood the sacrifices he had made for Maria.<br><br>Ex. 18 [Ayers BWC] at 4:35:24-4:38:54.<br><br>Ex. 19 [Abraham BWC #2] at 4:35:24-4:38:54. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 103 and the evidence cited in it. Dkt. 99-1, SUF No. 103. |
| 104. | Max did not comply with the Officers' commands and rejected their attempts to engage him.<br><br>Ex. 18 [Ayers BWC] at 4:35:24-4:38:54.<br><br>Ex. 19 [Abraham BWC #2] at 4:35:24-4:38:54.<br><br>Ex. 27 [Abraham Dep.] 81:6-82:6. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 104 and the evidence cited in it. Dkt. 99-1, SUF No. 104. |
| **Defendants' Response:** It is not clear what the dispute is, as the stated fact does not say anything about whether Max was told to stay inside. In the cited video excerpt, Max was told multiple times to: "back up," "drop it [the scissors]," "Sit down," "Don't do this," and "Stop!", which he did not do. In the cited video excerpt, Max also rejected the Officers' invitations to "talk this out" or "talk to one of my partners." *See also* **Fact No. 102,** *supra*. | | |
| 105. | At **4:35:18 a.m.** Abraham said, "Don't do it, bro."<br><br>Ex. 18 [Ayers BWC] at 4:35:24-4:38:54.<br><br>Ex. 19 [Abraham BWC #2] at 4:35:24-4:38:54. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 105 and the evidence cited in it. Dkt. 99-1, SUF No. 105. |
| 106. | At **4:35:23 a.m.** Ayers radioed that Max was inside Maria's apartment armed with scissors.<br><br>Ex. 18 [Ayers BWC] at 4:35:23-4:35:27. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 106 and the evidence cited in it. Dkt. 99-1, SUF No. 106. |

<table>
<tr><th><u>NO.</u></th><th><u>UNDISPUTED FACTS AND SUPPORTING EVIDENCE</u></th><th><u>PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE</u></th></tr>
<tr><td>107.</td><td>At 4:36:04 a.m., Max said to Abraham, "Pop it, dude. Are you ready for this?"<br><br>Ex. 18 [Ayers BWC] at 4:35:24-4:38:54.<br><br>Ex. 19 [Abraham BWC #2] at 4:35:24-4:38:54.</td><td>Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 107 and the evidence cited in it. Dkt. 99-1, SUF No. 107. The Olivares Plaintiffs also rely on the following additional facts, which are also set out in ADF No. 24 (Statement of Additional Disputed Facts). Inside the apartment Max held a pair of kitchen scissors. He made no lunging motion, never tried to injure anyone, and harmed no one. Ayers believed him when he said he would not hurt his wife. When Aguilar told him not to step toward him he complied, holding the scissors pointed down, and less than a minute before the shooting he stood behind the kitchen counter with his hands resting on it. Sosa SAMF Nos. 27–31 (Dkt. 99-2) and the evidence cited there.</td></tr>
<tr><td colspan="3">Defendants' Response: Defendants refer the Court to their response to the Olivares Plaintiffs' statement of additional disputed facts.</td></tr>
<tr><td>108.</td><td>At 4:36:54 a.m. Max said, "Have you shot anybody before? Today's gonna be the day."<br><br>Ex. 18 [Ayers BWC] at 4:35:24-4:38:54.<br><br>Ex. 19 [Abraham BWC #2] at 4:35:24-4:38:54.</td><td>Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 108 and the evidence cited in it. Dkt. 99-1, SUF No. 108. The Olivares Plaintiffs also rely on the following additional facts, which are also set out in ADF No. 24 (Statement of Additional Disputed Facts). Inside the apartment Max held a pair of kitchen scissors. He made no lunging motion, never tried to injure anyone, and harmed no one. Ayers believed him when he said he would not hurt his wife. When Aguilar told him not to step toward him he complied, holding the scissors pointed down, and less than a minute before the shooting he stood behind the kitchen counter with his hands resting on it. Sosa SAMF Nos. 27–31 (Dkt. 99-2) and the evidence cited there.</td></tr>
<tr><td colspan="3">Defendants' Response: Defendants refer the Court to their response to the Olivares Plaintiffs' statement of additional disputed facts.</td></tr>
</table>

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 109. | At **4:37:06 a.m.** Crockett arrived to the apartment.<br><br>Ex. 20 [Crockett BWC] at 4:37:06. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 109 and the evidence cited in it. Dkt. 99-1, SUF No. 109. |
| 110. | Crockett saw that Max was holding kitchen shears in his right hand and pointing them towards Ayers and Maria.<br><br>Ex. 28 [Crockett Dep.] 28:6-15; 51:24-52:9. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 110 and the evidence cited in it. Dkt. 99-1, SUF No. 110. |
| **Defendants' Response:** It is not clear what the dispute is, if any. Defendants do not dispute that Crockett provided the additional testimony cited above. | | |
| 111. | At **4:37:16 a.m.** Crockett told Max, "Let's chill out, man," to which Max responded "No! F*ck no!"<br><br>Ex. 18 [Ayers BWC] at 4:37:16-4:37:19.<br><br>Ex. 19 [Abraham BWC #2] at 4:37:16-4:37:19.<br><br>Ex. 20 [Crockett BWC] at 4:37:15-4:37:22.<br><br>Ex. 28 [Crockett Dep.] 53:5-12. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 111 and the evidence cited in it. Dkt. 99-1, SUF No. 111. |
| 112. | At **4:37:29 a.m.** Crockett broadcast "One at gunpoint, scissors in right hand."<br><br>Ex. 3 [CAD Report] at FRESNO 000248, 000273.<br><br>Ex. 20 [Crockett BWC] at 4:37:29-4:37:37.<br><br>Ex. 28 [Crockett Dep.] 55:12-56:1. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 112 and the evidence cited in it. Dkt. 99-1, SUF No. 112. |
| 113. | At **4:37:35 a.m.** Aguilar arrived to Maria's apartment.<br><br>Ex. 21 [Aguilar BWC] at 4:37:35-4:37:40. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 113 and the evidence cited in it. Dkt. 99-1, SUF No. 113. |

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 114. | Crockett, who was standing outside the doorway, quickly described the situation inside.<br>Ex. 20 [Crockett BWC] at 4:37:39-4:37:43.<br>Ex. 21 [Aguilar BWC] at 4:37:40-4:37:43. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 114 and the evidence cited in it. Dkt. 99-1, SUF No. 114. |
| 115. | At **4:37:43 a.m**. Max said, "This is how it ends. This is what you wanted."<br>Ex. 18 [Ayers BWC] at 4:37:43-4:37:45.<br>Ex. 19 [Abraham BWC #2] at 4:35:24-4:38:54. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 115 and the evidence cited in it. Dkt. 99-1, SUF No. 115. |
| 116. | At **4:38:01 a.m.** Max said, "Sorry you guys have to do this, but it's gonna happen either way."<br>Ex. 18 [Ayers BWC] at 4:37:57-4:38:03.<br>Ex. 19 [Abraham BWC #2] at 4:35:24-4:38:54.<br>Ex. 21 [Aguilar BWC] at 4:37:55-4:37:59. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 116 and the evidence cited in it. Dkt. 99-1, SUF No. 116. |
| **Defendants' Response:** The cited video evidence establishes what Max said; on review, Max may have said "Sorry you guys have to do this, but it's *gotta* happen *this* way." **Def. Ex. 19** [Abraham BWC 2] at 4:37:57-4:38:01. Plaintiffs do not offer any evidence to contradict that Max said these or similar words. Defendants object to Plaintiffs' characterization of Max's statement as an apology. | | |
| 117. | At **4:38:05 a.m.** Abraham said, "If you don't want to talk to us, talk to one of my partners. How about that?"<br>Ex. 18 [Ayers BWC] at 4:38:03-4:38:10.<br>Ex. 19 [Abraham BWC #2] at 4:38:03-4:38:10.<br>Ex. 20 [Crockett BWC] at 4:38:02-4:38:10.<br>Ex. 21 [Aguilar BWC] at 4:37:59-4:38:05. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 117 and the evidence cited in it. Dkt. 99-1, SUF No. 117. |

| **NO.** | **UNDISPUTED FACTS AND SUPPORTING EVIDENCE** | **PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE** |
|---|---|---|
| 118. | Max responded, "No, I don't want to talk to any of them f*cking guys. My fate is sealed, my guy."<br>Ex. 18 [Ayers BWC] at 4:38:03-4:38:10.<br>Ex. 19 [Abraham BWC #2] at 4:38:03-4:38:10.<br>Ex. 20 [Crockett BWC] at 4:38:02-4:38:10.<br>Ex. 21 [Aguilar BWC] at 4:38:03-4:38:07. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 118 and the evidence cited in it. Dkt. 99-1, SUF No. 118. |
| 119. | At **4:38:29 a.m.** Aguilar asked Max, "Hey, can we talk?"<br>Ex. 20 [Crockett BWC] at 4:38:25-4:38:33.<br>Ex. 21 [Aguilar BWC] at 4:38:25-4:38:27.<br>Ex. 29 [Aguilar Dep.] 41:1-18; 43:6-18. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 119 and the evidence cited in it. Dkt. 99-1, SUF No. 119. |
| 120. | Max responded, "F*ck no!"and "I am done with this, dude."<br>Ex. 19 [Abraham BWC #2] at 4:38:26-4:38:31.<br>Ex. 20 [Crockett BWC] at 4:38:25-4:38:33.<br>Ex. 21 [Aguilar BWC] at 4:38:26-4:38:31. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 120 and the evidence cited in it. Dkt. 99-1, SUF No. 120. |
| 121. | At **4:38:13 a.m.** Max talked about killing Maria's affair partner. When Ayers said, "He's not here, Max," Max responded, "Exactly. So it's gonna be my life or you guys. That's it. That's all it's gonna come down to."<br>Ex. 18 [Ayers BWC] at 4:38:13-4:38:26.<br>Ex. 19 [Abraham BWC #2] at 4:38:13-4:38:31. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 121 and the evidence cited in it. Dkt. 99-1, SUF No. 121. |
| **Defendants' Response:** See Response to Fact No. 9. | | |

