Mildred K. O'Linn (State Bar No. 159055)
*missy.olinn@manningkass.com*
Maya Sorensen (State Bar No. 250722)
*Maya.Sorensen@manningkass.com*
**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**
801 S. Figueroa St, 15th Floor
Los Angeles, California 90017-3012
Telephone: (213) 624-6900
Facsimile: (213) 624-6999

Attorneys for Defendants, CITY OF FRESNO, FMR. POLICE CHIEF PACO BALDERRAMA, JOHN AYERS, BRANDON CROCKETT, JONATHAN ABRAHAM, and ANTHONY AGUILAR

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION**

MARTHA ZEPEDA OLIVARES, individually and on behalf of the ESTATE OF MAXIMILIANO SOSA, JR.; MAXIMILIANO SOSA, SR.,

Plaintiffs,

v.

CITY OF FRESNO, UNKNOWN LAW ENFORCEMENT OFFICERS, POLICE CHIEF PACO BALDERRAMA and DOES 1-30,

Defendants.

---

MARIA SOSA, L.S. by and through guardian ad litem MARIA SOSA, M.S. by and through guardian ad litem JENNIFER LOPEZ, individually and as successors-in-interest to Maximilian Sosa,

Plaintiffs,

v.

CITY OF FRESNO and DOES 1-5,

Defendants.

Case No. 1:23-cv-01575-JLT-SAB

District Judge: Jennifer L. Thurston
Magistrate Judge: Stanley A. Boone

**DEFENDANTS' OBJECTION AND REQUEST TO STRIKE PORTIONS OF DECLARATION OF RICHARD BRYCE SUBMITTED IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Judge: Hon. Jennifer L. Thurston
Date: November 20, 2026
Time: 9:00 a.m.
Crtrm.: 4

MANNING | KASS

**I. Introduction**

Defendants City of Fresno, Paco Balderrama, John Ayers, Brandon Crockett, Johnathan Abraham, and Anthony Aguilar ("defendants") object to and request that the Court strike portions of the Declaration of Richard S. Bryce ("Bryce") [Doc. 99-4] which was submitted in support of Plaintiffs' opposition to Defendants' motion for summary judgment [Doc. 99].

Plaintiffs' Rule 26 disclosure stated that Bryce was expected to testify consistently with the opinions set forth in his expert report concerning police practices, tactics, use of force, and the officers' conduct in connection with the shooting of Maximiliano Sosa. At his deposition, Bryce confirmed that all opinions he planned to offer at trial were contained in his Rule 26 report and that he had not updated or supplemented those opinions. Bryce further testified that he did not believe he had any additional bases for his opinions beyond those identified in his report.

Bryce's later declaration materially exceeds those limitations. It introduces new or materially expanded opinions concerning crossfire, the physiological effects of a Taser, the cause of Sosa's movement, the supposed availability and effectiveness of crisis-intervention resources, and the counterfactual proposition that the fatal confrontation would not have occurred if the officers had taken different actions. Those opinions were not timely disclosed and, in several instances, conflict with Bryce's deposition testimony or lack a sufficient factual and methodological foundation.

**II. Legal Standard**

Federal Rule of Evidence 702 permits qualified expert testimony only when specialized knowledge will assist the trier of fact and the testimony is based on sufficient facts or data. The Court acts as gatekeeper and determines by a preponderance of the evidence whether the proffered expert testimony satisfies Rule 702. The proponent must establish both that the expert is qualified to render the opinion and that the opinion has adequate factual and scientific support. Rule 702 does not permit opinions founded on unsupported speculation or subjective belief. See *In re Countrywide Fin. Corp. Mortgage-Backed Sec. Litig.*, 984 F. Supp. 2d 1021, 1026 (C.D. Cal. 2013) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)); *Guidroz-Brault v. Missouri Pacific R.R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001).

At summary judgment, an expert must support an opinion with specific facts. See

*Guidroz-Brault*, 254 F.3d at 831; *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981). Expert testimony is inadmissible unless its proponent demonstrates that it is more likely than not to satisfy Rule 702's admissibility requirements. Fed. R. Evid. 702 advisory committee's note to 2023 amendment.