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 122. | At **4:38:38 a.m.** Aguilar readied his Taser.<br>Ex. 20 [Crockett BWC] at 4:38:37-4:38:43.<br>Ex. 29 [Aguilar Dep.] 30:9-24. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 122 and the evidence cited in it. Dkt. 99-1, SUF No. 122. |
| 123. | At **4:38:50 a.m.** Abraham gestured to Ayers and Maria to get out of the apartment.<br>Ex. 19 [Abraham BWC #2] at 4:38:50-4:38:54.<br>Ex. 21 [Aguilar BWC] at 4:38:45-4:38:50.<br>Ex. 26 [Ayers Dep.] 13-23.<br>Ex. 27 [Abraham Dep.] 58:3-23. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 123 and the evidence cited in it. Dkt. 99-1, SUF No. 123. |
| **Defendants' Response:** It is not clear what the dispute is, and Plaintiffs do not offer evidence to contradict that Abraham gestured for Maria and Ayers to leave the apartment. Whether any officer told Max to "stay" is irrelevant, because Max did not attempt to leave at this moment. **Def. Ex. 19** [Abraham BWC #2] at 4:38:50-4:38:54; **Def. Ex. 21** [Aguilar BWC] at 4:38:45-4:38:50. When Max asked Ayers "where are you going?" and started to step towards Ayers, Abraham told him to "Wait, wait, wait." **Def. Ex. 19** [Abraham BWC 2] at 4:38:50-4:38:54. Max was also told to "Wait" and "Stop, dude" when he started walking toward the door. **Def. Ex. 19** [Abraham BWC 2] at 4:39:20-4:39:26; *see also* Amended Joint Statement of Undisputed Facts, No. 133. | | |
| 124. | Ayers walked toward the door and exited the apartment.<br>Ex. 18 [Ayers BWC] at 4:38:50-4:38:55.<br>Ex. 19 [Abraham BWC #2] at 4:38:50-4:38:54. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 124 and the evidence cited in it. Dkt. 99-1, SUF No. 124. |
| 125. | Maria remained seated on the couch. Ex. 19 [Abraham BWC #2] at 4:38:50-4:38:54. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 125 and the evidence cited in it. Dkt. 99-1, SUF No. 125. |

<table>
<tr><th><u>NO.</u></th><th><u>UNDISPUTED FACTS AND SUPPORTING EVIDENCE</u></th><th><u>PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE</u></th></tr>
<tr><td>126.</td><td>At 4:38:52 a.m. Aguilar stepped away to call in the details of the Officers' situation.<br><br>Ex. 21 [Aguilar BWC] at 4:38:49-4:39:10.<br><br>Ex. 29 [Aguilar Dep.] 31:20-32:15.</td><td>Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 126 and the evidence cited in it. Dkt. 99-1, SUF No. 126.</td></tr>
<tr><td>127.</td><td>At 4:38:59 a.m. Max told Abraham he could also leave by the front door.<br><br>Ex. 18 [Ayers BWC] at 4:38:55-4:39:06.<br><br>Ex. 19 [Abraham BWC #2] at 4:38:55-4:39:06.</td><td>Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 127 and the evidence cited in it. Dkt. 99-1, SUF No. 127.</td></tr>
<tr><td>128.</td><td>At 4:39:02 a.m. Crockett, standing at the threshold, motioned for Maria to come outside.<br><br>Ex. 18 [Ayers BWC] at 4:39:03-4:39:12.<br><br>Ex. 20 [Crockett BWC] at 4:39:02-4:39:15.<br><br>Ex. 28 [Crockett Dep.] 56:8-11; 59:7-14.</td><td>Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 128 and the evidence cited in it. Dkt. 99-1, SUF No. 128. The Olivares Plaintiffs also rely on the following additional facts, which are also set out in ADF No. 27 (Statement of Additional Disputed Facts). At about 4:39 a.m. the Officers called Maria out of the apartment without telling Max to stay inside or what to do. Ayers walked out ahead of Max into the breezeway, where Crockett and Aguilar were standing, and Abraham stayed in the apartment behind him. Defs.' SUF Nos. 128–130 (Dkt. 93-1); Sosa SAMF Nos. 34–35 (Dkt. 99-2).</td></tr>
<tr><td colspan="3">Defendants' Response: Disputed. When Max asked Ayers "where are you going?" and started to step towards Ayers, Abraham told him to "Wait, wait, wait." Def. Ex. 19 [Abraham BWC 2] at 4:38:50-4:38:54. Max was also told to "Wait" and "Stop" when he started walking toward the door. Def. Ex. 19 [Abraham BWC 2] at 4:39:20-4:39:26; see also Amended Joint Statement of Undisputed Facts, No. 133.<br><br>Defendants further object that the Olivares Plaintiffs' additional "fact" is compound, inaccurate and argumentative, and refer the Court to their response to the Olivares Plaintiffs' statement of additional disputed facts.</td></tr>
</table>

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 129. | At **4:39:20 a.m.** Abraham said twice, "Maria, get out."<br><br>Ex. 18 [Ayers BWC] at 4:39:19-4:39:22.<br><br>Ex. 19 [Abraham BWC #2] at 4:39:19-4:39:22.<br><br>Ex. 21 [Aguilar BWC] at 4:39:15-4:39:19. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 129 and the evidence cited in it. Dkt. 99-1, SUF No. 129. The Olivares Plaintiffs also rely on the following additional facts, which are also set out in ADF No. 27 (Statement of Additional Disputed Facts). At about 4:39 a.m. the Officers called Maria out of the apartment without telling Max to stay inside or what to do. Ayers walked out ahead of Max into the breezeway, where Crockett and Aguilar were standing, and Abraham stayed in the apartment behind him. Defs.' SUF Nos. 128–130 (Dkt. 93-1); Sosa SAMF Nos. 34–35 (Dkt. 99-2). |
| **Defendants' Response:** *See* Response to Fact No. 128. | | |
| 130. | Maria stood and started walking toward the door.<br><br>Ex. 20 [Crockett BWC] at 4:39:15-4:39:23. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 130 and the evidence cited in it. Dkt. 99-1, SUF No. 130. The Olivares Plaintiffs also rely on the following additional facts, which are also set out in ADF No. 27 (Statement of Additional Disputed Facts). At about 4:39 a.m. the Officers called Maria out of the apartment without telling Max to stay inside or what to do. Ayers walked out ahead of Max into the breezeway, where Crockett and Aguilar were standing, and Abraham stayed in the apartment behind him. Defs.' SUF Nos. 128–130 (Dkt. 93-1); Sosa SAMF Nos. 34–35 (Dkt. 99-2). |
| **Defendants' Response:** *See* Response to Fact No. 128. | | |



MK MANNING | KASS

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 131. | At **4:39:23 a.m.** Max turned and approached the door, facing Ayers, Crockett and Aguilar.<br><br>Ex. 18 [Ayers BWC] at 4:39:23-4:39:25.<br><br>Ex. 19 [Abraham BWC #2] at 4:39:23-4:39:25.<br><br>Ex. 20 [Crockett BWC] at 4:39:20-4:39:24. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 131 and the evidence cited in it. Dkt. 99-1, SUF No. 131. |
| 132. | Crockett and Ayers stepped back.<br><br>Ex. 18 [Ayers BWC] at 4:39:23-4:39:25<br><br>Ex. 20 [Crockett BWC] at 4:39:20-4:39:27.<br><br>Ex. 21 [Aguilar BWC] at 4:39:21-4:39:23. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 132 and the evidence cited in it. Dkt. 99-1, SUF No. 132. |
| 133. | The Officers shouted: "Wait!" (one time), "Stop!" (one time); "Get back, bro!" (two times) "Hey!" (one time) and "Chill out!" (two times).<br><br>Ex. 18 [Ayers BWC] at 4:39:22-4:39:26<br><br>Ex. 19 [Abraham BWC #2] at 4:39:22-4:39:26.<br><br>Ex. 20 [Crockett BWC] at 4:39:24-4:39:27.<br><br>Ex. 21 [Aguilar BWC] at 4:39:20-4:39:26.<br><br>Ex. 27 [Abraham Dep.] 58:3-23.<br><br>Ex. 28 [Crockett Dep.] 45:10-18; 57:21-58:1; 58:12-16; Crockett 59:15-21<br><br>Ex. 29 [Aguilar Dep.] 38:9-17. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 133 and the evidence cited in it. Dkt. 99-1, SUF No. 133. |

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 134. | At **4:39:25 a.m.** Max crossed the threshold and exited the apartment.<br>Ex. 18 [Ayers BWC] at 4:39:25.<br>Ex. 19 [Abraham BWC #2] at 4:39:25.<br>Ex. 20 [Crockett BWC] at 4:39:20-4:39:25.<br>Ex. 21 [Aguilar BWC] at 4:3922-4:39:23. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 134 and the evidence cited in it. Dkt. 99-1, SUF No. 134. The Olivares Plaintiffs also rely on the following additional facts, which are also set out in ADF No. 29 (Statement of Additional Disputed Facts). Max crossed the threshold at 4:39:25 a.m. with the scissors pointed down. Aguilar Tased him one second later, at 4:39:26, without warning. Max moved away from the Taser's pain along the only path leading away from the apartment, through the Officers. At 4:39:28, two seconds into the Taser's five-second cycle, Ayers, Crockett and Abraham fired without warning. Defs.' SUF Nos. 134, 135, 140 (Dkt. 93-1); Ex. 29 (Aguilar Dep.) 50:18¬22; Sosa SAMF Nos. 39–44 (Dkt. 99-2); Dkt. 99-1, SUF Nos. 134–140. |

**Defendants' Response:** Disputed. Although the Officers all speculated that the Taser strike was painful, there is no evidence that Max was "moving away from the Taser's pain" at this time. The objective video evidence shows that Max had the scissors clenched in his hand and pointed up and outward as he bared his teeth, quickened his pace, and moved in the direction of Crockett, Ayers and Aguilar. **Def. Ex. 19** [Abraham BWC 2] at 4:39:27-4:39:30; **Def. Ex. 20** [Crockett BWC] at 4:39:27-4:39:30.