Rule 26(a)(2)(B) requires a retained expert's report to disclose a complete statement of all opinions the witness will express and the basis and reasons for them. *Goodman v. Staples*, 644 F.3d 817, 824 (9th Cir. 2011). Rule 26(e) does not permit a party to use supplementation as a vehicle to add opinions that could and should have appeared in the original report. *Enborg v. Ethicon*, Case No. 2:20-cv-02477-AWI-BAK, 2022 WL 1651897, *5 (E.D. Cal. 2022). An undisclosed expert opinion may not be used on a motion, at a hearing, or at trial unless the failure to disclose was substantially justified or harmless. *Medina v. Mapes*, Case No. 1:21-cv-00844-JLT-EPG, 25 WL 2307719, *5 (E.D. Cal. 2025).

**III. Objections to Paragraph 7**

Paragraph 7 should be stricken to the extent it implies that crisis negotiators, Crisis Negotiation Team personnel, Crisis Intervention Team personnel, or mental-health professionals were available and could have arrived in time to affect the incident.

At his deposition, Bryce testified that he did not determine the timeline for the availability or potential arrival of Crisis Intervention Team or Crisis Negotiation Team personnel. He did not recall reviewing testimony establishing that a Crisis Negotiation Team was ready to respond. Bryce Depo. 46:14-16. When asked whether summoning those personnel would have decreased the risk, Bryce conceded that he would not know unless they arrived and attempted an intervention. Bryce Depo. 47:12-23. He further characterized the proposed intervention as hypothetical because those resources were not requested.

Bryce therefore lacks a factual basis to opine that any such resource was available, could have arrived before the shooting, or would have changed the outcome. His declaration converts the undisputed absence of such personnel into an unsupported opinion that they constituted a practical and effective alternative under the circumstances. That conclusion is speculative and should be excluded under Rule 702.

Paragraph 7 also states that Sosa's presence inside the apartment for more than four minutes gave the officers time to deploy less-lethal force. Bryce did not visit the scene, did not review measurements taken by another person, and based his assessment of relevant distances on his general familiarity with the approximate dimensions of doorways and stairways. Bryce Depo. 54:9-20. The declaration does not identify the particular less-lethal device, proposed deployment position, distance, line of fire, or factual basis demonstrating that such a deployment was reasonably safe and feasible. This generalized conclusion is unsupported and should not be considered at summary judgment.

**IV. Objections to Paragraph 8**

Defendants object to Bryce's opinion that Sosa did not pose an imminent threat and that a reasonable, properly trained officer would not have perceived such a threat. That opinion improperly substitutes Bryce's retrospective interpretation of the recordings for the jury's assessment of the underlying facts and is not supported by a reliable video-analysis methodology.

Bryce did not conduct a complete frame-by-frame analysis of the body-worn camera footage. Bryce Depo 29:17-20. He did not use a person with technical or video expertise to interpret the footage and lacked the capability to perform a slow-motion analysis. Bryce Depo 53:18-21. When asked at deposition whether Sosa was holding the blade when he was tased, Bryce could not answer without reviewing the video again because the event occurred quickly. Bryce Depo 57:13-17.

Despite those acknowledged limitations, the declaration categorically states that Sosa did not raise the scissors, make a stabbing or cutting motion, or pose an imminent threat. The declaration does not disclose any new technical analysis that could support this increased degree of certainty. The Court should strike those portions of paragraph 8 as unsupported, as inconsistent with Bryce's deposition concessions, and as an improper attempt to supplement his opinions after discovery closed.

Bryce's statement that earlier conduct and statements could not bear on the threat assessment is also improper. At deposition, Bryce conceded that a suspect's prior conduct could be a relevant factor. Bryce Depo 56:18-20. The categorical declaration opinion materially departs





MK MANNING | KASS

from that concession and improperly directs the factfinder to disregard circumstances that may inform an officer's contemporaneous assessment.

Bryce also invokes Penal Code section 835a and offers a conclusion framed in the statute's terms. Although an expert may discuss police practices within a properly disclosed field of expertise, he may not instruct the Court on the governing law or apply a legal standard to reach a legal conclusion. *U.S. v. Diaz*, 876 F.3d 1194, 1197 (2017) (an expert witness cannot give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law). The portions of paragraph 8 stating that the evidence does or does not establish the legally required "imminent threat" should therefore be stricken.

**V. Objections to Paragraphs 10 and 11**

Paragraphs 10 and 11 add a materially expanded "crossfire" theory. The declaration states that the officers placed themselves in a crossfire, describes that positioning as a basic tactical error addressed by POST training, and asserts that it endangered the officers, Sosa, and neighboring residents. The declaration further attributes that alleged danger directly to the failure to form a plan, contain Sosa, and establish positions of cover and advantage.