Defendants further object that the Olivares Plaintiffs' additional "fact" is compound, inaccurate and argumentative, and refer the Court to their response to the Olivares Plaintiffs' statement of additional disputed facts.

MANNING | KASS

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 135. | At **4:39:26 a.m.** Aguilar deployed his Taser, striking Max.<br>Ex. 18 [Ayers BWC] at 4:39:26.<br>Ex. 20 [Crockett BWC] at 4:39:27.<br>Ex. 21 [Aguilar BWC] at 4:39:24.<br>Ex. 27 [Abraham Dep.] 58:25-59:19.<br>Ex. 28 [Crockett Dep.] 59:22-24. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 135 and the evidence cited in it. Dkt. 99-1, SUF No. 135. The Olivares Plaintiffs also rely on the following additional facts, which are also set out in ADF Nos. 28–29 (Statement of Additional Disputed Facts). Before Max crossed the threshold Aguilar had decided to Tase him there and had told Crockett so. Aguilar was trained, and agreed, that it is human nature to move away from something that causes pain, and he considered that Max would move away from the Taser. The breezeway was "a very small, tight space" with "not enough room," there was no avenue of escape, and the only directions Max could go led toward Officers: the breezeway where the Officers stood, or back into the apartment toward Abraham. Ex. 29 (Aguilar Dep.) 49:21–50:11, 30:23–31:12; Mayne Decl. Ex. D (Aguilar Dep.) 20:7-14, 23:6-24:19, 55:2-7; Sosa SAMF Nos. 36–38 (Dkt. 99-2). Max crossed the threshold at 4:39:25 a.m. with the scissors pointed down. Aguilar Tased him one second later, at 4:39:26, without warning. Max moved away from the Taser's pain along the only path leading away from the apartment, through the Officers. At 4:39:28, two seconds into the Taser's five-second cycle, Ayers, Crockett and Abraham fired without warning. Defs.' SUF Nos. 134, 135, 140 (Dkt. 93-1); Ex. 29 (Aguilar Dep.) 50:18-22; Sosa SAMF Nos. 39–44 (Dkt. 99-2); Dkt. 99-1, SUF Nos. 134–140. |
| **Defendants' Response:** *See* Response to Fact No. 134. | | |

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 136. | The Taser did not immobilize Max, who stumbled briefly and swatted the air in front of him.<br><br>Ex. 18 [Ayers BWC] at 4:39:26-4:39:28.<br><br>Ex. 20 [Crockett BWC] at 4:39:27-4:39:32.<br><br>Ex. 21 [Aguilar BWC] at 4:39:24-4:39:26.<br><br>Ex. 28 [Crockett Dep.] 40:10-22; 43:8-16.<br><br>Ex. 27 [Abraham Dep.] 58:25-59:19.<br><br>Ex. 29 [Aguilar Dep.] 18:14-23. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 136 and the evidence cited in it. Dkt. 99-1, SUF No. 136. |
| **Defendants' Response:** The cited video evidence depicts what happened. Plaintiffs' evidence does not establish that Max felt pain or that any of his actions thereafter were a response to pain. Defendants refer the Court to their objection to and motion to strike the Bryce Declaration, filed concurrently. | | |
| 137. | Aguilar did not have time to, and did not attempt to, reload and redeploy the Taser.<br><br>Ex. 29 [Aguilar Dep.] 26:20-27:19 | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 137 and the evidence cited in it. Dkt. 99-1, SUF No. 137. |

MK MANNING | KASS

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 138. | At **4:39:27 a.m.** Max yelled, gritted his teeth, and charged toward Crockett, Aguilar and Ayers.<br><br>Ex. 18 [Ayers BWC] at 4:39:27-4:39:29.<br><br>Ex. 19 [Abraham BWC #2] at 4:39:27-4:39:29.<br><br>Ex. 20 [Crockett BWC] at 4:39:27-4:39:32.<br><br>Ex. 21 [Aguilar BWC] at 4:39:26-4:39:27.<br><br>Ex. 27 [Abraham Dep.] 86:24-87:3; 88:6-16.<br><br>Ex. 28 [Crockett Dep.] 44:20-24; 46:15-21; 67:12-68:6; 68:13-17; 74:14-20.<br><br>Ex. 29 [Aguilar Dep.] 62:9-25. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 138 and the evidence cited in it. Dkt. 99-1, SUF No. 138. |
| **Defendants' Response:** The cited video evidence establishes the stated fact, including that Max had the scissors clenched in his hand and pointed up and outward as he bared his teeth, quickened his pace, and moved in the direction of Crockett, Ayers and Aguilar. **Def. Ex. 19** [Abraham BWC 2] at 4:39:27-4:39:30; **Def. Ex. 20** [Crockett BWC] at 4:39:27-4:39:30. None of the cited evidence establishes that Max's advance on the Officers was a response to pain. Defendants object to Plaintiffs' inclusion of legal argument in the statement of facts and refer the Court to their Reply brief, response to the Sosa Plaintiffs' statement of additional disputed facts, and objection to and motion to strike the Bryce Declaration, filed concurrently. | | |
| 139. | Max was gripping the scissors as he charged the Officers.<br><br>Ex. 19 [Abraham BWC #2] at 4:39:27-4:39:29.<br><br>Ex. 20 [Crockett BWC] at 4:39:28-4:39:30.<br><br>Ex. 28 [Crockett Dep.] 66:2-9; 67:8-21; 75:6-10; 76:15-23;<br><br>Ex. 27 [Abraham Dep.] 86:24-87:3; 88:6-16. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 139 and the evidence cited in it. Dkt. 99-1, SUF No. 139. |
| **Defendants' Response:** *See* Response to Fact No. 138. Aguilar testified that it was not the Officers' intention to provide Max with "an avenue to escape," because they had probable cause to arrest him for driving under the influence, assault on a police officer, and criminal threats. Supplemental Sorensen Decl., **Def. Ex. 32** [Aguilar Dep.] at 57:21-58:11. | | |

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 140. | Shots fired at **4:39:28 a.m.**<br>Ex. 18 [Ayers BWC] at 4:39:28.<br>Ex. 19 [Abraham BWC #2] at 4:39:28.<br>Ex. 20 [Crockett BWC] at 4:39:28.<br>Ex. 21 [Aguilar BWC] at 4:39:27.<br>Ex. 29 [Aguilar Dep.] 35:2-8. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 140 and the evidence cited in it. Dkt. 99-1, SUF No. 140. The Olivares Plaintiffs also rely on the following additional facts, which are also set out in ADF Nos. 29–30 (Statement of Additional Disputed Facts). Max crossed the threshold at 4:39:25 a.m. with the scissors pointed down. Aguilar Tased him one second later, at 4:39:26, without warning. Max moved away from the Taser's pain along the only path leading away from the apartment, through the Officers. At 4:39:28, two seconds into the Taser's five-second cycle, Ayers, Crockett and Abraham fired without warning. Defs.' SUF Nos. 134, 135, 140 (Dkt. 93-1); Ex. 29 (Aguilar Dep.) 50:18¬22; Sosa SAMF Nos. 39–44 (Dkt. 99-2); Dkt. 99-1, SUF Nos. 134–140. Abraham fired from behind Max, seeing mostly his back, toward the area where Crockett, Ayers and Aguilar were standing, although he was trained to avoid firing in the direction of other Officers because of crossfire. One bullet entered Max's mid-back and passed through his right lung and heart. Ex. 27 (Abraham Dep.) 86:6–87:10; Mayne Decl. Ex. I (Coroner's Report) at FRESNO 000230, 000234; Sosa SAMF No. 46 (Dkt. 99-2). |

**Defendants' Response:** Disputed. Although the Officers all speculated that the Taser strike was painful, there is no evidence that Max was "moving away from the Taser's pain" at this time. The objective video evidence shows that Max had the scissors clenched in his hand and pointed up and outward as he bared his teeth, quickened his pace, and moved in the direction of Crockett, Ayers and Aguilar. **Def. Ex. 19** [Abraham BWC 2] at 4:39:27-4:39:30; **Def. Ex. 20** [Crockett BWC] at 4:39:27-4:39:30.

Defendants further object that the Olivares Plaintiffs' additional "fact" is compound, inaccurate and argumentative, and refer the Court to their reply brief, response to the Olivares Plaintiffs' statement of additional disputed facts, and objection to and motion to strike the Bryce Declaration.