Bryce's report disclosed a broader opinion concerning officer-created jeopardy, the "fatal funnel," containment, and the absence of a tactical plan. The report stated that the officers' tactics unnecessarily created the close-quarters confrontation in which Sosa was killed. Bryce Report p. 9, para 4. It did not disclose the declaration's distinct crossfire opinion, identify the factual or technical basis for determining the officers' lines of fire, or opine that the positioning endangered Sosa, his family, and neighboring residents.

The crossfire theory is especially unsupported because Bryce neither visited the apartment complex nor reviewed measurements of the scene. Bryce Depo 54:15-20. His report and deposition did not disclose any trajectory analysis, reconstruction, scene measurements, or other methodology supporting a crossfire determination. The new opinion is therefore untimely, unsupported by sufficient facts or data, and unreliable under Rule 702.

To the extent Bryce invokes POST training as a mandatory standard, his declaration is also inconsistent with his deposition testimony. Bryce testified that POST materials provide guidelines

rather than laws and that departments use those guidelines to formulate their own policies and procedures. Bryce Depo 34:18-24. He could not recall whether the specific term "officer-created jeopardy" was used in POST materials. Bryce Depo 37:9-12. The declaration should not be permitted to transform generalized training guidance into a mandatory legal or professional standard without identifying the particular standard and explaining its application.

## VI. Objections to Paragraph 12

Paragraph 12 contains new opinions concerning the physiological effects of a Taser, the cause of Sosa's movement, and the officers' ability to recognize that movement as a pain response rather than an attack.

Bryce declares that moving away from the source of Taser pain is a common and expected reaction and that, because Sosa allegedly had no avenue of escape, any such movement necessarily would carry him toward an officer. He further declares that Sosa's movement was a reaction to the Taser rather than an attack and that a reasonable officer would have recognized it as such.

These opinions are outside the disclosed scope of Bryce's report. Although the report criticized deploying a Taser against a person who was allegedly "boxed in," it did not disclose a physiological or medical opinion that the Taser caused Sosa's specific movements. Nor did it disclose the opinion that those movements could not have been intentional, threatening, or caused by any other factor. The declaration offers no testing, literature, medical evidence, biomechanical analysis, or other reliable basis for distinguishing a Taser response from intentional movement during the brief event.

The causation opinion also conflicts with Bryce's prior testimony. Bryce testified that Officer Aguilar's deployment of the Taser in the breezeway was reasonable. Bryce Depo 60:2-8. The declaration nevertheless characterizes the same deployment as a foreseeably dangerous tactic that created the jeopardy leading to the shooting. Plaintiffs should not be permitted to use a declaration to recast reasonable conduct, as Bryce described it under oath, as the causal tactical error responsible for the deadly-force encounter.

Moreover, Bryce did not conduct a complete frame-by-frame analysis, did not obtain technical video assistance, and could not perform a slow-motion analysis. Bryce Depo. 29:17-20;



MANNING | KASS

45:15-21; 53:18-21. His categorical attribution of movement during an approximately two-second interval therefore lacks a reliable foundation. The challenged portions of paragraph 12 should be stricken as undisclosed, speculative, and unsupported.

**VII. Objections to the But-For Opinion in Paragraph 12**

Bryce's statement that the breezeway confrontation would not have occurred if the officers had kept the door closed, contained Sosa, summoned a Crisis Negotiation Team or supervisor, formed a plan, and used time and distance is an undisclosed but-for causation opinion.

At deposition, Bryce admitted that he had not determined the availability or arrival time of crisis-intervention personnel and did not know whether their intervention would have reduced the risk. Bryce Depo 47:3-5; 47:12-23. He expressly described the proposed intervention as hypothetical. Bryce Depo 48:5-12. Nothing in the identified materials establishes that a supervisor or negotiation team was available, would have arrived before Sosa emerged, would have persuaded him to remain inside, or would have prevented the confrontation.

The declaration also assumes that officers could have kept the door closed and Sosa contained without identifying evidence that they controlled the door, could predict Sosa's actions, or could maintain containment safely. Bryce did not disclose a reconstruction or other methodology by which he could reliably determine what would have occurred under a counterfactual sequence of events. The opinion is speculation rather than specialized knowledge and should be stricken.

**VIII. Objections to Paragraph 13**

Paragraph 13 states that deadly force was not a last resort because reasonable alternatives were available "at every stage" and none was used. That sweeping opinion is unsupported and materially broader than the report.