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 141. | Max fell to the ground, still holding the scissors.<br>Ex. 18 [Ayers BWC] at 4:39:30.<br>Ex. 19 [Abraham BWC #2] at 4:39:30.<br>Ex. 20 [Crockett BWC] at 4:39:31.<br>Ex. 21 [Aguilar BWC] at 4:39:30. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 141 and the evidence cited in it. Dkt. 99-1, SUF No. 141. |
| 142. | At **4:39:38 a.m.** Max moved his arm and Abraham commanded him to "Let go of – "<br>Ex. 18 [Ayers BWC] at 4:39:38-4:39:43.<br>Ex. 19 [Abraham BWC #2] at 4:39:38-4:39:43.<br>Ex. 21 [Aguilar BWC] at 4:39:38-4:39:39. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 142 and the evidence cited in it. Dkt. 99-1, SUF No. 142. |
| **Defendants' Response:** It is not clear what the dispute is and nothing in the stated fact purports to establish that Max could hear Abraham's words. Abraham's actions are depicted in the cited video evidence. | | |
| 143. | Aguilar called in "Shots fired."<br>Ex. 3 [CAD Report] at FRESNO 000248, 000274.<br>Ex. 21 [Aguilar BWC] at 4:39:36-4:39:45. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 143 and the evidence cited in it. Dkt. 99-1, SUF No. 143. |

MANNING | KASS

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 144. | Max was approximately a foot to a foot-and-a-half away from Crockett when all four Officers fired their service weapons.<br>Ex. 26 [Ayers Dep.] 85:3-10.<br>Ex. 28 [Crockett Dep.] 45:6-9; 73:15-23; 76:15-23.<br>Ex. 29 [Aguilar Dep.] 63:1-4. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 144 and the evidence cited in it. Dkt. 99-1, SUF No. 144. The Olivares Plaintiffs also rely on the following additional facts, which are also set out in ADF Nos. 29–30 (Statement of Additional Disputed Facts). Max crossed the threshold at 4:39:25 a.m. with the scissors pointed down. Aguilar Tased him one second later, at 4:39:26, without warning. Max moved away from the Taser's pain along the only path leading away from the apartment, through the Officers. At 4:39:28, two seconds into the Taser's five-second cycle, Ayers, Crockett and Abraham fired without warning. Defs.' SUF Nos. 134, 135, 140 (Dkt. 93-1); Ex. 29 (Aguilar Dep.) 50:18¬22; Sosa SAMF Nos. 39–44 (Dkt. 99-2); Dkt. 99-1, SUF Nos. 134–140. Abraham fired from behind Max, seeing mostly his back, toward the area where Crockett, Ayers and Aguilar were standing, although he was trained to avoid firing in the direction of other Officers because of crossfire. One bullet entered Max's mid-back and passed through his right lung and heart. Ex. 27 (Abraham Dep.) 86:6–87:10; Mayne Decl. Ex. I (Coroner's Report) at FRESNO 000230, 000234; Sosa SAMF No. 46 (Dkt. 99-2). |
| **Defendants' Response:** As to the additional information provided by the Sosa Plaintiffs, incorporated here: Undisputed that Aguilar fired his Taser and did not discharge his service weapon; undisputed that Aguilar fired his Taser only once, before the other Officers fired their weapons, and that he was farther away than a foot to a foot-and-a-half. As to the distance from which Abraham fired his weapon, undisputed but irrelevant.<br>As to the additional information provided by the Olivares Plaintiffs: *See* Response to Fact No. 140. | | |
| 145. | Max was close enough to Crockett to have grabbed Crockett's gun.<br>Ex. 27 [Abraham Dep.] 58:25-59:19. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 145 and the evidence cited in it. Dkt. 99-1, SUF No. 145. |

<table>
<tr><th><u>NO.</u></th><th><u>UNDISPUTED FACTS AND SUPPORTING EVIDENCE</u></th><th><u>PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE</u></th></tr>
<tr><td colspan="3">Defendants' Response: The stated fact does not purport to establish that Max reached for a gun. The Sosa Plaintiffs do not dispute the Officers' estimate that Max was a between 12 and 18 inches from Crockett (See Response to Fact No. 144) – in other words, within an arm's distance – and this estimate is consistent with the video evidence. See Def. Ex. 19 [Abraham BWC 2] at 4:39:20-4:39:29; Def. Ex. 20 [Crockett BWC 4:39:27-4:39:30. Plaintiffs do not offer any evidence to contradict that at that distance, Max could have put his hand on Crockett's gun. Defendants object to Plaintiffs' inclusion of legal argument in the statement of facts and refer the Court to their Reply brief and response to Plaintiffs' statements of additional disputed facts.</td></tr>
<tr><td>146.</td><td>At 4:39:50 a.m. Crockett retrieved a medical kit from his vehicle.<br><br>Ex. 20 [Crockett BWC] at 4:39:27-4:39:50.</td><td>Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 146 and the evidence cited in it. Dkt. 99-1, SUF No. 146.</td></tr>
<tr><td>147.</td><td>At 40:40:10 a.m. Aguilar approached Max, retrieved the scissors and tossed them away.<br><br>Ex. 20 [Crockett BWC] at 4:40:10-4:40:12.<br><br>Ex. 21 [Aguilar BWC] at 4:40:07-4:40:10.</td><td>Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 147 and the evidence cited in it. Dkt. 99-1, SUF No. 147.</td></tr>
<tr><td colspan="3">Defendants' Response: Undisputed and corrected in the Amended Joint Statement of Undisputed Facts.</td></tr>
<tr><td>148.</td><td>At 4:40:40 a.m. the Officers began administering emergency medical aid to Max.<br><br>Ex. 20 [Crockett BWC] at 4:40:40.<br><br>Ex. 21 [Aguilar BWC] at 4:40:38.</td><td>Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 148 and the evidence cited in it. Dkt. 99-1, SUF No. 148.</td></tr>
<tr><td>149.</td><td>The coroner determined the cause of Max's death was a gunshot wound to the chest.<br><br>Ex. 5 [Coroner's Report] at FRESNO 000239.</td><td>Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 149 and the evidence cited in it. Dkt. 99-1, SUF No. 149.</td></tr>
<tr><td colspan="3">Defendants' Response: Undisputed as to Max's cause of death, which Defendants intended to cite Ex. 5 [Coroner's Report] at FRESNO 00023<u>0</u> to support. As to Plaintiffs' other stated facts, they are undisputed but irrelevant.</td></tr>
<tr><td>150.</td><td>Max's blood alcohol level was 0.09. Ex. 6 [Toxicology Report] at FRESNO000300.</td><td>Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 150 and the evidence cited in it. Dkt. 99-1, SUF No. 150.</td></tr>
</table>

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 151. | Max Sr. is Max's biological father.<br><br>Ex. 23 [Max. Sr. Dep.] 12:13-18. | Undisputed. |
| 152. | Martha is Max's biological mother.<br><br>Ex. 23 [Max. Sr. Dep.] 12:13-18; 14:9-10.<br><br>Ex. 24 [Martha Dep.] 20:25-21:11. | Undisputed. |
| 153. | M.S. and L.S. are Max's biological children.<br><br>Ex. 23 [Maria Dep.] 32:5-10. | Undisputed. See also Joint Statement of Undisputed Facts ¶ 8 (Dkt. 93-2). |
| 154. | Max and Maria were married on July 11, 2014.<br><br>Ex. 23 [Maria Dep.] 18:3-4. | Undisputed. See also Joint Statement of Undisputed Facts ¶ 9 (Dkt. 93-2). |
| 155. | Max and Maria were married but living separately as of November 4, 2023.<br><br>Ex. 23 [Maria Dep.] 26:1-17; 42:14-17;<br><br>Ex. 25 [Max Sr. Dep.] 27:4-7. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 155 and the evidence cited in it. Dkt. 99-1, SUF No. 155. |
| **Defendants' Response:** Undisputed but irrelevant. | | |
| 156. | One of the reasons Max and Maria separated was that Maria had a relationship with another man, who was one of her coworkers.<br><br>Ex. 10 [Sosa Interview] at 9, 10.<br><br>Ex. 23 [Maria Dep.] 30:3-7; 30:24-31:16; 137:19-25.<br><br>Ex. 25 [Max Sr. Dep.] 28:20-25. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 156 and the evidence cited in it. Dkt. 99-1, SUF No. 156. |
| **Defendants' Response:** Undisputed. | | |
| 157. | Max Sr., Martha, M.S. and L.S. were not present when Max was shot and killed.<br><br>Ex. 25 [Max. Sr.] 21:4-12. | Undisputed that Max Sr. and Martha were not present when Max was shot. Ex. 25 (Max Sr. Dep.) 21:4-12. As to M.S. and L.S., the Olivares Plaintiffs join the Sosa Plaintiffs' response. The fact is immaterial to every claim at issue; no claim requires that a plaintiff have witnessed the shooting. |
| **Defendants' Response:** Defendants object to the Olivares Plaintiffs' inclusion of legal argument in the statement of facts, and refer the Court to their reply brief. | | |

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 158. | Maria was in the apartment when Max was shot and killed and did not see Max's actions towards the Officers or the Officers' actions towards Max once Max left the apartment.<br><br>Ex. 10 [Sosa Interview] at 80.<br><br>Ex. 23 [Maria Dep.] 47:15-17; 108:23-109:4. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 158 and the evidence cited in it. Dkt. 99-1, SUF No. 158. |
| 159. | In 2014, Max Sr. signed over his business to Max.<br><br>Ex. 10 [Sosa Interview] at 5, 6.<br><br>Ex. 23 [Maria Dep.] 116:8-15;<br><br>Ex. 25 [Max. Sr. Dep.] 16:15-22; 25:25-26:6. | Undisputed in part. Max Sr. testified that in 2014 he put the business in Max's name because he intended to go to Mexico, that he did not go, and that in mid-2014 he "changed it back to [his] name." Ex. 25 (Max Sr. Dep.) 26:1–27:7; see also 16:21¬23. The business was therefore Max's only briefly, and has been Max Sr.'s since mid-2014. Disputed to the extent the fact implies a lasting transfer of ownership. |
| **Defendants' Response:** Defendants object that the Olivares Plaintiffs' additional fact is compound, but undisputed that Max, Sr. so testified. The stated fact does not purport to establish the duration of the transfer. | | |
| 160. | Max assumed over $50,000 in debt as a result of taking over his father's business.<br><br>Ex. 10 [Sosa Interview] at 5, 6, 8.<br><br>Ex. 23 [Maria Dep.] 115:19-25. | Disputed. Max Sr. testified that Max never had to pay money owed because of the business: "Everything that was there, I paid. Anything that needed to be paid, I paid." Ex. 25 (Max Sr. Dep.) 27:8-11. The business was back in Max Sr.'s name from mid-2014. Id. 27:1-7. In any event the fact is immaterial to the Olivares Plaintiffs' claims. |
| **Defendants' Response:** Undisputed that Max Sr. so testified. Defendants object to the additional fact as compound and argumentative, and object to the Olivares Plaintiffs' inclusion of legal argument in a statement of facts. | | |
| 161. | Max's wages were garnished for a period of time due to the business liability he assumed from his father.<br><br>Ex. 23 [Maria Dep.] 116:22-24. | Disputed. See response to No. 160. Max Sr. testified that he, not Max, paid what was owed on the business. Ex. 25 (Max Sr. Dep.) 27:8-11. The Olivares Plaintiffs have seen no evidence beyond Maria's testimony that Max's wages were garnished for the business's liabilities, and the fact is immaterial to their claims. |