The phrase "at every stage" is not tied to any particular point in time, alternative tactic, available officer, deployment position, or known resource. It also fails to account for the Taser deployment, which Bryce conceded was reasonable. Bryce Depo 60:2-8. The assertion that no reasonable alternative was used is therefore contradicted by his own testimony.

To the extent paragraph 13 relies on the availability of crisis or negotiation resources, it is

speculative for the reasons stated above. To the extent it assumes that less-lethal options could have been safely deployed inside the apartment or at other stages, it lacks disclosed measurements, reconstruction, or analysis. The Court should strike the paragraph's categorical assertions that reasonable alternatives were available at every stage and that none was used.

## IX. Objections to Paragraphs 14 and 15

Paragraphs 14 and 15 synthesize the preceding undisclosed and unsupported opinions into ultimate conclusions that the officers violated POST standards and generally accepted police practices, unnecessarily produced the confrontation, and acted as no reasonable, properly trained officer would have acted.

Those ultimate conclusions are inadmissible to the extent they depend on the declaration's new crossfire theory, speculative Taser-causation theory, unsupported assumptions regarding the availability and effectiveness of crisis resources, or counterfactual but-for opinion. An ultimate opinion cannot cure the absence of sufficient facts, reliable methodology, or timely disclosure for its component parts.

Bryce's invocation of POST standards is also insufficiently specific. At deposition, he testified that he was unaware of standards specifically governing the reliability of forensic police-practices review and that he did not use a checklist when conducting his review. Bryce Depo 30:7-16. He further testified that whether conduct creates officer-created jeopardy is specific to the incident and is not determined through a generally applicable quantitative method. Bryce Depo 40:12-15. The declaration does not bridge the analytical gap between general training concepts and its categorical conclusions about the officers' conduct.

The declaration's use of terms drawn directly from Penal Code section 835a—including "necessary," "imminent threat," and "reasonably safe and feasible"—also risks presenting legal conclusions as expert opinions. The Court should strike any portion that purports to define the governing law, determine whether statutory requirements were met, or instruct the factfinder on the legal reasonableness of Defendants' conduct.

## X. The New Opinions Are Not Proper Supplementation

Bryce's Rule 26 disclosure reserved a general right to supplement or amend the disclosure.

MANNING | KASS

That reservation did not authorize Plaintiffs to disclose materially new opinions for the first time through a declaration opposing summary judgment.

Bryce testified at deposition that all opinions he intended to offer were contained in his report, that he had not supplemented those opinions, and that he did not believe additional bases existed beyond those identified in the report. Bryce Depo 32:16-25; 33:1-4. His declaration was executed on October 30, 2026, after that testimony. Plaintiffs offer no basis to treat the declaration's new theories as corrections of incomplete or inaccurate information rather than substantive additions.

Permitting the new opinions would deprive Defendants of the disclosures required by Rule 26 and the opportunity to examine Bryce fully regarding his new theories, assumptions, qualifications, and methodology. The Court should exclude the newly disclosed opinions under Rule 37(c)(1).

**XI. Requested Relief**

Defendants respectfully request that the Court sustain their objections and strike or disregard:

1. The portions of paragraph 7 implying that crisis-intervention or negotiation resources were available, could have arrived in time, or would have altered the incident.
2. The portions of paragraph 8 offering unsupported video interpretations, excluding prior conduct from the threat assessment, or applying the legal standard for an imminent threat.
3. The portions of paragraphs 10 and 11 asserting an undisclosed crossfire theory or characterizing generalized POST guidance as a mandatory standard.
4. The portions of paragraph 12 attributing Sosa's movement to a Taser-induced pain response, asserting that officers should have recognized it as such, characterizing the Taser deployment as a causal tactical error, or stating that different tactics would have prevented the confrontation.
5. The portions of paragraph 13 asserting that reasonable alternatives were available at every stage and that none was used.
6. The portions of paragraphs 14 and 15 that rely on the foregoing undisclosed or

unsupported opinions or state impermissible legal conclusions.

DATED: November 9, 2026

Respectfully submitted,

**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**

By: /s/ Maya Sorensen
Maya Sorensen
Attorneys for Defendants, CITY OF FRESNO, FMR. POLICE CHIEF PACO BALDERRAMA, JOHN AYERS, BRANDON CROCKETT, JONATHAN ABRAHAM, and ANTHONY AGUILAR



MK MANNING | KASS