MANNING | KASS

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| **Defendants' Response:** Undisputed that Max Sr. so testified. It is unclear whether the Olivares Plaintiffs suggest that testimony alone is insufficient to establish a triable fact, but note that there is also no evidence to corroborate Max Sr.'s testimony. Defendants object to the additional fact as compound and argumentative, and object to the Olivares Plaintiffs' inclusion of legal argument in a statement of facts. | | |
| 162. | The business debt from Max Sr.'s business had not resolved at the time of Max's death.<br><br>Ex. 23 [Maria Dep.] 116:16-21. | Disputed. See responses to Nos. 160 and 161. Max Sr. testified that the business's obligations were paid by him. Ex. 25 (Max Sr. Dep.) 27:8-11. |
| **Defendants' Response:** Undisputed that Max Sr. so testified. Defendants object to the additional fact as compound and argumentative, and object to the Olivares Plaintiffs' inclusion of legal argument in a statement of facts. | | |

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 163. | Max did not provide Max Sr. with financial support during his lifetime.<br>Ex. 23 [Max Sr. Dep.] 29:14-16; 45:24-46:9. | Undisputed that Max Sr. so testified when asked whether Max ever provided financial support. Ex. 25 (Max Sr. Dep.) 29:14-16. Disputed to the extent the fact implies that Max did not help him or that Max Sr. was not dependent on Max. Max Sr. understood the question to ask about regular support. Max helped him from time to time when he needed it, but not regularly, and most of Max's help was keeping his business running, which is how he supports himself. Sosa Sr. Decl. ¶ 8; Ex. 25 (Max Sr. Dep.) 45:24–46:3 (Max "was helping [me] in business that [I] use to support [my]self"). Max did the harder computer-diagnostic jobs once or twice a week after his own work, and no one else could do them (id. 41:5-14, 41:25–42:3); Max Sr. saw him two to four times a week (id. 29:17-20); and after Max died he lost the accounts Max had helped him keep and has been unable to find anyone who can do the work (id. 40:21–41:24). Sosa Sr. Decl. ¶¶ 5–7. See also Pls.' Resp. to Def.'s Interrogatories, Set Two, No. 22 (Little Decl. Ex. E); ADF Nos. 1–4. In addition: Max Sr. owns his business and his income depends on it. He takes no regular salary or draw and receives no Social Security or pension, and he relies on the business to support himself. Ex. 25 (Max Sr. Dep.) 45:24–46:9; Sosa Sr. Decl. ¶¶ 3, 9. |
| **Defendants' Response:** Defendants object to the Olivares Plaintiffs' use of the statement of facts to advance legal arguments. Defendants also object to the Olivares Plaintiffs' additional "fact" as compound, irrelevant, argumentative and inaccurate. The Court is referred to Defendants' reply brief regarding whether it should consider the facts presented in Max Sr.'s or Martha's declarations, and if so, whether these additional facts raise an issue for trial. | | |

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 164. | Max Sr. testified Max helped him with his business and that Max Sr. planned to have Max take over the business.<br><br>Ex. 23 [Max Sr. Dep.] 45:24-46:9. | Undisputed. Max Sr. testified that Max helped him in his business and that Max was his "beneficiary," the person he planned to have take over the business when he became too old to work. Ex. 25 (Max Sr. Dep.) 45:24–46:6. See also id. 40:24–42:3 and Interrogatory Response No. 13 (Little Decl. Ex. E). See also ADF Nos. 1–4. In addition: Max Sr. has owned and operated a diesel-mechanic business since 2006. In the years before his death he saw Max two to four times a week, and Max helped him with the more difficult jobs, one or two times a week after work, on engines and motors with computer problems. Max "was the only one who knew what I knew." Ex. 25 (Max Sr. Dep.) 16:11-18, 29:17-20, 41:5-14, 41:25–42:3; Sosa Sr. Decl. ¶¶ 2, 4–5; Little Decl. Ex. E, Nos. 13, 22. Max Sr. owns his business and his income depends on it. He takes no regular salary or draw and receives no Social Security or pension, and he relies on the business to support himself. Ex. 25 (Max Sr. Dep.) 45:24–46:9; Sosa Sr. Decl. ¶¶ 3, 9. |
| **Defendants' Response:** *See* Response to Fact No. 163. | | |
| 165. | Max Sr. testified he was relying on his business to support him after he retired.<br><br>Ex. 23 [Max Sr. Dep.] 45:24-46:9. | Undisputed. Max Sr. testified that he was relying on his business to help support himself after he retired. Ex. 25 (Max Sr. Dep.) 46:7-9. The Olivares Plaintiffs rely on this fact, together with No. 164, as evidence of Max Sr.'s dependence on Max. See also ADF Nos. 3–4. Max Sr. owns his business and his income depends on it; he takes no regular salary or draw and receives no Social Security or pension. Ex. 25 (Max Sr. Dep.) 45:24–46:9; Sosa Sr. Decl. ¶¶ 3, 9. |
| **Defendants' Response:** *See* Response to Fact No. 163. | | |

| **NO.** | **UNDISPUTED FACTS AND SUPPORTING EVIDENCE** | **PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE** |
|---|---|---|
| 166. | Max did not provide Martha with financial support during his lifetime.<br><br>Ex. 24 [Martha Dep.] 37:5-11. | Undisputed that Martha so testified when asked whether Max supported her while he was alive. Ex. 24 (Martha Dep.) 37:5-11. Disputed to the extent the fact implies that Martha had received no support from Max or was not relying on him. She understood the question to ask whether Max had supported her completely and throughout his adult life. Olivares Decl. ¶ 10. In September and October 2023 she was in Fresno for two to three weeks, slept at Max's house and did the work of a live-in caregiver for his two sons. While she was there Max gave her $200 in cash once or twice a month, and he gave her about $750 in cash to move out of her month-to-month apartment and move to Fresno. In Fresno she had no means of support of her own and Max supported her. Olivares Decl. ¶¶ 6–9. Max had asked her to come and live with him and help with the boys, and the plan was for her to move in December 2023 and remain permanently. Ex. 24 (Martha Dep.) 34:12–35:4; Olivares Decl. ¶¶ 4–5; Interrogatory Response No. 13 (Little Decl. Ex. E) (Martha "had been promised to move in with and be supported by the decedent and had already acted in reliance on that promise"); ADF No. 5. |
| **Defendants' Response:** *See* Response to Fact No. 163. | | |

MK MANNING | KASS

| **NO.** | **UNDISPUTED FACTS AND SUPPORTING EVIDENCE** | **PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE** |
|---|---|---|
| 167. | Martha testified Max "was always talking about supporting me whenever I became old."<br><br>Ex. 24 [Martha Dep.] 37:5-11. | Undisputed that Martha so testified. Ex. 24 (Martha Dep.) 37:5-11. Martha's full answer was that Max "would always talk about supporting me when[ever] I became old." Id. 37:7-8. The Olivares Plaintiffs rely on the statement as evidence of Max's intent and of Martha's reliance, and incorporate their response to No. 166. See also ADF No. 5. Max asked Martha to move into his home in Fresno as the live-in caregiver for his two young sons and agreed to support her; she gave notice on her tenancy, and the move came to nothing because Max died. Ex. 24 (Martha Dep.) 34:12–35:4, 31:5-8, 37:12-24; Olivares Decl. ¶¶ 4–9. |
| **Defendants' Response:** *See* Response to Fact No. 163. | | |

MANNING | KASS

| | | |
|---|---|---|
| 168. | All of the Officers were trained in crisis management, deescalation techniques and dealing with individuals in crisis as part of their training.<br><br>Ex. 26 [Ayers Dep.] 16:18-17:13; 22:7-14.<br><br>Ex. 27 [Abraham Dep.] 20:2-12.<br><br>Ex. 28 [Crockett Dep.] 15:5-16:3; 73:5-14.<br><br>Ex. 29 [Aguilar Dep.] 59:18-24.<br><br>Ex. 30 [Alvarez Dep.] at 39:11-40:22; 47:2-49:20; 65:1-67:1. | Undisputed that each Officer testified to instruction on responding to persons in crisis at the academy, in field training, and in-service. Disputed to the extent the fact implies the Officers had specialized crisis-negotiation training or applied it here. Ayers is not a certified crisis negotiator, and testified he did not feel he was trained enough for this incident. Ex. 26 (Ayers Dep.) 42:1-2, 42:13; Mayne Decl. Ex. F (Ayers Dep.) 78:5-15. No Officer called a crisis negotiator to the scene. Ex. 27 (Abraham Dep.) 82:8-13; Mayne Decl. Ex. G (Abraham Dep.) 83:1-5; Ex. 28 (Crockett Dep.) 56:2-7. The Officers were also trained that in a crisis time is the officer's ally, that clear communication with the person in crisis is very important, and that unjustified escalation is to be avoided, yet they made no plan, and chose neither to wait for a negotiator nor to use the less-lethal options they had. Mayne Decl. Ex. F (Ayers Dep.) 60:23–61:6, 77:1¬4, 77:10-17; ADF Nos. 12–20, 23. Ayers and Abraham spent roughly fifteen minutes together in the apartment with Maria before Max returned and did not discuss a tactical plan, whether non-lethal force would be used or by whom, or who would act as cover officer; Ayers testified there was no "explicit plan" and no discussion of which of them would be the less-lethal option, and, asked whether he had communicated the tactical objective to the other Officers, answered, "We did not have the time to." Mayne Decl. Ex. G (Abraham Dep.) 69:4¬7, 30:22–31:4; Little Decl. Ex. B (Abraham Dep.) 76:13-21; Mayne Decl. Ex. F (Ayers Dep.) 44:11-13, 44:24–45:8, 77:10-17. To Abraham's knowledge no effort was made to move Maria out of the living room before Max returned. Mayne Decl. Ex. G (Abraham Dep.) 77:12-18. All four Officers carried Tasers; Ayers, Abraham and Crockett also carried batons. Mayne Decl. Ex. F (Ayers Dep.) 45:9-24; Mayne Decl. Ex. G (Abraham Dep.) 39:20-24. Aguilar agreed that an Officer using a |

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
| --- | --- | --- |
| | | Taser can be covered by Officers with less-lethal or lethal weapons, and that a bean bag shotgun is a less-lethal weapon. Mayne Decl. Ex. D (Aguilar Dep.) 55:8-23, 55:24–56:2. The Olivares Plaintiffs also incorporate the Sosa Plaintiffs' response to No. 168 (Dkt. 99-1, SUF No. 168). See also Sosa Plaintiffs' SAMF Nos. 13–19, 49 (Dkt. 99-2). |

**Defendants' Response:** Nothing in the cited fact purports to establish that the Officers had "specialized" crisis training, and Plaintiffs do not cite any evidence to contradict the Officers' testimony that their training included crisis management, deescalation techniques and dealing with individuals in crisis. Civ. LR 260(c), Fed. R. Civ. P. 56(e)(2). The remaining additional "facts" do not contradict the stated fact and are improper argumentation in a statement of facts.

Defendants further object that the Olivares Plaintiffs' additional "fact" is compound, inaccurate and argumentative.

Defendants refer the Court to their reply briefs and responses to Plaintiffs' statements of additional disputed facts. and to their objection to and motion to strike the Bryce Declaration, filed concurrently.

| | | |
|---|---|---|
| 169. | The Officers tried several deescalation techniques during the incident, including: increasing distance from the suspect; trying to establish rapport, including using the suspect's first name; speaking in a calm tone; offering assistance and reassurance; showing force; training a weapon on the suspect; and requesting additional officers to the scene.<br><br>Ex. 23 [Maria Dep.] 104:18-107:3.<br><br>Ex. 26 [Ayers Dep.] 22:7-14; 56:25-57:11; 62:21-24.<br><br>Ex. 27 [Abraham Dep.] at 84:25-25:3.<br><br>Ex. 28 [Crockett Dep.] 55:12-56:1.<br><br>Ex. 29 [Aguilar Dep.] 58:12-59:4; 59:25-60:9; 60:10-17. | Disputed in part. The Olivares Plaintiffs dispute that showing force and training a weapon on Max were de-escalation techniques. The Officers described that conduct as providing "lethal coverage" for the less-lethal officer. Mayne Decl. Ex. G (Abraham Dep.) 72:3-7; Ex. 28 (Crockett Dep.) 73:1-4. Crockett's only words to Max were "Just chill," and the de-escalation he identified was a radio broadcast for more officers. Ex. 28 (Crockett Dep.) 55:4-6, 55:12–56:1. No negotiator was tried by phone or on scene. Mayne Decl. Ex. G (Abraham Dep.) 83:7-13. Abraham told detectives that "someone who's better at negotiating ... probably could talk him down." Mayne Decl. Ex. G (Abraham Dep.) 72:14-21. The Officers did not communicate a plan to one another. Mayne Decl. Ex. F (Ayers Dep.) 77:10-17; Mayne Decl. Ex. G (Abraham Dep.) 78:11-21. They also did not use the less-lethal options they had: Crockett's bean bag shotgun stayed in his vehicle, Ayers did not consider less-lethal force, and Abraham did not consider his Taser. Mayne Decl. Ex. H (Crockett Dep.) 18:21-23, 20:13-15; Mayne Decl. Ex. F (Ayers Dep.) 65:10-15; Ex. 27 (Abraham Dep.) 52:21-24. ADF Nos. 12–20. All four Officers carried Tasers, and Ayers had pepper spray in his bag. Crockett knew when he arrived that Max wanted to commit suicide by cop and did not consider bringing the shotgun from his vehicle. Abraham believed at least one responding Officer had a less-lethal shotgun in his vehicle, his own patrol car was parked about a hundred feet from the apartment, and no Officer had a less-lethal shotgun on his person when Max returned. Mayne Decl. Ex. F (Ayers Dep.) 45:9-24; Mayne Decl. Ex. H (Crockett Dep.) 18:7¬23, 20:13-15; Little Decl. Ex. B (Abraham Dep.) 73:5-16, 74:7-16. Abraham testified that, depending on the circumstances, "a less-lethal option would be more feasible." Mayne Decl. Ex. G (Abraham Dep.) 72:3¬7. Aguilar agreed that an Officer |

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | using a Taser can be covered by Officers with less-lethal or lethal weapons. Mayne Decl. Ex. D (Aguilar Dep.) 55:8-23. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to the remainder of No. 169 (Dkt. 99-1, SUF No. 169). See also Sosa Plaintiffs' SAMF Nos. 9–16, 40 (Dkt. 99¬2). |
| **Defendants' Response:** Plaintiffs do not cite any evidence to contradict that, consistent with their training, the Officers used all of these deescalation techniques during the incident. Civ. LR 260(c), Fed. R. Civ. P. 56(e)(2). The remaining additional "facts" do not contradict the stated fact and are not accurate (see Fact No. 133 (undisputed)). Defendants object to Plaintiffs' inclusion of legal argument in a statement of facts and refer the Court to their Reply brief.<br><br>Defendants further object that the Olivares Plaintiffs' additional "fact" is compound, inaccurate and argumentative.<br><br>Defendants refer the Court to their reply briefs and responses to Plaintiffs' statements of additional disputed facts. and to their objection to and request to strike the Bryce Declaration, filed concurrently. | | |
| 170. | Ayers tried to contact his sergeant to discuss the availability of other resources, including a crisis negotiator, had the sergeant deemed one necessary. Ex. 26 [Ayers Dep.] 42:14-43:5; 80:23-81:9; 18:8-16. | Undisputed that Ayers tried to reach Sergeant Oliver by phone and radio, and wanted a crisis negotiator sent if the sergeant thought one necessary. Ex. 26 (Ayers Dep.) 42:14-24, 43:3-11. Disputed to the extent the fact implies any negotiator was obtained or that the effort succeeded. Ayers never reached the sergeant before the shooting (id. 42:22-24), testified it "would have definitely been beneficial to have a CNT" (Ex. 26 (Ayers Dep.) 81:5-9), and no Officer called a negotiator or anyone with negotiation training. Ex. 27 (Abraham Dep.) 82:8-13; Mayne Decl. Ex. G (Abraham Dep.) 83:1-5; Ex. 28 (Crockett Dep.) 56:2-7. No one tried to have a negotiator reach Max by telephone, although Ayers had spoken to Max by telephone that night. Mayne Decl. Ex. G (Abraham Dep.) 83:7-13; Mayne Decl. Ex. F (Ayers Dep.) 44:20-22. ADF Nos. 15–17. See also Sosa Plaintiffs' SAMF Nos. 13–19 (Dkt. 99-2). |

<table>
<tr><th><u>NO.</u></th><th><u>UNDISPUTED FACTS AND SUPPORTING EVIDENCE</u></th><th><u>PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE</u></th></tr>
<tr><td colspan="3">Defendants' Response: Nothing in the stated fact purports to establish that a negotiator was obtained or that Ayers' efforts were successful. Defendants object that Plaintiffs' additional "fact" is compound, inaccurate and argumentative, and to the Olivares' Plaintiffs' use of the statement of facts to advance legal arguments.<br><br>Defendants refer the Court to their reply briefs and responses to Plaintiffs' statements of additional disputed facts. and to their objection to and request to strike the Bryce Declaration, filed concurrently.</td></tr>
<tr><td>171.</td><td>The Officers were trained that deadly force is justified if a suspect poses an immediate threat of death or serious bodily injury, based on the totality of the circumstances.<br><br>Ex. 28 [Crockett Dep.] 31:17-23; 35:24-36:5.<br><br>Ex. 27 [Abraham Dep.] 18:11-23; 56:22-57:1.<br><br>Ex. 26 [Ayers Dep.] 19:18-22.</td><td>Undisputed that the Officers testified they were trained that deadly force is justified when a suspect poses an immediate threat of death or serious bodily injury. The Olivares Plaintiffs dispute that Max posed such a threat (see Nos. 172–175). The Officers were also trained that time is an ally "when feasible," that clear communication with a person in crisis is very important, and that unjustified escalation is to be avoided. Mayne Decl. Ex. F (Ayers Dep.) 60:23–61:6, 77:1-4, 77:19-23; Mayne Decl. Ex. G (Abraham Dep.) 78:2-3. ADF No. 23.</td></tr>
<tr><td colspan="3">Defendants' Response: See Response to Fact No. 170.</td></tr>
</table>

MANNING | KASS

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 172. | Ayers believed Max presented a threat of death or serious bodily injury to Ayers, Maria and the other Officers at all times while Max was in Maria's apartment.<br><br>Ex. 26 [Ayers Dep.] 39:11-22; 39:24-40:5; 48:4-19; 55:1-22; 56:1-6; 62:25-63:21; 64:5-17; 72:12-73:5. | Disputed. The cited testimony states Ayers's belief; it does not establish that Max posed an immediate threat of death or serious bodily injury, and a jury could find otherwise. Ayers gave a prior statement that Max's movements inside the apartment were not "anything that would have warranted ... deadly force," and testified that statement was accurate. Ex. 26 (Ayers Dep.) 40:6-10; Mayne Decl. Ex. F (Ayers Dep.) 41:3-13. Ayers agreed that until the apartment door was opened he and Abraham were not facing an imminent threat, that with the door closed Max could not have posed an immediate threat of death or serious bodily injury to Ayers, Abraham or Maria, and that he never considered keeping the door closed. Little Decl. Ex. G (Ayers Dep.) 46:8-16; Ex. 26 (Ayers Dep.) 48:2-3, 48:21-24. Ayers had no explicit communication with the other Officers about the tactical objective. Id. 77:10-17. ADF Nos. 12, 21, 25. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to No. 172 (Dkt. 99-1, SUF No. 172). See also Sosa Plaintiffs' SAMF Nos. 9–11, 23–25, 33 (Dkt. 99-2). |

**Defendants' Response:** Plaintiffs do not cite any evidence to contradict the stated fact. Civ. LR 260(c), Fed. R. Civ. P. 56(e)(2). The remaining additional "facts" do not contradict the stated fact, are misleadingly presented, and/or irrelevant.

Plaintiffs' additional facts are further disputed as follows:

Regarding the statement that "for stretches of time, Mr. Sosa was on the far side of the kitchen counter, banging his head on the counter, not looking toward anyone, with the scissors pointed down": The cited testimony does not support this fact. The "stretch of time" appears to refer to approximately six second during which Max was banging his hand and the scissors (not his head) on the kitchen counter, during which Abraham motioned for Ayers and Maria to leave. *See* **Def. Ex. 18** [Ayers BWC] at 4:38:44-4:38:51; **Def. Ex. 19** [Abraham BWC 2] at 4:38:44-4:38:51. At no time did Max retreat into the kitchen. *See id.*

Regarding the statement that "Sosa never lunged at, struck at, or jabbed at anyone, and when Officer Aguilar told him not to step toward him, he stepped back.": Max's aggressive and erratic conduct toward Maria and the Officers, including but not limited to shouting, cursing, stepping toward them while gripping the scissors, asking Abraham "are you ready for this?" while brandishing the scissors at him, and asking Ayers "are you the motherf*cker I was talking to?" are all demonstrated on the objective video evidence. **Def. Ex. 18** [Ayers BWC] at 4:35:13-4:39:24; **Def. Ex. 19** [Abraham BWC 2] at 4:35:13-4:39:24. The same objective video evidence shows that Max was not compliant with the Officers' instructions and resisted their offers to help him. **Def. Ex. 18** [Ayers BWC] at 4:35:24-4:38:54; **Def. Ex. 19** [Abraham BWC #2] at 4:35:24-4:38:54. Consistent with this video evidence, Abraham testified that Max "was taking steps toward me, Officer Ayers and Mrs. Sosa, with the pair of scissors in his hands, still." **Def. Ex. 27** [Abraham Dep.] at 51:10-17.

Regarding the statement that "Ayers himself" told the investigator that Max's behavior in the apartment did not warrant the use of deadly force, Ayers explained to counsel at his deposition:

> Q: [W]as your testimony, essentially, that when you were in the apartment and Mr. Sosa was taking steps towards the officer, or you, it wasn't anything that would have warranted deadly force?
>
> A: Yes.
>
> Q. Is that your opinion today?
>
> A. Yes. ***There's a difference between "warranted" and "justified."*** So warranted could be my opinion as to what I thought at the time, whether or not it was warranted for me to use deadly force; but that's regardless on if it was justified. So what I was saying earlier is that it would have been justified; but at the time, I didn't feel like it was warranted to use deadly force outside the apartment.
>
> Q: ***So your testimony today is that inside the apartment, … it may have been justified to use deadly force, but not warranted?***
>
> A: ***Yes.***

Supplemental Sorensen Decl., **Def. Ex. 33** [Ayers Dep.] at 84:8-85:2.

As to the additional "facts" set forth by the Olivares Plaintiffs, Defendants object that they are compound, irrelevant, misleadingly presented and argumentative. Defendants refer the Court to their reply briefs and responses to Plaintiffs' statements of additional disputed facts. and to

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| their objection to and request to strike the Bryce Declaration, filed concurrently. | | |
| 173. | Abraham believed Max presented a threat of death or serious bodily injury to Abraham, Maria and the other Officers at all times while Max was in Maria's apartment.<br><br>Ex. 27 [Abraham Dep.] 43:9-24; 50:19-51:8; 54:7-56:20; 63:8-14; 63:22-64:5. | Disputed. Abraham testified that Max was "not a serious threat" before Abraham opened the door, and that the better course was to keep Max contained inside the apartment, where alone and contained "it would be more of a better way for a de-escalation." Mayne Decl. Ex. G (Abraham Dep.) 37:12-18, 44:8-18, 80:18–81:5. He testified that, knowing Max intended to force a confrontation and to commit suicide by cop, he would still have considered opening the door even had he known Max was right outside. Ex. 27 (Abraham Dep.) 50:7-18. ADF Nos. 22, 25. Abraham opened the door without looking through the window or the peephole, without using his voice to ask who was outside, and with his firearm and Taser holstered. Mayne Decl. Ex. G (Abraham Dep.) 36:21–37:11. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to No. 173 (Dkt. 99-1, SUF No. 173). See also Sosa Plaintiffs' SAMF Nos. 23–25, 30, 33 (Dkt. 99-2). |

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|

**Defendants' Response:** The Sosa Plaintiffs do not cite any evidence to contradict the stated fact. Civ. LR 260(c), Fed. R. Civ. P. 56(e)(2). The remaining additional "facts" do not contradict the stated fact, are misleadingly presented, and/or irrelevant.

The Sosa Plaintiffs' additional facts are further disputed as follows:

Regarding the argumentative statement that "Abraham pointed principally to Mr. Sosa's driving and the pursuits earlier in the night, adding only generally 'his behavior at the time,'" in the testimony cited by Defendants, Abraham explained that Max's demonstrated disregard for his own and others' safety throughout the evening, coupled with his erratic and aggressive conduct inside the apartment, caused Abraham to believe Max was a threat. **Def. Ex. 27** [Abraham Dep.] 43:9-24; 50:19-51:8; 54:7-56:20; 63:8-14; 63:22-64:5 Abraham also stated that he was trained to consider the totality of the circumstances to determine whether the use of deadly force is justified, and that his threat assessment included the fact that Max was possibly drunk driving, tried striking an officer, fled and evaded police, disregarded public safety, and made direct threats to Officer Ayers and Maria's affair partner. Supplemental Sorensen Decl., **Def. Ex. 31** [Abraham Dep.] at 18:11-23; 37:23-38:12.

Regarding the statement that "Sosa never attempted to stab or strike anyone with the scissors," Max's aggressive and erratic conduct toward Maria and the Officers, including but not limited to shouting, cursing, stepping toward them while gripping the scissors, asking Abraham "are you ready for this?" while brandishing the scissors at him, and asking Ayers "are you the motherf*cker I was talking to?" are all demonstrated on the objective video evidence. **Def. Ex. 18** [Ayers BWC] at 4:35:13-4:39:24; **Def. Ex. 19** [Abraham BWC 2] at 4:35:13-4:39:24. The same objective video evidence shows that Max was not compliant with the Officers' instructions and resisted their offers to help him. **Def. Ex. 18** [Ayers BWC] at 4:35:24-4:38:54; **Def. Ex. 19** [Abraham BWC #2] at 4:35:24-4:38:54.

Regarding the statement that "Abraham never considered using his Taser," Abraham testified it would have been inappropriate to use the Taser inside the apartment because Max "was so close in vicinity between me, Officer Ayers, Mrs. Sosa … it would have been too close." **Def. Ex. 27** [Abraham Dep.] at 53:16-25. Abraham also considered that inside the apartment, if Max "overcame the Taser," Abraham did not have any lethal cover. *Id.*, 54:1-6.

As to the additional "facts" set forth by the Olivares Plaintiffs, Defendants object that they are compound, irrelevant, misleadingly presented and argumentative. Defendants refer the Court to their reply briefs and responses to Plaintiffs' statements of additional disputed facts. and to their objection to and request to strike the Bryce Declaration, filed concurrently.

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 174. | Crockett believed Max presented a threat of death or serious bodily injury to Crockett, Maria and the other Officers from the moment he arrived on the scene until shots were fired.<br><br>Ex. 28 [Crockett Dep.] 28:23-30:11; 30:12-31:4; 31:25-32:3; 35:17-23; 49:4-14. | Disputed. Crockett testified he had no direct communication with Max other than "Just chill," and that he saw no other Officer call for crisis personnel. Ex. 28 (Crockett Dep.) 55:4-6, 56:2-7. He described Max taking "small steps." Ex. 28 (Crockett Dep.) 29:18-21. Crockett agreed that the scissors were in Max's right hand at his side and that he had told an investigator he was not sure Max was even fixated on him. Ex. 28 (Crockett Dep.) 66:2-19. The cited testimony states Crockett's belief and does not establish the fact. ADF Nos. 25, 31. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to No. 174 (Dkt. 99-1, SUF No. 174). See also Sosa Plaintiffs' SAMF Nos. 23–25, 40 (Dkt. 99-2). |

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|

**Defendants' Response:** Plaintiffs do not cite any evidence to contradict the stated fact. Civ. LR 260(c), Fed. R. Civ. P. 56(e)(2). The remaining additional "facts" do not contradict the stated fact, are misleadingly presented, and/or irrelevant.

Plaintiffs' additional facts are further disputed as follows:

Regarding the argumentative statement that "Abraham pointed principally to Mr. Sosa's driving and the pursuits earlier in the night, adding only generally 'his behavior at the time,'" in the testimony cited by Defendants, Abraham explained that Max's demonstrated disregard for his own and others' safety throughout the evening, coupled with his erratic and aggressive conduct inside the apartment, caused Abraham to believe Max was a threat. **Def. Ex. 27** [Abraham Dep.] 43:9-24; 50:19-51:8; 54:7-56:20; 63:8-14; 63:22-64:5 Abraham also stated that he was trained to consider the totality of the circumstances to determine whether the use of deadly force is justified, and that his threat assessment included the fact that Max was possibly drunk driving, tried striking an officer, fled and evaded police, disregarded public safety, and made direct threats to Officer Ayers and Maria's affair partner. Supplemental Sorensen Decl., **Def. Ex. 31** [Abraham Dep.] at 18:11-23; 37:23-38:12.

Like Abraham, Crockett testified that he was trained to assess the totality of the circumstances and he considered Max a threat based on his behavior during the entire call for service. **Def. Ex. 28** [Crockett Dep.] at 30:2-31:4.

Regarding the statement that "Sosa never attempted to stab or strike anyone with the scissors," Max's aggressive and erratic conduct toward Maria and the Officers, including but not limited to shouting, cursing, stepping toward them while gripping the scissors, asking Abraham "are you ready for this?" while brandishing the scissors at him, and asking Ayers "are you the motherf*cker I was talking to?" are all demonstrated on the objective video evidence. **Def. Ex. 18** [Ayers BWC] at 4:35:13-4:39:24; **Def. Ex. 19** [Abraham BWC 2] at 4:35:13-4:39:24. The same objective video evidence shows that Max was not compliant with the Officers' instructions and resisted their offers to help him. **Def. Ex. 18** [Ayers BWC] at 4:35:24-4:38:54; **Def. Ex. 19** [Abraham BWC #2] at 4:35:24-4:38:54.

Regarding the statement that "Abraham never considered using his Taser," Abraham testified it would have been inappropriate to use the Taser inside the apartment because Max "was so close in vicinity between me, Officer Ayers, Mrs. Sosa … it would have been too close." **Def. Ex. 27** [Abraham Dep.] at 53:16-25. Abraham also considered that inside the apartment, if Max "overcame the Taser," Abraham did not have any lethal cover. *Id.*, 54:1-6.

As to the additional "facts" set forth by the Olivares Plaintiffs, Defendants object that they are compound, irrelevant, misleadingly presented and argumentative. Defendants refer the Court to their reply briefs and responses to Plaintiffs' statements of additional disputed facts. and to their objection to and request to strike the Bryce Declaration, filed concurrently.

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 175. | Aguilar believed Max presented a threat of death or serious bodily injury to Aguilar, Maria and the other Officers from the moment he arrived on the scene until shots were fired.<br><br>Ex. 29 [Aguilar Dep.] 49:21-50:11 | Disputed. Aguilar's cited testimony explains why he planned to use a Taser; it does not state a belief that Max posed an imminent threat of death or serious bodily injury at all times. Ex. 29 (Aguilar Dep.) 49:21–50:11. Aguilar testified the scissors were pointed down. Ex. 29 (Aguilar Dep.) 50:18-22. He had decided before Max crossed the threshold to Tase him there, was trained that people move away from pain, and considered that Max would do so, in a space with no avenue of escape. Mayne Decl. Ex. D (Aguilar Dep.) 20:7-14, 23:6-24:19, 55:2-7; Ex. 29 (Aguilar Dep.) 49:21–50:11. ADF No. 28. Aguilar had told Crockett he would Tase Max the moment he crossed the threshold, and described the breezeway as "a very small, tight space" with "not enough room." Ex. 29 (Aguilar Dep.) 49:21–50:11, 30:23– 31:12; Sosa SAMF Nos. 36–38 (Dkt. 99¬2). The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to No. 175 (Dkt. 99-1, SUF No. 175). |

**Defendants' Response:** It is not clear what the dispute is, as Aguilar's testimony as to why he fired his Taser bears on his perception of Max as a threat. Plaintiffs do not cite any evidence to contradict the stated fact. Civ. LR 260(c), Fed. R. Civ. P. 56(e)(2). The remaining additional "facts" do not contradict the stated fact, are inaccurate, or are misleadingly presented.

Regarding the statement that Max was compliant and did not lunge, strike or jab, Defendants refer to their response to Fact No. 173. It is also undisputed that Max exited the apartment despite instructions to "Wait" and "Stop." *See* Amended Joint Statement of Undisputed Facts, No. 133.

Regarding the statement that the Officers gave Max "no avenue of escape," Aguilar testified that it was not the Officers' intention to provide Max with "an avenue to escape," because they had probable cause to arrest him for driving under the influence, assault on a police officer, and criminal threats. Supplemental Sorensen Decl., **Def. Ex. 32** [Aguilar Dep.] at 57:21-58:11.

As to the additional "facts" set forth by the Olivares Plaintiffs, Defendants object that they are compound, irrelevant, misleadingly presented and argumentative. Defendants object to the Olivares Plaintiffs' inclusion of legal argument in a statement of facts and refer the Court to their Reply brief.

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 176. | The Department's Use of Force Policy states:<br>"The use of deadly force is only justified when the officer reasonably believes it is necessary in the following circumstances (Penal Code § 835a):<br>(a) An officer may use deadly force to protect themselves or others from what they reasonably believe is an imminent threat of death or serious bodily injury to the officer or another person.<br>(b) An officer may use deadly force to apprehend a fleeing person for any felony that threatened or resulted in death or serious bodily injury, if the officer reasonably believes that the person will cause death or serious bodily injury to another unless immediately apprehended."<br>Ex. 13 [Policy 300] at 4. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 176 and the evidence cited in it. Dkt. 99-1, SUF No. 176. |
| 177. | In the five years preceding Max's death, there were six other incidents of the use of deadly force against an individual in crisis who was armed with an edged weapon.<br>Ex. 30 [Alvarez Dep.] 11:6-12:25. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 177 and the evidence cited in it. Dkt. 99-1, SUF No. 177. |
| 178. | Only one of the six cases resulted in settlement and none resulted in a verdict.<br>Ex. 30 [Alvarez Dep.] 60:22-61:7. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 178 and the evidence cited in it. Dkt. 99-1, SUF No. 178. |
| 179. | The use of force was determined to be within policy and justified in each of the six cases.<br>Ex. 30 [Alvarez Dep.] 19:8-20; 22:19-23:1; 28:9-14; 32:17-21; 33:8-16; 37:19-25. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 179 and the evidence cited in it. Dkt. 99-1, SUF No. 179. |

| NO. | UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 180. | The District Attorney or Department of Justice reviewed each of the six cases and did not bring charges or make any findings of criminality.<br><br>Ex. 30 [Alvarez Dep.] 19:8-20; 22:19-23:1; 28:9-14; 32:17-22; 33:8-16; 37:19-25. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 180 and the evidence cited in it. Dkt. 99-1, SUF No. 180. |
| 181. | In the five years preceding Max's death, the Fresno Police Department has never determined in connection with a use of deadly force that the officers involved did not use sufficient deescalation efforts.<br><br>Ex. 30 [Alvarez Dep.] 44:20-45:1. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 181 and the evidence cited in it. Dkt. 99-1, SUF No. 181. |
| 182. | Before Max returned to Maria's apartment a final time, he spoke to his friend Damian, who tried to persuade Max to stop what he was doing.<br><br>Ex. 11 [Incident Report] at FRESNO000436, FRESNO 000441. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 182 and the evidence cited in it. Dkt. 99-1, SUF No. 182. |
| **Defendants' Response:** Plaintiffs have not offered any evidence to contradict the stated fact, which Defendants note does not purport to establish that any officer knew this fact (nor is it offered for this purpose). Defendants object to Plaintiffs' inclusion of argument and evidentiary objections in the statement of facts, and refer the Court to their Response to the Sosa Plaintiffs' Evidentiary Objections. | | |
| 183. | Max just said, "Thank you for everything. I love you."<br><br>Ex. 11 [Incident Report] at FRESNO000436, FRESNO 000441. | Incorporated. The Olivares Plaintiffs incorporate the Sosa Plaintiffs' response to SUF No. 183 and the evidence cited in it. Dkt. 99-1, SUF No. 183. |
| **Defendants' Response:** Plaintiffs have not offered any evidence to contradict the stated fact, which Defendants note does not purport to establish that any officer knew this fact (nor is it offered for this purpose). Defendants object to Plaintiffs' inclusion of argument and evidentiary objections in the statement of facts, and refer the Court to their Response to the Sosa Plaintiffs' Evidentiary Objections. | | |

DATED: November 9, 2026

Respectfully submitted,

**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**

By: /s/ Maya Sorensen
Maya Sorensen
Attorneys for Defendants, CITY OF FRESNO, FMR. POLICE CHIEF PACO BALDERRAMA, JOHN AYERS, BRANDON CROCKETT, JONATHAN ABRAHAM, and ANTHONY AGUILAR